JAMES J. BROSNAHAN (CA SBN 34555)
JBrosnahan@mofo.com
SOMNATH RAJ CHATTERJEE (CA SBN 177019)
SChatterjee@mofo.com
SETH A. SCHREIBERG (CA SBN 267122)
Sschreiberg@mofo.com
CHRIS W. MAGAÑA (CA SBN 287256)
CMagana@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.   3:14-CR-00196 (CRB) |
|---|---|
| Plaintiff, | **KEITH JACKSON'S RESPONSE TO THE UNITED STATES' APPEAL OF MAGISTRATE JUDGE'S PRETRIAL RELEASE ORDER AND MOTION FOR IMMEDIATE REMAND** |
| v. | |
| KEITH JACKSON, | |
| Defendant. | |

## I. INTRODUCTION

The Court should affirm Magistrate Judge Nathanial Cousins' Release Order, which granted pretrial release of Keith Jackson under carefully considered conditions. Pretrial release of Mr. Jackson is appropriate under the correct standards that govern the Bail Reform Act, which the government ignores. The government's appeal is premised on hyperbole and mischaracterizations, and the 137-page affidavit weaves a tale of fiction and imagination created by the government's agents. The only "crime wave" in this case was the extreme and outrageous conduct by the government's undercover agents, who were the architects and promoters of the alleged crimes.

On Thursday, April 3, 2014, after a second bail hearing, and with the benefit of two reports from Pretrial Services, Magistrate Judge Cousins found that Mr. Jackson "has been a lifelong member of this community with significant ties to the community, and that demonstrates why he should be released on bail." (April 3, 2014 Tr. at 8:20-22.)[1] Magistrate Judge Cousins reached his decision having "reviewed the Complaint Affidavit" and both Pretrial Services reports, which evaluated potential sureties and properties that could be posted as security for a bond. (April 1, 2014 Tr. at 4:13-14; April 3, 2014 Tr. at 14:9-10.)

Magistrate Judge Cousins adopted almost all the conditions of Mr. Jackson's release recommended by Pretrial Services. The conditions of release include: home confinement in San Francisco; electronic monitoring; a ban on travel outside of the Northern District of California; a surrender of and a ban on applying for a passport; no communication with any co-defendant; no communication with any known gang member; no possession of firearms, destructive devices or other dangerous weapons; participation in drug and alcohol counseling and testing as directed by Pretrial Services; no use of alcohol to excess; no use or possession of controlled substances; and other standard terms of pretrial release. With these conditions in place, Magistrate Judge Cousins recognized that Mr. Jackson does not pose a flight risk, or a danger to the community. Magistrate

---

[1] The transcripts of the bail hearing on April 1, 2014, are attached as Exhibit 1 and the hearing on April 3, 2014, are attached as Exhibit 2.

Judge Cousins found that the "combination of conditions will reasonable assure the safety of the community" and that "Mr. Jackson will make future court appearances." (April 3, 2014 Tr. at 15:4-8.)[2]

Accordingly, Magistrate Judge Cousins ordered Keith Jackson released on a $250,000 bond partially secured up to $50,000 by the Texas home of Ms. Annie Scott, Mr. Jackson's mother, and Mr. Sammie Scott, Mr. Jackson's uncle. Magistrate Judge Cousins' Order provided that the Scotts have two weeks to prepare any documents required to satisfy the secured portion of the bond. (April 3, 2014 Tr. at 17:15-18.)

Magistrate Judge Cousins' Order appropriately balances the nature and circumstances of the crime charged with all of the evidence regarding Mr. Jackson's family ties, life-long ties to the community, and lack of criminal history. The Release Order is consistent with statutory instructions and Ninth Circuit guidance to impose the least restrictive means necessary to ensure Mr. Jackson attends court appearances and does not pose a danger to the community. *See*, *e.g.*, 18 U.S.C. § 3142(c)(1)(B).

The government's position that Mr. Jackson must be returned to custody pending compliance with Criminal Local Rule 46-2 and General Order No. 55 is meritless. There is no authority or case law denying Magistrate Judge Cousins the discretion to release a defendant pending preparation of financial records. On the contrary, the U.S. Attorneys' Manual acknowledges that a "judicial officer is not permitted to impose any financial conditions of release which result in the pretrial detention of a defendant." 9 U.S.A.M. § 26 (citing 18 U.S.C. § 3142(c)(2)).

**II. THE LEGAL STANDARD FAVORS AFFIRMING THE RELEASE ORDER**

The government's appeal fundamentally ignores the governing standards for pretrial release. In reality, those standards weigh in favor of affirming the Release Order.

The Bail Reform Act requires the release of a person pending trial unless the court "finds

---

[2] Magistrate Judge Cousins specifically found that "the presumption" argued by the government "is rebutted by the evidence presented as to Mr. Jackson's ties to the community." (April 3, 2014 Tr. at 12:19-21.)

1  that no condition or combination of conditions will reasonably assure the appearance of the
2  person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).
3  The Ninth Circuit has repeatedly stated that "[o]nly in rare cases should release be denied" and
4  that any "[d]oubts regarding the propriety of release are to be resolved in favor of defendants."
5  *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); *United States v. Motamedi*, 767
6  F.2d 1403, 1405 (9th Cir. 1985); *United States v. Dang*, 13-CR-486-EJD, 2013 U.S. Dist. LEXIS
7  112758 (N.D. Cal. Aug. 9, 2013). Although the rebuttable presumption requires that Mr. Jackson
8  present evidence that he is not a danger or flight risk, the burden is small, requiring that the
9  defendant produce only "some credible evidence" that he will appear in court and not pose a
10 threat to the community. *See, e.g.*, *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal.
11 1992). Once such evidence is provided, the ultimate burden of proof of a risk of flight and danger
12 remains on the government. *Lopez-Valenzuela v. County of Maricopa*, 719 F.3d 1054, 1065 (9th
13 Cir. 2013). The government's burden to show risk of flight is by a "clear preponderance of the
14 evidence." *Townsend*, 767 F.2d at 1406-07; *Chen*, 820 F. Supp. at 1208 (the Ninth Circuit's
15 "clear preponderance" test in pretrial detention matters is more than the usual "tips the scale
16 slightly" test applied in civil cases). To detain an individual on the ground of danger, the
17 government must establish by "clear and convincing" evidence that there are no conditions of
18 release that would reasonably assure the safety of the community. *Motamedi*, 767 F.2d at 1406;
19 18 U.S.C. § 3142(f).

20 There are four criteria for determining whether a defendant should be detained, including
21 1) the nature and circumstances of the offense; 2) the weight of the evidence; 3) the defendant's
22 history and character; and 4) level of danger to any person or to the community that would be
23 posed by the person's release. *See* 18 U.S.C. § 3142(g). The "weight of the evidence is the least
24 important" factor since it risks detention based on a premature determination of guilt, *Motamedi*,
25 767 F.2d at 1408, except that where the evidence is weak, this factor "becomes an important
26 factor favoring release." *Chen*, 820 F. Supp. at 1207-08.

27
28

### III. MR. JACKSON IS NEITHER A FLIGHT RISK, NOR DOES HE POSE A DANGER TO THE COMMUNITY

#### A. Mr. Jackson Is Not a Flight Risk

Numerous factors weigh indisputably towards affirming Magistrate Judge Cousins' determination that Mr. Jackson is not a flight risk. Mr. Jackson is a lifelong San Francisco resident, who has lived in the same apartment with his significant other for over 10 years. Mr. Jackson does not even have a passport and has not left the United States in fifteen years. For his work and charitable efforts, Mr. Jackson is well-known throughout the city, but particularly in Bayview-Hunters Point and the Western Addition neighborhoods, as a respected community leader, activist, and political consultant. His deep community ties include the following:

- President of San Francisco Board of Education from 1994-1998.
- Director of Commercial Recycling, Solid Waste Management Division of the Public Works Department of the City and County of San Francisco from 1998-2002.
- Executive Director of the Hunters Point Boys and Girls Club from 2002-2004.
- Active in affordable housing and retail shopping development efforts in Bayview-Hunters Point and throughout San Francisco.
- Active with numerous community organizations including the Black Chamber of Commerce and the local chapter of the NAACP.
- Numerous volunteer activities benefitting seniors and youth, including food and clothing drives such as delivering turkeys to seniors on Thanksgiving.

Through the sureties provided, Mr. Jackson has powerful incentives to comply with the conditions of Magistrate Judge Cousins' release order:

- Mr. Jackson's partner of 19 years, who works at the Salvation Army, is a surety to the $250,000 bond.
- Mr. Jackson's mother, Annie Scott, who recently moved back to San Francisco and is staying with Mr. Jackson and Ms. Gilmore in their apartment, has agreed to be a surety for Mr. Jackson, and would further agree to serve as her son's

custodian throughout these proceedings.

Additionally, adequate conditions reasonably assure his appearance in court. *See* 18 U.S.C. § 3142(e). The Court has ordered Mr. Jackson released to home supervision with electronic monitoring, which Pretrial Services implemented on April 4, 2014.[3] In addition to house arrest, Mr. Jackson, his partner, and his mother co-signed a $250,000 bond. Mr. Jackson's mother also agreed to secure the bond up to $50,000 with her home. For her part, Ms. Scott also has deep ties to this community. She lived in San Francisco from 1967 until she retired in 2008, after being employed for 38 years with Bank of America, and returned to her family's home in Texas. (Scott Decl. ¶¶ 7, 8.) The land her home rests on has been in her family for nearly 70 years and was the site of her childhood home. Mr. Jackson will not risk his mother's only home. On the contrary, Mr. Jackson will vigorously defend himself against the government's fantastic accusations.

### B. Mr. Jackson Is Not a Danger to the Community

Mr. Jackson is not a danger to the community or any person and should be permitted to remain at home with his partner and mother pending trial. Even so, the conditions of release that Magistrate Judge Cousins and Pretrial Services agreed upon, which are similar to the conditions placed on other defendants released despite similar charges, further assure the safety of others and the community. Those include: house arrest; electronic monitoring; and a ban on communications with codefendants.

To detain an individual on grounds of dangerousness, the government must prove by clear and convincing evidence that an arrestee presents "an identifiable and articulable threat to an individual or the community" if released. *United States v. Salerno*, 481 U.S. 739, 751 (1987); *see also United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991) (government's failure to demonstrate defendant posed more than a theoretical danger favored release). This standard is forward looking, so the question is not whether the charged offense involved a danger to others in

---

[3] The conditions of Mr. Jackson's house arrest are further documented in the Participation Agreement for Electronic Monitoring, executed April 4, 2014. Exhibit 3.

the past, but rather what may happen if the defendant is not detained. *See Salerno*, 481 U.S. at 751.

Here, Mr. Jackson has no criminal record, nor has Mr. Jackson ever been accused of a crime or of any violence. Nor is there any allegation in the government's affidavit that Mr. Jackson personally engaged in any violence towards anyone. As Magistrate Judge Cousins recognized, now that the alleged plots have been exposed, the risk has been eliminated. (April 1, 2014 Tr. at 6:22-7:1.) Indeed, the government was forced to concede it is "doubtful" that "the [alleged] firearms trafficking would continue" considering "the focus that the federal agents would be putting on Mr. Jackson while released." (April 1, 2014 Tr. at 7:2-7.)

In fact, there is no danger as the purported crimes were all driven by the government agents—not the defendants. For example, by the government's own admission, the government agent allegedly solicited Mr. Jackson regarding an alleged murder for hire. (*See* Mot. Ex. B at 78:17.) The government, despite having apparently targeted Mr. Jackson since 2011 (*see* Mot. Ex. B at 103:11), has not charged Mr. Jackson with one dangerous offense that was not inspired by a government agent. (Mot. at 7-8.) In short, the government agents created the purported danger that the government now seeks to use to incarcerate Mr. Jackson.

Further, the government knows Mr. Jackson is not a threat to the community. The government admittedly began its far-flung and sprawling investigation, including of Mr. Jackson, at least by *May 2011*—about three years ago. *The government willingly allowed Mr. Jackson to live and travel freely in San Francisco for the past three years.* How could the government have allowed Mr. Jackson to roam freely for three years if Mr. Jackson was a danger to the community? The truth is that he was not a danger then and he is not a danger now.

Besides repeating the sensational and conclusory allegations from the affidavit, the government's appeal offers no reason to single out Mr. Jackson for detention, when other defendants were released on unsecured bonds without objection from the government. (Mot. at 2.) For example, other defendants indicted for violations of 21 U.S.C. § 846, the same charge that gives rise to a presumption against Mr. Jackson, as well as 18 U.S.C. § 922(a)(1), dealing firearms without a license, were released on an unsecured bond. The government's emphasis on

the alleged conspiracy to import weapons from the Philippines underscores its hyperbole against Mr. Jackson. If the government was actually worried about defendants continuing a plot to smuggle weapons from "rebel groups in the Philippines," and Mr. Jackson's ties to "a terrorist organization," (Mot. at 8) the government would not have "been agreeable" to releasing other defendants indicted on similar charges. (Mot. at 2.)

The government fundamentally misrepresents *United States v. Hir*, failing to inform the Court that the case involved a *defendant's cooperation with an al-Qaeda affiliate*. That decision is entirely distinguishable from the allegations against Mr. Jackson. The defendant in *Hir* was charged with giving material support to terrorist organizations under 18 U.S.C. § 2339A. *See* 517 F. 3d 1081, 1083 (9th Cir. 2008). The defendant was born and raised in Malaysia, moved to the United States, but maintained close ties to his brother and main contact, an alleged high-ranking member of *Jemaah Islamiyah, an al-Qaeda affiliated group in Indonesia. Id.* at 1084. Jemaah Islamiyah was suspected of carrying out deadly attacks in South East Asia, including the 2002 bombing of a night club in Bali and the 2004 bombing of the Australian embassy in Jakarta. *Id.* The defendant knew of his brother's violent activities and gave money and supplies to support him, *including bomb-making material that was actually used. Id.* at 1091. The district court found the defendant a danger to a community outside of the United States. *Id.* The government's rhetorical bogeyman notwithstanding, *this is not a terrorism case*. No terrorism counts have been charged against any of the defendants. Unlike the defendant in *Hir*, Mr. Jackson has lived in San Francisco his entire life, and is a well-respected pillar of the community. There are no allegations that Mr. Jackson has ever spoken with anyone in the Philippines, sent any money or weapons materials abroad, or has ever contacted, much less supported, any terrorist organization, let alone an al-Qaeda affiliate.

**C.     Effective Representation of Mr. Jackson Requires His Pretrial Release**

Mr. Jackson has a constitutional right to effective legal assistance. Because there are conditions sufficient to ensure Mr. Jackson is neither a flight risk nor a danger to the community, the Court should ensure Mr. Jackson has the most effective legal representation possible. The charges against Mr. Jackson, sensational as they may be, involve a complex, sprawling

undercover operation, implicating dozens of witnesses, even more persons of interest, and hundreds of hours of audio and video surveillance spanning almost five years. Counsel will need unfettered access to Mr. Jackson and his direct involvement in the preparation of the defense to un-tangle the web of allegations and sift through the extensive discovery that is expected. Mr. Jackson cannot review lengthy video and audio files as effectively—or as privately—in a holding cell. Ensuring Mr. Jackson a full and fair opportunity to present his defense strongly weighs in favor of Mr. Jackson's release.

### IV. MR. JACKSON SHOULD NOT BE REINCARCERATED WHILE HIS SURETIES POST THE PARTIAL SECURITY FOR THE BOND

Magistrate Judge Cousins and Pretrial Services disagreed with the government's concerns regarding Ms. Scott's viability as a surety and the actual value of her home. Pretrial Services also interviewed Mr. Sammie Scott, Mr. Jackson's uncle, who confirmed that he will post the family's Magnolia, Texas home, and is willing to travel to the nearest federal courthouse to do whatever is necessary to help. Accordingly, because the Court was satisfied that there are sufficient conditions to ensure the reasonable likelihood of Mr. Jackson's appearance and the safety of the community, the Court released Mr. Jackson, and granted Ms. Scott two weeks to gather the documents required to post her home. Magistrate Judge Cousins' Release Order is consistent with the Bail Reform Act, which states that a judicial officer "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). The U.S. Attorney's Manual specifically acknowledges that a "judicial officer is not permitted to impose any financial conditions of release which result in the pretrial detention of a defendant." 9 U.S.A.M. § 26. Thus, the government's appeal should be rejected as inconsistent with the plain language and policy rationale of the Bail Reform Act.

Neither Criminal Local Rule 46-2 nor General Order No. 55's "guidelines" for posting property alter this analysis. Local Rule 46-2 and General Order No. 55 do not require all documents to be finalized before the Defendant may be released. Local Rule 46-2 simply states that a cash deposit "shall be made with the cashier of the office of the Clerk of this Court during

the regular business hours." With respect to bonds secured by property, the Rule provides that "deposit shall be made with the Magistrate Judge who set the bail or with a person designated by the Magistrate Judge in accordance with the 'Guidelines in Posting Real Property as Bail in Lieu of Cash/Surety Bond; Surrendering Passports(s),' *or as modified by the Court*." By its plain language, Local Rule 46-2 permits the Court to modify the conditions of release on a secured bond, and places no restrictions on a Magistrate's discretion.

The "Guidelines in Posting Real Property as Bail in Lieu of Cash/Surety Bond; Surrendering Passports(s)," also known as General Order No. 55, describes documents to effectuate a bond so that there is no confusion among the parties. Gen. Order at 1-2. Regarding the property's valuation, the guidelines describe certain documents, but also advise a "flexible, case-by case approach." Gen. Order at 2. Defendants must show the documents to the prosecutor before lodging them with the court and completing the documentation process. Gen. Order at 3.

Counsel is not aware of any authority in this district—whether citing Local Rule 46-2, General Order No. 55, or any other rule—that would deny Magistrate Judge Cousins the discretion to release a defendant pending preparation of financial records once he was satisfied Ms. Scott was a viable surety. To the contrary, the Ninth Circuit has held that what binds a surety is not paperwork but sworn testimony in open court, either orally or via affidavit. *See United States v. Noriega-Sarabia*, 116 F.3d 417, 419-21 (9th Cir. 1997). Ms. Scott agreed in open court to be a surety up to $250,000, secured in part and up to $50,000 by her home. (April 3, 2014 Tr. at 23-24.)

*United States v. O'Brien* is instructive. 895 F.2d 810 (1st Cir. 1990). The defendant, a former DEA Agent accused of international narcotics trafficking, offered his wife's home as surety, despite previously representing that the home was unavailable because of his wife's obligation to her ex-husband and children. *Id.* at 812. The magistrate ordered the defendant released immediately, before a future hearing "when Mrs. O'Brien could sign bail papers and attend a hearing concerning her willingness and capacity to serve as third-party custodian." *Id.* The First Circuit affirmed the decision as within the magistrate's discretion. The Court held that the magistrate "has in fact premised defendant's release on a future hearing at which Mrs.

1  O'Brien's capacity and willingness to serve as a third-party custodian will be raised.  Thus, the
2  government's claim that it was not able to raise questions about her ability to influence the
3  defendant's appearance is premature." *Id.* at 817-18.
4        Here, Magistrate Judge Cousins released Mr. Jackson on bail, having already received a
5  surety from Ms. Scott, and Pretrial Services' confirmation that Mr. Scott is also willing to post the
6  family property.  Magistrate Judge Cousins has provided Mr. and Ms. Scott two weeks to get the
7  paperwork together.  Defense counsel is diligently working to achieve that deadline.  Nothing
8  more was required to secure Mr. Jackson's immediate release.
9        While documents sufficient to demonstrate the equity in the home will be produced to the
10 Court within the timelines set forth in the Release Order, certain of the government's concerns
11 regarding the home can be addressed immediately.  Ms. Scott's home sits at 106 Charlie Street in
12 Magnolia, Texas, on land her family has owned for nearly 70 years.  (Scott Decl. ¶ 4.)  The land
13 was previously owned by Mr. and Ms. Scott's parents, and is the site of Ms. Scott's childhood
14 home.  While the home is under the name of Keith Jackson's uncle Sammie Scott, who has also
15 agreed to be a surety, Ms. Scott has paid property taxes on this land since 2008 and can produce
16 such documentation if requested.  (Scott Decl. ¶ 3.)
17       Though referred to as a mobile home because the foundation is not attached to land, Ms.
18 Scott's home does not have wheels or an automobile-type frame, and it has been continuously
19 situated at 106 Charlie Street in Magnolia, Texas since it was purchased nearly 15 years ago.
20 (Scott Decl. ¶ 5.)  Ms. Scott has invested in extensive upgrades to the home at an estimated cost
21 of nearly $20,000.  (*Id.*)  While a "Street View" image is not available, the attached aerial
22 photographs demonstrate that Ms. Scott's home is not a vehicle and cannot be easily moved.  (*Id*.
23 at Exs. 1-2.)  Ms. Scott believes that to transport her home to another location would require a
24 crane and a flatbed truck, and would require two to four weeks of preparation at a cost of roughly
25 $4,500.  (Scott Decl. ¶ 6.)
26       The government's claim that its ability to "secure [Mr. Jackson's] appearance at court
27 proceedings and to secure the safety of the community has "already [been] impaired" by
28 Mr. Jackson's release is nonsense.  Mr. Jackson returned to Pretrial Services the morning after his

release, and was immediately fitted for electronic monitoring. Mr. Jackson will be back in Court on April 7 for this hearing on the government's appeal, and again on April 8 for his arraignment. The government's unsubstantiated remarks should be disregarded.

While Mr. Jackson agrees with Magistrate Judge Cousins' determination that a secured bond from Mr. and Ms. Scott is sufficient, to the extent the Court believes a different or further bond is necessary, other family members are willing to vouch for Mr. Jackson. Robert Slater, Mr. Jackson's partner's father, offered his home in Memphis, Tennessee. Pretrial Services has spoken with Mr. Slater and in their amended report of April 3rd considered him a potentially viable surety. In addition, two of Mr. Jackson's cousins, Phillip Taylor and Sharon Jackson, have offered their Bay Area homes as security. Mr. Taylor believes that he has about $100,000 of equity in his home. The deed to Mr. Taylor's home in Antioch, California is available upon request. Ms. Jackson has informed counsel that she has about $40,000 of equity in her home, located in Hayward, California.

## V.   CONCLUSION

For the foregoing reasons, Mr. Jackson requests that this Court deny the government's appeal, and permit Mr. Jackson to remain released on bail subject to the conditions of Magistrate Judge Cousins' Release Order.

Dated: April 7, 2014

JAMES J. BROSNAHAN
SOMNATH RAJ CHATTERJEE
SETH A. SCHREIBERG
CHRIS W. MAGAÑA
MORRISON & FOERSTER LLP

By:  */s/ James J. Brosnahan*
JAMES J. BROSNAHAN

Attorneys for Keith Jackson