MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6959
FAX: (415) 436-6753
william.frentzen@usdoj.gov
susan.badger@usdoj.gov
waqar.hasib@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KWOK CHEUNG CHOW, et. al.<br>Defendants. | No. CR 14-0196 CRB<br><br>UNITED STATES' STATEMENT RE: DISCOVERY<br><br>SAN FRANCISCO VENUE |

The government hereby proposes the following regarding discovery to (1) inform the Court and defense counsel of certain discovery related issues, and (2) suggest certain procedures upon which the parties may be able to agree.

As an initial matter it should be noted that the government has not, to date, received a written request for discovery from each defendant. In order for the reciprocal discovery obligations under Federal Rule of Criminal Procedure 16(b) to be triggered, a defendant must make a request for discovery from the government. Accordingly, the government will expect each defendant in this case to submit a

written request for discovery under Rule 16(a). The instant proposal is made with the assumption that all defendants will provide such a request to the government shortly.

**1. PROTECTIVE ORDER**

On April 9, 2014, the government forwarded a draft protective order to each defense counsel for review and consideration. As soon as a protective order is in place, the government will be prepared to furnish a large amount of discovery and evidence. Unlike in some recent large cases in this District, the purpose of the protective order in this case is less to protect civilian witnesses and more to ensure that materials are not leaked that could either expose identities of undercover employees or confidential informants, or be used in a negative manner against individuals who have been investigated, but who are not charged, in this investigation. As it currently stands, there are very few civilian witnesses about whom the government has safety concerns in this case. However, that may change as the investigation continues and additional charges are filed. The government recognizes that if it wishes to withhold information about such witnesses out of concern for their safety, it will be required to make an appropriate showing in that regard pursuant to Fed. R. Crim. P. 16(d).

**2. NATURE OF EVIDENCE**

The majority of the initial discovery production will be in the form of body recordings, video recordings, wiretaps, search warrants, physical evidence, and agent reports (FBI 302s). The government intends to turn over virtually all such materials without redactions other than the case file number and personally identifying information. Obviously, physical evidence will be made available for viewing and photographing upon appointment. There are a very few minor items that will need to be redacted and vetted *ex parte* and *in camera* with the Court that are not relevant to the charged case.

The evidence generated through searches is still being processed and falls into several large categories: (1) documents which will be reproduced for defense counsel in discovery; (2) computer searches that will be produced on hard drives as the hard drives are provided to the government by defense counsel for imaging; (3) physical evidence (firearms, etc.) that will be available for inspection upon appointment for defense counsel and/or investigators; (4) further reports, such as 302s and/or local law enforcement incident reports that will be produced in discovery; and (5) photographs and diagrams produced during and after searches of locations.

As discussed below, as the investigation continues and as additional evidence is acquired, the need for redactions will be reviewed and addressed with the Court as necessary.

**3. ADDITIONAL INVESTIGATION**

As indicated above, the investigation is now largely overt, but not concluded. The government intends to continue its investigation now that it can do so without exposing the undercover aspects of the investigation. The government anticipates that within the next two to three months, it will be acquiring substantial quantities of financial records and other documents produced pursuant to subpoena. Those will be produced on a rolling basis depending on the amount of materials generated. The government is prepared to discuss the production schedule for such items with defense counsel.

**4. DISCOVERY COORDINATOR**

The government has raised the idea of a designated discovery coordinator who is not counsel for a defendant in the case. Undersigned government counsel has seen such assignments in other large cases, including one currently assigned in *United States v. Williams, et. al.*, Case No. CR-13-764 (WHO), and has found that having a discovery coordinator can enhance the efficiency of the process of providing discovery. The government defers to the Court and defense counsel as to whether such an assignment comes from CJA or from some contribution by defendants retaining counsel.

**5. DEFENDANT DISCOVERY REPRESENTATIVES**

Undersigned government counsel has previously had success in large cases with defendants designating two to four defense counsel as representatives of the larger group who will communicate and negotiate with the government regarding discovery matters. Again, this enhances efficiency and tends to go a long way in reducing litigation and time wasted on discovery issues. The government understands that any such arrangement must not impinge on the interests and rights of each defendant to participate in the discovery process.

**6. SUPERSEDING INDICTMENT(S)**

The government plans to present at least one Superseding Indictment in this case. While investigation by the Grand Jury is necessarily secret, *see,* Fed. R. Crim. P. 6(e), it makes good sense to generally notify the Court and opposing counsel that additional charges and, potentially, additional defendants are inevitable. The purpose of the Criminal Complaint in this matter was not to charge every

possible statutory violation, and the original Indictment was returned quickly in order to cover the specific charges in the Criminal Complaint. Of particular note, the government is continuing to pursue its investigation of RICO violations as well as additional substantive criminal violations. The government's current best estimate on the return of a Superseding Indictment is within three months and it will work diligently for a quick return. This is with the understanding, of course, that sometimes investigations may become delayed by matters outside the control of the government.

**7. WIRETAPS**

The government intends to produce the wiretap recordings produced in the case pursuant to Court Order, along with the supporting Affidavits, Applications, Orders, 15 Day Reports, and other accompanying documentation. The government will produce those materials shortly after the entry of the Protective Order. The government intends to produce those materials to all defense counsel who have agreed to the Protective Order, pursuant to a limited unsealing of the wiretap recordings. 18 USC § 2517.

**8. UNIVERSAL PRODUCTION**

If, for any reason, any defendant believes that wiretap recordings or any other discovery should not be produced to all other defendants, that issue should be brought to the attention of the government and, potentially, litigated with the Court, but it is the intention of the government not to withhold any wiretap recordings or body wire recordings or other discovery from co-defendants. One potential area where the government may not make production to all defendants is in the area of any statements by a defendant to law enforcement of a nature of reporting on criminal activity by another defendant. The government will only disclose such statements, for now, to the defendant who made that statement. While such statements will be produced eventually for preparation of trial, they will not be disclosed until much closer to trial.

**9. JENCKS ACT**

The manner of discovery proposed herein will have the government voluntarily producing most witness statements well in advance of the time required by the Jencks Act, which is statutorily when the witness has finished direct examination at trial or at a hearing. *See*, 18 USC § 3500. The government notes that it is agreeing to do so voluntarily, without surrendering its rights later to retain certain Jencks

Act statements until closer to trial. Certain materials will not be disclosed until much closer to trial, such as true Jencks Act statements such as prior testimony by a witness. Such materials will be reviewed on a case by case basis and produced on a schedule when there is a realistic trial date pending. At this time, very little of such material exists and/or will be withheld.

**10. TRIAL GROUPINGS / SEVERANCES**

As the case is not in its final form and at least one Superseding Indictment is pending, the government requests that the Court not divide defendants into groupings at this time. The government understands that twenty-nine defendants cannot go to trial together. That said, the government submits that deferring any decisions about dividing the case into separate parts will actually promote the conservation of judicial resources. As the Court and all of the very experienced counsel in the case are aware, in large cases such as this one, the vast majority of defendants do not proceed to trial. Further, as discussed above, additional charges, including RICO charges, are anticipated in this case. It would be highly inefficient to break this case up into smaller parts before such charges are filed or before it is determined which defendants will actually be going to trial. A premature division of the charges and defendants often results in the Court attempting to reconstitute the groups when one group becomes so small that it does not make sense to have a separate trial for that group (or defendant). Premature separation of the case can also result in far more appearances in Court, expenditures of CJA funds, and confusion over joinders and Court rulings than are necessary. The government anticipates that there are certain initial issues, such as discovery, suppression of evidence, litigation of the wiretaps, motions to dismiss, that most, if not all, of the defendants in this case will want to address. For all these reasons, the government submits that it makes good sense for the Court to defer any decisions on issues of severance and trial groupings until later in the case when the charges are finalized, the discovery has been digested, and it has been determined which defendants will actually be proceeding to trial.

**11. IDENTITIES OF UNDERCOVER EMPLOYEES AND CONFIDENTIAL INFORMANTS**

For a variety of reasons that are extremely important to the government, one of the few items that the government will seek to keep confidential in this case are the true names and identities of the Undercover Employees and Confidential Informants. The government would, of course, disclose any and all impeaching information required to be produced pursuant to its obligations under *Brady*, *Giglio*,

and *Henthorn*. It is the position of the government that in the instant case, the UCEs and CIs need not be known by their true names and should be referred to by the names utilized by them in the case. This will not in any way impinge on the constitutional rights of the defendants. In order to protect the rights of the defendants, and with the supervision of the Court, the government will be prepared to conduct and comply with any and all inquiries pertaining to impeachment and credibility of these witnesses. This is one area that the government respectfully will seek to protect throughout the case.

**12. *BRADY* OBLIGATIONS**

The government fully understands its obligations under *Brady* and takes those obligations seriously. It will fully comply with those obligations and will promptly provide any exculpatory information about which it becomes aware.

**13. *GIGLIO* OBLIGATIONS**

The government also takes its *Giglio* obligations seriously and will provide impeaching information well before time that it needs to be used for hearing or trial. Once a realistic trial date is established, and depending on the number of defendants remaining in the case, the government will propose a "drop dead" deadline for *Giglio* disclosures – allowing, of course, for later, immediate disclosures of matters not learned until after the deadline passes.

**14. "WORK PRODUCT" DISCLOSURES**

The government has prepared certain items that technically are work product, and thereby privileged, but which the government may agree to provide as it could advance the defendants' navigation of the discovery and preparation of the case. For example, the government has so-called "linesheets" from the wiretap recordings that summarize in summary form what the monitor understood he/she was hearing when listening to the interceptions. The government also has unofficial transcripts of recorded phone calls and recorded conversations that are hasty efforts to capture the wording of conversations. Many of these are not in final form at this time. Nonetheless, the government would be willing to provide many of these documents to the defendants for their use under the following conditions: (1) such summaries/notes will not be used to impeach any witness at trial, and (2) no accusations will be brought against the government due to omissions or errors on the basis of summaries/notes that are produced. If we can reach agreement on those points, then the government

would be willing to produce much of its work product as an aid to the defendants and counsel in getting up to speed on the evidence.

This statement is being filed as an initial glimpse at the discovery landscape for this case to give the Court and counsel an early preview and not as a basis for early complaints to be voiced at the status on April 11, 2014. The government is open to discussion outside of Court with any and all defendants regarding what is contained in the statement or discovery in general. The government respectfully submits that the most efficient manner of moving forward in this case will be for matters to be discussed between the parties and accommodations attempted prior to bringing issues to the attention of the Court for decision. Every attorney in the case is well versed in litigation and has a good sense for what will and will not be agreeable. It is the hope of the government that those matters can be discussed and the parties come to mutual agreement, rather than delaying the case through unnecessary litigation.

Dated: April 10, 2014

MELINDA HAAG
United States Attorney

By: ________/s/____________
WILLIAM FRENTZEN
SUSAN BADGER
S. WAQAR HASIB
Assistant United States Attorneys