MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    susan.badger@usdoj.gov
    waqar.hasib@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0196 CRB |
| Plaintiff, | UNITED STATES' MOTION FOR PROTECTIVE ORDER PURSUANT TO FED.R.CRIM.P. 16(D) |
| v. | |
| KWOK CHEUNG CHOW, a/k/a "Raymond Chow", a/k/a "Hai Jai", a/k/a "Shrimpboy", et. al. | SAN FRANCISCO VENUE |
| Defendants. | |

## I. INTRODUCTION

The United States and counsel for the defendants have been negotiating the terms of a protective order that will govern the disclosure of discovery materials in the above-referenced case. To that end, the parties have circulated a draft protective order to present to the Court. As of the writing of this

motion, counsel for 24 of the 25[1] defendants who have appeared before this Court have stipulated and signed the protective order.[2]  However, counsel for the one remaining defendant, Kwok Cheung CHOW, has indicated that he will not sign on.  Accordingly, the United States hereby moves the Court to exercise its discretion and authority under Rule 16(d)(1) of the Federal Rules of Criminal Procedure and issue the protective order as is, requiring all parties to comply: the United States, the 24 defendants who have signed on already, and the one, CHOW, who has refused.  As discussed in further detail below, there is ample justification for this order, given the nature and scope of the discovery materials at issue, and given the Court's broad discretion under Rule 16(d)(1).

## II.  FACTS

On April 3, 2014, the defendants were charged in a 50-count indictment alleging, among other offenses, money laundering, trafficking in narcotics, firearms, and contraband cigarettes, murder for hire, and honest services fraud.  Docket No. 113.  On April 10, 2014, the United States filed a statement regarding discovery, advising the defendants that it intended to seek a protective order before releasing any discovery materials to them.  Docket No. 175.  The defendants designated four of their attorneys to form a working group to negotiate the terms of said protective order.  Counsel for the United States and the defendants' designated working group communicated on numerous occasions by telephone, e-mail, and in person, including on one occasion under the supervision of the Honorable Magistrate Judge Joseph C. Spero.  As a result, by approximately April 25, 2014, counsel for the United States and the working group were able to agree on language for a draft protective order to present to the Court.  The working group then circulated that draft to counsel for the remaining defendants.

Counsel for the United States has since received a signed stipulation and protective order from attorneys for all but two defendants who have appeared before this Court.  The first is a defendant whose attorney has advised the United States of a likely substitution of counsel in the near future, and as such is not in a position to stipulate to the protective order.  The second, the attorney for defendant Kwok

---

[1] The Court will recall that in fact, 26 defendants have made appearances in this case.  However, as discussed in further detail below, the attorney for one defendant has advised the United States of a likely substitution of counsel in the near future.  Accordingly, until new counsel is identified, the United States does not count that defendant among these numbers.

[2] The defendants' assigned discovery coordinator has also signed on.

UNITED STATES' MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                                         2

1  Cheung CHOW, has advised that he does not intend to stipulate to the protective order, and has asked
2  the United States to prepare alternative arrangements to make discovery available to him.

3  **III.   ARGUMENT**

4      The indictment in this case is the result of a multi-year investigation by the Federal Bureau of
5  Investigation (FBI) into organized crime and public corruption in and around the San Francisco Bay
6  Area, using undercover agents and wiretaps, among other investigative techniques, to infiltrate
7  organizations allegedly engaging in illegal activities.  Over the course of the investigation, agents have
8  amassed large amounts of potential evidence, including audio recordings of defendants meeting with
9  undercover agents, video surveillance, wiretapped communications, consensually-recorded telephone
10 calls, and emails, among other materials.  Most of these materials are held by the FBI in digital form; the
11 total amount of digital materials is expected to measure several terabytes (TB) worth of information.

12     Many of these materials are disclosable to the defendants under Rule 16 of the Federal Rules of
13 Criminal Procedure. Many, however, are not, because they arguably do not fall within the scope of Rule
14 16 or any other basis for discovery.  Moreover, many of the materials contain sensitive information
15 which the United States would otherwise redact or limit from disclosure.  For example, of utmost
16 concern to the United States are sensitive materials that, if improperly disclosed, could be used to expose
17 the true identities of undercover employees involved in the investigation, thereby placing them in harm's
18 way.  Of equal concern are those sensitive materials that, if improperly disclosed, could be used to
19 identify individuals who have not yet been charged by the United States, but whose ongoing criminal
20 activities are still under investigation.  In addition, there are sensitive materials identifying numerous
21 individuals who are not believed to have engaged in any criminal activities, but who were nonetheless
22 captured on FBI surveillance or documented in FBI reports, for example after being introduced by
23 charged defendants to undercover agents.  Such materials, if improperly disclosed, could be used to
24 besmirch these otherwise innocent individuals.  Finally, there are sensitive materials that, if improperly
25 disclosed, could conceivably raise witness safety issues.

26     Parsing out and redacting the materials described above would be an enormous, time-consuming,
27 and expensive task for the United States to undertake.[3]  As just one example of the difficulties involved,
28

---

[3] Indeed, this Court recognized as much during a status conference on April 17, 2014, noting that

during pertinent and relevant conversations intercepted on wiretaps, charged defendants and named interceptees often mentioned the names of third parties, including public officials and public figures. These comments and references sometimes arose in a context that suggested possible wrongdoing, but the investigation never developed evidence in that regard. It would be a herculean task, if not impossible, to extract such comments and references from the rest of the discovery materials, as they are embedded in many, many intercepted and otherwise pertinent conversations.

Instead, in the interests of efficiency and maximizing both government and defense resources, the United States offered to turn over the vast majority of the materials in its possession, regardless of whether they are discoverable under Rule 16 or otherwise, with the caveat that the materials be subject to a stipulated protective order.[4] As mentioned briefly above, after a lengthy negotiation process, nearly all of the defendants who have appeared before this Court have stipulated and signed on to a protective order, through their attorneys, with one notable exception: Kwong Cheung CHOW, whose attorney has advised that he will not sign it.[5] The United States now asks the Court to exercise its discretion and authority under Rule 16(d)(1) to issue the stipulation and order, attached as Exhibit 1, as is[6], requiring all parties to comply: the United States, the 24 defendants who have signed on already, and the one, CHOW, who has refused.

Rule 16(d)(1) grants the Court broad discretion to issue protective orders to "deny, restrict, or defer discovery or inspection" for good cause. Fed. R. Crim. Pr. 16(d). The Supreme Court has

---

it was mindful of the complexity of the investigation, and of the difficulty of culling out discrete categories of materials that fell within the scope of Rule 16.

[4] Indeed, the United States has already started producing materials to the defendants' discovery coordinator, who has agreed to keep them in "escrow" until issues regarding the protective order are resolved.

[5] See *fn*. 1, *supra*. The attorney for one other defendant has also declined to sign the protective order, but not because of any substantive disagreements with it. Rather, that attorney has indicated to the United States that there will likely be a substitution of counsel in the near future.

[6] As is, with the following minor edits to address the issues raised in this motion: 1) The United States proposes removing the first two clauses of the first sentence of the stipulation, which currently read "With the agreement of the parties, and with the consent of the defendants," and simply beginning that sentence with the clause "The Court enters the following order"; and 2) The United States proposes removing the last line of the stipulation, which reads "IT IS SO STIPULATED," and removing the signature lines for all parties, leaving only the signature line for the Court. In accordance with local practice, the United States will submit both a .pdf version and word processing version to the Court so that any such edits can be made.

UNITED STATES' MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                4

elaborated that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).   Analysis in the Ninth Circuit of Rule 16(d) has generally been limited to cases involving national security, which is by and large not an issue in this case, and cases involving witness safety, which is somewhat of an issue in this case, but not a paramount one.  *See*, *e.g.*, *United States v. Sedaghaty*, 728 F.3d 885, 904-09 (9th Cir. 2013)(discussing use of Classified Information Procedures Act ("CIPA") in conjunction with Rule 16(d)(1)); *United States v. Fort*, 472 F.3d 1106, 1130 (9th Cir. 2007)(noting that Rule 16(d)(1) is the appropriate vehicle for a protective order in cases involving witness safety).  Other courts, however, have squarely addressed and approved of the use of protective orders in cases similar to the one here.  *See*, *e.g.*, *United States v. Smith*, __ F.Supp.2d__, 2013 WL 6576791 (S.D.N.Y. 2013); *United States v. Bulger*, 283 F.R.D. 46 (D.Mass. 2012).  The *Smith* case from the Southern District of New York is particularly instructive.  There, several defendants were charged with extortion, bribery, and fraud in connection with a public corruption investigation involving wiretaps.  There, as here, the government sought a blanket protective order limiting dissemination of a broad range of materials that it had produced as part of discovery.  *Id.* at *11.  There, as here, the government argued that the protective order was necessary, partly to protect otherwise innocent third parties whose interests might be jeopardized by being associated with the defendants, and partly to protect the integrity of ongoing investigations.  *Id*.

With respect to the government's first argument, the *Smith* court concluded good cause for a protective order could exist if the government could identify for the court, *ex parte*, specific innocent third parties whose reputations would be damaged by improper disclosure of discovery materials.  *Smith*, at 15-16.  In doing so, the court noted the "unfairness of [innocent third parties] being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of these third parties to clear their names at trial."  *Id.* at *13.  With respect to the government's second argument, the court concluded that a protective order was appropriate "where public disclosure of certain materials might officially reveal the sources and methods law enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges… ."  *Id.* at *17.

UNITED STATES' MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                                      5

The grounds upon which the government sought a protective order in *Smith* are remarkably similar to the grounds raised here. Accordingly, although *Smith* is of course not binding on this Court, its reasoning is instructive, and the United States urges this Court to reach a similar outcome. To that end, the draft protective order stipulated and agreed to by the United States and 24 defendants, minus CHOW, is attached as Exhibit 1. The United States urges the Court to issue it as is (with the minor edits described above at footnote 6), and as to all defendants, including CHOW.[7]

Given the refusal by defendant CHOW to sign onto the stipulation, the Court may be tempted to fashion a separate arrangement for CHOW to obtain Rule 16 materials. The United States urges the Court to resist this temptation. At a bare minimum, to accommodate CHOW the United States would need to engage in an extremely labor-intensive review of multiple terabytes of digital information to identify those materials to which CHOW is entitled under Rule 16, then separate those materials from the rest and begin an equally labor-intensive redaction process. On top of that, the United States would have to set up a secure location inside the courthouse so that CHOW's attorneys can view the materials, and devote government employees to staff that location whenever CHOW's attorneys are present to ensure that the materials remain secure (the same government employees, incidentally, who are otherwise currently occupied preparing disclosure of discovery materials pursuant to the protective order.)

The Federal Rules of Criminal Procedure are to be interpreted to "secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. The United States and, to their credit, counsel for 25 defendants have reached an agreement that allows for straightforward, prompt, efficient and cost-effective disclosure of Rule 16 discovery while at the same time protecting the United States' very tangible and real interests in preventing unauthorized leaks of discovery materials. CHOW has yet to offer the United States any reason or justification for not stipulating to the protective order. Carving out an exception for one recalcitrant defendant would fly in

---

[7] The *Smith* court was reluctant to issue a protective order absent a showing of good cause by the government. In the instant case, the Court here has already suggested, at least tentatively, during a status conference on April 17, 2014, that based on its familiarity with the investigation from its role authorizing wiretaps, good cause exists to issue a protective order. If the Court needs further information in this regard, upon request and in accordance with Rule 16(d)(1), the United States will submit to the Court an *ex parte* written statement supplementing this motion.

UNITED STATES' MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                                     6

1  the face of the clear instructions of Rule 2.

2  **IV.   CONCLUSION**

3  For the reasons discussed above, the United States respectfully asks the Court to exercise its discretion and authority under Rule 16(d)(1) of the Federal Rules of Criminal Procedure and issue the protective order as is (with the minor edits described above at footnote 6), requiring all parties to comply: the United States, the 24 defendants who have stipulated to the protective order, and the one, CHOW, who has not.

DATED: May 8, 2014                           Respectfully submitted,

                                             MELINDA HAAG
                                             United States Attorney

                                                          /s/
                                             WILLIAM FRENTZEN
                                             SUSAN BADGER
                                             S. WAQAR HASIB
                                             Assistant United States Attorneys