J. TONY SERRA, SBN 32639
GREGORY M. BENTLEY, SBN 275923
CURTIS L. BRIGGS, SBN 284190
506 BROADWAY
SAN FRANCISCO, CA 94133
TEL: (415) 986-5591
Fax: (415-421-1331
jts@pier5law.com
Bentley.greg@gmail.com
Curt.Briggs@gmail.com


ATTORNEYS FOR DEFENDANT
KWOK CHEUNG CHOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0196 CRB |
| Plaintiff, | RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND REQUEST FOR ORAL ARGUMENT |
| v. | |
| KWOK CHEUNG CHOW, a/k/a "Raymond Chow", a/k/a "Hai Jai", a/k/a "Shrimpboy". | |
| Defendant. | |

**INTRODUCTION AND ARGUMENT**

On March 26, 2014, the Government issued a press release titled: "*California State Senator and Chee Kung Tong Dragonhead Among Twenty-Six Defendant's Charged in Federal Complaint.*" [1] The article alleges twenty-six defendants are charged with firearms trafficking, money laundering, murder-

---

[1] See March 26th, 2014. Northern District of California United States Article for "Immediate Release", attached as Exhibit A.

for-hire, drug distribution, trafficking in contraband cigarettes, and honest services fraud.[2]  Referenced in the press release as "CKT Complaint," the Government attached the FBI's affidavit in support of probable cause consisting of a 137 page narrative summarizing five years of the FBI's persistent attempts to lure citizens, public officials, and public figures into engaging in, or accepting proceeds from, illegal activity engineered and manufactured by the FBI.

A national media frenzy erupted, countless articles were published, and the case was thrust into the nightly television news cycle. The Government generated and fueled colossal public and media interest by connecting Raymond "Shrimp Boy" Chow and State Senator Leland Yee together with scandalous allegations.  Although Mr. Chow and Mr. Lee are not charged with involvement with any of the same offenses, on April 4th, 2014, the government issued another press release titled:  "*Grand Jury Returns An Indictment Against State Senator Yee, Raymond "Shrimpboy" Chow, And Twenty-Seven Related Defendants.*" [3]

The Government strategically proceeded in this manner to create public opinion that Mr. Chow masterminded an organized crime syndicate with ties to State Senator Yee and public corruption.  As media coverage became less and less accurate and more sensationalized, the Government failed to rectify known falsities. Most of this occurred before Mr. Chow was able to obtain counsel to publicly address the misconceptions.  Stemming from the Government's press releases, the media has eroded Mr. Chow's presumption of innocence and in all likelihood he has been already wrongfully convicted in the eyes of the public. [4]

The Government now attempts to preclude defense counsel from publicly refuting their one-sided theory of this case under the guise of a Rule 16(d) Protective Order that places a limitation on

---

[2]  See Exhibit A.

[3]  See April 4th, 2014. Northern District of California United States Article for "Immediate Release", attached at Exhibit B.

[4]  See article attached as Exhibit C describing the national media's mockery of Mr. Chow's presumption of innocence.

dissemination of every single word or item disclosed to Mr. Chow in discovery—everything! In reality, the Government is seeking a non-reciprocal gag order. Proposed first by stipulation, the Government's nonreciprocal[5] blanket protective order precludes defense counsel from "permitting access of any kind"[6] to materials turned over to by the Government, other than to agents of the defense and further requires the defendants agree to grant the Government power to compel and review defense discovery logs specifying who the material was released to, in the event of a leak, such that it would reveal strategic information violating the attorney work-product doctrine. Although the Government has now resorted to calling Mr. Chow "recalcitrant,"[7] they have failed to inform the Court of the full particulars of Mr. Chow's good faith attempts to resolve the issue so that he can move forward with an expedient trial. Counsel for Mr. Chow requested material not necessitating any protective order to be turned over and asked for an opportunity to inspect material potentially requiring a protective order for twenty hours during the week of May 5, 2014, at the Government's office.[8] The Government was not interested, and instead moved to compel this protective order.

Rather than being "recalcitrant," Mr. Chow holds the Government to their burden of articulating requisite good cause for a blanket protective order and the Government has thus far failed to do so. Now, the Government's newly proffered concerns simply mask their real agenda here, to prosecute this case in the media while precluding any response by defense counsel. However, as discussed below, assuming *arguendo* the Government legitimately seeks protection of particular information, their

---

[5] Rule 16 imposes reciprocal discovery obligations on defendants.

[6] See Stipulated and Proposed Protective Order attached as <u>Exhibit D</u>, P.2, L:3

[7] Although the Government repeatedly addresses that nearly all of the other attorneys in this matter have signed the proposed stipulation other than counsel for Mr. Chow, counsel seeks only to address the issue at hand; whether the Government has articulated requisite good cause for their proposed blanket protective order that 1) will outweigh the burden it will place on Mr. Chow's ability to effectively prepare for a fair trial, 2) warrant granting the Government the ability to violate the attorney work-product doctrine, and 3) overcome Mr. Chow's specific need for disclosure.

[8] Affidavit of Curtis L. Briggs. <u>Exhibit E.</u>

concerns do not outweigh the extreme prejudice which will result to Mr. Chow in the event that the prosecution's overly-broad blanket protective order is granted.

Now, the Government is insisting on yet another protective order by stipulation involving transcripts, including transcripts of Mr. Chow's statements, and line sheets provided by the Government which, if stipulated to, will be subject to the same restrictions as the protective order currently being objected to by Mr. Chow in the instant motion.  Mr. Chow objects to this as well.  All protective orders advanced by the Government in this case have been non-reciprocal in that they seek only to hinder the defendant's rights and do not offer any provisions guaranteeing the Government will play by the same rules.  Mr. Chow requests oral argument on this issue.

## I.

### THE GOVERNMENT'S PROPOSED PROTECTIVE ORDER VIOLATES THE FIRST AMENDMENT AND DUE PROCESS BY CONCEALING EXCULPATORY EVIDENCE FROM THE PUBLIC AND VIOLATES MR. CHOW'S RIGHT TO A FAIR PUBLIC TRIAL

There is no time in a person's life when the First Amendment is more critical than when facing criminal accusations.  The less money and resources a person has, the more important the First Amendment is in proving his innocence.  This is especially true in the case of Mr. Chow, who has been victimized and targeted by the federal government with unbridled enthusiasm, and a seemingly unending supply of undercover agents, tax-payer funds, and resources, in stripping him of his freedom.  The First Amendment is also critical to the press and the public in ensuring government accountability in the modern day era of endemic electronic surveillance, personal intrusions, and rampant, well-documented government abuse of American citizens' privacy rights.  Mr. Chow and the public's only hope is transparency in government affairs.  In addition to the Government's attempt to restrain the media and Chow's First Amendment rights, its potential failure to turn over exculpatory evidence is a violation of Mr. Chow's Due Process rights.

The Supreme Court has held that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603. This constitutional presumptive right of access includes the criminal trial, "most pretrial proceedings" and "documents and kindred materials submitted in connection with the prosecution and defense of criminal proceedings." *Id.*; *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir. 1989). The First Circuit, along with other circuits, has established a First Amendment right of access to records submitted in connection with criminal proceedings.

Although an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires traditional First Amendment scrutiny, this does not eliminate the First Amendment "as a relevant consideration in protective order," and it is also established that protective orders must be considered "within the framework of the requirement of good cause under Rule 16(d)." *Seattle Times,* 467 U.S. at 33, 104 S.Ct. 2199 *Anderson,* 805 F.2d at 7.

Here, the Government strategically proceeded in a manner designed to wrongfully persuade public opinion by advancing the preposterous and unsupported theory that Mr. Chow masterminded an organized crime syndicate with ties to State Senator Yee and public corruption. Now they are seeking a protective order of any and all of the material the government produces in the initial disclosure which they designate as SUBJECT MATERIALS which potentially rebut their theory, thereby depriving Mr. Chow the ability to disseminate information to the public.

In addition to its First Amendment violations, the Government is also violating Mr. Chow's Due Process by failing to turn over exculpatory evidence. *Brady v. Maryland, Berger v. United States,* and the Rules of Professional Conduct are controlling on this issue.

In *Brady*, the Court dealt with a prosecutor's suppression of exculpatory information. The Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith

1  or bad faith of the prosecution." *Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-97, 10

2  L.Ed.2d 215].  It is as much the prosecution's duty to refrain from improper methods calculated to

3  produce a wrongful conviction as it is to use every legitimate means to bring about a just one.  *Berger v.*

4  *United States*, 295 U.S. 78, 88 (U.S. 1935).  Further, a prosecutor should not intentionally avoid pursuit

5  of evidence merely because he believes it will damage the prosecutor's case or aid the accused. *ABA*

6  *MRPC 3.8.*

7          Here, the Government is blatantly withholding exculpatory evidence from Mr. Chow by refusing

8  to turn over this evidence upon request without a protective order.  We know the exculpatory evidence

9  exists because the Government suggests all the conversations were intercepted, and states that Mr. Chow

10 frequently made exculpatory statements as set forth in its affidavit.  Therefore, the Government's

11 position that it will not turn over any discovery, much of which we know is exculpatory by their own

12 admission, without a blanket protective order is a violation of Mr. Chow's Due Process under *Brady* and

13 is calculated for improper motives in violation of *Berger* and the Rules of Professional Conduct.  Also,

14 the fact that the Government has in its possession at this very moment exculpatory evidence and refuses

15 to turn it over unconditionally smacks of misconduct and an attempt to deceive the general public.

16          Finally, Mr. Chow sits amidst current public opinion wherein the Government has attempted to

17 assassinate his character through the media.  Mr. Chow will be prejudiced and his fundamental right to a

18 fair public trial will be violated by allowing the Government to continue disclosing one-sided

19 accusations while precluding defense from responding to the public. Further, concealing this basic

20 exculpatory information which will, without question, become part of the judicial proceedings,

21 improperly intrudes on the public and media's First Amendment rights and is a Due Process violation.

## II.

**MISCONDUCT BY PUBLIC OFFFICIALS ABSENT FURTHER
SPECIFICATON IS NOT GOOD CAUSE FOR A BLANKET
PROTECTIVE ORDER WITHOUT STIPULATION.**

RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                                6

The gravaman of the Government's argument in this case that a blanket "protective order" is necessary to prevent the release of comments about, and third party references to others, including references to public officials and public figures that sometimes arose in a context that suggested possible wrongdoing, but the investigation never developed evidence in that regard. (US Mot. Page 3: 26 – Page 4: 4). [9]

In support of their argument the Government relies on *United States v. Smith*, __ F.Supp.2d__, 2013 WL 6576791 (S.D.N.Y. 2013); and *United States v. Bulger*, 283 F.R.D. 46 (D.Mass. 2012). The Government concedes that *Smith*, although not binding, is instructive as the facts are similar. However, *Smith* actually supports Mr. Chow's position because the Government has not made an attempt to show good cause. *Bulger* also supports Mr. Chow's position because the *Bulger* court found that the Government failed to make a showing of good cause to continue a protective order.

In *Smith*, the Court denied a blanket protective order based on the Government's assertion of the need to protect otherwise innocent third parties, including public officials, whose interests might be jeopardized by being associated with the defendants due to the absence of specific examples preventing the Court from making a finding, either way, as to whether there is good cause to enter a protective order as the Government claimed. *See Smith*, at 29-33. The court held: the Government did not identify any third parties whose interests would be harmed separate and apart from the concerns raised about the ongoing investigations. *Smith*, at 32.

Further, in *Smith,* the Court explained "the Government has not offered information about, among other things, the identities of the third parties, whether these other third parties are public officials or private citizens, which specific discovery materials would unfairly sully their reputation, and

---

[9] Although the Government also asserts initially the blanket protective order is necessary to preclude the disclosure of undercover informants and concern for witness safety, simple redaction of any informants identifying information will suffice, and the Government concedes witness safety, although somewhat of an issue, is not a paramount one in this case. U.S Mot, P: 53-6.

whether the conduct of these individuals would be proven at trial (which would be open to the public)." *Smith*, at 32, fn.16. *Smith* also noted that the interests of public officials should not necessarily be on the same footing as nonpublic because these officials are "well-equipped to respond to any accusations of wrongdoing" and that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." See *Smith*, at 29-33.

In the instant matter the Government suffers from the same deficiencies in its showing because it vaguely asserts that charged defendants and named interceptees often mentioned the names of third parties, including public officials and public figures. From the Government's own words, "these comments and references sometimes arose in a context that suggested possible wrongdoing, but the investigation never developed evidence in that regard. It would be a herculean task, if not impossible, to extract such comments and references from the rest of the discovery materials, as they are embedded in many, many intercepted and otherwise pertinent conversations." (*US Mot*. P. 3: 26 – P. 4: 4).

Akin to *Smith*, here the Government has only made vague assertions about comments and references that suggest possible wrong doing by third parties, public officials, and public figures, and has failed to provide this Court with specific examples that warrant the blanket protective order. Furthermore, the Government should not be permitted to shield itself behind the excuse that it would be a "herculean task" when it somehow had all sorts of resources available when it came to wire-taps of cars and phones, pole cameras, boating trips, and employing hundreds of agents in this operation; and had ample resources to conduct these operations throughout the Bay Area and the entire United States.

The Government also relies on *Bulger*, but the *Bulger* case is a completely different circumstance and only strengthens Mr. Chow's position. In *Bulger*, after a history of leaks by the FBI and law enforcement, both defense and the Government stipulated to a protective order so as neither side would be prejudiced at trial. *U.S. v. Bulger*, (D. Mass. 2012) 283 F.R.D. 46, 48. Approximately 10

months after stipulating, the defense and an intervening party moved to remove the order.  *Id.* at 49. The *Bulger* court found that the Government had not met its burden to maintain the order. *Id.* at 60.

First, the circumstances in this case are different because Mr. Chow does not stipulate to an order.  In fact, it is Mr. Chow's position that the Government already released the most scandalous evidence it had through the affidavit, and so Mr. Chow wishes to remain free to disseminate exculpatory information to the public as necessary and as consistent with his First Amendment rights to counteract the existing condition of him being already convicted in the media.  This case also varies from *Bulger* because the Government has yet to make a showing of good cause, nor have they attempted to do so.

Secondly, discussion in the *Bulger* case illustrates defense concerns with a blanket protective order because it would be a drain on already scant resources.  The *Bulger* order required the defense to file all motions utilizing protected material as exhibits under seal, as would be the result in Mr. Chow's case under the protective order. *Id.* at 49.  The defense in *Bulger* said, "This aspect of the protective order impeded defense counsel's ability to promptly prepare timely pleadings and other filings." *Id.* Blanket protective orders such as the one proposed in this case will create a significant drain on defense resources creating the need to file ongoing motions to unprotect material which will absolutely place Mr. Chow in jeopardy of ineffective assistance of counsel.

A blanket protective order in this case is inappropriate, and the basis under which the Government asserts the need is rot with fallacious reasoning. It does not stand to reason that the Government would have unlimited resources to administer an investigation like this, yet be allowed to invoke a selective lack of resources regarding their capacity to prosecute this case.  If the Government now lacks the time, energy, and resources to prosecute this case correctly, then the solution certainly is not to infringe on Mr. Chow's right to a fair trial.

### III.

### POTENTIAL EXPOSURE OF INDIVIDUALS WHO HAVE NOT BEEN CHARGD BUT WHOSE ONGOING CRIMINAL

**ACTIVITIES ARE STILL UNDER INVESTIGATION ABSENT
FURTHER SPECIFICATON IS NOT GOOD CAUSE FOR A
BLANKET PROTECTIVE ORDER.**

The Government aptly points out that the *Smith* court was reluctant to issue a protective order based on the Government's concerns regarding jeopardizing ongoing investigation absent a showing of good cause by the government. (*US Mot*. P. 6: fn.7).

In *Smith*, unlike here, the Government submitted *ex parte* written letters indicating, "In particular, disclosure of the materials could: (i) reveal the targets of the investigations and the suspected criminal conduct being investigated; (ii) disclose the type of evidence being collected, or that could be collected, against these individuals; and (iii) officially confirm who some of the cooperating witnesses in these investigations are. *Smith, at* 33.

Here, the Government has done none of that.  The Government merely asserts "of equal concern are those sensitive materials that, if improperly disclosed, could be used to identify individuals who have not yet been charged by the United States, but whose ongoing criminal activities are still under investigation." (*US Mot*. P. 3: 18-20).  Again the vague assertion made by the Government does not provide requisite good cause for the blanket protective order because it is merely a conclusory unsupported statement. Mr. Chow insists this Court hold the Government to their burden of showing good cause.  Granting a protective order without requiring the Government to make the required showing is contrary to the very cases which the Government bases its reliance, and violates Mr. Chow's Due Process rights.

//

//

//

**IV.**

RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                                     10

**GOOD CAUSE IS LACKING FOR A BLANKET PROTECTIVE
ORDER AND WILL UNDULY BURDEN MR. CHOW'S ABILITY
TO EFFECTIVELY PREPARE FOR TRIAL**

The proposed protective order is unduly burdensome on Mr. Chow's ability to effectively prepare for trial. As of the status conference held on March 17th, 2014, counsel for co-defendant Rinn Roeun, attorney Garrick Lew, addressed the court with concerns regarding stipulating to a blanket protective order.  AUSA Frentzen stated that the protective order proposed in this case is that same that was proposed in "the Williams case."  The implication was that there should be no objection to this proposed blanket order since it was exactly what was proposed in another high profile multi-codefendant case concurrently being prosecuted in this district, *U.S. v. Williams et al*.[10]  What Mr. Frentzen did not inform the court was that, as of that day, all defendants in the Williams case heavily objected to the proposed protective order and that Mr. Frentzen was hours away from submitting a Reply to Defendant's Opposition to Protective Order in *Williams*.[11]  In fact, Mr. Chow asks this court to take notice of the docket in *Williams* and that, as of this date, multiple well-articulated defense objections have now been filed in *Williams*.[12] The *Williams* proposed protective order is highly objectionable because it places an incredible burden on defense resources and violates the work product doctrine.  That protective order has yet to be decided by the judicial officer in that case.  Mr. Chow adopts and incorporates the objections made by defense counsel in *Williams* attached to this motion as exhibits.  It should be absolutely no surprise to the Government that their proposed protective order in each case has numerous significant Constitutional pitfalls which should be decided carefully as to prevent unnecessary appellate litigation.

Also, the blanket protective order in this case is uniquely prejudicial to Mr. Chow given his status as a public figure, and he has a right to defend himself as such.  Language in *Smith* is instructive because it

---

[10] *U.S. v. Williams et al,* case number 3:13-cr-00764-WHO-1.

[11] See Exhibit F.

[12] See Exhibit G.

suggests that public persons should be allowed to defend themselves in the public forum. *Smith* said the interests of public officials should not necessarily be on the same footing as nonpublic because these officials are "well-equipped to respond to any accusations of wrongdoing" and that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." See *Smith*, at 29-33. Mr. Chow is not a public official *per se*, but he is a public person who holds a highly-respected public position in the Chinese community and is a well-known public figure, so he should be allowed to defend himself in the public to the extent recognized in *Smith*.

The Government knows their case against Chow is contrived and is aware of strong public support for Chow which is why they wish to silence him—if exculpatory evidence were to make its way to the public, the case against Mr. Chow would be exposed for what it is and that is why the Government wants a blanket protective order. The Government immediately disseminated their one sided affidavit and criminal accusations in a public forum via multiple press releases to the public. They capitalized on Mr. Chow's public image as a method to gain attention and attempted to sway public opinion in their favor from the outset. They now seek to preclude his defense counsel from refuting these one sided claims in the very forum in which they have elected to proceed: the court of public opinion. In support of their request for a protective order, the Government claims it would be a "herculean if not impossible task" to extract such comments and references as they are embedded in many, many otherwise pertinent conversations. (US Mot. Page 4: 4-6). This "herculean task" is the duty the Government assumed when attempting to prosecute this case.

However, assuming the Government can provide good cause, which as of yet is completely lacking, the protective order they seek unduly burdens Mr. Chow's right to effectively prepare for trial for the very reasons the Government claims it requires that all materials must be deemed "subject materials" and protected. In an attempt to circumvent their duty to specify which discovery material should be protected and specify that good cause exists, their solution to "secure simplicity in procedure

and fairness in administration, and to eliminate unjustifiable expense and delay" (US Mot. Page 6: 18-19), is to turn over all materials as protected, and expect defense counsel to complete the "herculean" if not impossible task of extracting exculpatory information imbedded in otherwise protected materials and then move the Court for an order to release the exculpatory material. This is nothing more than deflecting their responsibility onto Mr. Chow when, after five years of investigation, they are in the better position to identify protected material. Further, the order would require the defendants to request the disclosure of exculpatory information first from the Government, and then set a hearing if they do not agree. Given there are 26 defendants with 26 potential theories of what is relevant, what is exculpatory, and what should or should not be protected, the Government's proposed order is opening the door for this Court to potentially resolve hundreds of individual disputes over what should or should not be "subject materials" which will waste judicial resources; Mr. Chow intends to litigate these matters frequently if necessary. The better course of action is for this Court to require the Government to complete their "herculean task" which is a result of their herculean investigation.

## V.

## A NON-RECIPROCAL PROTECTIVE ORDER IS AN AFFRONT TO MR. CHOW'S FAIR TRIAL RIGHTS.

Federal Rule of Criminal Procedure 16 outlines reciprocal discovery obligations. The Government's attempt to impose a non-reciprocal protective order on Mr. Chow in the context of the exchange of reciprocal discovery is not logical and is not consistent with Rule 16 discovery provisions.

It is a perversion of Rule 16 to insist on a non-reciprocal protective order in this case. It is especially so since the Government has capitalized on the opportunity to sway media support in favor of its unsupported allegations. It should raise a red flag to this court because the Government dealt the first blow in the media relying on its 137-page press release; the Government then dealt the second blow with

its second press release regarding the indictment.  Therefore, any protective order surrounding Rule 16 discovery must be reciprocal in this case to maintain the integrity of the process.

**<u>CONCLUSION</u>**

If the Government has concerns about disclosure of massive amounts of material they have gathered, they should bear the burden of specifying which information they deem should be protected, proffer good cause for such, and disseminate the materials to the defendants in that fashion.  Doing this once, and doing this correctly is the established protocol under case law.  Mr. Chow should not be penalized for the Government's failure to organize and administer this investigation properly over the course of the last five years.

The Government's attempt to have a blanket protective order issued in this case is nothing more than a larger effort to restrain defendants' First Amendment rights in criminal cases in the Northern District of California.  This effort should be seen for what it is and it should be recognized that the Government is establishing a pattern of making any unsupported conclusory statements necessary, sometimes varying from moment to moment and case to case, in a duplicitous attempt to establish a *de facto* new local rule for blanket protective orders simply because they expect to gain an advantage in the media while tying a defendant's arms behind his back by restraining the freedom of speech of him and his lawyers.

The Government's attempt to force all 26 defendants in this case to stipulate to a blanket protective order in exchange for Constitutionally mandated discovery is prosecutorial extortion.  Knowing that many in-custody defendants needed discovery to adequately address detention hearings, the Government disingenuously agreed to provide an efficient exchange of information under the guise of a blanket protective order.  Despite the fact that this extortion attempt worked for almost all defendants, the Government's nefarious motives and total insincerity was belied when Mr. Chow's counsel did not

the Government's nefarious motives and total insincerity was belied when Mr. Chow's counsel did not stipulate and asked for the rapid exchange of uncontested documentation along with an opportunity to inspect potentially protected material.  The request went ignored and instead the Government pursued the only course of action they ever really intended: a totally unjustified blanket protective order just for the sake of it.

For the foregoing reasons, Mr. Chow hereby requests a hearing on the matter.

DATED: May 14, 2014

_____
J. Tony Serra

_____
Gregory M. Bentley

_____
Curtis L. Briggs

Attorneys for Kwok Cheung Chow