TONY TAMBURELLO
California SBN 46037
Law Office of Tony Tamburello
214 Duboce Avenue
San Francisco, CA 94103
Telephone: (415) 431-4500
Facsimile: (415) 255-8631

K. ALEXANDRA McCLURE
California SBN 189679
Law Office of Alexandra McClure
214 Duboce Avenue
San Francisco, CA 94103
Telephone: (415) 814-3397
Facsimile: (415) 255-8631

Counsel for Defendant BRANDON JACKSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>BRANDON JAMELLE JACKSON,<br><br>        Defendant. | No. CR-14-196 CRB<br><br>**DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**<br><br>Hearing Date: July 23, 2014<br>Time: 2:00 p.m.<br>Court: The Honorable Charles R. Breyer |

TO: UNITED STATES ATTORNEY, PLAINTIFF; AND MELINDA HAAG, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; AND WILLIAM FRENTZEN AND SUSAN BADGER, ASSISTANT UNITED STATES ATTORNEYS

PLEASE TAKE NOTE that defendant Brandon Jackson hereby files this Notice of Motion and Motion to Revoke the Detention Order of the Magistrate to be heard on Wednesday, July 23, 2014 at 2:00 pm or as soon thereafter as the Court is available pursuant to Criminal

Local Rule 47-2. This motion is based upon the Bail Reform Act, 18 U.S.C. §3141, *et seq.* Specifically, Mr. Jackson will ask this Court to find that it was error for him to be detained on the grounds of general danger to the community based solely upon the charges in the case. Given that the weight of the evidence is the least important factor in any analysis under the Bail Reform Act, the defense rebutted the presumption and it was error to find that no combination of conditions could assure the safety of the community based solely upon the allegations in this case.

## INTRODUCTION

In our society *liberty is the norm*,
and detention prior to trial or without trial
is the carefully limited exception.
*United States v. Salerno*, 481 U.S. 739, 755 (1987)
(emphasis added).

Defendant Brandon Jackson moves this Court for an order revoking the detention order of the Honorable Joseph C. Spero. Despite a recommendation from U.S. Pretrial Services for release to a halfway house, and over strenuous objection from the defense, Mr. Jackson was ordered detained pending trial as a danger to the community based solely upon the unproven allegations in the present case.

As is apparent from a review of the detention order and the court reporter's transcript in this case, the government sought to have defendant Brandon Jackson detained simply because he is charged with serious crimes that involve serious punishments. Reporter's Transcript of April 21, 2014 detention hearing, "RT" attached hereto as Exhibit A. The government's argument turned the Bail Reform Act's "presumption" for detention into a mandate for detention. No such mandate exits under the law. As the U.S. Pretrial Services Office found, there were appropriately stringent release conditions that rebutted the presumption in this case, and therefore Brandon Jackson – like his father who is charged with the identical crimes and faces additional charges – should have been ordered released. Rather than look solely at the charges, which are merely allegations, the Court must also evaluate Mr. Jackson's individual circumstances to determine

whether any combination of conditions will reasonably assure the safety of the community. As the U.S. Pretrial Services Office determined after thoughtful consideration and evaluation of Brandon Jackson's particular circumstances and lack of any violent history, there are conditions that will do just that. The set of extremely stringent conditions proposed by Pretrial Services and the lack of any past danger are perhaps why Judge Spero found this case to be, in his experience, "a difficult call." RT 27:22-23.

Because the weight of the evidence is the least important factor under the Bail Reform Act and it was the *only* factor considered and relied upon below, this Court should revoke the detention order, and order Mr. Jackson released pending trial.

## BACKGROUND

Mr. Jackson is a 28-year-old young man with strong ties to the community who has spent the majority of his adult life gainfully employed. Pretrial Services confirmed that he worked as a youth counselor for disabled children at the YMCA from 2004 until 2012. The Pretrial Services office also confirmed that Mr. Jackson worked at Staples for two years, as a cashier at a local market, and attended two years of community college. Moreover, as Judge Spero noted, Mr. Jackson has a minimal criminal history - a misdemeanor marijuana conviction in Texas.

Brandon Jackson has family members who have put together enough money to post a partially secured $200,000 bond, secured by property posted by a lifelong friend Phillip Taylor. The defense also proffered Mr. Jackson's aunt Patricia Hagel, who offered to serve as a responsible, law abiding custodian and is also willing to post a significant amount of security - $30,000 cash, a large part of a recent inheritance. Additionally, his mother Denise Jackson is willing to post $25,000 cash. These sureties provide strong evidence of the faith Mr. Jackson's family has in him, and in recommending release, Pretrial Services noted that there are "three people willing to post significant security."

Mr. Jackson also proposed home confinement with electronic monitoring. Further, at the detention hearing in this matter, Mr. Jackson stated no objection to his release to a halfway

house, as recommended by Pretrial Services. If released to a halfway house, Mr. Jackson will only be permitted to leave in order to go to work, medical appointments, attend court or to attend meetings with his attorney. After a contested hearing on April 21, 2014, Mr. Jackson was ordered detained. *See* Order of Detention Pending Trial, Docket No. 277, attached hereto as Exhibit B.

## ARGUMENT

### I. STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S RELEASE ORDER

If a defendant is ordered detained by a magistrate judge, the defendant may seek review of that detention order by filing, with the Court having original jurisdiction over the offense, a motion to revoke the order or amend the conditions of release. 18 U.S.C. § 3145(b). That Court's review of the magistrate judge's order is "de novo." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). As such, the Court is to "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193.

### II. THIS COURT SHOULD REVOKE THE DETENTION ORDER

Mr. Jackson respectfully moves to revoke the order of detention on the ground that he has rebutted the statutory presumption of detention, and the government failed to meet its burden of demonstrating that no combination of release conditions would reasonably assure the safety of the community.[1]

#### A. MR. JACKSON HAS REBUTTED THE PRESUMPTION

The drug conspiracy charge against Mr. Jackson raises a *rebuttable* presumption of detention under the Bail Reform Act. *See* 18 U.S.C. § 3142(e). However, it has long been held, not withstanding this provision, that, as to whether a defendant should be detained, "[t]he ultimate burden of persuasion remains on the government and the burden placed on the defendant

---

[1] There was no evidence nor any finding of flight risk in this case. The Honorable Magistrate Judge Spero ordered Mr. Jackson detained solely on the basis of general danger.

to rebut the presumption is small." *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (citations omitted); *see also United States v. Moore*, 607 F. Supp. 489, 497 (N.D. Cal. 1985) ("the rebuttable presumption shifts only a burden of production to defendant"). Accordingly, the government "retains the burden throughout the proceeding" of proving that no combination of conditions would reasonably assure the defendant's appearance at trial or the safety of the community. *Moore*, 607 F. Supp. at 497. "The defendant need only produce some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." *Chen*, 820 F. Supp. at 1207 (N.D. Cal. 1992) (citation and internal quotation marks omitted); *see also United States v. Youngblood*, 2009 WL 773539 (N.D. Cal. Mar. 23, 2009) at *2 (quoting *Chen* in explaining that the burden on the defendant to rebut a presumption of detention "is not onerous"). The Ninth Circuit has often stated that "[o]nly in rare cases should release be denied." and that any "[d]oubts regarding the propriety of release are to be resolved in favor of the defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); *see also United States v. Dang*, CR-13-486 EJD, 2013 U.S. Dist. LEXIS 112758 (N.D. Cal. Aug. 9, 2013) ("An important consequence of all this is that close cases should result in release: '[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases.'") (internal citations omitted).

Mr. Jackson has rebutted the presumption of detention in this case. As an initial matter, the U.S. Pretrial Services report recommending his release on conditions itself serves as "some credible evidence" rebutting the presumption. *See, e.g., United States v. Nicholas*, 681 F. Supp. 527, 529 (N.D. Ill. 1988). Moreover, Mr. Jackson's willingness to submit to electronic monitoring as a condition of his release also rebuts the presumption, as does his family's willingness to post significant security on a $200,000 bond, and his aunt's willingness to serve as custodian. *See, e.g., United States v. O'Brien*, 895 F.2d 810, 816 (1st Cir. 1990) (presumption

rebutted by electronic monitoring and real property); *see also United States v. Leyba,* 104 F. Supp.2d 1182, 1183-84 (S.D. Iowa 2000) (presumption rebutted by electronic monitoring and third-party custodian). If the Court were not inclined to release Mr. Jackson to the custody of his aunt, the placement in a halfway house as recommended by Pretrial Services would more than adequately rebut the presumption of detention.

Specifically, Mr. Jackson proffered the following facts and circumstances in support of his motion for pretrial release, which more than meet his burden of rebutting the presumption:

First, Mr. Jackson has no history of violence or danger whatsoever. His sole criminal conviction is a misdemeanor marijuana conviction in Texas. Mr. Jackson has spent most of his adult life, since he was a teenager, gainfully employed. Most recently, he worked for the YMCA for eight years and Staples for two years, and also worked at a local market and attended community college. Mr. Jackson is not in the sort of milieu that the Court often sees in large multi-defendant cases with charges of this nature - he is not an aimless young man with no employment history, a gang member, nor does he have any violent criminal history. This long-term employment history is not regularly seen in cases of this type and exemplifies Mr. Jackson's diligence, up to the time he was enlisted by his father as alleged by the government in this case.

Second, Mr. Jackson was born and raised in San Francisco and has life-long ties to the community. His mother Denise Jackson, aunt Patricia Hagler, and numerous relatives all live in San Francisco and have regular contact with Mr. Jackson. As evidenced by the numerous letters (attached hereto as Exhibit C), and overwhelming support in court at the detention hearing, Mr. Jackson is part of a close-knit family and has very strong support in the community.

Third, two of Brandon Jackson's relatives offered to be custodians and appeared in court on his behalf. Mr. Jackson's aunt offered to put up cash that she received as part of an inheritance in order to secure her nephew's release, as did his mother. Mr. Jackson's lifelong friend Mr. Phillip Taylor offered to post his home. Both real property and a significant amount of cash posted by loved ones will more than adequately ensure Mr. Jackson's compliance with

the conditions of his release. Pretrial Services determined that all of these individuals are suitable sureties who are willing to post "significant security."

Fourth, Mr. Jackson's criminal history is unique and does not suggest the blatant disregard for the law or danger as the government argues. Instead, as discussed at the detention hearing, Mr. Jackson has one nonviolent misdemeanor conviction involving marijuana. This conviction was not the basis for the detention order. Judge Spero noted that marijuana allegations alone would not justify a finding of danger to the community: "if this case was just charging a conspiracy to distribute marijuana, I wouldn't detain him." RT:24:18-20.

Fifth, Mr. Jackson agreed to abide by all of the conditions recommended by Pretrial Services, including the most stringent condition available - residing in a halfway house, which is arguably a semi-custodial situation. Accordingly, if released, Mr. Jackson must not travel outside the Northern District of California; must report to Pretrial Services; must refrain from the use of any illegal drugs; must not possess drugs or weapons; must not change his residence without prior approval; and must be limited in his movement as directed by Pretrial Services and cannot leave the halfway house for any reason other than appointments with Pretrial Services or his attorney, his doctor, employment and court. This is the most stringent set of conditions available and are more than sufficient to secure the safety of the community.

Sixth, the Pretrial Services Office, which is the office that would be tasked with supervising him should he be released, determined after it had interviewed Brandon that he would be amenable to supervision under these very restrictive conditions of release.

Thus, Mr. Jackson has more than rebutted the statutory presumption for detention, and the burden remains on the government to prove that no combination of conditions will adequately assure the safety of the community.

### B. THE GOVERNMENT HAS NOT MET ITS BURDEN FOR DETENTION AND THE DETENTION ORDER SO HOLDING WAS THEREFORE IN ERROR

Under the terms of the Bail Reform Act, an accused person shall be released pretrial on the "least restrictive" combination of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). For the accused person instead to be detained pretrial, the government bears the burden of first proving by a "clear preponderance" of the evidence that the person is a "serious" flight risk or by "clear and convincing evidence" that the person poses a danger to the community, and then demonstrating that there is no combination of conditions that will reasonably assure the appearance of the person and the safety of the community. *See id.* § 3142(e)-(f); *see also Motamedi*, 767 F.2d at 1405-07.

Pretrial release in non-capital cases "should be denied only for the strongest of reasons." *Motamedi*, 767 F.2d at 1407 (citation omitted). Under the Bail Reform Act, the "weight of the evidence" in support of the charge against the defendant "is the least important of the various factors." *Id.* at 1408. Moreover, "[a]lthough the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty." *Id.* (citation omitted). Finally, the Act "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Chen*, 820 F.Supp. at 1208.

To meet its burden here, while the statute describes four factors to be considered by the Court, *see* 18 U.S.C. § 3142(g), the government relies *exclusively* on the weight of the evidence against Mr. Jackson and the serious punishment that he is facing if convicted to try to meet each of those four factors. The detention order repeats this same error, as it clearly states that the allegations in the case alone form the basis for a finding of danger to the community. RT:28:15-20 "if this was just a case where somebody was charged with selling marijuana; even in large quantities; or selling marijuana and wanting to do other things in terms of drugs; I don't know that I would reach the same conclusion. But in light of the allegations for guns and potential

murder, I'm – that's the conclusion I reach."). Such a finding is tantamount to a pretrial finding of guilt, which underscores the reason that the weight of the evidence must be the least important factor under the Bail Reform Act.

The defense of course recognizes that the charges against Mr. Jackson are serious and the potential punishments are correspondingly severe. Mr. Jackson appropriately takes these charges and potential penalties seriously and looks forward to fighting the case through a fair and meaningful judicial process. But the decision on detention is forward looking - that is, the Court must look at whether the charged offenses involve a specific and articulable threat to others in the future. *United States v. Salerno*, 481 U.S. 739, 751 (1987).

This case is a compelling one for release for yet another reason: the equities involving Brandon's father and co-defendant Keith Jackson. In this case, the defendant's father Keith Jackson was ordered released by the Honorable Nathaniel Cousins. Notably, Mr. Jackson Sr., Brandon's father, *is charged in the identical counts, and faces more criminal charges than his son.* Judge Cousins correctly found that dangerousness cannot be found on the weight of the evidence alone. Judge Cousins concluded that any potential danger based upon the allegations in this case could be ameliorated by appropriate conditions of release: a $250,000 bond secured by $50,000 mobile home property in Texas, with three sureties, and the requirement that Keith Jackson remain on home confinement with electronic monitoring. Brandon's father Keith Jackson was not ordered to reside in a halfway house. And as this Court is aware from bail proceedings involving Brandon Jackson's father, numerous other defendants in this case who face the very same charge that gives rise to the presumption in this case – 21 U.S.C. 846, as well as 18 U.S.C. 922(a)(1), dealing in firearms without a license – were released on unsecured bonds.

This Court should similarly find in its *de novo* review of the facts and conditions proposed that Brandon Jackson, like his father, may be released. This is perhaps why, in Judge Spero's words, the decision in Brandon Jackson's case was "a difficult call" and the first

question he asked the prosecutor after learning that Brandon's father Keith Jackson is free on bail was how he could justify treating the Jackson father and son differently. Judge Spero thoughtfully shared an important concern at the outset of the hearing:

> One thing that gives me pause; among other things that give[] me pause; is the fact; is because most of the activities that you've talked about that are of most concern to the Court, Keith Jackson was also involved. How do I justify or distinguish ... how do I justify treating Brandon Jackson different than his father was treated? RT 10:2-11.

Although the government alleges that the younger Jackson, Brandon, was a potential "source of supply" (RT:11:22), and has "access to firearms" (RT:13:15-16), in fact, by the prosecutor's own admission, it was another defendant Rinn Roeun, not Brandon Jackson, who is the alleged "source of supply" of the guns in this case. RT:24-25. The defense understands that Brandon Jackson was not even present at crucial meetings identified by the prosecutor as indicators of danger; rather it was Rinn Roeun and Marlon Sullivan who attended those meetings. The defense, however, cannot sufficiently challenge many of the arguments of the government based upon the evidence, given the lack of discovery. Again, this predicament highlights why the evidence should be the least important factor. There was no evidence presented at the hearing that Brandon Jackson has "access to firearms," other than through Mr. Rouen who has been ordered detained pending trial. The prosecutor also conceded: "...no one is saying Brandon Jackson [] was the head of everything, but he was a more than willing participant." RT:21:23-24. A defendant who is an alleged "participant" in another individual's scheme ongoing, with another individual's access to weapons is not the sort of person who must be detained on such allegations alone.

It is also significant that Mr. Jackson is not charged with any dangerous crime that was not solicited by the government. The government agents solicited the potential danger, and now that this alleged plot has been exposed and stopped, the potential danger is gone. Theoretical future danger is plainly insufficient. *See e.g., United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1987) (government's failure to demonstrate defendant posed more than theoretical danger is a

factor favoring release).

As the weight of the evidence is the least important factor in this analysis, it is important for the Court to recognize that the equities favor Brandon Jackson who sits in jail pending what will likely be a lengthy pretrial period with voluminous audio and electronic discovery. Having Mr. Jackson in custody hampers the defense, as it makes it more difficult and costly for his court-appointed lawyer to assist and prepare an effective defense.

Moreover, in addressing Mr. Brandon's history and characteristics, *see* 18 U.S.C. § 3142(g)(3), the government and the court below focused entirely on the present allegations. In fact, there is no discussion in the detention order about the history and characteristics of Mr. Jackson - something required of the court when ordering a defendant detained. This is perhaps because there is not a single fact or circumstance in his history to suggest that Brandon Jackson is a danger to the community or to any person.

Finally, regardless of whether it is a presumption case, the burden is on the government to show *by clear and convincing evidence* that Mr. Jackson poses a danger to the community and that there is no combination of conditions that will reasonably assure the safety of the community. On this issue, both the government and the court focused exclusively on the evidence in this case - unproven allegations - in order to meet this high burden.

In short, the detention order circumvents the clear dictates of the Bail Reform Act by relying almost exclusively on the charges and evidence against Mr. Jackson and the serious punishment he would face if convicted. When this Court looks at all of the relevant factors under the law, including Mr. Jackson's lack of violence, strong family support, life-long community ties, lawful work history, and minimal criminal history, it is clear why Pretrial Services found a combination of conditions reasonable and appropriate and recommended release in this case.

## CONCLUSION

There is no evidence of danger to the community - other than unproven allegations in this case - let alone clear and convincing evidence. Rather, as found by U.S. Pretrial Services Office,

Mr. Jackson is suitable for release on conditions just as his father was. Brandon Jackson respectfully implores this Court to revoke the detention order in this case and order him released on appropriate conditions.

Dated: July 7, 2014

Respectfully submitted,

TONY TAMBURELLO
K. ALEXANDRA McCLURE

/s/ *Tony Tamburello*

Attorneys for Brandon Jackson