MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-6753
    William.Frentzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> BRANDON JACKSON, <br><br> Defendant. | No. CR 14-196 CRB <br><br> UNITED STATES' OPPOSITION TO APPEAL OF DETENTION ORDER BY DEFENDANT BRANDON JACKSON |

**INTRODUCTION**

The Magistrate Judge properly ordered defendant Jackson detained pending trial following a lengthy hearing on April 21, 2014. Jackson now appeals that decision to this Court. The decision of the Magistrate Judge should be affirmed.

**BACKGROUND**

**A.    Defendant's Charged Offenses**

Along with co-defendants Marlon Sullivan, Keith Jackson (the defendant's father), and others, defendant was charged by complaint filed on March 24, 2014, with violations of federal law (See

1

Affidavit in Support of Complaint by SA Emmanuel V. Pascua). Defendant was arrested on March 26, 2014. On April 3, 2014, a Grand Jury returned a Fifty Count indictment charging defendant with 4 Counts including: (1) conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; (2) two counts of trafficking in firearms without a license, in violation of 18 U.S.C. § 922(a)(1); and (3) murder for hire, in violation of 18 U.S.C. § 1958. The government has been agreeable to the release of most of defendant's co-defendants who were arrested in this District, but has opposed the release of some.

### B. Defendant's Bail Hearing

Defendant made his initial appearance on March 26, 2014, in the District of Connecticut, and was initially detained for removal to this District. After arrival in this District, defendant had a detention hearing on April 21, 2014. Based on the charge of conspiracy to traffic five kilograms or more of cocaine against defendant, pretrial detention is presumed unless rebutted. 18 U.S.C. § 3142(e)(3). The government sought defendant's pretrial detention based on a concern that the significant exposure to imprisonment would motivate defendant to flee, and based on a concern that defendant's willingness to arrange a murder-for-hire, and his connections to weapon dealers posed a serious risk that he would obstruct or attempt to obstruct justice, or threaten, injure, or intimidate a prospective witness or juror, or pose a danger to the community. Pretrial Services conducted a bail study, and was similarly concerned with defendant's risk of flight and dangerousness to the community. However, Pretrial Services concluded that these risks might be mitigated through stringent release conditions, including defendant's release to a halfway house.

On April 21, 2014, the Honorable Magistrate Judge Spero held bail hearings. The proceedings are reported by the transcript attached to Defendant's Motion to Revoke Detention Order, Exhibit A. Despite defendant's protests to the contrary, the Magistrate Judge did consider defendant's history, background and characteristics and his danger to the community, in addition to the facts of the charged offenses. Following a lengthy hearing during which both sides were permitted to make all available arguments, the Magistrate Judge ordered the defendant detained as a danger to the community. A written order followed.

# ARGUMENT

## A.   Standard of Review

The government agrees with defendant that this Court need not defer to the findings and order of the Magistrate Judge. *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990). That said, the government believes that a review of the record made before the Magistrate Judge reveals that the Magistrate Judge came to the correct determination as to the defendant's danger to the community. It also means that this Court is free, without deference, to find that defendant is a risk of flight or obstruction.

## B.   Defendant Is Presumed a Danger and a Flight Risk as a Matter Of Law

Based on his charged offense of conspiracy to distribute narcotics, defendant's detention is presumed. 18 U.S.C. § 3142(e)(3). The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In cases involving violation of 21 U.S.C. § 846 with a potential sentence of 10 years or more, the Act established a rebuttable presumption that a defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e)(3)(A). The offense charged against defendant carries a potential punishment of not less than 5 and up to 40 years' imprisonment and thus triggers the presumption. That presumption exists if there is "probable cause" to believe that the defendant committed a violation of 21 U.S.C. § 846. 18 U.S.C. § 3142(e). The grand jury indictment, as well as the Complaint previously filed, establish "probable cause" and give rise to the Act's presumptions. *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985). Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988).

If the defendant proffers evidence to rebut the presumption, the Ninth Circuit has identified

several relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407.

Congress intended that the statutory presumptions would have a practical effect. *United States v. Jessup*, 757 F.2d 378, 382 (1st Cir. 1985). The presumptions do not disappear when a defendant meets his or her burden of producing rebuttal evidence. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The presumptions remain as evidentiary findings militating against release, to be weighed along with other evidence relevant to the factors listed in Section 3142(g). *Id.* Indeed, the Act's presumption should be added as a factor that supports pretrial detention under both rationales for detention. *See United States v. Perez-Franco*, 839 F.2d 867, 870 (1st Cir. 1988).

### C. Defendant Has Not Rebutted The Presumptions That He Is Both A Danger And A Flight Risk

Magistrate Judge Spero correctly found that this presumption was not rebutted by defendant. Defendant offered nothing more during the hearings than his lifetime residence in San Francisco to rebut the presumption. Magistrate Judge Spero correctly considered, as required by 18 U.S.C. § 3142, the danger to the community posed by defendant's release and considered the Court's ability to fashion adequate constraints to secure the community's safety. In light of probable cause being found by both the Magistrate Court and the Grand Jury that defendant engaged in murder-for-hire and firearms trafficking the risk of obstruction of justice against prospective witnesses and jurors is particularly significant. Additionally, while Jackson identified some of his potential sources to commit murder-for-hire and to supply weapons, not all of those individuals were identified, not all are in custody, and some are still on the streets.

Defendant's arguments against Judge Spero's findings in his Motion boil down to two primary complaints. One, that the Magistrate Judge failed to adequately consider factors other than the offenses

charged. On that point, he is wrong. Two, that defendant should be freed because his father, defendant Keith Jackson, was not detained. On that point, if it is even relevant, the Magistrate Judge was well aware of the issue, and considered it in coming to his decision. Defendant Jackson also ignores that, if the Court considers that issue, there were several other similarly situated defendants who, like defendant, were detained.

Magistrate Judge Spero listed his rationales for detention at the hearing and in writing. In doing so, he highlighted some, but also adopted the arguments of the government: "in support of the finding that there are no combinations of conditions that could reasonably assure the safety of the community, I would ask [the government in filing a detention order] to highlight; among the other things that they mentioned; the multiple sales of weapons, including the sales of a weapon with an obliterated serial number and an automatic weapon, as well as ballistic vests and the repeated efforts to participate in a murder for hire scheme." Def's Exh. A. Tr., at 28. While defendant would have this Court believe that the Magistrate Judge somehow abdicated his responsibility to consider all of the factors, it is clear from the record that he did not. Among the things that were brought to the Magistrate Court's attention were, of course, the entire pretrial services report that included information that the defendant had not shown any work history for several years; that the defendant had a prior conviction for marijuana stemming from charges of trafficking between 5 to 50 pounds of marijuana found in West Texas; that the prior conviction was within just months of the time that the defendant began to engage in the currently charged narcotics conspiracy, in other words, that he did not learn any lesson from what should have been a wake-up call from his first misdemeanor conviction. The Magistrate Court specifically considered and correctly pointed out the defendant's lack of viable work history for years before his arrest. Def's Exh. A Tr., at 18.

Furthermore, this is unlike the normal reactive case where a court needs to consider far more than a single alleged crime to determine bail matters. Because of the sweeping nature of this investigation, and the intertwined perpetrators and co-conspirators, the government was unable to arrest individuals for a single criminal episode without blowing the lid off of the entire investigation. For that reason, the undercover agents were able to spend months or years interacting with the defendants and getting a far fuller (and fully recorded) picture of the defendants' overall character, history and

5

background.  In a case where a defendant is arrested an hour after meeting and selling firearms to an undercover agent, a court necessarily must look outside the facts of the underlying crime to consider the defendant's full history, character and background.  Where the crime consists of months of criminal behavior, repeated sales of dangerous and illegal firearms, repeated requests for sources of illegal narcotics, and repeated offers to commit or arrange murder for hire, the full picture of the defendant is much easier to view, even if it is argued to be in the context of the facts of the underlying crime.  This was recognized by the Magistrate Judge when he correctly called out defendant's argument that his criminal behavior was "aberrant":

> **Mr. Tamburello**: I understand the concept of the murder for hire topic.  I do understand that.  And I do understand the gun trafficking charges, but it's so out of character for who this young man has been throughout his whole life.  It's a aberrant behavior and I just –
> **The Court**: I'm not sure how I get there.  You know, he stopped working for anyone other than his father four years ago.  And the – it's not one event that's recited in the complaint as witnesses by the undercover operative; it's 40 events or 30 events.  How do I make that aberrant?
> **Mr. Tamburello**: Well –
> **The Court**: I mean, it is delivery of gun after gun after gun, including an automatic weapon; including a gun that had – that the serial number was obliterated; ballistic vests; more guns; murder for hire; repeated contact about murder for hire; investigation [sic] murder for hire.  I – I'm just – I'm just – all that is in the complaint and I understand that issue, but it's over a – one of the consequences of the link [sic] of the government's investigation is it's not in a short period of time.  It's over a long period of time.

Tr. at 18-19.

The written order of the Magistrate Judge also included that the defendant had a prior misdemeanor conviction just months before engaging in the current criminal offenses.  Def's Exh. B at 2.  In the hearing before the Magistrate Judge, the defendant pointed out all of his community support, much of which was present in the courtroom for the Magistrate Judge to see, and the Magistrate Judge considered that, acknowledged that, and thanked the individuals who supported the defendant for attending.  Tr. at 27.  It was also pointed out to the Magistrate Judge that the girlfriend of defendant's father had been recorded saying that although defendant was "quiet, he would come back and get you.  It can take five or ten years, but he's going to get you."  Tr. at 9.  That is an insight into defendant's history, background and character, as well as his potential danger to the community, that the Magistrate Judge had to consider.  Therefore, it cannot be said that the Magistrate abdicated his responsibility to

1 consider all relevant factors and it is clear that his decision was based, in part, upon those other factors.

2 Defendant has presented almost nothing to rebut the presumption of detention other than the fact
3 that he has long ties to the community. The Magistrate Judge weighed that and correctly deemed the
4 defendant to be a danger to his community.

5 The defendant also seeks to compare his situation with that of his father, defendant Keith
6 Jackson, who was released on a secure bond and home confinement with electronic monitoring. This is
7 a washed up argument that the Magistrate Judge more than adequately considered. Tr. at 10-13. As was
8 pointed out to the Magistrate Judge, of course, the government did not agree with the release of
9 defendant Keith Jackson, and fought it to the end unsuccessfully. The government does not view
10 defendant Brandon Jackson as a "worse" criminal than defendant Keith Jackson, it simply believes that
11 both should have been detained. That said, the government distinguished defendant Brandon Jackson as
12 having very recent criminal history while defendant Keith Jackson had none, even though he was close
13 to 50 years old. In addition, it would appear from the recordings of the undercover agents that while
14 Keith Jackson almost constantly setting up different criminal activity, making introductions for criminal
15 activity, and facilitating criminal activity, as it relates to the narcotics conspiracy and firearms
16 trafficking, defendant Brandon Jackson was actually carrying out the crimes himself and was closer to
17 the sources for firearms, narcotics, and murder for hire than his father. Finally, defendant Brandon
18 Jackson was closer than his father to the unlawful fraudulent credit card operation of co-defendant
19 Marlon Sullivan.

20 More relevant, however, than the consideration of defendant Keith Jackson, is the consideration
21 that defendants Marlon Sullivan and Rinn Roeun – both with very similar charges and circumstances to
22 those of Brandon Jackson – were both also detained. The game of comparing apples to oranges is, in the
23 end, simply irrelevant as the Court should be looking to see whether or not this defendant, currently
24 before the Court, should be detained. The Magistrate Judge made that consideration, and compared this
25 defendant to his co-defendants, and came to the correct conclusion.

26 Importantly, Defendant's detention is warranted not simply by the Section 3142(e)(3)
27 presumptions, but by the factors the Court must consider under Section 3142(g), as are further detailed
28 in the Affidavit in Support of Complaint by Special Agent Emmanuel V. Pascua. The following facts

establish Defendant's danger to the community by clear and convincing evidence, and establish his risk of flight by a preponderance of the evidence:

- Defendant was trafficking in firearms without a license, selling many firearms to an FBI undercover employee (UCE 4599) whom he believed to be a member of two criminal organizations (La Cosa Nostra and the Chee Kung Tong), and whom he understood was using the firearms to arm his associates who were manufacturing marijuana at purported grows in Mendocino County.  In other words, defendant was selling firearms to be used in criminal manners, for narcotics trafficking.  He facilitated providing assault weapons, automatic weapons, stolen weapons, weapons with scratched off serial numbers, large quantities of ammunition, high capacity magazines, and ballistic vests.  As the Magistrate Court was aware, and this Court must be aware, the illegal introduction of these types of dangerous and illegal firearms into the community creates a severe danger to the community.
- Defendant participated in a conspiracy to traffic in cocaine with others.  Defendant and his co-conspirators pushed UCE 4599 to facilitate their enterprise by providing cocaine, and also requested other illegal narcotics.  The conspiracy culminated in the defendants bringing $275,000 to purchase 10 kilograms of cocaine at which point they were arrested on the East Coast.
- Defendant participated in a proposed murder-for-hire.  Understanding that UCE 4599 was interested in taking out a person who purportedly owed UCE 4599 money, and understanding that defendant Rinn Roeun had proposed to commit the murder-for-hire for $25,000, defendant told UCE 4599 that "he [Roeun] could do it [murder for hire], or I could do it too" – meaning that defendant Jackson, Keith Jackson, Marlon Sullivan, and their unidentified associates could commit the murder for $25,000.  Defendant later agreed to do a murder for hire and Sullivan scouted out the intended target.  While defendant was present, Keith Jackson told the UCE, "I want to keep that with us," meaning that they would commit the murder for hire rather than defendant Roeun.  Defendant asked UCE 4599 for the name and address of the intended victim so that they could ID the target and watch him and figure out his daily routine.

- ■ While not yet charged, Defendant facilitated UCE 4599's purchase of fraudulent access devices from co-defendant Sullivan. Defendant delivered approximately 25 fraudulent access devices to the undercover and approximately 30 more were found in defendant's house during a search. Defendant also discussed his ability to obtain fraudulent identification documents. These incidents are clearly concerning in terms of the defendant's ability to flee, to pose a financial danger to the community, and to finance other danger to the community.

- ■ All of these activities were captured on tape in Defendant's own words. Therefore, while defendant, of course, enjoys the presumption of innocence, the weight of the evidence against him – which must be considered by the Court – is incredibly heavy.

- ■ Defendant faces a lengthy jail sentence that includes mandatory minimum sentences with exposure to 40 years' imprisonment on the narcotics offense, and 10 years' imprisonment per count for the firearms trafficking and murder for hire counts. That would certainly give him reason to flee. Defendant's crimes involved contacts out of state, including Texas, Tennessee, Connecticut, and New Jersey.

- ■ As pointed out above, defendant has a spotty history of employment, with little or no employment for years leading to his arrest.

It should be noted that where conditions of release rely on compliance by a defendant who has demonstrated an intention to continue to re-offend, those conditions may not be sufficient. As stated in *United States v. Hir*, 517 F.3d 1081, the Ninth Circuit noted the potential flaws to conditions of release with certain defendants. "Although these proposed conditions of release are strict, they contain one critical flaw. In order to be effective, they depend on [Defendant's] good faith compliance." *Id.* at 1092. The Ninth Circuit quoted the First Circuit, stating "the conditions as a whole are flawed in that their success depends largely on the defendant's good faith – or lack of it. They can be too easily circumvented or manipulated." *Id.* The Ninth Circuit went on to explain that defendant's charged conduct can show his or her unwillingness to abide by the law already. *Id.* at 1093. The nature of the

offenses committed by this defendant immediately following a criminal conviction show that he cannot be trusted to comply with conditions.

Finally and importantly, defendant has raised no new issues not already considered by the Magistrate Judge. This is not a situation where the Magistrate Judge failed in his or her responsibility to consider all factors or failed in applying the law. Nor is it a situation where the Magistrate Judge did not hold a full hearing to consider both sides of the argument. Nor is there anything new that this Court should consider that was not considered by the Magistrate Judge. This is simply a situation where the defendant is unhappy with the Magistrate Judge's decision and he would like a second bite at the apple.

## CONCLUSION

The government respectfully submits that the order of the Magistrate Court should be affirmed and defendant should be detained pending trial.

Date: July 17, 2014

Respectfully submitted,
MELINDA HAAG
United States Attorney

/s/ William Frentzen
WILLIAM FRENTZEN
SUSAN BADGER
S. WAQAR HASIB
Assistant United States Attorneys