1 | J. TONY SERRA, SBN 32639
GREGORY M. BENTLEY, SBN 275923
2 | CURTIS L. BRIGGS, SBN 284190
506 Broadway
3 | San Francisco, CA 94133
Telephone: 415/986-5591
4 | Fax: 415/421-1331
jts@pier5law.com
5 | bentley.greg@gmail.com
curt.briggs@gmail.com
6 |
Attorneys for Defendant
7 | KWOK CHEUNG CHOW

8 |                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
9 |                       SAN FRANCISCO DIVISION

10 |                                    No. CR 14-0196 CRB

11 | UNITED STATES OF AMERICA,          NOTICE OF MOTION AND MOTION
                                       FOR RECONSIDERATION OF
12 |           Plaintiff,              PROTECTIVE ORDER AND DENIAL
                                       OF DEFENSE REQUEST FOR
13 | vs.                               RECIPROCAL PROTECTIVE ORDER;
                                       REQUEST FOR HEARING.
14 | KWOK CHEUNG CHOW,
                                       Date: August 20, 2014
15 |           Defendant.              Time: 2:00 p.m.
                                       Hon. Judge Breyer
16 | _____/

17 |      PLEASE TAKE NOTICE that on the date and at the time

18 | indicated above, defendant KWOK CHEUNG CHOW, through counsel,

19 | will and hereby does move this court to reconsider the

20 | Protective Order and Defense Request for a Reciprocal Protective

21 | Order.

22 |      This motion is predicated on the files and records in this

23 | case, the declaration of counsel and memorandum of points and

24 | authorities filed herewith, the exhibits filed herewith, and on

25 | any evidence and argument as may be presented on the hearing of

26 | this motion.                   /s/ CURTIS L. BRIGGS
                                    _____

27 |                                CURTIS L. BRIGGS
                                    Attorney for Defendant
28 |                                KWOK CHEUNG CHOW

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

1

1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF CALIFORNIA
8                          SAN FRANCISCO DIVISION

9

10   UNITED STATES OF AMERICA,              No. CR 14-0196 CRB

11            Plaintiff,

12   vs.

13   KWOK CHEUNG CHOW,

14            Defendant.

15   _____/

16

17            MOTION FOR RECONSIDERATION OF PROTECTIVE
                 ORDER AND DENIAL OF DEFENSE REQUEST FOR
18            RECIPROCAL PROTECTIVE ORDER; REQUEST FOR
                              HEARING.
19
                                         Date: August 20, 2014
20                                       Time: 2:00 p.m.
                                         Hon. Judge Breyer
21

22                                       J. TONY SERRA, SBN 32639
                                         GREGORY M. BENTLEY, SBN 275923
23                                       CURTIS L. BRIGGS, SBN 284190
                                                    506 Broadway
24                                       San Francisco, CA 94133
                                         Telephone: 415/986-5591
25                                              Fax:415/421-1331
                                                  jts@pier5law.com
26                                       bentley.greg@gmail.com
                                          curt.briggs@gmail.com
27
                                         Attorneys for Defendant
28                                           KWOK CHEUNG CHOW

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

                                    2

**INTRODUCTION**

Based on new facts which have surfaced subsequent to the issuance of the Protective Order in this matter, Mr. Chow hereby seeks this Court's reconsideration of: (1) the necessity of the blanket Protective Order; and (2) the Reciprocity of the Protective Order.

Specifically, as detailed below, the Government (1) recklessly or intentionally misled this Court regarding the volume of evidence it possessed against Mr. Chow and other co-defendants; thus, assertions that the redaction of the discovery would be a "Herculean Task" justifying a blanket Protective Order were false; (2) the discovery regarding Raymond Chow included both redacted copies and identical copies which were un-redacted, indicating that the Government did have time to redact contrary to their assertions; (3) the burglary at Colour Drop where the Government disseminated the "Subject Material" herein illustrates the necessity to impose, at a minimum, a reciprocal duty on the Government to ensure that safeguards are imposed for the "Subject Material" in this large scale, politically explosive investigation; (4) Chow urges transparency in prosecution and would ask that this Court depart from a course of action designed to protect public persons and public officials whose conduct was suspect throughout this investigation yet they mysteriously remain unindicted.

In any criminal case it is critical not to burden the defense unnecessarily. When it is found that it is necessary to impose security obligations, or restrictions on speech, those obligations must be reciprocal or the net effect is to create an

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

1  unfair playing field where justice suffers.

2

3                          **STATEMENT OF CASE**

4      Mr. Chow was arrested on March 26, 2014, and is charged by

5  way of indictment with ten counts stemming from what the

6  Government characterizes as a five-year investigation into

7  public corruption and organized crime in and around the Bay

8  Area.  Seven of the ten counts allege conspiracy to engage in

9  money laundering (Counts 3, 4, 7, 28, 29, 30, and 31).[1]  The

10 three remaining counts allege conspiracy to sell either stolen

11 liquor or cigarettes (Counts 6, 8, and 26).[2]  According to the

12 Government, the investigation into political corruption is still

13 ongoing and tangentially involves other public officials, law

14 makers, and public figures.[3]

15

16                          **STATEMENT OF FACTS**

17      From the inception, the Government selected prejudicial

18 aspects of this case and eagerly thrust them into the nightly

19 news cycle, specifically targeting defendants Raymond Chow and

20 Senator Yee.  Media outlets immediately began inaccurately

21 reporting that Mr. Chow was charged with murder for hire,

22 trafficking guns, and narcotics distribution; and invariably

23 referred to him as a gangster.  Shortly thereafter, the

24 Government repeatedly asserted, in open court as well as through

25 multiple pleadings, that they possessed "multiple terabytes" of

26 _____

27      1/ 18 U.S.C. § 1956(a)(3)(A), 18 U.S.C. § 1956(a)(1)(A)(I),
   and 18 U.S.C. § 1956(a)(1)(B)(I) – Money Laundering.
      2/ 18 U.S.C. § 371 – Conspiracy.
28    3/ See generally United States' Motion for Protective Order
   pursuant to FED.R.CRIM.P. 16(D); docket 279.

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

                                    4

1   evidence against Mr. Chow and his co-defendants.

2       On April 10, 2014, the Government filed a Statement Re:

3   Discovery to "suggest certain procedures upon which the parties

4   may be able to agree," and asserting their justification for

5   their request for a Protective Order.[4]  After negotiations

6   regarding said Protective Order were entered into, all parties

7   but Chow stipulated.  Chow declined to sign the Protective Order

8   primarily to protect his fundamental right to a fair trial.

9   Apparently accepting the Government's assertions at face value,

10  this Court signed and imposed the Order Re. Protective Order,

11  denying Chow's request for oral argument on the issue.

12      Central to the Government's rationale for said Protective

13  Order was that the discovery was too voluminous for the

14  Government to cull out specific and necessary aspects for

15  redaction.  The Government stated on multiple occasions, both in

16  court and through multiple pleadings, that the protected

17  materials were "multiple terabytes", and that it would be a

18  "Herculean task" for the Government to redact specific aspects.

19  At one point prior to May 7, 2014, the Government represented to

20  the then Discovery Coordinator, Blair Perilman, that the

21  discovery was approximately eight terabytes, a majority of which

22  was video.[5]  The eight terabytes number was relayed to all

23  defense teams.  However, a review of the discovery provided thus

24  far indicates that the Government's assertions were grossly

25  misstated.  The totality of discovery turned over subject to the

26  Protective Order equates to just over half a terabyte.[6]  To

27  ───────────────────

    4/ Statement by USA; Docket 175.
28  5/ See email from Blair Perilman attached as _Exhibit A._
    6/ A terabyte is approximately 1,000 gigabytes.  The
    Government's representation regarding the massive amount of

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

1  date, despite efforts to contact the Government about the

2  remaining discovery allegedly in their possession, defense

3  counsel has not been made aware of the whereabouts of the

4  remaining multiple terabytes of discovery that were the basis of

5  the blanket Protective Order.

6      Beyond exercising his fundamental right to a fair trial,

7  Mr. Chow's hesitation in signing the Protective Order was based

8  on concerns that it failed to place restrictions on the

9  Government regarding the safety and security in its handling of

10 "Subject Material," if in fact it warranted protection.  The

11 proposed stipulation and subsequent order placed numerous

12 housekeeping- and security-related responsibilities pertaining

13 to the storage of "Subject Material" on defense counsel, yet

14 inexplicably failed to impose a reciprocal duty on the

15 Government.  Accordingly, prior to the issuance of the

16 Protective Order, defense counsel requested that the Protective

17 Order be issued on reciprocal basis.  At a discovery conference

18 prior to the issuance of the Protective Order, Magistrate Spero

19 rejected the notion of reciprocity without articulating

20 justification.  In Chow's Opposition to the Motion for

21 Protective Order, the issue of reciprocity was again raised.

22 The Government did not see any reason why it should be held to a

23 reciprocal obligation to safeguard Protected Material.  This

24 Court agreed with the Government.

25 ////

26 _____

27 discovery was misrepresented by approximately 1,500 to 7,500
   gigabytes.  This was not discovered by defense counsel until on
28 or about June 6, 2014, after the Protective Order was originally
   litigated and the Order was issued.

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

6

1    On or about May 19, 2014, subsequent to this Court's Order

2  granting the Government's Motion for Protective Order, discovery

3  available for defense was transferred to Colour Drop, a private

4  printing company in San Francisco.  Within six days of the

5  issuance of the Order, Colour Drop was the victim of a burglary.

6  Although Colour Drop was in the possession of protected "Subject

7  Material"; at the time of the break-in, the police report

8  reflects that little to no investigation was conducted.[7]

9  Notably, from a reading of the incident report, the FBI failed

10 to investigate the burglary.  Perhaps most concerning, the staff

11 from Colour Drop failed to inform the local police that, at the

12 time of the burglary, they possessed critical evidence regarding

13 this large scale political corruption and organized crime

14 investigation.  After a routine police inspection, it appears as

15 though neither the local police nor the FBI obtained the video

16 footage of the break-in from a neighboring business; rather, it

17 was the media.  Further, the burglary was not brought to defense

18 counsel's attention until on or about May 29, 2014, ten days

19 after the Protective Order was issued.  To date, defense counsel

20 has not been notified of any security procedures the Government

21 has employed, or employs, to safeguard this critical "Subject

22 Material" and defense has never been informed of any

23 investigation beyond the superficial local police investigation.

24 ////

25 ////

26 ////

27

28

7/  See San Francisco Police Incident Report attached as
Exhibit B.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

**ARGUMENT**

I.

RECONSIDERATION OF THE NECESSITY OF THE
PROTECTIVE ORDER IS WARRANTED HERE IN LIGHT
OF NEW FACTS WHICH HAVE SURFACED IN THIS
MATTER.

The Ninth Circuit has held that motions for reconsideration may be filed in criminal cases.[8] "[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." See *Hector*, 368 F. Supp. 2d at 1063, and *Fiorelli*, 337 F.3d at 286.

In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. See *id*. (applying the standard governing Rule 60(b)); *Hector*, 368 F. Supp. 2d at 1063 (analyzing a reconsideration motion as a Rule 59(e) motion).

Federal Rule of Criminal Procedure 57(b), "Procedure When There is No Controlling Law," states in relevant part, "A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Rule 59(e) of the Federal Rules of Civil Procedure authorizes motions to alter or amend a judgment. Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of

---

8/ See *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003)("As noted by the Second and Ninth Circuits, motions for reconsideration may be filed in criminal cases"); *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("As the Second Circuit noted . . . , post-judgment motions for reconsideration may be filed in criminal cases").

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  judgment." 11 Charles Alan Wright et al., Federal Practice and

2  Procedure § 2810.1 (2d ed. 1995).

3      A "district court enjoys considerable discretion in

4  granting or denying" a Rule 59(e) motion. *McDowell v. Calderon*,

5  197 F.3d 1253, 1255 n.1 (9th Cir.1999)(quoting Federal Practice

6  and Procedure § 2810.1). See also *Herbst v. Cook*, 260 F.3d 1039,

7  1044 (9th Cir. 2001)("denial of a motion for reconsideration is

8  reviewed only for an abuse of discretion"). A Rule 59(e) motion

9  may be granted on any of four grounds: (1) a manifest error of

10  law or fact upon which the judgment is based; (2) newly

11  discovered or previously unavailable evidence; (3) manifest

12  injustice; and (4) an intervening change in controlling law.

13  *McDowell*, 197 F.3d at 1255 n.1 (quoting Federal Practice and

14  Procedure § 2810.1).

15      Rule 60(b) of the Federal Rules of Civil Procedure permits

16  relief from final judgments, orders, or proceedings. Such a

17  motion may be granted on any one of six grounds: (1) mistake,

18  inadvertence, surprise, or excusable neglect; (2) newly

19  discovered evidence that, with reasonable diligence, could not

20  have been discovered in time to move for a new trial under Rule

21  59(b); (3) fraud (whether previously called intrinsic or

22  extrinsic), misrepresentation, or misconduct by an opposing

23  party; (4) the judgment is void; (5) the judgment has been

24  satisfied, released  or discharged; it is based on an earlier

25  judgment that has been reversed or vacated; or applying it

26  prospectively is no longer equitable; or (6) any other reason

27  that justifies relief.

28  ////

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

9

1   Fed.R.Civ.P. 60(b). Like motions brought under Rule 59(e),

2   Rule 60(b) motions are committed to the discretion of the trial

3   court. *Barber v. Haw*., 42 F.3d 1185, 1198 (9th Cir. 1994)

4   ("Motions for relief from judgment pursuant to Federal Rule of

5   Civil Procedure 60(b) are addressed to the sound discretion of

6   the district court.").

7   Here, feasibility of redaction was the main thrust of the

8   Government and Court's concern in issuing the Protective Order.

9   The Protective Order in this case should be reconsidered because

10  there was both an error and misrepresentation made to the court

11  about the actual size of discovery-bearing on feasibility of

12  redaction.  Chow concedes that this Court was forced to balance

13  various interests in granting the Order.  However, the

14  information given to the court about the size of data was

15  nothing less than fiction.  There is a direct correlation

16  between the size of data in question and whether redaction is

17  feasible, or whether a blanket Protective Order was even

18  necessary.  There is a dramatic difference between a half

19  terabyte and multiple terabytes/thousands of gigabytes.

20  The Government stated in its pleadings and on the record at

21  several hearings that they wished to turn over "multiple

22  terabytes"[9] but that the task was too overwhelming due in large

23  part to the size being impossible to extract specific portions

24  for redaction.  The Government's Motion for Protective Order

25  states that "[p]arsing out and redacting [Protected Materials]

26  would be an enormous, time-consuming and expensive task."[10]  The

27  _____

9/ Government's Motion for Protective Order, page 3, line
11; Docket 279.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

28  10/ Government's Motion for Protective Order, page 3, line
26; Docket 279.

1  Government had also informed Blair Perlman, the Discovery

2  Coordinator, that approximately 60% of the Protected Material is

3  video.[11]   The Government stated "[i]t would be a Herculean task,

4  if not impossible, to extract such comments and references from

5  the rest of the discovery materials."[12]

6       Assuming *arguendo* it is not, in fact, practical for the

7  Government to redact video, and assuming *arguendo* that this

8  Court would still grant a Protective Order on audio and video,

9  the Government would be left with merely a few hundred gigabytes

10  of scanned documents to redact.  If it is accurate that the

11  Government has 10,000 pages of documents to turn over, this is

12  highly practical as 10,000 pages of documents amounts to

13  slightly more than one Banker's box of documents.  This is an

14  amount typical to an average size typical felony investigation

15  and far from a "Herculean task."  A handful of minimally trained

16  staff could perform these redactions in days, and in fact,

17  significant redactions are already reflected in the discovery

18  even though the Government said it would be impractical.  Thus,

19  the Court was misled and led to believe the task was impossible

20  when, given the resources at the Government's disposal, it was

21  completely reasonable and could have been accomplished in days.

22       This Court stated, "*Given the volume of sensitive material*

23  *and the fact that it is so enmeshed with non-sensitive material,*

24  *the Protective Order . . . is both practical and*

25  *appropriate.*"(emphasis added)[13]  Of particular importance, in a

26  _____

27      11/ See Exhibit B.
    12/ Government's Motion for Protective Order, Page 4, lines
4-6; Docket 279.

28      13/  See Order granting Motion for Protective Order, page
3, lines 9-11; Docket 301.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

1  footnote on page 3 of this Court's Order, is this Court's

2  citation to the Government's Motion, stating that "The

3  Government represents that approximately 10,000 pages of reports

4  and two 1 terabyte hard drives . . ." had already been turned

5  over.  The Government failed to inform the court that even

6  though the data was stored on two hard drives, it barely totaled

7  more than half a terabyte.  Thus, counsel reasonably infers that

8  the Court was misled by the Government's proffer and relied on

9  the amount of data in issuing its Order.

10      Portraying this evidence as "multiple terabytes" is a

11  blatant, gross, and irresponsible misrepresentation to this

12  Court by the Government.  What we know now is that the totality

13  of evidence which the Government turned over, pursuant to the

14  Protective Order, was slightly more than half a terabyte, most

15  of which was video and would account for a majority of the data.

16  In addition to contravening the expectation that Government

17  prosecutors would be candid with the Court, this deception led

18  to an overly burdensome Protective Order concealing non-

19  sensitive materials on false pretenses, for which this Court

20  cannot be faulted, but because of which this Court should

21  reconsider.  If the Court is not willing to abolish the

22  Protective Order outright, it should, at the very least, grant

23  oral argument so that an honest dialogue can occur regarding

24  discovery and what should and should not be protected.  This

25  hearing is especially important since the Government has misled

26  the Discovery Coordinator (characterizing amount of data as

27  eight terabytes).

28  ////

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

12

II.

> THE BREAK-IN AT COLOUR DROP ILLUSTRATES THE
> VULNERABILITY OF DISCOVERY AND ALSO THE LACK
> OF CARE UTILIZED BY THE GOVERNMENT; THUS IF
> THIS COURT FINDS A PROTECTIVE ORDER STILL
> NECESSARY, RECIPROCITY MUST BE ORDERED.

The Colour Drop break-in was foreseeable in a case of this nature and clearly shows why reciprocity in any Protective Order in this matter is crucial — especially with a Protective Order that unilaterally imposes security protocol on defense counsel such as that issued by this Court.  Reciprocity was not addressed by the United States Attorney until after Mr. Chow raised and challenged the issue in his Opposition.[14] In their Reply, the United States Attorney proffered the following grounds in support of not imposing reciprocal obligations on the United States: (1) it makes no sense; (2) it was rejected by Judge Spero; (3) the United States already possesses all of the discovery materials in question, has not leaked them to the media or anyone else, and does not intend to do so in the future; and (4) the only documents that have been made publicly available in this case at this point are judicial records.[15]

Thus far, the Court has failed to provide guidance as to why Mr. Chow's request for reciprocity was denied, which Chow contends is a violation of Due Process and is an impermissible one-sided restraint on Chow's First Amendment Rights.  In granting the United States Attorney's Motion for the Protective Order, by way of footnote 6 on page 5 of the Order, the Court merely stated the following: "Judge Spero correctly rejected

---

14/ See generally Memorandum in Opposition; Docket 292.
15/ See Reply to Response, page 6, lines 16-24; Docket 299.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

1   this notion in the parties' negotiations. The government is

2   already in possession of the materials in question." Neither

3   the Government nor the magistrate have articulated an actual

4   basis for non-reciprocity.

5      The break-in at Colour Drop illustrates the vulnerability

6   of discovery and also the lack of care utilized by the

7   Government.  The Government turned over sensitive data to a

8   private contractor with presumably no security protocol.  This

9   is evidenced by the police report which makes no mention that

10  the Colour Drop employee informed the San Francisco Police

11  Department of the sensitive nature of the discovery in its

12  possession.

13     The responsible protocol surrounding this break in (or any

14  break-in) would be to immediately inform police that the FBI

15  should investigate the break-in since the break-in could have

16  been in furtherance of political corruption.  The FBI should

17  have obtained security camera footage from neighboring

18  businesses before the media was able to.  The FBI should have

19  checked entry points for DNA and fingerprints.  The FBI should

20  have contacted neighboring businesses for witnesses.  The FBI

21  should have checked cars in the area.  Colour Drop staff should

22  have been interviewed.

23     There is a stark lack of concern on the part of the

24  Government about this break-in.  It does not stand to reason

25  that they would be so concerned about this discovery as to move

26  to impede every defendant's rights by way of a blanket

27  Protective Order, yet take no special care in their own handling

28  of the data.  This is why Mr. Chow asks this Court to make all

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

14

1  aspects of the Protective Order reciprocal.

2      This is a unique Protective Order because it not only

3  dictates what can be shared with the public and media, but most

4  relevant to this argument, dictates security protocol on

5  defense.  The responsibility of the prosecutor as a

6  representative of the public surely encompasses a duty to

7  protect the societal interest in an open trial.  But this

8  responsibility also requires him to be sensitive to the due

9  process rights of a defendant in receiving a fair trial.  *A*

10  *fortiori*, the trial judge has the same dual obligation.

11  Impeding defense unilaterally without justification is

12  unwarranted and is an erosion of Due Process.

13      Most importantly, if the Government and this Court felt the

14  Subject Materials were so sensitive that it required a

15  burdensome blanket Protective Order, then it should have taken

16  responsible measures to ensure government compliance with the

17  spirit of the Order.  Anything less sends the message that it is

18  acceptable to burden defense with protective measures but that

19  the information is not so important as to require the Government

20  to be even slightly competent in their handling of these

21  valuable materials.  There cannot be an adequate justification

22  for imposing security measures on defense counsel but not

23  imposing equal security measures on the Government.  Imposing

24  security obligations on defense and refusing to impose equal

25  obligations on the Government is simply bad precedent.

26  ////

27  ////

28  ////

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

## CONCLUSION

The United States Attorney's Office has an obligation to be truthful and accurate in all matters, especially in matters regarding political corruption which affect San Francisco's ability to self-govern through democratic process. The United States is aware of this obligation as illustrated by the following quotation posted on their website:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.[16]

Failing to evaluate exactly how much discovery is at issue before moving for a Protective Order, thereby depriving the public of the right to know important information about governing officials, is the epitome of striking a foul blow because it led all the defense teams to believe the Government had more evidence than it actually had. This was a ploy to encourage witnesses to cooperate from the outset by intimidating defendants through exaggerating the amount of evidence against them. Even giving the Government the benefit of the doubt on the issue, it reflects incompetence.

Prosecutors in the Northern District are establishing an alarming trend in abusing Protective Orders. It is an attempt

---

16/ http://www.justice.gov/usao/dc/about/about.html quoting *Berger v. United States*, 295 U.S. 78, 88 (1935).

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   to shift workload to defendants with less resources, but this is

2   also part of a larger policy shift toward using the media and

3   social media to deal devastating blows to the accused while at

4   the same time restricting the accused of their rights to

5   disseminate information.  In a case such as this, and in other

6   cases in this District, such should not be tolerated by this

7   Court.  The time has come for the United States Attorneys to be

8   accountable for what they say in court.  The time has come for

9   this Court to take appropriate action to rectify what has

10  essentially become a procedural trajectory that harms the

11  public.  It is well established tht in a Totalitarian government

12  only the Government has access to the press.

13       In the modern day, if representatives of the Government are

14  to be permitted to conflate, misstate, and outright mislead

15  judges and defendants, then the American public suffers

16  considerable harm.  In a time where United States Attorneys

17  nationwide have been found to have been misleading judges[17]

18  regarding search warrants, electronic surveillance, and other

19  activities, this misrepresentation about the amount of data in

20  the Government's possession is critical and should not be

21  brushed aside.

22       For the foregoing reasons, Mr. Chow requests this Court

23  alter the Protective Order to align with reality.  Chow requests

24  that any Protective Order be revoked, or in the alternative,

25  that the Protective Order be reciprocal in that the Government

26  be held accountable for their security protocol regarding

27  Protected Materials.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

28  _____
         20/ See Exhibit C-I, an article from Electronic Frontier
    Foundation regarding federal prosecutors misleading judges.

1   DATED: July 24, 2014              Respectfully Submitted,

2                                      _/s/CURTIS L. BRIGGS____

3
                                      J. TONY SERRA
4                                      CURTIS L. BRIGGS
                                      GREGORY M. BENTLEY
5                                      Attorneys for Defendant
                                      KWOK CHEUNG CHOW
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-
1331

AFFIDAVIT OF CURTIS L. BRIGGS

I, CURTIS L. BRIGGS, declare:

I am an attorney licensed to practice in the State of California and the Northern District of California, and the attorney of record for defendant herein, Kwok Chow.  The statements in the accompanying MOTION OF RECONSIDERATION OF PROTECTIVE ORDER are true and correct to the best of my knowledge, based on my information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed July 24, 2014, at San Francisco, California.

CURTIS L. BRIGGS