MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    susan.badger@usdoj.gov
    waqar.hasib@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0196 CRB |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION |
| v. | |
| KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy," | SAN FRANCISCO VENUE |
| Defendants. | |

The defendant has filed a motion for reconsideration of the protective order issued by this Court governing disclosure of discovery materials. Docket No. 369. The motion for reconsideration violates the Local Rules, and accordingly should be dismissed on procedural grounds. Even if this Court reaches the merits, the motion is based not on facts but on spurious attacks on the integrity, honesty, and competence of the United States. For all of these reasons, the motion should be denied in its entirety.

I. **THE DEFENDANT'S MOTION SHOULD BE DISMISSED PROCEDURALLY BECAUSE IT VIOLATES THE LOCAL RULES**

Before addressing the merits, at the outset the United States notes that the defendant's motion for reconsideration does not comport with the requirements for such motions set forth in the Local Rules. Motions for reconsideration in criminal cases are governed by Civil Local Rule 7-9, by way of Criminal Local Rule 2-1. *See*, *e.g.*, *United States v. Kang*, 489 F.Supp.2d 1095, 1096 at n. 2 (N.D.Cal. 2007)(noting that in criminal cases, "[i]n this district, motions for reconsideration are governed by Civil Rule 7-9.")  Civil Local Rule 7-9 requires that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."  This the defendant has not done.  Where a defendant's motion violates local rules, courts are well within their discretion to dismiss the motion outright. *See*, *e.g.*, *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012). Accordingly, the defendant's argument should be dismissed procedurally for failure to comply with the Local Rules.

II. **THE DEFENDANT'S MOTION SHOULD BE DISMISSED BECAUSE IT IS BASED NOT ON FACTS, BUT ON SPURIOUS ATTACKS ON THE INTEGRITY, HONESTY,AND COMPETENCE OF THE UNITED STATES**

Even assuming the defendant had properly complied with the Local Rules and sought leave of court, his motion is meritless.  It is based not on fact, but on spurious attacks on the integrity, honesty, and competence of the United States.

The defendant anchors much of his motion on an assessment made by the United States in pleadings and in open court that discovery in this case involved multiple terabytes of information.  This assessment he describes as an "error," a "misrepresentation," a "deception," "nothing less than a fiction," and a "blatant, gross, and irresponsible misrepresentation to this Court by the Government," among other things. *Def. Mot*. at pgs. 10-12.  Unfortunately for him, despite his hyperbole, the facts bear no resemblance to his accusations.  As the United States represented in its status report filed shortly before the recent status conference in this case,

> [s]ubstantial discovery has been disclosed.  In particular, the United States has turned over the vast majority of FBI reports documenting this investigation.  Likewise, the United States has turned over the vast majority of audio and video….  This includes, to the best of counsel's knowledge, all consensually-recorded interactions between any of the defendants and any undercover employees...  This also includes

>**several terabytes** (TB) of video footage captured on pole cameras at various locations.  The United States has also turned over all communications intercepted pursuant to court-authorized wiretap orders, as well wiretap applications and supporting documents.

*Status Report*, Docket No. 409, pg. 3 (emphasis added).  In other words, the terabytes that the defendant says don't exist, exist.

To be perfectly fair to the defendant, because of technical difficulties opening and copying large hard drives, the terabytes of "video footage captured on pole cameras" described above were turned over only on July 25, 2014, the day after the defendant filed his motion.  But that they existed has never been in doubt; had counsel consulted with his court-appointed discovery coordinator prior to filing his motion, he would have been able to confirm this.  *See* Exhibit 1 (email chain between undersigned counsel and defense discovery coordinator describing difficulties in opening terabyte-sized hard drives containing video footage).  The United States therefore adamantly denies any and all of the defendant's spurious accusations that it has misled the Court (or anyone else, for that matter).

The defendant also suggests that a protective order is not necessary because, in his estimation, the United States only has 10,000 pages of documents to turn over, and "a handful of minimally trained staff" could redact those documents in days.  *Def. Mot*. at pg. 11.  First of all, the defendant offers no evidence for his conclusion that redacting 10,000 pages would take just a matter of days; moreover, the United States would never rely, as he suggests, on "minimally trained staff" to perform the critical task of reviewing discovery, especially where important issues of agent safety and improper disclosure of identities of innocent third parties are involved.  Most importantly, though, the defendant is wrong that the United States has only 10,000 pages of documents that would have to be redacted.  True, there are approximately 10,000 pages of FBI reports that have been turned over (they are Bates-numbered 6000001 – 609833).  However, the United States would also have to redact other voluminous documents that have been turned over, including wiretap applications, wiretap affidavits, 15 day reports, search warrant affidavits, and other documents.  The United States would also have to redact draft linesheets and transcripts of intercepted communications; these have not yet been turned over, as the parties continue to negotiate the terms of a stipulation barring the use of these drafts as cross examination material.  These draft linesheets and transcripts would be particularly burdensome to redact; agents and

paralegals familiar with the investigation would have to review each draft linesheet and transcript, and determine whether particular communications contained, for example, information about unindicted coconspirators or innocent third parties. There would likely be a second review by counsel for the United States before any final redactions could be made. Redacting audio and video would be an even more arduous task, requiring government employees to listen to and watch every minute of audio and video recorded in this multi-year investigation, mark the segments to be redacted, and then recopy all of the materials with the redact segments removed. It should be noted that even the defendant apparently concedes that this may not be "practical." Def. Mot. at pg. 11. Suffice to say, then, that redacting is a far more complicated, time-consuming task than the defendant suggests. If anything, the fact that numerous defendants have asked for a guide or roadmap to discovery materials should be an indicator to the Court of the vast amount of discovery materials at issue in this case. *See*, e.g., *Status Report* at pg. 4.

Finally, the defendant suggests that this Court should lift its protective order because there was a break-in at a business contracted by the United States to lodge copies of discovery material for distribution to the defendants. The United States struggles to find any logic to this argument. First of all, the fact that there was a break-in at all demonstrates precisely why a protective order is necessary – the discovery materials in this case contain information about the defendants, law enforcement personnel, unindicted co-conspirators, and innocent third parties, all of which could potentially be misused for improper purposes (i.e. anything other than preparing a defense to the charges in the indictment). Second, the defendant baldly asserts that the United States distributed discovery materials to the contracted business with "presumably no security protocol." The defendant offers no factual basis for this presumption. Importantly, it should be noted that no items were stolen from the business during the break-in, much less that any discovery materials from this case were compromised. *See* Defense Exhibit B. Third, the defendant suggests a laundry list of things that the FBI allegedly failed to do to investigate the break-in. Again, he offers no factual basis for these alleged failures. Indeed, his assumptions that the FBI did not conduct any investigation and that the United States was not concerned about the break-in are entirely speculative and baseless.

The defendant attempts to use the break-in as justification to impose reciprocal security obligations on the manner in which the United States handles discovery materials. This argument makes

as little sense now as it did when the defendant first raised it in his opposition to the United States' motion for a protective order. *See Def. Opp. to United States' Motion for Protective Order*, Docket No. 292, pgs. 13-14; *United States' Reply*, Docket No. 299, pg 6. The discovery materials belong to the United States, and have been in the United States' possession for the duration of this multi-year investigation, without any leaks or compromises. It is the United States that moved for a protective order to prevent their dissemination to unauthorized parties after indictments were issued. It is the United States that has expressed concern for the safety of its employees, the integrity of its ongoing investigations, and the reputation of uncharged innocent individuals whose names may have surfaced during the investigation. Moreover, there are already numerous restrictions imposed on the United States from using discovery materials for improper purposes. *See*, *e.g.*, *United States Attorney's Manual (USAM),* § 9-27.760 (prohibiting public disclosure of uncharged third parties); Fed.R.Crim.Pr. 6(e)(2)(B) (limiting government's ability to disclose matters occurring before the grand jury). Accordingly, reciprocity makes no sense.

**CONCLUSION**

The defendant's motion violates Local Rules requiring leave of court before motions to reconsider can be filed. Even on the merits, the motion is based not on facts but on spurious attacks on the integrity, honesty, and competence of the United States. For all of these reasons, the motion should be denied in its entirety.

DATED: August 7, 2014                    Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
WILLIAM FRENTZEN
SUSAN BADGER
S. WAQAR HASIB
Assistant United States Attorneys