JAMES J. BROSNAHAN (CA SBN 34555)
JBrosnahan@mofo.com
SOMNATH RAJ CHATTERJEE (CA SBN 177019)
SChatterjee@mofo.com
SETH A. SCHREIBERG (CA SBN 267122)
Sschreiberg@mofo.com
CHRIS W. MAGAÑA (CA SBN 287256)
CMagana@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
KEITH JACKSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.    3:14-CR-00196 (CRB) |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF FBI INTERNAL PROGRAM REVIEW OF UCE-4773 AND RELATED MATERIALS** |
| v. | |
| KEITH JACKSON, | |
| Defendant. | |
| | Date:      September 5, 2014 |
| | Time:      10:30 a.m. |
| | Magistrate Judge:    Hon. Joseph C. Spero |
| | Location:  Courtroom G, 15th Floor |

1

**NOTICE OF MOTION**

2          PLEASE TAKE NOTICE that on September 5, 2014, at 10:30 a.m., or as soon thereafter

3   as the matter may be heard, Defendant, through counsel, will and hereby does move for an order

4   compelling the Government to produce documents and information in discovery pursuant to Rule

5   16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v.*

6   *United States*, 405 U.S. 150 (1972), and *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

7          This Motion is based on this Notice of Motion and the attached Memorandum of Points

8   and Authorities, the files and records in this case, and any other evidence or argument that may

9   properly be presented to the Court.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ...................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.     INTRODUCTION .............................................................................................................1

II.    BACKGROUND ................................................................................................................2

      A.     UCE-4773 Was Central to the Government's Investigation of
            Keith Jackson ..........................................................................................................3

      B.     UCE-4773 Was Removed from the Operation for Financial
            Misconduct .............................................................................................................4

      C.     The Parties Have Met and Conferred, But Have Not Reached
            Agreement ...............................................................................................................5

III.   DEFENDANT IS ENTITLED TO BROAD DISCOVERY UNDER
      RULE 16, *BRADY, GIGLIO*, AND *HENTHORN*...........................................................7

      A.     Information Regarding UCE-4773's Financial Misconduct and the
            FBI's Investigation of UCE-4773 Is Material to the Defense and
            Constitutes *Brady* and *Giglio* Materials................................................................8

            1.     The Requested Discovery Includes Impeachment
                  Evidence.......................................................................................................9

            2.     The Discovery Is Relevant to the Development of an
                  Entrapment Defense.....................................................................................9

             3.     The Requested Discovery Is Relevant to a
                  Misconduct Defense...................................................................................10

            4.     The Requested Discovery Is Relevant to a
                  Suppression Motion ...................................................................................11

      B.     The True Identities of Undercover Agents and Confidential Sources
            Are Material to the Defense and Constitutes *Brady* and *Giglio*
            Materials.................................................................................................................12

CONCLUSION ............................................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Banks v. Dretke*,
5
    540 U.S. 668 (2004) ........................................................................................... 12

6

*Brady v. Maryland*,
    373 U.S. 83 (1963) ................................................................................. 1, 7, 8, 9
7

*Franks v. Delaware*,
8
    438 U.S. 154 (1978) ........................................................................................... 11

9

*Giglio v. United States*,
10
    405 U.S. 150 (1972) ...................................................................................... *passim*

11

*Roviaro v. United States*,
    353 U.S. 53 (1957) ...................................................................................... 12, 14
12

*Smith v. Illinois*,
13
    390 U.S. 129 (1968) .......................................................................................... 13

14

*United States v. Arechiga-Mendoza*,
15
    No. 13-1082, 2014 U.S. App. LEXIS 8817 (10th Cir. Colo. May 12, 2014) ................... 9, 13

16

*United States v. Armstrong*,
    C11-777 PJH DMR, U.S. Dist. LEXIS 149652 (N.D. Cal. Oct. 17, 2012) ........................... 14
17

*United States v. Bagley*,
18
    473 U.S. 667 (1985) ............................................................................................ 8

19

*United States v. Barrera-Moreno*,
20
    951 F.2d 1089 (9th Cir. 1991) ................................................................................. 10

21

*United States v. Bergonzi*,
    214 F.R.D. 563 (N.D. Cal 2003) ............................................................................... 7
22

*United States v. Bernal-Obeso*,
23
    989 F.2d 331 (9th Cir. 1993) ................................................................................. 8, 9

24

*United States v. Bryan*,
    868 F.2d 1032 (9th Cir. 1989) ................................................................................. 8
25

*United States v. Budziak*,
26
    697 F.3d 1105 (9th Cir. 2012) ................................................................................. 7

27

*United States v. Castillo-Basa*,
28
    478 F.3d 1025 (9th Cir. 2007) ................................................................................. 8

*United States v. Davis*,
  36 F.3d 1424 (9th Cir. 1994)...................................................................................... 10

*United States v. Delgado-Marrero*,
  744 F.3d 167 (1st Cir. 2014)....................................................................................... 9

*United States v. Fedroff*,
  874 F.2d 178 (3d Cir. 1989)........................................................................................ 10

*United States v. Gary*,
  No. 06 C 0631, 2007 U.S. Dist. LEXIS 5753 (N.D. Ill. Jan. 25, 2007)................................ 14

*United States v. Giordano*,
  416 U.S. 505 (1974).................................................................................................. 11

*United States v. Gonzalez, Inc.*,
  412 F.3d 1102 (9th Cir. 2005)..................................................................................... 11

*United States v. Gonzalo Beltran*,
  915 F.2d 487 (9th Cir. 1990)...................................................................................... 13

*United States v. Huerta*,
  No. C 06-669 SI, 2006 U.S. Dist. LEXIS 90739, (N.D. Cal. Dec. 1, 2006)..................... 9, 14

*United States v. Napolitano*,
  552 F. Supp. 465 (D.C.N.Y. 1982) ............................................................................. 12

*United States v. Nguyen*,
  No. CR12-212 RSL, 2013 U.S. Dist. LEXIS 77005 (W.D. Wash. May 31, 2013)............... 14

*United States v. Poindexter*,
  727 F. Supp. 1470 (D.C. Cir. 1989) .............................................................................. 7

*United States v. Price*,
  566 F.3d 900 (9th Cir. 2009)..................................................................................... 8, 9

*United States v. Ross*,
  372 F.3d 1097 (9th Cir. 2004)..................................................................................... 10

*United States v. Rubio-Lara*,
  No. CR 10-0914 TEH, 2011 U.S. Dist. LEXIS 88831 (N.D. Cal. Aug. 10, 2011) ................. 8

*United States v. Smith*,
  924 F.2d 889 (9th Cir. 1991)....................................................................................... 10

*United States v. Sterling*,
  724 F.3d 482 (4th Cir. 2013)....................................................................................... 14

*United States v. Stever*,
  603 F.3d 747 (9th Cir. 2010)........................................................................................ 7

*United States v. Urena*,
    S511CR1032 PAE, 2014 U.S. Dist. LEXIS 44017 (S.D.N.Y. Mar. 31, 2014) ............... 13, 14

*United States v. Wilson*,
    605 F.3d 985 (D.C. Cir. 2010) ................................................................................................. 9

*United States v. Zuno-Arce*,
    44 F.3d 1420 (9th Cir. 1995)................................................................................................... 8

**STATUTES**

18 U.S.C.
    § 1343................................................................................................................................... 4
    § 1346................................................................................................................................... 4
    § 1349................................................................................................................................... 4
    § 1951(a) ............................................................................................................................... 4
    § 1962(d) ............................................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Crim. P.
    Rule 16 ................................................................................................................................. 8
    Rule 16(a)(1)(E) ................................................................................................................... 7

1             **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendant Keith Jackson seeks an order compelling the United States ("the government") to produce the following:

(1) All information in its possession regarding an FBI internal investigation that caused lead undercover agent UCE-4773 to be removed from the investigation; and

(2) The true identities of the undercover agents ("UCEs") and Confidential Human Sources ("CHSes") that worked on the undercover sting operation giving rise to the pending charges; counsel agrees to keep the true identities of all UCEs and CHSes "Attorneys' Eyes Only" (allowing disclosure to investigators and experts) until further order of the Court.

The requested information is (a) material to the preparation of the defense under Federal Rule of Criminal Procedure 16 and (b) exculpatory or impeachment information discoverable under the *Brady*, *Giglio*, and *Henthorn* doctrines.

This prosecution is based largely on an undercover operation led by UCE-4599 and UCE-4773.  The government alleges UCE-4599 was introduced to Mr. Jackson in August 2010, and UCE-4599 introduced Mr. Jackson to UCE-4773 in September 2011.  Although Mr. Jackson had no criminal record, these agents resorted to extraordinary efforts to ensnare Mr. Jackson into their fabricated plots and operations, including by paying Mr. Jackson thousands of dollars for lawful consultation and advice.  The same undercover agent, UCE-4773, who paid Mr. Jackson those thousands of dollars, was reprimanded by the government for *financial misconduct*.  The requested discovery is pertinent to understanding why Mr. Jackson was initially targeted, and then pursued for more than three years, even after the FBI removed its lead undercover agent, UCE-4773, for financial misconduct.

UCE-4773's mishandling of the investigation is directly at issue and material to the defense.  The requested information is helpful to uncovering evidence relevant to impeach the testimony of UCE-4773 and other government witnesses, to potential defenses of entrapment and government misconduct, and to suppression motions.  Counsel is also entitled to obtain the true

1   identities of the agents and confidential sources used in this operation so that counsel can

2   investigate witnesses and prepare for trial.

3         Defendant therefore seeks specific categories of documents:

4     (1)   All information, documents, records, or other materials regarding any internal FBI
            program review of UCE-4773 related to his involvement in any undercover
5           operation in which Keith Jackson was involved, including, but not limited to:

6           a.   The name(s) of the person(s) responsible for initiating the internal FBI
                 program review.
7
8           b.   The name(s) of the FBI agent(s) or other government employee(s) who
                 worked on the FBI program review.

9     (2)   All information, documents, records or other materials related to any decision to
            remove UCE-4773 from any undercover operation in which Keith Jackson or
10          Leland Yee was a target.

11    (3)   The FBI's personnel file for UCE-4773, including any records or documents
            regarding any investigation into UCE-4773 for suspected infractions or violations
12          of FBI policy or guidelines, whether or not that investigation resulted in
            disciplinary action.
13
14    4)    All *Giglio* information relating to all agents, informants, and confidential human
            sources, including but not limited to:

15          a.   Copies of any criminal histories.

16          b.   All information, documents, recordings, or other materials regarding any
                 criminal, illegal, wrongful, or dishonest conduct, or any instance of lack of
17               compliance with FBI guidelines or policies.

18          c.   Promises or consideration given to any confidential source or informant in
                 exchange for collaboration with the government.
19
20    (5)   The true identities of all agents, informants, and confidential human sources of the
            United States who have had any communications with Mr. Jackson from August 1,
21          2010 to the present, including, without limitation, the agents identified as "UCE-
            4599," "UCE-4773," "UCE-4212," "UCE-4527," "UCE-4318," "UCE-4180,"
22          "UCE-3357," "CHS #11," or "CHS#12" in the Pascua Affidavit and Superseding
            Indictment.

23   **II.    BACKGROUND**

24         The original Indictment was filed on April 3, 2014.  [Dkt. 113.]  The government filed a

25   superseding indictment on July 24, 2014.  [Dkt. 370.]

26

27

28

1

2

### A.   UCE-4773 Was Central to the Government's Investigation of Keith Jackson

3   A preliminary review of the discovery provided indicates that Mr. Jackson was not

4   originally a target of the FBI's investigation into the Chee Kung Tong (CKT) and other

5   individuals.  For reasons unknown, UCE-4599, the agent in charge of the CKT investigation,

6   introduced Mr. Jackson to UCE-4773 around September 2011.  UCE-4773 posed as a

7   businessman from Atlanta interested in legitimate commercial real estate projects in

8   San Francisco, who ingratiated himself by engaging Mr. Jackson as a paid consultant.  UCE-4773

9   frequently took Mr. Jackson out for meals and social events, paid Mr. Jackson at least $37,000 in

10  consulting fees between February 2012 and May 2013[1] in exchange for Mr. Jackson's efforts to

11  pursue unquestionably legal commercial real estate opportunities, and promised Mr. Jackson large

12  financial benefits from any completed projects.  (*E.g.*, Chatterjee Decl. Exs. 1-6.)

13  UCE-4773 introduced Mr. Jackson to other government agents who also solicited

14  Mr. Jackson, including CHS #12, the purported owner of Well-Tech, which UCE-4773 presented

15  as a legitimate business he was promoting, and CHS #11, a developer from Dallas.  After the FBI

16  removed UCE-4773 from the operation, CHS #11 took over and introduced Mr. Jackson to UCE-

17  4180, a businessman from Phoenix.  While masquerading as legitimate business developers

18  interested in contributing to the Bay Area economy, CHS #11 and UCE-4180 paid Mr. Jackson

19  consulting fees to arrange meetings with various businesspeople and public officials in the Bay

20  Area to discuss various commercial real estate ventures and legislative efforts, and promised

21  Mr. Jackson he would have a share in completed investments.  (*E.g.*, Chatterjee Decl. Ex. 9 at

22  US400526-527.)

23  According to the government's sworn affidavits, UCE-4773's investigation was "largely

24  unrelated to the instant investigation into" certain other defendants and the CKT.  (Chatterjee

25  Decl. Ex. 7 at US400265-266.)  The government admits that, as of May 2012, UCE-4773 and

26

27  [1]After UCE-4773 was removed from the investigation, Keith Jackson was paid by UCE-
28  4599, who represented that the consulting fees were from UCE-4773.

1    Mr. Jackson had "not discussed [a co-defendant's] involvement in any of the Target Offenses of

2    the instant investigation."  (*Id.* at US400266.)

3        **B.    UCE-4773 Was Removed from the Operation for Financial**
             **Misconduct**
4

5        Based on the investigative work of UCE-4773, "the primary undercover agent used in this

6    branch of the investigation," on November 13, 2012, the AUSA's office applied for permission to

7    intercept the wire communications of Mr. Jackson and Senator Leland Yee.  (Chatterjee Decl.

8    Ex. 8 at US400343.)  Buried in a footnote of an FBI Special Agent's affidavit, which was offered

9    to demonstrate probable cause for the wiretap, the FBI revealed that it already had concerns about

10   UCE-4773's management of the undercover operation.  The FBI Special Agent admits that he

11   was "aware that there has been an internal FBI program review related to the financing and

12   financial record-keeping of the undercover program under which UCE 4773 was operating.  To

13   date, that review has not resulted in any formal findings or determinations regarding the

14   credibility of UCE 4773."  (Chatterjee Decl. Ex. 8 at US400283 n.2.)  The November 13, 2012

15   application was granted by the Court.  The defense asserts that the agents hid from the Court the

16   full story.

17       On February 8, 2013, the FBI Special Agent disclosed in a subsequent wiretap application

18   that there was a "pending internal investigation by [the] FBI regarding UCE-4773."  (Chatterjee

19   Decl. Ex. 9 at US400432 n.1.)  The government reported that, while "UCE 4773 may be

20   permitted to work on this case again," the internal investigation "caused the investigation to

21   withdraw UCE 4773 by utilizing a cover that UCE 4773 was working on business interests for

22   UCE 4599 in Panama and that UCE 4773's father had passed away."  (Chatterjee Decl. Ex. 9 at

23   US400432 n.1, US400529.)  UCE-4773's role in the investigation was replaced by CHS #11,

24   whose "importance … has increased significantly" due to UCE-4773's termination.  (*Id.* at

25   US400526.)  The government does not allege that UCE-4773 had any further contact with

26   Mr. Jackson, demonstrating that following the internal investigation, UCE-4773 was permanently

27   removed from the case.

28

1    Nonetheless, the government asserted that its application, and its belief that probable

2    cause existed to support the application, was based on UCE-4773's investigation, as well as

3    communications intercepted pursuant to the first wiretap application.  Subsequent wiretap

4    applications in April 2013, May 2013, and July 2013 are also based on UCE-4773's investigation,

5    and the fruits of those first wiretap applications.

6    The exact nature of UCE-4773's financial misconduct is unclear, but a preliminary review

7    of discovery provided by the government thus far indicates a pattern of outrageous behavior by

8    UCE-4773 before he was removed from the operation:

9    •    Paid Keith Jackson at least $37,000 in consulting fees between February 2012

10        and May 2013, and spent thousands more on meals and social events in an

11        attempt to ingratiate himself.

12   •    Arranged more than $20,000 in donations to a local elected official during the

13        first half of 2012.

14   •    Inquired about hosting a $250,000 fundraiser for a senior elected federal

15        official who visited San Francisco in May 2012.

16   •    Accepted a meeting with a prominent former athlete in August 2012 to discuss

17        investing in a hotel project.

18   UCE-4773's misconduct highlights the materiality and relevance of the identities of other agents

19   and informants, who may also have engaged in similar or related misconduct.

20   C.    **The Parties Have Met and Conferred But Have Not Reached
       Agreement**

21

22   On April 10, 2014, among other discovery requests, counsel requested the true identities

23   of all agents of the United States who had contact with Mr. Jackson throughout the operation.

24   The government did not respond to counsel's request.

25   On May 5, May 12, and May 22, 2014, the government produced discovery largely

26   consisting of audio and video recordings, summaries of those recordings, and the government's

27   applications for wiretaps.  The government did not disclose the identities of any agents of the

28   United States.

On June 18, 2014, Defendant requested that the government provide information regarding the program review that caused UCE-4773 to be removed from the investigation, as well as the true identities of UCE-4773 and his replacement, CHS #11.

The government's June 26, 2014 response did not deny that it is obligated to produce the categories of documents Defendant requested.  The government did not, however, agree to produce the materials, or set forth a timeline for production.  The government has also declined to state whether it will provide Defendant with the true identities of the undercover agents and confidential human sources.

The parties met and conferred on July 3, 2014 at the office of the Assistant United States Attorney to discuss Defendant's April 10, 2014 and June 18, 2014 letters.  The government admitted that Mr. Jackson is entitled to material regarding the internal investigation of UCE-4773 but stated that it had to follow unspecified "protocols" and would not commit to production.  The government refused to provide the true identities of undercover agents, confidential human sources, and informants because of alleged concerns for the safety of the undercover agents and a concern that revealing their identities may jeopardize current investigations.  The government indicated that it would consider disclosing the identities for Attorneys' Eyes Only, and making agents available for interviews with defense counsel.

On August 7, 2014, Defendant repeated his request for information regarding the program review that caused UCE-4773 to be removed from the investigation, as well as the true identities of undercover agents, CHSes, and informants.  On August 8, 2014, the parties met and conferred telephonically, but the government indicated it was not in a position to respond to Defendant's request.  On August 13, 2013, the parties spoke further, and the government advised Defendant to file a motion to compel.[2]

---

[2] A copy of discovery correspondence exchanged between the parties is attached. (Chatterjee Decl. Ex. 10.)

1
2

### III.    DEFENDANT IS ENTITLED TO BROAD DISCOVERY UNDER RULE 16, *BRADY, GIGLIO*, AND *HENTHORN*

3        "Federal Rule of Criminal Procedure 16 grants criminal defendants a broad right to

4    discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010); *see also United States v.*

5    *Poindexter*, 727 F. Supp. 1470, 1473 (D.C. Cir. 1989) ("The language and the spirit of the Rule

6    are designed to provide to a criminal defendant, in the interests of fairness, the widest possible

7    opportunity to inspect and receive such materials in the possession of the government as may aid

8    him in presenting his side of the case."). Rule 16(a)(1)(E)(i) requires the government to disclose

9    to the defense all documents and other materials "within the government's possession, custody, or

10   control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). "Evidence is

11   'material' under Rule 16 if it is helpful to the development of a possible defense." *United*

12   *States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012). "A defendant must make a threshold

13   showing of materiality, which requires a presentation of facts which would tend to show that the

14   Government is in possession of information helpful to the defense." *Stever*, 603 F.3d at 752

15   (quoting *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995), *cert. denied,* 115 S. Ct. 2617

16   (1995)). Evidence may be helpful, for example, because it "will play an important role in

17   uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting

18   impeachment or rebuttal." *United States v. Bergonzi*, 214 F.R.D. 563, 577 (N.D. Cal 2003)

19   (quotation omitted).

20       The government is also required by *Brady v. Maryland*, 373 U.S. 83 (1963), and its

21   progeny to produce the requested discovery. *Brady* imposes on the government an affirmative

22   duty to produce any evidence favorable to the defendant that is material to either guilt or

23   punishment. *See United States v. Bagley*, 473 U.S. 667, 674-75 (1985). The "proper test for

24   pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is

25   favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach

26   the prosecutor's witnesses." *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009)

27   (citations omitted). "[I]f doubt exists, it should be resolved in favor of the defendant and full

28   disclosure made . . . even if the evidence is not admissible so long as it is reasonably likely to lead

1  to admissible evidence." *Id.*; *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972);

2  *United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993) (government has a duty "to turn

3  over to the defense in discovery *all* material information casting a shadow on a government

4  witness's credibility").

5       The prosecution's disclosure obligations under *Brady* and Rule 16 extend to exculpatory

6  and impeachment evidence in the possession of "any of its agents involved in [Defendant's]

7  prosecution." *Price*, 566 F.3d at 909 (reversing conviction where witness's police record was not

8  disclosed). FBI records such as those requested here are indisputably "in the custody of the

9  government." *United States v. Castillo-Basa*, 478 F.3d 1025, 1039 (9th Cir. 2007); *United*

10 *States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995) (same). The disclosure obligation further

11 extends to information in the possession, custody, or control of (1) any other agencies involved in

12 the investigation and (2) other governmental agencies where the prosecution has knowledge of

13 and access to the information. *See United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).

14       A.    **Information Regarding UCE-4773's Financial Misconduct and the**
              **FBI's Investigation of UCE-4773 Is Material to the Defense and**
15            **Constitutes *Brady, Giglio,* and *Henthorn* Materials**

16       Information regarding a "suspension imposed on [an FBI agent] for professional

17 misconduct" must be produced because it is "helpful to the defense." *See United States v. Rubio-*

18 *Lara*, No. CR 10-0914 TEH, 2011 U.S. Dist. LEXIS 88831, at *2-4 (N.D. Cal. Aug. 10, 2011).

19 In *Rubio-Lara*, the government sought to withhold evidence that an ICE Special Agent had been

20 suspended for professional misconduct unrelated to the pending case. The Court ordered

21 disclosure under *Brady* and *Henthorn*. "The evidence contained in the employment records of

22 [the agent] is favorable to the defense in that it demonstrates a willingness by [the agent] to

23 engage in professional misconduct." *Id.* at *5. "Information that is favorable to the defense being

24 material, this information is material and must be disclosed." *Id.*

25       While the FBI's internal review of UCE-4773 is impeachment material under *Brady* and

26 *Giglio*, this evidence is material not only because it "casts a shadow" on UCE-4773's credibility,

27 but may be just the "'tip of an iceberg' of other evidence that" reveals further misconduct by the

28 FBI during its sweeping investigation. *Bernal-Obeso*, 989 F.2d at 333. The evidence is also

discoverable under Rule 16 because it is "helpful" to the development of entrapment and government misconduct defenses, and is pertinent for suppression motions.  This information is also discoverable under *Henthorn*.

### 1.    The Requested Discovery Includes Impeachment Evidence

An FBI internal investigation into misconduct of undercover officers is "significant potential impeachment evidence" that is "required" to be produced by *Brady* and *Giglio*.  *United States v. Delgado-Marrero*, 744 F.3d 167, 196-197 (1st Cir. 2014); *United States v. Wilson*, 605 F.3d 985, 1006-1007 (D.C. Cir. 2010) ("government had a duty under *Brady* to make timely pretrial disclosure" of internal investigation of lead undercover officer).  Impeachment evidence "is especially likely to be material" because "it impugns the testimony of a witness who is critical to the prosecution's case."  *United States v. Price*, 566 F.3d 900, 914 (9th Cir. 2009) (quoting *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005); *Rubio-Lara*, 2011 U.S. Dist. LEXIS 88831 at *4 (Evidence of misconduct is material where testimony places into issue agent's "character insofar as his professional duties are concerned.").

The defense is entitled to discovery regarding the internal investigation and UCE-4773's personnel file, as well as the true identity of UCE-4773, in order to investigate his involvement and testimony in other cases, as well as in this investigation.

### 2.    The Discovery Is Relevant to the Development of an Entrapment Defense

Defendant is entitled to "gather information relevant to an entrapment defense."  *United States v. Huerta*, No. C 06-669 SI, 2006 U.S. Dist. LEXIS 90739, at 3-4 (N.D. Cal. Dec. 1, 2006); *United States v. Arechiga-Mendoza*, No. 13-1082, 2014 U.S. App. LEXIS 8817, at *9-10 (10th Cir. Colo. May 12, 2014) (district court erred in failing to compel disclosure of information regarding CI that was relevant to entrapment defense).  "Entrapment has two elements: (1) government inducement to commit the crime; and (2) the absence of predisposition to commit the crime."  *United States v. Ross*, 372 F.3d 1097, 1108 (9th Cir. 2004) (citations omitted).  "Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations,

1    threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or

2    friendship." *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994).  Evidence that the

3    government "wined and dined" Mr. Jackson over a lengthy period while "develop[ing] a friendly

4    association" intended to "ingratiate" UCE-4773 is "sufficient evidence of inducement" to warrant

5    a jury instruction.  *United States v. Fedroff*, 874 F.2d 178, 184-185 (3d Cir. 1989).

6        As explained above, UCE-4773 induced Mr. Jackson, who has no criminal record, to work

7    on his behalf by paying him a monthly consulting fee—totaling at least $37,000 over sixteen

8    months— and promising him future upside on commercial real estate deals.  In addition, UCE-

9    4773 paid for numerous meals and social outings.  UCE-4773 was later investigated and

10   terminated for *financial misconduct*.  Discovery regarding the financial misconduct and the

11   internal investigation into UCE-4773 for conduct in this investigation is helpful to uncovering

12   additional facts regarding UCE-4773's financial dealings with Mr. Jackson and others, including

13   inducements made by the government during the course of this investigation.

14                **3.      The Requested Discovery Is Relevant to a Misconduct Defense**

15       Information regarding the FBI's investigation and UCE-4773's financial misconduct is

16   relevant to developing a misconduct defense.  A court may exercise its supervisory powers to

17   dismiss an indictment where the government engages in outrageous conduct, even though it falls

18   short of a due process violation.  *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th

19   Cir. 1991).  For example, outrageous conduct may occur when an agent's or informant's actions

20   amount to "engineering and direction of [a] criminal enterprise from start to finish." *United*

21   *States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).  Here, UCE-4599, UCE-4773, CHS #11, and

22   UCE-4180 engineered and directed alleged criminal activity.  For example, by the government's

23   own allegations, UCE-4599 initiated discussions of guns sales, offered to facilitate a drug

24   transaction, and solicited Mr. Jackson to assist with an alleged murder for hire of a fictitious

25   victim.  (*See*, e.g., Affidavit of SA E. Pascua in support of Complaint, March 24, 2014 at 52, 68,

26   78.)  Meanwhile, UCE-4773 and other agents paid Mr. Jackson a monthly consulting fee, made

27   promises of future economic benefits through partnerships, and gradually exerted financial and

28   psychological pressure on Mr. Jackson.  The internal investigation into UCE-4773 is relevant to

1    showing and revealing facts regarding the government's misconduct, including misconduct by

2    UCE-4773.

3            **4.**      **The Requested Discovery Is Relevant to a Suppression Motion**

4          Information regarding the internal investigation and removal of UCE-4773 is material to

5    potential suppression motions.  Wiretaps should "be used with restraint and only where the

6    circumstances warrant the surreptitious interception of wire and oral communications." *United*

7    *States v. Giordano,* 416 U.S. 505, 515 (1974).  "Congress created important statutory

8    prerequisites for obtaining wiretap orders, including the requirement that the government must

9    prove necessity before it may utilize the unconventional method of wiretaps as an investigative

10   tool." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005).  To demonstrate

11   necessity, the government must establish that traditional investigative techniques have failed, are

12   unlikely to succeed, or are too dangerous to try.  *Id.*  Otherwise, the fruits of the improperly

13   obtained wiretap should be suppressed.  *Id.* at 1117.  Further, if a wiretap affidavit omits material

14   information, defendant is entitled to a *Franks* hearing.  *See Franks v. Delaware*, 438 U.S. 154

15   (1978); *Gonzalez*, 412 F.3d at 1112 (reckless omission of material information grounds for

16   suppression).

17         Here, the timing of and omissions within the government's first wiretap application raise

18   serious questions regarding the necessity for a wiretap and the integrity of the application that

19   warrant a *Franks* hearing.  The government alleges that UCE-4773 began his investigation in

20   September 2011 and gathered evidence of criminal conduct involving Mr. Jackson and others for

21   fourteen months.  In November 2012, relying primarily on UCE-4773, the government suddenly

22   asserted its need for a wiretap, claiming that UCE-4773 was unable to "fully penetrate the inner

23   circles of trust" of the targets.  (Chatterjee Decl. Ex. 8 at US400343.)  Beyond a cursory footnote,

24   the government failed to disclose any details regarding the pending internal probe into UCE-

25   4773, the "primary undercover agent used in this branch of the investigation." (*Id.* at US400343-

26   US400344.)  One month after the wiretap application was granted, the government removed

27   UCE-4773 from the operation for misconduct.

28

The Special Agent's claim that UCE-4773's work was insufficient because Mr. Jackson and other targets were "guarded and secretive" appears disingenuous. The government knew that its lead agent was under investigation, and that if UCE-4773 was terminated and discredited, the government could not argue to the Court that it needed a wiretap because its lead investigator engaged in misconduct. The defense is entitled to discovery to assess the nature of UCE-4773's misconduct in order to determine how much the FBI Special Agent knew about UCE-4773's alleged misconduct, whether UCE-4773's work could validly form the basis for probable cause, and whether the government's necessity claim was fabricated.

**B.      The True Identities of Undercover Agents and Confidential Sources Are Material to the Defense and Constitute *Brady* and *Giglio* Materials**

The true identity of agents and confidential human sources should be disclosed because their identity would be "relevant and helpful" to the defense. *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957); *United States v. Napolitano*, 552 F. Supp. 465, 487 (D.C.N.Y. 1982) (*Roviaro* requires disclosure of undercover FBI agents identities to avoid prejudice to defendant). Disclosure is required whether or not the agent or informant intends to testify at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does not call as a trial witness"). This is especially true where, as here, counsel is aware that one undercover agent was removed from the investigation for misconduct. The defense is entitled to investigate whether any other agents, sources, or informants compromised the investigation by engaging in misconduct.

Assuming the government intends to call many of its undercover agents and confidential human sources as trial witnesses, their true identities should also be disclosed to avoid a Sixth Amendment violation. "[W]hen the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives." *Smith v. Illinois,* 390 U.S. 129, 131 (1968). "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate

1  the right of cross-examination itself." *Id.*  Thus, the Confrontation Clause requires that counsel

2  have access to the true identities of UCEs and CHSes in order to adequately prepare for cross-

3  examination.  *See United States v. Urena*, S511CR1032 PAE, 2014 U.S. Dist. LEXIS 44017, at

4  *16 (S.D.N.Y. Mar. 31, 2014) (requiring disclosure of true identity of undercover agent under

5  stipulation and/or protective order to "enable counsel to conduct an independent investigation").

6          The Ninth Circuit applies a three-prong test to determine whether disclosure of a

7  confidential source is required: "(1) the degree of the informant's involvement in the criminal

8  activity; (2) the relationship between the defendant's asserted defense and the likely testimony of

9  the informant; and (3) the government's interest in nondisclosure." *United States v. Gonzalo*

10  *Beltran*, 915 F.2d 487, 489 (9th Cir. 1990) (citation omitted).  Here, all three factors strongly

11  favor disclosure of the government agents' identities.

12          *First*, the government's agents were inextricably linked to the alleged criminal activity.

13  The government's own allegations contend that UCE-4599 approached Mr. Jackson about

14  obtaining weapons, planning an alleged fictitious murder for hire, and obtaining a proclamation

15  for the CKT.  The government also alleges UCE-4599 facilitated a drug deal that forms the basis

16  of Count 110.  UCE-4773 was the lead investigator of the charges related to alleged honest

17  services fraud, and along with UCE-4180, UCE-3357, CHS #11, and CHS#12, engineered the

18  alleged conduct that forms the basis of those allegations.

19          *Second*, Mr. Jackson might call the government's agents and informants to testify.  *See*

20  *Arechiga-Mendoza*, 2014 U.S. App. LEXIS 8817, at *9-10 (discovery of identities required even

21  where government "indifferent" to calling informant as witness).  These agents and sources spent

22  almost four years wining and dining Mr. Jackson, paying him consulting fees, making promises

23  regarding future payments, and pretending to befriend Mr. Jackson in order to play on his

24  sympathies.  A full investigation into their actions, motives, and prior conduct is necessary to

25  Mr. Jackson's defense.

26          *Third*, whatever public interest there is in protecting the agents' or sources' identities is

27  outweighed by their centrality to the alleged criminal activity.  *See Roviaro*, 353 U.S. at 64-65

28  (disclosure required because defendant and informer were main participants in alleged criminal

1    conduct); *United States v. Gary*, No. 06 C 0631, 2007 U.S. Dist. LEXIS 5753 (N.D. Ill. Jan. 25,

2    2007) (requiring disclosure of agent's and informant's identity where they participated in

3    controlled drug buys with defendants).  In any event, the government's interest in nondisclosure

4    is adequately addressed by an agreement to maintain the identities of undercover agents and

5    informants as "Attorneys' Eyes Only" pursuant to a protective order.  *See United States v.*

6    *Armstrong*, C11-777 PJH DMR, U.S. Dist. LEXIS 149652 (N.D. Cal. Oct. 17, 2012) (ordering

7    disclosure of informant's identity where informant was key witness only to counsel and pursuant

8    to protective order); *United States v. Nguyen*, No. CR12-212 RSL, 2013 U.S. Dist. LEXIS 77005

9    (W.D. Wash. May 31, 2013) (ordering disclosure of informant's identity that was helpful for an

10   entrapment defense only to counsel and pursuant to a protective order); *Huerta*, 2006 U.S. Dist.

11   LEXIS 90739 at *3 (concern over informant safety addressed by protective order); *Urena*, 2014

12   U.S. Dist. LEXIS 44107 at *5 (concern for undercover agent's safety addressed by stipulation

13   and/or protective order disclosing identity to counsel only and permitting agent to testify using

14   alias).  Having addressed the government's concern for the agents' and informants' safety, their

15   identities should be disclosed.  *See United States v. Sterling*, 724 F.3d 482, 516 (4th Cir. 2013)

16   (citing *Maryland v. Craig*, 497 U.S. 836, 848-849 (1990) (affirming district court's disclosure of

17   identity of CIA officers to defendant and counsel).

18                                              **CONCLUSION**

19          For all of the reasons stated above, Defendant's motion to compel discovery should be

20   granted, and the government should be ordered to produce the following categories of evidence in

21   the possession of the government:

22          (1)    All information, documents, records, or other materials regarding any internal FBI
                   program review of UCE-4773 related to his involvement in any undercover
23                 operation in which Keith Jackson was involved, including, but not limited to:

24                 a.    The name(s) of the person(s) responsible for initiating the internal FBI
                         program review.
25
                   b.    The name(s) of the FBI agent(s) or other government employee(s) who
26                       worked on the FBI program review.

27          (2)    All information, documents, records or other materials related to any decision to
                   remove UCE-4773 from any undercover operation in which Keith Jackson or
28                 Leland Yee was a target.

1    (3)    The FBI's personnel file for UCE-4773, including any records or documents
            regarding any investigation into UCE-4773 for suspected infractions or violations
2           of FBI policy or guidelines, whether or not that investigation resulted in
            disciplinary action.

3

4    4)     All *Giglio* information relating to all agents, informants, and confidential human
            sources, including but not limited to:

5           a.     Copies of any criminal histories.

6           b.     All information, documents, recordings, or other materials regarding any
                   criminal, illegal, wrongful, or dishonest conduct, or any instance of lack of
7                  compliance with FBI guidelines or policies.

8           c.     Promises or consideration given to any confidential source or informant in
                   exchange for collaboration with the government.

9

10   (5)    The true identities of all agents, informants, and confidential human sources of the
            United States who have had any communications with Mr. Jackson from August 1,
            2010 to the present, including, without limitation, the agents identified as "UCE-
11          4599," "UCE-4773," "UCE-4212," "UCE-4527," "UCE-4318," "UCE-4180,"
            "UCE-3357," "CHS #11," or "CHS#12" in the Pascua Affidavit and Superseding
12          Indictment.

13   Dated: August 14, 2014                          Respectfully submitted,

14                                                   MORRISON & FOERSTER LLP

15

16                                           By:     */s/ James J. Brosnahan*
                                                     JAMES J. BROSNAHAN
17
                                                     Attorneys for Defendant
18                                                   KEITH JACKSON

19

20

21

22

23

24

25

26

27

28