JAMES J. BROSNAHAN (CA SBN 34555)
JBrosnahan@mofo.com
SOMNATH RAJ CHATTERJEE (CA SBN 177019)
SChatterjee@mofo.com
SETH A. SCHREIBERG (CA SBN 267122)
SSchreiberg@mofo.com
CHRIS W. MAGAÑA (CA SBN 287256)
CMagana@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant KEITH JACKSON

MICHAEL STEPANIAN (CA SBN 037712)
JENNIFER L. NAEGELE (CA SBN 232643)
819 Eddy Street
San Francisco, CA 94109
Telephone: (415) 771-6174
Facsimile: (415) 474-3748
naegelelaw@gmail.com

Attorneys for Defendant TINA LIANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KWOK CHEUNG CHOW, et al.<br><br>Defendants. | Case No. 3:14-CR-00196-CRB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COUNT ONE AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   November 12, 2014<br>Time:   10:00 a.m.<br>Judge:   Hon. Charles R. Breyer<br>Court:   Courtroom 6, 17th Floor |

1

## <u>NOTICE OF MOTION</u>

2      PLEASE TAKE NOTICE that on November 12, 2014, at 10:00 a.m., or as soon thereafter

3  as the matter may be heard, Defendants named in Count One, through counsel, will and hereby do

4  move for an order dismissing Count One of the Superseding Indictment pursuant to Federal Rule

5  of Criminal Procedure 12, the Fifth and Sixth Amendments to the Constitution, as well as Federal

6  Rule of Criminal Procedure 7(c)(1).

7      This motion is based on this Notice of Motion and the attached Memorandum of Points

8  and Authorities, the files and records in this case, and any other evidence or argument that may

9  properly be presented to the Court.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND—COUNT ONE ................................................ 1

III.    LEGAL STANDARD FOR MOTION TO DISMISS ..................................... 3

IV.     COUNT ONE MUST BE DISMISSED BECAUSE IT FAILS TO
        SUFFICIENTLY STATE A RICO CONSPIRACY VIOLATION ................. 4

        A.      Count One Fails to Allege Defendants Knowingly and Intentionally
                Entered into an Agreement to Further or Facilitate the Goals of the
                Alleged Enterprise .................................................................................. 5

        B.      The Indictment Fails to Allege that Defendants were aware of the
                Essential Nature and Scope of the CKT Enterprise and Intended to
                Participate in the Enterprise .................................................................. 7

        C.      The Indictment Fails to Allege a Pattern of Racketeering Activity ...... 8

V.      COUNT ONE FAILS TO PROVIDE DEFENDANTS ADEQUATE
        NOTICE SO AS TO ENABLE DEFENDANTS TO ADEQUATELY
        PREPARE A DEFENSE AND TO ASSERT DOUBT JEOPARDY IN
        FUTURE PROSECUTIONS .......................................................................... 10

        A.      Count One is Impermissibly Vague and Fails to Enable Defendants
                to Adequately Prepare a Defense .......................................................... 10

        B.      Count One Is Insufficient Because It Does Not Enable Defendants
                to Assert Double Jeopardy in Future Prosecutions .............................. 12

VI.     COUNT ONE FAILS TO ALLEGE SUFFICIENT FACTS AS TO
        SPECIFIC DEFENDANTS ........................................................................... 13

        A.      The Indictment Fails to Allege That Keith Jackson Agreed to
                Commit or Committed any Racketeering Activities Related to the
                CKT Enterprise ..................................................................................... 13

        B.      Tina Liang Should be Dismissed from Count One .............................. 14

1

## TABLE OF AUTHORITIES

2

CASES                                                                    PAGE(S)

3

4
*Baumer v. Pachl,*
    8 F.3d 1341, 1346 (9th Cir. 1993)........................................................................... 6

5
*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989).................................................................................... 9, 10

6

7
*Hamling v. United States,*
    418 U.S. 87 (1974)............................................................................................ 3

8

9
*Harrison v. United States,*
    7 F.2d 259 (2d Cir. 1925)................................................................................ 16

10

11
*Howard v. Am. Online Inc.,*
    208 F.3d 741 (9th Cir. 2000)........................................................................ 7, 9

12
*Oki Semiconductor Co. v. Wells Fargo Bank,*
    298 F.3d 768 (9th Cir. 2002)........................................................................... 5

13

14
*Russell v. United States,*
    369 U.S. 749 (1962)..................................................................................... 3, 4

15

16
*Salinas v. United States,*
    522 U.S. 52 (1997)....................................................................................... 5, 6

17
*Salinas v. United States,*
    552 U.S. 52 (1997)............................................................................................ 8

18

19
*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
    473 U.S. 479 (1985).......................................................................................... 9

20
*United States v. Blinder,*
    10 F.3d 1468 (9th Cir. 1993)............................................................................ 6

21

22
*United States v. Brandao,*
    539 F.3d 44 (1st Cir. 2008).............................................................................. 5

23

24
*United States v. Brooklier,*
    685 F.2d 1208 (9th Cir.1982)........................................................................... 9

25
*United States v. Castellano,*
    610 F. Supp. 1359 (S.D.N.Y. 1985).................................................................. 7

26

27
*United States v. Cecil,*
    608 F.2d 1294 (9th Cir. 1979)..................................................................... 3, 11

28

*United States v. Concemi,*
   957 F.2d 942 (1st Cir. 1992) ............................................................................ 5

*United States v. Davidoff,*
   845 F.2d 1151 (2d Cir. 1988) ........................................................................... 11

*United States v. DeCologero,*
   364 F.3d 12 (1st Cir. 2004) .............................................................................. 12

*United States v. Dennis,*
   458 F. Supp. 197 (E.D. Mo. 1978) .................................................................. 13

*United States v. Du Bo,*
   186 F.3d 1177 (9th Cir. 1999) ....................................................................... 3, 4

*United States v. Erwin,*
   793 F.2d 656 (5th Cir. 1986) ...................................................................... 13, 14

*United States v. Fernandez,*
   388 F.3d 1199 (9th Cir. 2003) ....................................................................... 6, 7

*United States v. Fiander,*
   547 F.3d 1036 (9th Cir. 2008) ....................................................................... 6, 9

*United States v. Fleming,*
   215 F.3d 930 (9th Cir. 2000) ............................................................................ 4

*United States v. Gatto,*
   746 F. Supp. 432 (D.N.J. 1990) ..................................................................... 11

*United States v. Gonzalez-Ruiz,*
   369 F. Supp. 2d 1151 (N.D. Cal. 2005) ........................................................... 4

*United States v. Knight,*
   659 F.3d 1285 (10th Cir. 2011) ...................................................................... 10

*United States v. Local 560, Intern. Broth. of Teamsters,*
   581 F. Supp. 279 (D.N.J. 1984) ....................................................................... 7

*United States v. Neapolitan,*
   791 F.2d 489 (7th Cir. 1986)................................................................. 11, 14, 15

*United States v. Nerone,*
   563 F.2d 836 (7th Cir. 1977)........................................................................... 13

*United States v. Omer,*
   395 F.3d 1087 (9th Cir. 2005) .......................................................................... 3

*United States v. Scotto,*
   641 F.2d 47 (2d Cir. 1980)............................................................................... 13

*United States v. Starrett*,
   55 F.3d 1525 (11th Cir. 1995)...................................................................................... 7

*United States v. Tille*,
   729 F.2d 615 (9th Cir. 1984)................................................................................... 5, 8

*United States v. Tsinhnahijinnie*,
   112 F.3d 988 (9th Cir. 1997)..................................................................................... 3

*United States v. Turkette*,
   452 U.S. 576 (1981)................................................................................................. 15

*United States v. Yarbrough*,
   852 F.2d 1522 (9th Cir. 1988)................................................................................. 13

*United States v. Ziskin*,
   360 F.3d 934 (9th Cir. 2003)................................................................................... 12

STATUTES AND RULES

18 U.S.C.
   § 371.................................................................................................................. 5, 15
   § 1961(4)............................................................................................................. 1, 2
   § 1961(5).................................................................................................................. 8
   § 1962(c)......................................................................................................... 2, 4, 8
   § 1962(d)....................................................................................................... *passim*

Fed. R. Crim. P.
   7(c)(1)...................................................................................................................... 3
   12(b)(3)(B).............................................................................................................. 4

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3

        Count One of the Superseding Indictment alleges a racketeering conspiracy pursuant to 18

4

U.S.C. § 1962(d) against seventeen named defendants. This count is insufficiently pled in a

5

number of respects. The government's generalized allegations of conspiracy followed by a

6

disparate list of alleged acts by defendants cannot state a claim for RICO conspiracy under 18

7

U.S.C. § 1962(d). Defendants therefore request that Count One be dismissed.

8

**II.      FACTUAL BACKGROUND—COUNT ONE**

9

        The original indictment was filed on April 3, 2014 (Dkt. 113), and superseded on July 24,

10

2014 (Dkt. 370). Count One of the Superseding Indictment ("Indictment") alleges that the Ghee

11

Kung Tong, also known as the CKT, is a criminal enterprise as defined 18 U.S.C. § 1961(4)[1] and

12

that the seventeen identified defendants agreed to conduct and participate, directly or indirectly,

13

in the conduct of the affairs of the CKT enterprise through a pattern of racketeering activity.

14

        The CKT has existed "since at least the late 1800s" and "was formed primarily for civic

15

purposes to benefit the communities of Chinese immigrants and Chinese Americans . . . ."

16

(Indictment at 1.) The government readily concedes that the CKT provides "positive legal

17

community functions and activities" in addition to "criminal functions and activities." (*Id.*) Some

18

members of the CKT were "strictly involved in legal functions and activities of CKT," while

19

other members were also involved in illegal activities. (*Id.*) Members of the CKT are alleged to

20

have titles, such as "Dragonhead" or "General;" "red pole" or "red stick," or "enforcer" or

21

"soldier;" "white paper fan," or "organizer." (*Id.*) Each title has a corresponding numerical

22

equivalent, and all members with such titles are "familiar with Triad handshakes and hand signs,

23

used to identify other individuals with Trial status." (*Id.*) Triads, according to the indictment, are

24

"international criminal organizations based in China." (*Id.*)

25

26

27

        [1] The statute provides in pertinent part: "'[E]nterprise' includes any . . . group of
individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

28

At some point on a date "unknown . . . but since at least 2005" and continuing "up through and including the present" named defendants knowingly entered into a conspiracy to violate 18 U.S.C. § 1962(c). (Indictment at 5-6.) According to the Indictment, CKT members were expected to protect the name, reputation, and status of the group and its individual members through acts of intimidation, violence and other criminal activity. (*Id.* at 2.) Members of the CKT engaged in criminal activity, including narcotics distribution, assault, robbery, extortion, collection of unlawful debt, murder for hire, money laundering, trafficking in stolen goods, illegal firearms possession, and obstruction of justice. (*Id.* at 2.) The CKT, including its leadership, members, and associates, is alleged to constitute an "associated in fact" "enterprise" as defined by 18 U.S.C. § 1961(4). The CKT's purposes are alleged to be many, but essentially boil down to preserving and protecting power, profit, intimidation, and survival of the CKT and its members. (*See* Indictment at 3-4.)

In support of this elaborate scheme, the government is unable to place the named defendants within any specific criminal endeavor organized or directed by the CKT. Nor does the government attempt to identify the roles, either by title or by conduct, of named defendants in the CKT structure. Rather, after describing the CKT, the government makes generic and perfunctory allegations against "defendants" as a group.[2]  There is no "overt acts" section identifying the racketeering activity that individual members allegedly engaged in to facilitate the objectives of the CKT enterprise. Instead, all that is provided is a laundry list of statutes and a generic claim of "multiple acts" in violation of these statutes.  (Indictment at 6.)  There is no explanation as to how these acts relate to one another or to a broader organizational endeavor beyond the conclusory umbrella term of "pattern of racketeering activity." (*See id.*)

---

[2] The generic allegations merely parrot the language of RICO conspiracy case law and statutes. *See, e.g.*, *id.* at 5-6 (defendants "unlawfully, knowingly and intentionally did conspire to . . . conduct and participate, directly and indirectly, in the conduct of the affairs of the CKT enterprise through a pattern of racketeering activity"); *id.* at 6 ("[E]ach defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.").

1    As set forth below, these generalized allegations of a conspiracy followed by a disparate

2    list of alleged statutory violations by unknown members of the conspiracy cannot state a claim for

3    violation under 18 U.S.C. § 1962(d), and must be dismissed.

4    **III.    LEGAL STANDARD FOR MOTION TO DISMISS**

5    One of the fundamental protections afforded to defendants in criminal cases is that they be

6    provided sufficient information regarding the offense they are accused of committing so that they

7    may adequately prepare a defense. See *Russell v. United States*, 369 U.S. 749, 763-64 (1962). In

8    order to furnish such information, an indictment must be a "plain, concise, and definite written

9    statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). This

10   requirement serves several purposes:

> [T]o enable [defendant] to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge.

14   *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). Each element of the offense must be

15   sufficiently pled in the indictment. *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005)

16   (failure to plead an element of an offense "is a fatal flaw requiring dismissal of the indictment.")

17   Additionally, an indictment is insufficient if it does not apprise the defendant "with reasonable

18   certainty, of the nature of the accusation against him[.]" *Russell*, 369 U.S. at 765 (internal

19   quotation marks and citation omitted); *accord Hamling v. United States*, 418 U.S. 87, 117-18

20   (1974) The mere recitation of statutory language "must be accompanied with such a statement of

21   the facts and circumstances as will inform the accused of the specific offense, coming under the

22   general description, with which he is charged." *Russell*, 369 U.S. at 765; *see also United States*

23   *v. Tsinhnahijinnie*, 112 F.3d 988, 992 (9th Cir. 1997) ("A person is entitled under the Fifth

24   Amendment not to be held to answer for a felony except on the basis of facts which satisfied a

25   grand jury that he should be charged."); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir.

26   1999) (reversing where "indictment fail[ed] to ensure that he was prosecuted only 'on the basis of

27   the facts presented to the grand jury'") (quoting *United States v. Rossi*, 27 F.3d 404, 414 (9th Cir.

28   1994)..

1    In *Russell*, the Supreme Court condemned the lack of specificity in the indictment therein

2    at issue, noting:

> 3    A cryptic form of the indictment in cases of this kind requires the
>     defendant to go to trial with the chief issue undefined. It enables his
> 4    conviction to rest on one point and the affirmance of the conviction
>     to rest on another. It gives the prosecution free hand on appeal to
> 5    fill in the gaps of proof by surmise or conjecture.

6    *Id.* at 766. The *Russell* Court found that the defendant "was met with a different theory, or

7    by no theory at all, as to what the [subject of the charge] had been. Far from informing [the

8    defendant] of the nature of the accusation against him, the indictment instead left the prosecution

9    free to roam at large—to shift its theory of criminality so as to take advantage of each passing

10   vicissitude of the trial and appeal." *Id.* at 768.

11   An indictment that fails to allege the elements of an offense sufficiently must be

12   dismissed. Fed. R. Crim. P. 12(b)(3)(B) (authorizing motions to dismiss an indictment for "a

13   defect in the indictment"); *Du Bo*, 186 F.3d at 1179-80 (failure to plead an element cannot be held

14   harmless). Defects in an indictment cannot be cured by a bill of particulars—even though it

15   provides notice. *United States v. Fleming*, 215 F.3d 930, 934-35 (9th Cir. 2000). In considering a

16   pretrial motion to dismiss, the district court is limited to the face of the indictment and must

17   accept the facts alleged as true. *United States v. Gonzalez-Ruiz*, 369 F. Supp. 2d 1151, 1152-53

18   (N.D. Cal. 2005).

19       **IV.    COUNT ONE MUST BE DISMISSED BECAUSE IT FAILS TO**
             **SUFFICIENTLY STATE A RICO CONSPIRACY VIOLATION**
20

21   Count One alleges a Title 18, U.S. Code, section 1962(d) RICO conspiracy where the

22   alleged enterprise is the CKT.[3] To establish a violation of section 1962(d), the government must

23   allege sufficient facts to show that each defendant agreed to participate, directly or indirectly, in

24

25       [3] Section 1962(d) provides in pertinent part: "It shall be unlawful for any person to
     conspire to violate any of the provisions of subsection . . . (c) of this section. 18 U.S.C. § 1962(d).
26   Subsection (c), in turn, provides that it "shall be unlawful for any person employed by or
     associated with any enterprise engaged in, or the activities of which affect, interstate or foreign
27   commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's
     affairs through a pattern of racketeering activity . . . ." § 1962(c).
28

1  the affairs of the CKT enterprise through a pattern of racketeering activity. Of particular

2  importance is that the factual allegations of the indictment, including the words, actions, and

3  relationship between the parties, must raise an inference that an agreement exists. See *Oki*

4  *Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002); *United States v.*

5  *Concemi*, 957 F.2d 942, 950 (1st Cir. 1992).[4]

6      Count One of the Indictment fails to satisfy basic pleading requirements because it does

7  not allege that defendants knowingly entered into an agreement to further or facilitate the CKT's

8  alleged criminal endeavor, fails to allege that defendants were aware of the nature and scope of

9  the CKT enterprise, and fails to allege that their individual acts are linked in any way to the

10 purpose and objectives of the CKT enterprise.

11     The Indictment's shortcoming is particularly troubling because a RICO conspiracy is

12 "even more comprehensive than the general conspiracy offense in § 371." *Salinas v. United*

13 *States*, 522 U.S. 52, 63 (1997). According to the *Salinas* Court, section 1962(d) broadens

14 conspiracy coverage by omitting the requirement of an overt act. The Ninth Circuit has further

15 explained that a RICO conspiracy "does not require proof that a defendant participated

16 personally, or agreed to participate personally, in two predicate offenses." *United States v. Tille*,

17 729 F.2d 615, 619 (9th Cir. 1984). The government should not be allowed to further stretch the

18 bounds of RICO conspiracy liability by doing little more than listing the names of seventeen

19 individuals in conjunction with a mere laundry list of statutes representing a supposed pattern of

20 racketeering activity.

21   **A.    Count One Fails to Allege Defendants Knowingly and Intentionally
22         Entered into an Agreement to Further or Facilitate the Goals of the
         Alleged Enterprise**

23     A RICO conspiracy requires that the defendant knowingly and intentionally agree to

24 participate in the conduct of the affairs of the enterprise through a pattern of racketeering. In order

25 to establish a RICO conspiracy, "[a] conspirator must intend to further an endeavor which, if

26

27 _____

      [4] Civil case holdings interpreting the RICO statute are equally applicable in criminal
28 proceedings. *See, e.g.*, *United States v. Brandao*, 539 F.3d 44, 51 (1st Cir. 2008).

completed, would satisfy all of the elements of a substantive criminal [RICO] offense . . . ."

*Salinas*, 522 U.S. at 65. No overt act is required, and "it suffices that [a defendant] adopt the goal

of furthering or facilitating the criminal endeavor" even if he "agree[s] to facilitate only some of

the acts leading to the substantive offense." *Id.* It is this agreement that is the essence of a RICO

conspiracy. *See United States v. Blinder*, 10 F.3d 1468, 1477 (9th Cir. 1993) (citing *United States*

*v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir.1982), *cert. denied*, 459 U.S. 1206 (1983).

Courts have steadfastly required a showing of an agreement among co-conspirators before

casting the wide-reaching RICO net. In *Baumer v. Pachl*, the Ninth Circuit dismissed a complaint

that was "bereft of any allegation of 'conspiracy' or 'agreement'" since "[a] RICO conspiracy

'requires the assent of each defendant who is charged . . . .'" 8 F.3d 1341, 1346 (9th Cir. 1993)

(quoting *Brooklier*, 685 F.2d at 1222). *See also United States v. Fiander*, 547 F.3d 1036, 1041-42

(9th Cir. 2008) (upholding RICO conspiracy allegations only where they "alleged that [defendant]

entered into an agreement to commit the substantive offense" and "knowingly agreed to facilitate

[the objective of the enterprise]"); *United States v. Fernandez*, 388 F.3d 1199, 1129 (9th Cir.

2003) ("'A single conspiracy can only be demonstrated by proof that an overall agreement existed

among the conspirators.'") (quoting *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir.

1999)).

The Indictment makes no effort to put the named defendants on notice as to how or when

they allegedly agreed to conduct or participate in the affairs of the criminal CKT enterprise

through a pattern of racketeering activity. With respect to the alleged CKT enterprise, the entirety

of the Indictment contains only one allegation concerning an agreement between the parties to

violate § 1962(d). (Indictment at 6.) ("It was part of the conspiracy that each defendant agreed

that a conspirator would commit at least two acts of racketeering activity in the conduct of the

affairs of the enterprise."). This statement is overly general and vague. The Indictment lacks any

allegation showing that the named defendants agreed to further the affairs of the alleged CKT

enterprise. There are no allegations in the Indictment that would permit an inference that "each

defendant must necessarily have known that others were also conspiring to participate in the same

1  enterprise through a pattern of racketeering activity." *See United States v. Starrett*, 55 F.3d 1525,

2  1543-44 (11th Cir. 1995)(quoting *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir. 1991).

3      The Indictment lists "multiple acts" of dealing in controlled substances, extortion, money

4  laundering, sale and receipt of stolen property, dealing in contraband cigarettes, and murder-for-

5  hire, but there are no facts alleged setting out the circumstances of these events, or any of the

6  defendants' involvement in such activity. (*See* Indictment at 6.) Instead of being able to prepare a

7  defense, each named defendant is left guessing what it is that he did to facilitate the CKT

8  enterprise. Accordingly, Count One should be dismissed against all defendants for failure to

9  allege the required element of an agreement to conduct or participate in the enterprise through a

10  pattern of racketeering.

11  **B.      The Indictment Fails to Allege that Defendants were aware of the
           Essential Nature and Scope of the CKT Enterprise and Intended to
12          Participate in the Enterprise**

13      The Ninth Circuit has made clear that, in addition to an agreement, liability for RICO

14  conspiracy hinges on showing that the defendant was "'aware of the essential nature and scope of

15  the enterprise and intended to participate in it.'" *Howard v. Am. Online Inc.*, 208 F.3d 741, 751

16  (9th Cir. 2000) (quoting *Baumer*, 8 F.3d at 1346); *Fernandez*, 38 F.3d at 1230; s*ee also United*

17  *States v. Local 560, Intern. Broth. of Teamsters*, 581 F. Supp. 279, 332 (D.N.J. 1984) ("[P]roof of

18  a state of mind apart from that required from the commission of the predicate offenses must be

19  demonstrated."). RICO requires proof "that the defendant was aware of the existence of a group

20  of persons, organized into a structure of some sort, and engaged in ongoing activities, which the

21  government can prove falls within the definition of an enterprise . . . ." *United States v.*

22  *Castellano*, 610 F. Supp. 1359, 1401 (S.D.N.Y. 1985).

23      There are no allegations in the Indictment that would permit an inference that "each

24  defendant must necessarily have known that others were also conspiring to participate in the same

25  enterprise through a pattern of racketeering activity." *See Starrett*, 55 F.3d at 1543-44. The

26  Indictment makes no effort, and no mention, of any of the defendants' awareness of the "nature

27  and scope" of the enterprise or intent to participate in it. The name of each individual subject to

28  Count One is mentioned only once in Count One, and even then only as a list of seventeen

1    individuals, each identified as "person employed by and associated with CKT". (Indictment at 5.)

2    Beyond this singular mention there is no reference to any of the defendants' involvement in,

3    knowledge of, or intent to join in the criminal activities of the CKT enterprise.

4            This cannot be for lack of trying as the government goes through great lengths to describe

5    the historical development of the CKT dating back to its role in supporting the overthrow of the

6    Qing Dynasty in the 1800s. (Indictment at 1.) The government also makes no effort to match

7    names to the descriptive titles it identifies the CKT as utilizing, such as "Dragonhead" or "Dai

8    Lo." Despite this rich historical information, there is no description of what the individual

9    defendants knew of the CKT enterprise or of its alleged criminal activities. Even assuming, that

10   the identified individuals were "members or associates" of the CKT organization, there is no

11   suggestion that CKT membership necessarily entailed awareness of and assent to join a criminal

12   conspiracy. Membership or association with the CKT could be entirely legitimate by the

13   government's own admission. (*See* Indictment at 1 ("Some members of CKT were strictly

14   involved in legal functions and activities of CKT.") As such, more is required of the government

15   to allege that the named defendants were aware of the essential nature and scope of the CKT

16   enterprise and intended to join it. The Indictment is lacking in that respect and Count One must be

17   dismissed.

18                  **C.      The Indictment Fails to Allege a Pattern of Racketeering Activity**

19           An essential element of a RICO conspiracy charge is that the agreement if carried to

20   fruition would constitute a substantive RICO violation. The predominant elements of a § 1962(c)

21   are (1) the conduct of the affairs (2) of an enterprise (3) through a pattern of (4) racketeering

22   activity. The "multiple acts" identified in the Indictment as representing a "pattern of racketeering

23   activity" constitute at best a hodgepodge of conduct that fails to provide a coherent picture of a

24   "pattern of racketeering activity" undertaken by the alleged CKT enterprise.

25           A "pattern of racketeering" is defined to "require[] at least two acts of racketeering

26   activity . . . ." 18 U.S.C. § 1961(5). *See United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984).

27   To establish the required "pattern" element the government need not prove that any one co-

28   conspirator committed an overt act. *Salinas v. United States*, 552 U.S. 52 (1997). The allegations

1    must show that co-conspirators agreed that "someone would commit two predicate acts." *See*

2    *Fiander*, 547 F.3d at 1041. Moreover, merely proving two predicate acts would not suffice to

3    establish a pattern because "the mere fact that there are a number of predicates is no guarantee

4    that they fall into any arrangement or order." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236

5    (1989). A pattern cannot be "formed by 'sporadic activity'" or by "'committing two widely

6    separated and isolated criminal offenses.'" *Id.* at 239 (citations omitted). A "pattern" requires "the

7    showing of a relationship between the predicates and the threat of continuing activity." *Id.* It is

8    the factor of "*continuity plus relationship* which combines to produce a pattern. *Id.* (emphasis in

9    original).

10        The "relationship" element requires that the criminal acts "have the same or similar

11   purposes, results, participants, victims, or methods of commission, or otherwise are interrelated

12   by distinguishing characteristics and are not isolated events." *Howard*, 208 F.3d at 749 (citing

13   *H.J.*, 492 U.S. at 240); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (the

14   purpose of RICO is not to target "sporadic" criminal activity or the "isolated offender," but to

15   prevent the infiltration of legitimate businesses by continuing criminal activity); *accord*

16   *Brooklier*, 685 F.2d at1222 (9th Cir. 1982). The continuity requirement is "established where the

17   predicates can be attributed to a defendant operating as part of a long-term association that exists

18   for criminal purposes." *H.J.*, 492 U.S. at 242-43. "Predicate acts extending over a few weeks or

19   months and threatening no future criminal conduct do not satisfy this requirement: Congress was

20   concerned in RICO with long-term criminal conduct." *Id.* at 239-240. In addition, predicate acts

21   construing the "pattern" must bear some relation to each other.

22        Here, the Indictment does nothing more than provide a laundry list of statutes representing

23   "racketeering acts" purportedly violated by the CKT enterprise. Count One provides no

24   description of how these acts were committed, who committed them, how they further the goals

25   of the supposed conspiracy, and certainly no indication as to how these acts are related.[5] This is

26

27        [5] It should be noted that the facts and allegations identified in Count One are not
     incorporated by reference to any of the other counts in the indictment, nor vice versa.

28

precisely what the Supreme Court deemed inappropriate. *See id.* at 255 (Scalia, J. concurring) ("It is clear to me from the prologue of the statute . . . that the word 'pattern' was meant to import some requirement beyond the mere existence of multiple predicate acts."). Count One is bereft of any description of these acts and it is impossible to tell from the face of the Indictment how these acts are interrelated.

Not only is a "relationship" between these acts lacking, but so too is the required element of "continuity." The only references to dates in all of Count One are to the founding of the CKT at some point in the "late 1800s" (Indictment at 1) and a vague reference to the supposed start date of the CKT conspiracy "on a date unknown . . . but since at least 2005." (Indictment at 5.) The Indictment alleges that certain racketeering acts occurred as part of this conspiracy, but fails to provide any dates as to their commission. Based on a reading of the Indictment, there is no way to tell whether these are disparate acts that occurred over a period of nearly ten years or whether they actually represent the degree of continuity contemplated by the RICO statute. Absent a further showing that these acts were conducted on behalf of and in furtherance of the alleged CKT enterprise and its objectives, these acts represent nothing more than disorganized outbursts of "garden-variety" "criminals" rather than the well-orchestrated plans of organized racketeers that are the target of RICO. *See United States v. Knight*, 659 F.3d 1285, 1288 (10th Cir. 2011).

## V.   COUNT ONE FAILS TO PROVIDE DEFENDANTS ADEQUATE NOTICE SO AS TO ENABLE DEFENDANTS TO ADEQUATELY PREPARE A DEFENSE AND TO ASSERT DOUBT JEOPARDY IN FUTURE PROSECUTIONS

### A.   Count One is Impermissibly Vague and Fails to Enable Defendants to Adequately Prepare a Defense

Count One is impermissibly vague and fails to provide defendants with constitutionally adequate notice of the specific RICO conspiracy offense to which they allegedly agreed. This deficiency prevents defendants from preparing an adequate defense against the charge. Further, it enables the government to in effect "move the goalposts" as it relates to the agreed upon acts that make up the racketeering activity. As a result, there is a risk that defendants may be convicted for patterns of racketeering activity different from those presented to the grand jury. Thus, Count One should be dismissed in its entirety.

A conspiracy indictment fails if it does not allege sufficient facts to enable the proper preparation of a defense and to ensure that the defendants are prosecuted on the facts presented to the grand jury. *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979). In *Cecil*, failure to restrict the conspiracies to a definite time frame, coupled with bare allegations of where the conspiracies occurred and the names of alleged coconspirators, rendered the conspiracy charges insufficient. *Id.* Sister Circuits have cautioned that where RICO conspiracies are concerned, heightened specificity is required. "With the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). The Seventh Circuit's well-reasoned analysis in *United States v. Neapolitan* makes clear why this is so:

> Under the statutory scheme the predicate acts are not only important "elements of the crime" but they are also, by definition, distinct offenses. Because RICO provides increased penalties for the commission of these predicate crimes in a specified context, the failure to specify the underlying criminal activity in the indictment can effectively preclude the exact identification of what is being charged.

*United States v. Neapolitan*, 791 F.2d 489, 501 (7th Cir. 1986), *rev'd on other grounds by Boyle v. United States*, 556 U.S. 938 (2009). In *United States v. Gatto*, 746 F. Supp. 432, 460 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991), the Third Circuit held that a RICO conspiracy indictment that failed to specify predicate acts beyond generic allegations (e.g., "collection of unlawful debt") was insufficient, and required the government to specify names of participants, specific dates, and locations of the alleged predicate acts.

Count One is impermissible vague precisely because it fails to specify predicate acts beyond the generic allegations deemed insufficient in *Gatto.* Alluding to "multiple acts" and then providing a laundry list of statutes purportedly violated by alleged members of the CKT conspiracy, without also providing necessary factual details, leaves defendants guessing as to what conduct they and others engaged in that form the basis of Count One. Defendants cannot prepare a defense to unspecified conduct, the punishment for which may subject them to

1   significant jail time. More specificity than what the government has alleged is required for the

2   Indictment to withstand dismissal.

3       **B.      Count One Is Insufficient Because It Does Not Enable Defendants to
           Assert Double Jeopardy in Future Prosecutions**

4

5       A second concern arises from the overall vagueness of Count One. Without the essential

6   factual allegations in support of the RICO conspiracy, the Indictment encourages repetitive

7   prosecution for the same alleged conduct and leaves the charged conspirators unable to assert

8   double jeopardy in a future prosecution.

9       Courts look to the specific facts alleged in the indictment to determine whether two

10  patterns of racketeering activity are the same for double jeopardy purposes. See *United States v.*

11  *DeCologero*, 364 F.3d 12, 18 (1st Cir. 2004) (specific facts include "the time, the place, the

12  people, and the nature and scope of the activities involved in each indictment"); see also *United*

13  *States v. Ziskin*, 360 F.3d 934 (9th Cir. 2003) (in determining whether two conspiracy counts

14  place defendant in double jeopardy, the Ninth Circuit considers (1) differences in periods of time

15  covered by alleged conspiracies; (2) places where conspiracies alleged to occur; (3) persons

16  charged as coconspirators; (4) overt acts alleged to have been committed; and (5) statutes alleged

17  to have been violated).

18      Here, the Indictment fails to allege any essential facts other than the identities of the

19  alleged members of the CKT enterprise. It fails to allege "the time, the place, the people, and the

20  nature and scope of the activities" that form the basis of the RICO conspiracy charge. Without

21  alleging specific facts as to the acts that make up the racketeering activity (through which the

22  defendants allegedly agreed to conduct the affairs of an enterprise), defendants are precluded

23  from asserting double jeopardy in future prosecutions.

24

25

26

27

28

VI.    **COUNT ONE FAILS TO ALLEGE SUFFICIENT FACTS AS TO SPECIFIC DEFENDANTS**

A.    **The Indictment Fails to Allege That Keith Jackson Agreed to Commit or Committed any Racketeering Activities Related to the CKT Enterprise**

Aside from being insufficient and vague as to all of the defendants named in Count One, the RICO charges in Count One against Mr. Jackson should be dismissed because the Indictment fails to allege that Mr. Jackson agreed to commit or committed any racketeering activities related to the activities of the alleged CKT enterprise.

"Racketeering activity alone does not violate RICO.  Rather, the activity must further the affairs of the enterprise." *United States v. Erwin*, 793 F.2d 656, 671 (5th Cir. 1986).  RICO requires that there be a "nexus" between the enterprise and the racketeering activity. *United States v. Yarbrough*, 852 F.2d 1522, 1544 (9th Cir. 1988); *Erwin*, 793 F.2d at 670-72 (evidence failed to establish nexus between defendant's drug sales and operation of criminal enterprise from which he occasionally purchased drugs). A nexus exists "when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *Yarbrough*, 852 F.2d at 1544; *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980) ("Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient.").  Courts hold that RICO charges fail when the alleged racketeering activity lacks a sufficient nexus with the alleged enterprise.  *See, e.g. United States v. Nerone*, 563 F.2d 836, 851-51 (7th Cir. 1977) (reversing conviction where government failed to present evidence that gambling ring was sufficiently related to the allege enterprise); *United States v. Dennis*, 458 F. Supp. 197, 198-99 (E.D. Mo. 1978) (mere fact that defendant employed by enterprise and collected unlawful debts on premises of enterprise does not establish sufficient nexus to support RICO violation).

Here, the Indictment fails to allege any nexus at all, let alone a sufficient nexus, between the CKT enterprise and any racketeering conduct allegedly committed by Mr. Jackson or any racketeering activity that the government alleges that Mr. Jackson agreed to commit.  *First*, Count

One is completely devoid of any factual allegations regarding any of the alleged racketeering acts agreed to or committed by any members or associates of the CKT, let alone any agreed to or committed by Mr. Jackson. To the point, Count One makes no allegation that Mr. Jackson agreed that any person would commit two predicate offenses that have a sufficient nexus with the CKT. *Second*, none of the counts against Mr. Jackson appearing elsewhere in the Indictment are incorporated into Count One. *Third*, even if the Court considers other counts charged against Mr. Jackson, none of those counts involve the CKT.  None of the other counts charged against Mr. Jackson involve predicate offenses that the CKT enterprise enabled Mr. Jackson to commit by virtue of his alleged position or involvement in the affairs of the CKT.  And, none of the other counts involve predicate offenses that are related to the activities of the CKT.

At best, the Indictment alleges that the CKT is an enterprise that engaged in legal and illegal activity and that Mr. Jackson allegedly engaged in predicate offenses that are not related to the activities of the CKT. These allegations are insufficient. Without alleging the required *nexus* between the CKT enterprise and predicate offenses committed or agreed to by Mr. Jackson, the government cannot charge Mr. Jackson with a RICO conspiracy involving the CKT enterprise. *See Erwin*, 793 F.2d at 670-72; *Neapolitan*, 791 F.2d at 499 (noting that a defendant who agrees to the commission of at least two criminal acts, but does not consent to the involvement of an enterprise does not commit conspiracy to violate RICO, even if he is affiliated with a RICO enterprise). That Mr. Jackson may have had a relationship to the CKT or other members of the enterprise is of no matter.  RICO is not satisfied when the r*acketeering activity* has no connection, or only a fortuitous connection to the enterprise.

### B.     Tina Liang Should be Dismissed from Count One

Tina Liang should not be joined in Count 1. Ms. Liang is charged with two substantive counts. In Count 81, Ms. Liang is accused of participating in a single reverse sting operation wherein she allegedly purchased stolen liquor from an undercover agent. Fellow RICO defendants Kwok Cheung Chow and George Nieh, as well as non-RICO defendants Jane Liang (Tina's sister) and Bryan Tilton (Jane's husband), are also charged in this count. In Count 208, Ms. Liang is accused of growing marijuana with her brother-in-law, Bryan Tilton.

As the Seventh Circuit has stressed, "RICO is a remedial, as opposed to substantive, statute." *Neapolitan*, 791 F.2d at 495, citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985); *United States v. Turkette*, 452 U.S. 576, 589 (1981); and The Statement of Findings of the Organized Crime Control Act of 1970, 84 Stat. 923 (Congressional purpose is "to seek the eradication of organized crime in the United States ... by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crimes."). "The provisions of section 1962 do not create "new crimes" but serve as the prerequisites for the invocation of increased sanctions for conduct which is proscribed elsewhere in both federal and state criminal codes." *Neapolitan*, 791 F.2d at 495, citing Blakey Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies*, 53 Temp.L.Q. 1009, 1021 (1980) ("RICO is not a criminal statute; it does not make criminal conduct that before its enactment was not already prohibited, since its application depends on the existence of 'racketeering activity' that violates an independent criminal statute. In addition, its standards of unlawful, i.e., criminal or civil conduct are sanctioned by both criminal and civil remedies. RICO, in short, is a 'remedial' statute."). "Thus, the use of the term 'RICO conspiracy,' to the extent it is used to refer to a substantive offense that is distinct from any other conspiracy under 18 U.S.C. § 371, is to some extent a misnomer. Section 1962(d), like the section's other provisions, is only applicable when the defendant has violated other laws in a context that implicates RICO." *Neapolitan*, 791 F.2d at 495.

In other words, by enacting the RICO statute, Congress intended to <u>stop</u> activity and to put an end to organized crime's infiltration of legitimate business. Here, Tina Liang has no prior criminal history. She is alleged only to have participated in a single reverse sting operation and to have grown marijuana. Is this really a *pattern of racketeering activity*? Could prosecuting someone like Ms. Liang under the RICO statute possibly be the intent of Congress? This is a preposterous idea.

Lest we not forget, nine decades after Judge Learned Hand's memorable quote, conspiracy remains "that darling of the modern prosecutor's nursery." *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925).

### CONCLUSION

For the foregoing reasons, Count One should be dismissed.

Dated: October 3, 2014                    Respectfully submitted,

MORRISON & FOERSTER LLP


By: */s/ James J. Brosnahan*
    JAMES J. BROSNAHAN

Attorneys for Defendant
KEITH JACKSON


LAW OFFICE OF MICHAEL STEPANIAN


By: */s/ Michael Stepanian*
    MICHAEL STEPANIAN
    JENNIFER NAEGELE

Attorneys for Defendant
TINA LIANG