1   JAMES J. BROSNAHAN (CA SBN 34555)
    JBrosnahan@mofo.com
2   SOMNATH RAJ CHATTERJEE (CA SBN 177019)
    SChatterjee@mofo.com
3   SETH A. SCHREIBERG (CA SBN 267122)
    SSchreiberg@mofo.com
4   CHRIS W. MAGAÑA (CA SBN 287256)
    CMagana@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   Attorneys for Defendant
    KEITH JACKSON

9

10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13

| 14  UNITED STATES OF AMERICA, | Case No.   3:14-CR-00196 (CRB) |
|---|---|
| 15              Plaintiff, | **DEFENDANT KEITH JACKSON'S NOTICE OF MOTION AND** |
| 16       v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 17  KEITH JACKSON, | **MOTION TO DISMISS COUNT 2 AND COUNTS 213-221** |
| 18              Defendant. | Date:     November 12, 2014 |
| 19  | Time:    10:00 a.m. |
| 20  | Judge:   Hon. Charles Breyer Location:  Courtroom 6, 17th Floor |

21

22

23

24

25

26

27

28

1   **NOTICE OF MOTION**

2   　　　　PLEASE TAKE NOTICE that on November 12, 2014, at 10:00 a.m., or as soon thereafter

3   as the matter may be heard, Defendant Keith Jackson, through counsel, will and hereby does

4   move for an order dismissing Counts 2 and 213-221 of the Superseding Indictment pursuant to

5   Federal Rule of Criminal Procedure 12.

6   　　　　This Motion is based on this Notice of Motion and the attached Memorandum of Points

7   and Authorities, the files and records in this case, and any other evidence or argument that may

8   properly be presented to the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ....................................................................................................... 2

III. LEGAL STANDARD ............................................................................................... 3

IV.  THE HONEST SERVICES FRAUD AND WIRE FRAUD COUNTS
     SHOULD BE DISMISSED BECAUSE THE GOVERNMENT FAILS TO
     ALLEGE AN EXPLICIT *QUID PRO QUO* AND OTHER ESSENTIAL
     ELEMENTS (COUNTS 215-221; 18 U.S.C. §§ 2, 1343, 1346, 1349) ...................... 4

     A.   Campaign Contributions Are Protected Speech.................................................. 4

     B.   The Privilege of Legislative Immunity Further Restricts Judicial
          Inquiry into Legislators' Motives ................................................................... 5

     C.   Criminal Liability for Accepting a Campaign Contribution Requires
          an Explicit *Quid Pro Quo* ........................................................................... 7

          1.   An Explicit *Quid Pro Quo* Requires a Clear and
               Unambiguous Promise .......................................................................... 8

          2.   An Explicit *Quid Pro Quo* Requires a Specific
               Official Act........................................................................................... 8

     D.   The Honest Services Fraud Charges Do Not Allege an Explicit
          *Quid Pro Quo* ............................................................................................ 9

          1.   The Indictment Does Not Allege an Explicit Promise........................... 10

          2.   The Government Does Not Allege an "Official Act" ............................. 11

     E.   The Honest Services Fraud Statute Is Void for Vagueness as
          Applied Here ............................................................................................ 13

     F.   The Government Fails to Allege a Material Misstatement or
          Omission .................................................................................................. 14

     G.   The Wire Fraud Charges Fail to Provide Sufficient Notice................................ 15

V.   THE HOBBS ACT CHARGES SHOULD BE DISMISSED BECAUSE
     THEY DO NOT ALLEGE A *QUID PRO QUO* OR IMPACT ON
     COMMERCE (COUNTS 213-214; 18 U.S.C. § 1951(a))........................................ 15

     A.   Counts 213 and 214 Do Not Allege a *Quid Pro Quo*. ................................... 15

     B.   The Hobbs Act Charges Should Be Dismissed Because the
          Government Has Not Alleged an Effect on Commerce..................................... 17

VI.  COUNT TWO FAILS TO STATE A RICO CONSPIRACY (18 U.S.C. §
     1962(d))................................................................................................................... 17

A.   The Indictment Fails to Satisfy the Heightened Pleading Standard Required Where Core Political Speech Is Implicated in a RICO Charge ................................................................................................ 18

B.   Count Two Does Not Sufficiently Allege a Pattern of Racketeering ................. 19

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*McNally v. United States,*
    483 U.S. 350 (1987),.................................................................... 9, 13

*Citizens United v. Fed. Election Comm'ns,*
    558 U.S. 310 (2010) ................................................................... 12, 16

*City of Santa Cruz v. Super. Ct.,*
    40 Cal. App. 4th 1146 (1995)................................................................ 7

*Cnty. of Los Angeles v. Super. Ct.,*
    13Cal. 3d 721 (1975) ........................................................................ 7

*Evans v. United States,*
    504 U.S. 255 (1992) ..................................................................... 8, 15

*Fed. Election Comm'n v. Wisconsin Right to Life,*
    551 U.S. 449 (2007) ......................................................................... 5

*Filarsky v. Delia,*
    132 S. Ct. 1657 (2012) ...................................................................... 7

*First Nat'l Bank of Boston v. Bellotti,*
    435 U.S. 765 (1978) ..................................................................... 12, 17

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ........................................................................ 19

*Howard v. Am. Online Inc.,*
    208 F.3d 741 (9th Cir. 2000)................................................................ 19

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,*
    440 U.S. 391 (1979) ......................................................................... 6

*McCormick v. United States,*
    500 U.S. 257 (1991) ..................................................................... 4, 5,15

*McCutcheon v. Fed. Election Comm'n,*
    134 S. Ct. 1434 (2014) ................................................................. 4, 5, 14

*Oxnard Harbor Dist. v. Local Agency Formation Comm'n,*
    16 Cal. App. 4th 259 (1993)................................................................ 7

*Russell v. United States,*
    369 U.S. 749 (1962) ........................................................................ 3

*San Joaquin Local Agency Formation Comm'n v. Super. Ct.,*
    162 Cal. App. 4th 159 (2008).................................................................................. 7

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
    473 U.S. 479 (1985)....................................................................................... 19

*Skilling v. United States,*
    561 U.S. 358 (2010).............................................................................. 4, 7, 13

*Sorich v. United States,*
    129 S. Ct 1308 (2009)....................................................................................... 13

*United States v. Biaggi,*
    853 F.2d 89 (2d Cir. 1988)........................................................................ 11, 12

*Spallone v. United States,*
    493 U.S. 265 (1990).............................................................................................. 6

*Tenney v. Brandhove,*
    341 U.S. 367 (1951).............................................................................................. 6

*United States v. Bernhardt,*
    840 F.2d 1441 (9th Cir. 1988)................................................................... 3, 15

*United States v. Brooklier,*
    685 F.2d 1208 (9th Cir. 1982)............................................................................ 19

*United States v. Carpenter,*
    961 F.2d 824 (9th Cir.1992)............................................................... *passim*

*United States v. Davidoff,*
    845 F.2d 1151 (2d Cir. 1988)............................................................................ 18

*United States v. Du Bo,*
    186 F.3d 1177 (9th Cir. 1999).............................................................................. 3

*United States v. Feola,*
    95 S. Ct. 1255 (1975)........................................................................................ 18

*United States v. Fiander,*
    547 F.3d 1036 (9th Cir. 2008)......................................................................... 3, 18

*United States v. Gee,*
    226 F.3d 885 (7th Cir. 2000)............................................................................. 14

*United States v. Inzunza,*
    638 F.3d 1006 (9th Cir. 2011)........................................................... 4, 7, 8, 15

*United States v. Kincaid–Chauncey,*
  556 F.3d 923 (2009) ........................................................................................................ 15

*United States v. Lynch,*
  437 F.3d 902 (9th Cir. 2006) .......................................................................................... 17

*United States v. McGregor,*
  879 F. Supp. 2d 1308 (M.D. Ala. 2012) .......................................................................... 4

*United States v. Milovanovic,*
  678 F.3d 713 (9th Cir. 2012) .......................................................................................... 14

*United States v. Rabbitt,*
  583 F.2d 1014 (8th Cir. 1978) .................................................................................... 9, 11

*United States v. Ring,*
  706 F.3d 460 (D.C. Cir. 2013) ..................................................................................... 4, 8

*United States v. Ring,*
  768 F. Supp. 2d 302 (D.D.C. 2011) ............................................................................... 13

*United States v. Saathoff,*
  708 F. Supp. 2d 1020 (S.D. Cal. 2010) ......................................................................... 13

*United States v. Smolar,*
  557 F.2d 13 (1st Cir. 1977) .............................................................................................. 3

*United States v. Sun-Diamond Growers of California,*
  526 U.S. 398 (1999) .............................................................................................. 8, 11, 12

*United States v. Tille,*
  729 F.2d 615 (9th Cir. 1984) .......................................................................................... 19

*United States v. Urciuoli,*
  513 F.3d 290 (1st Cir. 2008) ....................................................................................... 9, 11

*United States v. Urciuoli,*
  613 F.3d 11 (1st Cir. 2010) ......................................................................................... 8, 10

*United States v. Williams,*
  553 U.S. 285 (2008) ........................................................................................................ 13

*Valdes v. United States,*
  475 F.3d 1319 (D.C. Cir. 2007) ................................................................................... 9, 12

**STATUTES AND RULES**

Fed. R. Crim. P.
    12(b) ............................................................................................................................. 3, 16
    12(b)(3)(B) ........................................................................................................................ 3

18 U.S.C.
    § 201(a) ........................................................................................................................ 8, 12
    § 1341 ............................................................................................................................... 2
    § 1343 ............................................................................................................................ 4, 9
    § 1346 ............................................................................................................................ 4, 9
    § 1349 ............................................................................................................................ 4, 9
    § 1951 .......................................................................................................................... 2, 15
    §1961(4) (5) ................................................................................................................. 2, 19
    § 1962(d) .................................................................................................................... 17, 18
    § 2332(g) .......................................................................................................................... 2

California Government Code
    § 82016............................................................................................................................. 2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.      INTRODUCTION

3       Mr. Jackson moves the Court to dismiss Count 2 and Counts 213-221, which wrongfully

4    charge Mr. Jackson with conspiracy to commit honest services fraud, violations of the Hobbs Act,

5    and participation in a RICO conspiracy.  These charges stem from Mr. Jackson's alleged work as

6    a political consultant retained by undercover agents to lobby on their behalf or as a fundraiser for

7    co-defendant State Senator Leland Yee.  These charges against Mr. Jackson and Senator Yee

8    implicate rights protected by the First Amendment, including the right to petition the government,

9    the right to make political contributions, the right to lobby for access, and the right of legislators

10   to freely debate legislation.  These charges must be dismissed because the government's vague,

11   barebones Superseding Indictment ("Indictment") fails under the Fifth and Sixth Amendments

12   and fails to meet the high burden required to allege an explicit *quid pro quo* under the First

13   Amendment.

14       The Fifth and Sixth Amendments require the government to provide adequate notice to

15   Mr. Jackson, and to assure the defendant that the grand jury has been presented with all the

16   elements required to convict him of the charged offenses.  Where, as here, defendants are accused

17   of crimes related to the exercise of First Amendment rights, the Supreme Court has required

18   extreme caution before permitting defendants to be indicted.  The Supreme Court has repeatedly

19   narrowed the scope of behavior indictable as honest services fraud or Hobbs Act extortion.  These

20   same concerns apply to the RICO charges that rely on honest services fraud and the Hobbs Act as

21   predicate acts.  To indict, the government must plead an explicit *quid pro quo*—a clear and

22   unambiguous promise or agreement to exchange a campaign contribution for a specific official

23   act.  None of the alleged offenses passes muster.

24       The honest services allegations, which are disfavored, do not set forth a *quid pro quo*, as

25   they fail to allege both an explicit agreement and an official act.  Nor does the government allege

26   a material misrepresentation or omission.  As a *quid pro quo* and a material misrepresentation are

27   essential elements of these charges, their omission renders the charges fatally defective.  The wire

28   fraud charges must fail, as they are tethered to the inadequately pled honest services charge.

1    The Hobbs Act counts similarly fail to plead a *quid pro quo*.  The government also fails to

2    allege any impact on interstate commerce, as required.

3    The Count Two RICO conspiracy should also be dismissed.  The government fails to

4    allege a conspiracy with the heightened particularity required, or the predicate acts necessary to

5    support the charge.  And, the government fails alleged a pattern of criminal activity or a

6    connection between the charges related to political contributions and the outlandish allegations of

7    a weapons trafficking conspiracy.

8    ## II.    BACKGROUND

9    On or about July 24, 2014, the Grand Jury returned a Superseding Indictment charging

10   Mr. Jackson with one count of conspiracy to commit wire fraud and deprivation of honest

11   services in violation of 18 U.S.C. §§ 1343 and 1346, six counts of wire fraud and deprivation

12   of honest services in violation of 18 U.S.C. §§ 1343 and 1346, and two counts of conspiracy to

13   obtain property under color of official right in violation of 18 U.S.C. § 1951.

14   In addition, Count Two of the Indictment alleges that two political campaign committees

15   created for the legal and constitutionally protected purpose of raising money for a candidate for

16   public office functioned as an "associated in fact" enterprise as defined by 18 U.S.C. §1961(4).[1]

17   (Indictment at 7-8.)  The alleged racketeering activity consisted of "multiple acts" also charged as

18   substantive violations, including violation of 18 U.S.C. §§ 1341, 1343, 1346 (mail fraud, wire

19   fraud, and honest services fraud), and 1951(a) (extortion).  The Indictment also alleges violations

20   of 18 U.S.C. § 2332(g); § 1956 (money laundering); and bribery in violation of California Penal

21   Code section 86.  (*Id.* at 10.)  The Indictment does not describe the individual criminal acts that

22   constitute this alleged pattern of racketeering activity; rather, the Indictment simply alleges that

23   there were "multiple violations" of these statutes.

24

25

26   ───────────────

     [1] The "Campaign" is the collective term the government uses to describe the "Leland Yee
27   for Mayor 2011" campaign committee and the "Leland Yee for Secretary of State 2014"
     campaign committee. Both are candidate controlled committees under California Government
28   Code § 82016.

### III.    LEGAL STANDARD

The Constitution requires that defendants in all criminal cases be provided sufficient information regarding the offense they are accused of committing and when it occurred so that they may adequately prepare a defense.  *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); Sixth Amendment of the United States Constitution ("the accused shall ... be informed of the nature and cause of the accusation").  The Ninth Circuit has held that in order to withstand a motion to dismiss, an indictment must allege each element of the charged offense with sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge.  *United States v. Bernhardt,* 840 F.2d 1441, 1445 (9th Cir. 1988).

It is not sufficient to simply track the language of a statute.  "[W]here the definition of an offence … includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, – it must descend to particulars."  *Russell*, 369 U.S. at 765 (quotation omitted).  This is especially important where the defendant is charged with violating broad statutes.  *See United States v. Smolar*, 557 F.2d 13, 19 (1st Cir. 1977) (the indictment should "state with particularity the theory on which it charges that the defendant violated the statute").

An indictment that fails sufficiently to allege the elements of an offense must be dismissed.  *See* Fed. R. Crim. P. 12(b)(3)(B) (authorizing motions to dismiss an indictment for "a defect in the indictment"); *see United States v. Fiander*, 547 F.3d 1036, 1038 (9th Cir. 2008).  "[A]n indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment."  *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999).

**IV.    THE HONEST SERVICES FRAUD AND WIRE FRAUD COUNTS SHOULD BE DISMISSED BECAUSE THE GOVERNMENT FAILS TO ALLEGE AN EXPLICIT *QUID PRO QUO* AND OTHER ESSENTIAL ELEMENTS (COUNTS 215-221; 18 U.S.C. §§ 2, 1343, 1346, 1349)**

Mr. Jackson is wrongly charged with committing honest services fraud based on his association with Senator Yee, who is also charged with the same crimes.  To find Mr. Jackson guilty, the judiciary must probe Senator Yee's thoughts and divine his intent, impermissibly violating the legislative privilege.  "[C]oncerns about criminalizing politically necessary activity or chilling constitutionally protected conduct justify imposing a higher bar for criminalizing campaign contributions …."  *United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013) cert. denied, 134 S. Ct. 175, 187 L. Ed. 2d 43 (2013); *United States v. McGregor*, 879 F. Supp. 2d 1308, 1312 (M.D. Ala. 2012) ("Because campaign contributions implicate significant First Amendment rights, courts have fashioned heightened standards of proof to ensure that protected political activity is not criminalized or unduly chilled.").

Therefore, the Supreme Court has held that to allege an honest services fraud crime based on a campaign contribution, the government must allege an explicit *quid pro quo*.  *Skilling v. United States*, 561 U.S. 358, 367-368 (2010); *McCormick v. United States*, 500 U.S. 257, 272-273 (1991).  Importantly, even when reviewing an alleged explicit *quid pro quo*, the Ninth Circuit has expressed "considerable uneasiness" in analyzing campaign contributions because "in our flawed but nearly universal system of private campaign financing, large contributions are commonly given in expectation of favorable official action."  *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011).  The government has failed to allege that Mr. Jackson played any role in an explicit *quid pro quo*.  The government has also failed to allege any material misstatement or omission.  This Court should therefore dismiss Counts 215-221, the honest services fraud allegations.

**A.    Campaign Contributions Are Protected Speech**

"The right to participate in democracy through political contributions is protected by the First Amendment."  *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441 (2014).  Indeed, the First Amendment "has its fullest and most urgent application precisely to the conduct

of campaigns for political office." *Id.* (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). The Supreme Court has consistently recognized the incredible threat to our democratic system when the government alleges that campaign contributions form the basis of a Hobbs Act or honest services fraud charge. Elected officials constantly solicit campaign donations and "claim support on the basis of their views and what they intend to do or have done." *McCormick*, 500 U.S. at 272. This conduct is not only "well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation." *Id.*

Accordingly, "government regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford." *McCutcheon* 134 S. Ct. at 1441. To "hold that legislators commit the crime of federal extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." *McCormick*, 500 U.S. at 272. It would be hard to imagine that to hold otherwise would not subject every officeholder to indictment for taking a contribution.

The only activity that may be targeted by laws restricting political donations are those targeting *quid pro quo* corruption. *McCutcheon*, 134 S. Ct. at 1441. Yet the line between *quid pro quo* corruption and general influence may be vague, so the "First Amendment requires us to err on the side of protecting political speech rather than suppressing it." *Fed. Election Comm'n v. Wisconsin Right to Life,* 551 U.S. 449, 457 (2007) (Roberts, C.J.).

### B.    The Privilege of Legislative Immunity Further Restricts Judicial Inquiry into Legislators' Motives

This Indictment wrongly asks the federal judiciary to divine Senator Yee's intent when considering certain state legislation, and to adopt the FBI's theory of why Senator Yee allegedly took certain actions. Judicial inquiry into Senator Yee's motives is severely circumscribed, if not

absolutely barred, by federal and California principles of legislative immunity and respect for the Separation of Powers.

"The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (dismissing civil lawsuit against California legislators and the Mayor of San Francisco related to operation of investigative committee that impinged on free speech); *Spallone v. United States*, 493 U.S. 265 (1990) (court cannot hold legislators in contempt for failure to vote according to court edict). In *Tenney*, the Supreme Court quoted favorably commentary on the Massachusetts Constitution of 1780, which encouraged full immunity for actions resulting from the legislative process, including conduct outside the legislative chambers:

> "These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, *civil or criminal*. … I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate; but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and in the execution, of the office; and I would define the article as securing to every member exemption from prosecution, for every thing said or done by him, as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular according to the rules of the house, or irregular and against their rules."

*Tenney*, 341 U.S. at 373-74 (quoting *Coffin v. Coffin*, 1808, 4 Mass. 1, 27) (emphasis added).

The legislative privilege "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Tenney*, 341 U.S. at 377. "Courts are not the place" to answer questions regarding a legislator's "dishonest or vindictive motives." *Tenney*, 341 U.S. at 378. "Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses." *Id.* Since *Tenney*, the Supreme Court has expanded legislative immunity to state and local officials. *See, e.g.*, *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1979) (*Tenney's* "reasoning is equally applicable to federal, state, and regional legislators.").

Recently, the Supreme Court extended legislative immunity to part-time government employees, in part to "ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service[,]" and because of "[t]he public interest in ensuring performance of government duties free from the distractions that can accompany even routine lawsuits." *Filarsky v. Delia*, 132 S. Ct. 1657, 1665-1666 (2012), reh'g denied, 132 S. Ct. 2764 (2012).[2]

The bedrock principles and public interests that support legislative immunity are more forcefully implicated here. The risk of federal indictment for accepting campaign contributions, which is both protected by the First Amendment and "unavoidable" in political life, is far more threatening than a damages suit, and anything but a routine distraction.

### C.   Criminal Liability for Accepting a Campaign Contribution Requires an Explicit *Quid Pro Quo*

The honest services doctrine "encompass[es] only bribery and kickback schemes." *Skilling*, 561 U.S. 358, 412 (2010). Accepting campaign contributions can only constitute a bribe if there is an explicit *quid pro quo*. *See Inzunza*, 638 F.3d at 1013 (honest services fraud violation requires *quid quo pro*). "Candidates campaigning for office, at a time when contributions are being solicited and received, may assert quite explicitly an intention to take certain official actions, yet few would conclude that Congress intend[ed] to make such conduct, without more, a crime." *Inzunza*, 638 F.3d at 1014. Nor is it a crime when a candidate, upon being elected, provides a service for a donor, even if motivated by the contribution. *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir.1992). Further, there is no corrupt intent if the defendant planned to

---

[2] Legislative immunity is similarly enshrined in California law. California recognizes a "longstanding legal principle precluding judicial inquiry into the motivation or mental processes of legislators in enacting legislation." *Cnty. of Los Angeles v. Super. Ct.,* 13 Cal. 3d 721, 723 (1975). Thus, "mental processes of individual legislators become *irrelevant* to the judicial task." *Id.* at 727-28. "Prohibiting inquiry into thought process of [legislators] … comports with the separation of powers … because legislative discretion is not subject to judicial control or supervision." *San Joaquin Local Agency Formation Comm'n v. Super. Ct.,* 162 Cal. App. 4th 159, 171 (2008); *City of Santa Cruz v. Super. Ct.,* 40 Cal. App. 4th 1146, 1148 (1995) ("discovery into the subjective motives or mental processes of legislators is forbidden"); *Oxnard Harbor Dist. v. Local Agency Formation Comm'n,* 16 Cal. App. 4th 259, 271 (1993) ("It is not proper for the judiciary to probe the motivations of lawmakers, and this rule applies to local legislators as well as to members of the state Legislature or of Congress.").

take an official action regardless of the campaign contribution.  Bribery requires an official to intend to be *unlawfully influenced* by the payment.  *See, e.g.*, *United States v. Sun-Diamond Growers of California,* 526 U.S. 398, 404 (1999); *United States v. Urciuoli*, 613 F.3d 11, 18 (1st Cir. 2010) (jury must conclude the payment "cause[d] [public official] to alter his official acts, to change an official position which he would otherwise have taken, or to take official actions that he would not have taken but for the payments.").

### 1.    An Explicit *Quid Pro Quo* Requires a Clear and Unambiguous Promise

To allege a campaign contribution was part of a *quid pro quo*, the government must show the contribution was "made in return for an *explicit* promise or undertaking by the official to perform or not to perform an official act.  In such situations the official asserts that his official conduct will be *controlled* by the terms of the promise or undertaking." *McCormick*, 500 U.S. at 272-73 (emphasis added); *Inzunza,* 638 F.3d at 1013; *Ring*, 706 F.3d at 468 (When "a public official is charged with *soliciting* a bribe, the evidence must show that the official conveyed an intent to perform official acts in exchange for personal benefit.").  The explicit promise must be "clear and unambiguous, leaving no uncertainty about the terms of the bargain." *Carpenter*, 961 F.2d at 827.

### 2.    An Explicit *Quid Pro Quo* Requires a Specific Official Act

The Supreme Court has also clarified that the "explicit promise" must be in exchange for an agreement to perform "specific official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992); *Sun-Diamond Growers of California*, 526 U.S. at 406 ("The insistence upon an 'official act,' … seems pregnant with the requirement that some particular official act be identified and proved.").  The term "official act" is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."  18 U.S.C. § 201(a)(3).

1    Not every action taken in an official capacity is subject to prosecution.  "While numerous

2    activities—hosting a ceremony, visiting a school, or delivering a speech, for example— 'are

3    assuredly "official acts'" in some sense, it would be absurd,'" the Court said, to consider them

4    within the scope of section 201.

5    *Valdes v. United States*, 475 F.3d 1319, 1323 (D.C. Cir. 2007) (quoting in part *Sun-*

6    *Diamond*, 526 U.S. at 407-408).  Similarly, "trad[ing] . . . on the reputation, network and

7    influence that comes with political office" or using the "access and attention" that comes with a

8    government title, or even the "(possibly improper) use of senate letterhead" are insufficient—

9    standing alone—to constitute indictable official acts.  *See United States v. Urciuoli*, 513 F.3d 290,

10   296 (1st Cir. 2008); *United States v. Rabbitt*, 583 F.2d 1014, 1028 (8th Cir. 1978), *abrogated on*

11   *other grounds by McNally v. United States*, 483 U.S. 350 (1987), *superseded by statute*, 18

12   U.S.C. § 1346 (reversing conviction where the most that the official did "was recommend [the

13   alleged bribe payer] to state contractors as qualified architects and thereby gain them a friendly

14   ear").  Nor is "granting or denying access to an elected official's time based on levels of

15   contribution" an official act.  *Carpenter*, 961 F.2d at 827.  "Elected officials must ration their

16   time among those who seek access to them and they commonly consider campaign contributions

17   when deciding how to ration their time.  This practice 'has long been thought to be well within

18   the law [and] in a very real sense is unavoidable.'"  *Id.* (quoting *McCormick*, 500 U.S. 271-273).

19   "*Sun-Diamond*'s interpretive gloss, like the rule of lenity, thus works to protect a citizen from

20   punishment under a statute that gives at best dubious notice that it has criminalized his conduct."

21   *Valdes*, 475 F.3d at 1323.

22       **D.**     **The Honest Services Fraud Charges Do Not Allege an Explicit**
                     ***Quid Pro Quo***
23

24   Counts 215-221 of the Indictment, which charge substantive violations of 18 U.S.C. §§ 2,

25   1343, 1346 and 1349, should be dismissed because the Indictment's allegations regarding Well

26   Tech, a proclamation for the CKT, and medical marijuana legislation, fail to allege an explicit

27   promise to perform a specific official act, required elements of a *quid pro quo*.

28

1    **1.    The Indictment Does Not Allege an Explicit Promise**

2          The government does not allege an explicit promise or an official act in connection with

3    Senator Yee's alleged participation in a conference call and drafting a letter of recommendation

4    for Well Tech.  The alleged donations in September 2011 and April 2012 predate any bribery

5    allegations and are not alleged to have been made as part of a *quid pro quo*.  (Indictment at 74:1-

6    13.)  On September 4 and 19, 2012, the government alleges that "Yee agreed to make the call" to

7    Well Tech and to write a letter on Well Tech's behalf, but the government does not allege that

8    Senator Yee conditioned the phone call or letter on any donation.  (Indictment at 74:23-75:2.)  On

9    September 24, 2012, UCE-4773 allegedly told Mr. Jackson he would make a donation "once he

10   received the letter."  (Indictment at 75:3-5.)  Yet by this date, Senator Yee had allegedly already

11   agreed to write a letter, so UCE-4773's statement cannot form the basis of an alleged *quid pro*

12   *quo*.  The government then alleges that on November 19, 2012, UCE-4773 donated $10,000

13   before receiving the letter, further undermining the allegation that there was a clear and

14   unambiguous agreement.  (Indictment at 75:16-19.)

15         The allegations regarding a proclamation acknowledging the CKT similarly fail to allege a

16   corrupt bargain.  Like the allegations regarding Well Tech, Senator Yee had already agreed to the

17   request to provide a proclamation in January 2013, before UCE-4599 allegedly told Mr. Jackson

18   in February 2013 he would make a donation.  (Indictment at 76:8-14.)  The government simply

19   does not allege that Senator Yee's offer to issue a proclamation was tied to anything more than a

20   hope that UCE-4599 would make a donation in the future.

21         The government has not alleged there was an explicit promise of financial consideration to

22   influence Senator Yee to set up a meeting with State Senator 1.  The government alleges that

23   when its undercover agent asked Senator Yee to contact State Senator 1, "Yee stated that he was

24   not interested in making money, but wanted his friends to benefit from his work."  (Indictment at

25   77:22-24.)  UCE-4180 allegedly gave Yee an envelope of cash anyway.  (Indictment at 77:25.)

26   Yee's disclaimer indicates he did not expect money in exchange for setting up a meeting, or

27   change his position in exchange for money.

28

1   The government's allegations regarding unsolicited campaign contributions made after

2   UCE-4180 allegedly met with State Senator 1 do not state an offense, since it is impossible for

3   Senator Yee to have taken an action he otherwise would not have taken before any payments

4   were allegedly offered.  *See Urciuoli*, 613 F.3d at 18.  On June 20, 2013, Yee allegedly

5   introduced UCE-4180 to State Senator 1.  Two days later, UCE-4180 offered Yee money "and

6   said that it was for the meeting with State Senator 1."  (Indictment at 78:8-10.)  The government

7   does not allege that Yee agreed to set up the meeting with State Senator 1 in exchange for money,

8   or even knew that if he did so, UCE-4180 would offer him cash.  Indeed, the government's

9   allegations undermine the notion that it has pled a corrupt agreement.  On July 15, 2013, the

10  government alleges Yee and Jackson discussed "the small amount of money received from UCE-

11  4180 'for all we've done,' and mentioned having set up the meeting" between UCE-4180 and

12  State Senator 1.  (Indictment at 78:12-14.)  Had there been an explicit *quid pro quo* agreement,

13  Yee would not be uncertain about and unhappy with the bargained for exchange.

14  Similarly, the government alleges that in August 2013, UCE-4180 met with State Senator

15  2, but does not allege there was any explicit offer or agreement to set up a meeting with State

16  Senator 2 in exchange for money.  (Indictment at 78:17-20.)  As with the Well Tech and CKT

17  allegations, the government's allegation that one month later, the undercover agent gave an

18  unsolicited contribution to Senator Yee cannot retroactively turn a routine constituent service into

19  a corrupt bargain.  (*See* Indictment at 78:21-23.)

20  ## 2.   The Government Does Not Allege an "Official Act"

21  Neither "participat[ion] in a conference call" or letter of "expressed support" for Well

22  Tech's expansion to California constitute official acts.  (Indictment at 75.)  In order to allege an

23  official act in connection with advocating for a government contract, the government must allege

24  a suite of activity missing here.  For example, in *United States v. Biaggi*, a Congressman wrote

25  multiple letters to city and federal officials on a company's behalf, opened a file handled by his

26  top aide to advance the company's interests, and offered to introduce a bill to support the

27  company.  853 F.2d 89, 98 (2d Cir. 1988).  By contrast, 'expressing support' in a single phone

28

call and letter of recommendation is not an official act.  *See Rabbitt*, 583 F.2d at 1028; *Urciuoli*, 513 F.3d at 296.

A staff member's alleged appearance at a CKT anniversary celebration to "present[] a framed proclamation on California State Senate letterhead" to the CKT is *de minimis*. (Indictment at 76:15-18.)  *Sun-Diamond* explained that activity such as sending a staffer to provide a framed piece of paper acknowledging the existence of an organization falls far short of an official act.  *See Sun-Diamond*, 526 U.S. at 407-408.  Semi-official acknowledgements to a person or organization who donated to the politician's campaign are routine and expected courtesies in the context of public life.  It would be similarly absurd to prosecute a member of Congress who sent a congratulatory letter for earning an Eagle Scout's award to a past donor, or the President for taking a picture with a donor at a social event.  Congress did not intend to punish such behavior.

The allegations with respect to medical marijuana legislation also fail to allege any "decision or action by [Yee] on a question, matter, cause, suit, proceeding or controversy."  *See* 18 U.S.C. § 201(a).  There is no allegation that Yee interceded or pressured other Senators to adopt a position.  *See Biaggi*, 853 F.2d at 98.  The government alleges only that Yee "introduced" UCE-4180 to two State Senators and discussed an issue of alleged mutual interest.  (Indictment at 77-78.)  Making a personal introduction at a meeting where legislative issues are discussed is protected First Amendment activity, and plainly not a decision or action, or an exertion of undue influence.  *See, e.g.*, *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776-77 (1978) ("there is practically universal agreement that a major purpose of [the First] Amendment is to protect the free discussion of governmental affairs").  Even if taking a meeting was an "'official act[]' in some sense … it would be absurd … to consider [it] within the scope of" prosecutable official acts.  *See Valdes*, 475 F.3d at 1323.  Otherwise, no public official could attend a meeting with a colleague where they discuss an issue of interest to a contributor, without being subject to prosecution.  Such a view would thwart the foundations of our republican form of government. *See also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 360 (2010) ("Ingratiation and access . . . are not corruption.").

**E.      The Honest Services Fraud Statute Is Void for Vagueness as Applied Here**

18 U.S.C. §1346, as applied here, violates the Due Process clause of the Fifth Amendment because it is impermissibly vague.  "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams,* 553 U.S. 285, 304 128 S.Ct. 1830 (2008).

The beleaguered history of 18 U.S.C. §1346 demonstrates why it has been aptly called "a model of vagueness."  *United States v. Saathoff,* 708 F. Supp. 2d 1020, 1023 (S.D. Cal. 2010) (dismissing indictment as void for vagueness when alleging failure to disclose theory of fraud). In 1987, the Supreme Court held that "honest services fraud" was not covered by the mail and wire fraud statutes.  *McNally v. United States*, 483 U.S. 350 (1987).  "Rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights."  *Id.* at 360.  Congress enacted 18 U.S.C. § 1346 the following year, but again failed to define "honest services."  This led to "two decades attempting to cabin the breadth of § 1346 through a variety of limiting principles.  No consensus has emerged. …"  *Sorich v. United States,* 129 S. Ct 1308, 1309 (2009) (Scalia, J., dissenting from den. of cert.).  Justice Scalia warned that "[t]here is a serious argument that § 1346 is nothing more than an invitation for federal courts to develop a common-law crime of unethical conduct."  *Id.* at 1310.  In 2010, the Supreme Court, faced with the alternative of holding § 1346 unconstitutional, limited its scope to the narrow realm of "*only* the bribe-and-kickback core of the pre-*McNally* case law."  *Skilling*, 561 U.S. at 411-412.

As discussed above, "campaign contributions enjoy[] protection under the First Amendment, and therefore could not service as the basis for a criminal conviction without proof of an explicit *quid pro quo.*"  *United States v. Ring*, 768 F. Supp. 2d 302, 304 (D.D.C. 2011) (citing *McCormick,* 500 U.S. at 273).  Beyond that, the law is a morass, and this Indictment fails to put Mr. Jackson on notice of conduct that could form the basis of honest services fraud.

1    "Ambiguity concerning the ambit of criminal statutes should be resolved in favor of

2    lenity." *Skilling*, 561 U.S. at 410.  This fundamental precept applies more forcefully here, where

3    a political consultant is accused of crimes solely on the basis of his association with a politician

4    who allegedly asked for and received campaign contributions, conduct protected by the First

5    Amendment.  This banal set of allegations seeks to criminalize a routine yet essential aspect of

6    political life that commands the "fullest and most urgent application" of First Amendment

7    protection.  *See McCutcheon*, 134 S. Ct. at 1441.

8               **F.        The Government Fails to Allege a Material Misstatement or
                            Omission**
9

10            The Court should dismiss the Indictment because it fails to recite an essential element of

11   honest services fraud: the misrepresentation or omission of a material fact.  *See United States v.*

12   *Milovanovic*, 678 F.3d 713, 726 (9th Cir. 2012) (en banc), *cert denied*, 133 S. Ct. 929 (2013).  An

13   indictment for honest services fraud that "merely alleges a 'scheme to defraud'" and does not use

14   the words "material," "misrepresentation," or "concealment" is insufficient.  *United States v. Gee*,

15   226 F.3d 885, 891-892 (7th Cir. 2000).  The Ninth Circuit has clarified that to satisfy the

16   materiality requirement in an honest services case, a "defendant must 'misrepresent or conceal a

17   material fact.'"  *Milovanovic*, 678 F.3d at 724-25 (quotation omitted) (honest services fraud; mail

18   fraud).

19            This case parallels *Gee*.  226 F.3d 885 (7th Cir. 2000).  There, the defendants produced

20   and sold equipment that allowed users to descramble and view premium cable channels without

21   permission.  *Id.* at 890-91.  The government charged them with mail and wire fraud, but the

22   indictment failed to allege any misleading statements to customers or fraudulent omissions from

23   cable companies.  *Id.* at 891.  The Seventh Circuit reversed the mail and wire fraud convictions

24   because "[t]he government did not proffer any evidence that [the] defendants made any false or

25   misleading statements."  *Id.* at 892.  Here, as in *Gee*, the Indictment fails to allege that Jackson, or

26   his alleged co-conspirator Yee, made *any* misleading statement or fraudulent omission, much less

27   a statement or omission that could support a conviction for honest services wire fraud.  (*See*

28   Indictment at 71-79.)

1

### G.      The Wire Fraud Charges Fail to Provide Sufficient Notice

2

As discussed above, the government has failed to sufficiently allege any of its three

3

theories of honest services fraud.  Accordingly, the wire fraud charges, Counts 216-221, should

4

be dismissed.  Moreover, Counts 216-221 fail to provide Mr. Jackson sufficient notice of which

5

of its three theories supports the wire fraud charge, or whether the government has some other

6

theory.  Given the defects in the government's theories, there is no way to be certain, absent more

7

specific pleading, whether Mr. Jackson is being prosecuted on the basis of the facts presented to

8

the grand jury.  *Bernhardt,* 840 F.2d at 1445.  Accordingly, the wire fraud charges should be

9

dismissed.

10

11

### V.      THE HOBBS ACT CHARGES SHOULD BE DISMISSED BECAUSE THEY DO NOT ALLEGE A *QUID PRO QUO* OR IMPACT ON COMMERCE (COUNTS 213-214; 18 U.S.C. § 1951(A))

12

The government has failed to allege a *quid pro quo,* which is also an essential element of a

13

Hobbs Act charge.  *See McCormick*, 500 U.S. at 273.  To convict Keith Jackson of conspiracy to

14

commit to violate the Hobbs Act, the government must prove that Mr. Jackson conspired with: (1)

15

a government official; (2) who accepted property to which he was not entitled; (3) knowing that

16

he was not entitled to the property; (4) knowing that the payment was given in return for official

17

acts; and (5) which had at least a *de minimis* effect on commerce.  *United States v. Kincaid–*

18

*Chauncey*, 556 F.3d 923, 936 (2009).  The government has not alleged that Mr. Jackson or

19

Senator Yee's conduct manifested a clear and unambiguous promise by Senator Yee to perform

20

an official act in exchange for a campaign contribution.  The Indictment also fails to allege an

21

effect on commerce.

22

### A.      Counts 213 and 214 Do Not Allege a *Quid Pro Quo*.

23

As discussed above, a campaign contribution may only constitute a bribe if there is a *quid*

24

*pro quo*, that is: 1) an explicit promise; 2) to perform a specific official act; 3) in exchange for a

25

payment.  *Inunza*, 638 F.3d at 1014; *McCormick* at 272-73; *Evans*, 504 U.S. at 268.  The *quid pro*

26

*quo* must "be clear and unambiguous, leaving no uncertainty about the terms of the bargain."

27

*Carpenter*, 961 F.2d at 827.  Neither Count 213 nor Count 214 alleges a *quid pro quo*.

28

Count 213 fails because there is no allegation that Mr. Jackson or Senator Yee accepted money to which they were not entitled, much less agreed to a *quid pro quo*.  Count 213 relates to California Senate Bill No. 309 ("SB-309"), a bill to extend the existence and operation of the California State Athletic Commission ("CSAC") to 2016.  (Indictment at 65-68.)  The Indictment alleges that Yee and Jackson conspired to have "Individual A" hire Jackson as a consultant to lobby Yee to vote to extend the CSAC.  (Indictment at 66:16-26.)  Count 213 further alleges that Yee and Jackson conspired to have Jackson solicit "Individual B" for campaign donations to Yee's Secretary of State campaign in exchange for Yee's support of the CSAC bill.  (Indictment at 67:6-9.)  However, the Indictment does not allege that Yee made an explicit promise to support or vote for SB-309 in exchange for money, or that these individuals even made a contribution.  Because the government has failed to allege an element of the offense, Count 213 should be dismissed.  *See* Fed. R. Crim. P. 12(b).

Count 214 also fails to allege a *quid pro quo*.  Count 214 focuses on UCE-4180's interest in California Assembly Bill No. 109 ("AB-1309"), which related to workers' compensation for professional athletes.  (Indictment at 68-71.)  There is no allegation that Senator Yee made an explicit promise.  Instead, the government alleges that Mr. Jackson told UCE-4180 that Yee "was going 'to be helpful' to the owner of NFL Team A, but wanted more money."  UCE-4180 allegedly conveyed an offer from NFL Team A owner to Jackson to pay Yee $60,000 for his favorable vote on AB-1309, after which Jackson allegedly stated that he would talk to Yee but "guaranteed" that "it is going to be fine."  (Indictment at 70:26-27, 71:1-6.)  Mr. Jackson's alleged statements are not an explicit promise, nor do they manifest a "clear and unambiguous agreement."  *Carpenter*, 961 F.2d at 827.  Mr. Jackson allegedly informed UCE-4180 he still had to convey the offer to Yee, so at that time there was no agreement.  Mr. Jackson's alleged "guarantee" is therefore meaningless.  Moreover, there is no allegation that Mr. Jackson was an employee or agent of Mr. Yee's who could bind Senator Yee, or that Mr. Yee was ever made aware of the alleged offer.  This is plainly insufficient to allege a *quid pro quo*.

With respect to the government's allegations that "UCE-4180 paid Yee $11,000" after Sen. Yee introduced him to another State Senator, that is not an official act.  (*See* Indictment at

70:19-21.)  Helping a donor arrange a meeting with another legislator to promote the donor's agenda is nothing more than providing access.  *See* Section IV.D.2; *see also Citizens United*, 558 U.S. at 360  ("Ingratiation and access . . . are not corruption.").

### B.   The Hobbs Act Charges Should Be Dismissed Because the Government Has Not Alleged an Effect on Commerce

In order to demonstrate the effect of the extortion on interstate commerce, the government must establish that a defendant's acts had at least a *de minimis* effect on interstate commerce. *United States v. Lynch*, 437 F.3d 902, 908 (9th Cir. 2006) (en banc).  The Indictment alleges no impact at all.  The Indictment states in a conclusory manner that Mr. Jackson and Senator Yee "did knowingly and intentionally conspire with each other … to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce, by extortion."  That begs the question:  How?  Count 213 and Count 214 of the Indictment allege conduct related to state bills regulating a California commission, and a bill regulating worker's compensation in California.  There is nothing alleged in Counts 213 or 214 which explains or puts Mr. Jackson on notice of how interstate commerce was obstructed, delayed, or affected. Therefore, this Court should dismiss Counts 213 and 214.

### VI.   COUNT TWO FAILS TO STATE A RICO CONSPIRACY (18 U.S.C. § 1962(D))

Count Two of the Indictment fails to allege that Mr. Jackson and Senator Yee's valid exercise of First Amendment rights were predicate acts that formed a pattern of racketeering activity.  As discussed above, this Indictment, which charges crimes based on requests for contributions from politicians and requests for action from their constituents, chills the exercise of core protected speech.  *See* Section IV.A.  This chilling effect requires the Court to impose a high bar before permitting the government to go forward.  The government must allege that the defendants explicitly entered into an agreement to commit *quid pro quo* bribery.  The allegations of Count Two fall well short of this heightened bar.  *First,* the allegations lack the requisite particularity to put Mr. Jackson on notice of the alleged agreement to commit predicate offenses.

1    *Second*, the alleged predicate acts fail to establish a "pattern" of racketeering activity.  Count Two

2    should therefore be dismissed.

3         A.    **The Indictment Fails to Satisfy the Heightened Pleading Standard Required Where Core Political Speech Is Implicated in a RICO Charge**

4

5         The Court must subject Count 2 to the same heightened scrutiny applicable to the

6    allegations regarding honest services fraud and Hobbs Act violations because the government

7    alleges these violations were the predicate acts for the alleged RICO conspiracy.  Where RICO

8    conspiracies are alleged, heightened specificity is already required. "With the wide latitude

9    accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs

10   of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize

11   the nature of the charge to a degree that might not be necessary in the prosecution of crimes of

12   more limited scope." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).  The Court

13   must further scrutinize this alleged RICO conspiracy because the government must "prove at least

14   the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*,

15   95 S. Ct. 1255, 1265 (1975).  As discussed above, to support its theory of honest services fraud,

16   wire fraud, and violations of the Hobbs Act, the government must allege specific intent

17   manifested by an explicit *quid pro quo*.  Accordingly, to plead a RICO agreement pursuant to 18

18   U.S.C. § 1962(d) based on predicate acts that require an explicit *quid pro quo*, the government

19   must allege the RICO agreement explicitly contemplated *quid pro quo* bribery.

20         Count 2 fails because the allegations do not create an inference that each defendant

21   explicitly agreed to participate in a conspiracy for the purpose of engaging in *quid pro quo*

22   bribery.  The allegations must show that co-conspirators agreed "someone would commit two

23   predicate acts." *See Fiander*, 547 F.3d 1036, at 1041 (9th Cir. 2008).  There are no specific facts

24   alleged regarding when the alleged criminal agreement was formed, or that defendants agreed

25   who would commit any particular acts.  The government's attempt to plead an agreement through

26   alleged "Overt Acts" does not save the Indictment.  The overt acts merely allege Senator Yee's

27   campaign engaged in the same First Amendment protected core speech that, as discussed above,

28   is commonplace to political campaigns and assuredly not criminal. *See* Sections IV.D.; V.A.

1

## B. Count Two Does Not Sufficiently Allege a Pattern of Racketeering

2

3   The Indictment also fails to allege facts sufficient to show a pattern of racketeering

4 activity.  A pattern of racketeering "requires at least two acts of racketeering activity . . . ."  18

5 U.S.C. § 1961(5); *see United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984).  Yet even alleging

6 two predicate acts would not suffice to establish a pattern because "the mere fact that there are a

7 number of predicates is no guarantee that they fall into any arrangement or order."  *H.J. Inc. v.*

8 *Nw. Bell Tel. Co.*, 492 U.S. 229, 236 (1989).  A pattern cannot be "formed by 'sporadic activity'"

9 or by "'committing two widely separated and isolated criminal offenses.'"  *Id.* at 239 (citations

10 omitted).  A "pattern" requires "the showing of a relationship between the predicates and the

11 threat of continuing activity."  *Id.*  The "relationship" element requires that the criminal acts

12 "have the same or similar purposes, results, participants, victims, or methods of commission, or

13 otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Howard*

14 *v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (citing *H.J.*, 492 U.S. at 240); *see also*

15 *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985) (the purpose of RICO is not to

16 target "sporadic" criminal activity or the "isolated offender," but to prevent the infiltration of

17 legitimate businesses by continuing criminal activity); *accord United States v. Brooklier*, 685

18 F.2d 1208, 1222 (9th Cir. 1982).  "Predicate acts extending over a few weeks or months and

19 threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in

20 RICO with long-term criminal conduct."  *H.J.*, 492 U.S. at 242.  It is "*continuity plus relationship*

21 which combines to produce a pattern."  *Id.* (emphasis in original).

22   Here, the Indictment provides a laundry list of disparate statutes purportedly violated by

23 the Campaign enterprise without alleging how they are connected.  Count Two provides no

24 description of how these acts were committed, who committed them, how they further the goals

25 of the supposed conspiracy, or how these acts are related.[3]  This is precisely what the Supreme

26 Court deemed inappropriate.  *See id.* at 255 (Scalia, J. concurring) ("It is clear to me from the

27

---

[3] The facts and allegations identified in Count Two are not incorporated by reference to any of the other counts in the indictment, nor vice versa.

28

1   prologue of the statute . . . that the word 'pattern' was meant to import some requirement beyond

2   the mere existence of multiple predicate acts.").  Without further factual detail, and without

3   sufficient pleading to establish an explicit agreement, the alleged acts are at best sporadic and

4   isolated allegations of criminal conduct.

5         Of particular concern is the government's attempt to connect allegations of public

6   corruption charges to conspiracy to import weapons under a single conspiracy count.  There is no

7   allegation that importing weapons furthers the objectives of two political campaign committees

8   formed to help elect a candidate to public office.  Absent a further showing that these acts were

9   conducted on behalf of and in furtherance of the political campaign committees, and their

10   objectives, these acts lack any relationship to the public corruption allegations and fail to establish

11   a pattern of racketeering activity.

12                       **CONCLUSION**

13         For all of the reasons stated above, Defendant's motion to dismiss Count 2 and Counts

14   213-221 of the Indictment should be granted.

15   Dated: October 3, 2014           Respectfully submitted,

16                            MORRISON & FOERSTER LLP

17

18                       By:   */s/ James. J. Brosnahan*

19                             JAMES J. BROSNAHAN

20                           Attorneys for Defendant
                             KEITH JACKSON

21

22

23

24

25

26

27

28