MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN E. BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-7234
     William.Frentzen@usdoj.gov
     Susan.Badger@usdoj.gov
     Waqar.Hasib@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 14-0196 CRB |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT KEITH JACKSON'S MOTION TO |
| v. | DISMISS COUNT 2 AND COUNTS 213-221 |
| KWOK CHEUNG CHOW, et al., | Date:  November 12, 2014 |
| Defendants. | Time:  10:00 a.m. |
| | Court:  Hon. Charles R. Breyer |

1

# TABLE OF CONTENTS

2   I.     INTRODUCTION ......................................................................................................1

3   II.    ARGUMENT .............................................................................................................2

4          A.    Legal Standards for Evaluating the Sufficiency of the Indictment .....................2

5          B.    Elements of the Charged Honest Services Fraud, Hobbs Act, and RICO
                 Offenses .........................................................................................................3

6
                 1.    Honest Services Fraud ...........................................................................3
7
                 2.    Hobbs Act Extortion Conspiracy ..........................................................8
8
                 3.    RICO Conspiracy ..................................................................................9
9
           C.    The Superseding Indictment Sets Forth Allegations Sufficient To Support the
10               Honest Services Fraud Charges in Counts 215 through 221 ............................10

11               1.    An explicit quid pro quo is alleged .......................................................11

12               2.    The Honest Services Fraud Charges Are Not Vague as to Jackson .....................14

13               3.    The Acts In Exchange for Money were Official Acts ...........................14

14               4.    No Material Misrepresentation or Omission Must Be Alleged ...........................17

15         D.    The Superseding Indictment Sets Forth Allegations Sufficient to Support The
                 Hobbs Act Conspiracy Charges in Counts 213 and 214 .................................18
16
           E.    The Superseding Indictment Sets Forth Allegations Sufficient to Support The
17               RICO Conspiracy Charge in Count 2 ............................................................20

18   III.   CONCLUSION.........................................................................................................24

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)...................................................................22

*Lustiger v. United States*, 386 F.2d 132 ...................................................................................17

*McCormick v. United States*, 500 U.S. 257 (1991)..............................................................6, 7, 9

*McCutcheon v. Federal Election Commission*, U.S., 134 S.Ct. 1434 (2014)............................6

*Neder v. United States*, 527 U.S. 1 (1999)..........................................................................5, 20

*Salinas v. United States*, 522 U.S. 52 (1997) ...........................................................................10

*Skilling v. United States*, 561 U.S. 358 (2010) .....................................................................4, 13

*United States v. Allender*, 62 F.3d 909 (7th Cir. 1995) ..............................................................2

*United States v. Applins,* 637 F.3d 58 (2d Cir. 2011) ...............................................................10

*United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988)..................................................................15

*United States v. Birdsall*, 233 U.S. 223 (1914)........................................................................15

*United States v. Bonhous*, 628 F.2d 1167 (9th Cir. 1980) ..........................................................4

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ............................................................2, 3

*United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990) ..............................................................22

*United States v. Calandra*, 414 U.S. 338 (1974) .....................................................................17

*United States v. Carpenter*, 961 F.2d 824 (9th Cir. 1992)..................................................*passim*

*United States v. Carson*, 464 F.2d 424 (2d Cir. 1972)...............................................................16

*United States v. Ciccone*, 219 F.3d 1078 (9th Cir. 2000) ...........................................................4

*United States v. Cochrane*, 985 F.2d 1027 (9th Cir. 1993) .........................................................3

*United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000) ...........................................................23

*United States v. Crockett*, 979 F.2d 1204 (7th Cir. 1992) .........................................................10

*United States v. Davis*, 336 F.3d 920 (9th Cir. 2003) .................................................................2

*United States v. Ely*, 142 F.3d 1113..........................................................................................2

*United States v. Eufrasio*, 935 F.2d 553 (3d Cir. 1991)............................................................23

*United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008) .........................................................10

*United States v. Glecier.* 923 F.2d 496 (7th Cir. 1991) .......................................................10, 24

1   *United States v. Hubbard*, 96 F.3d 1223 (9th Cir. 1996) ............................................................ 3

2   *United States v. Inzunza*, 638 F.3d 1006 (9th Cir. 2011) ....................................................... 6, 7

3   *United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012) ......................................................... 15

4   *United States v. Jenkins*, 884 F.2d 433 (9th Cir. 1989) .............................................................. 3

5   *United States v. Kincaid-Chauncey*, 556 F.3d 923 (9th Cir. 2009) ................................... 4, 5, 9

6   *United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009) ....................................................... 2

7   *United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) ...................................................... 3

8   *United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004) .................................................... 3

9   *United States v. Munoz*, 233 F.3d 1117 ................................................................................... 17

10  *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) .............................................................. 5

11  *United States v. Palumbo Brothers, Inc.*, 145 F.3d 850 (7th Cir. 1998) ................................. 22

12  *United States v. Phillips*, 874 F.2d 123 (3d Cir. 1989) ............................................................ 10

13  *United States v. Ring*, 706 F.3d 460 (D.C.Cir. 2013) ......................................................... 9, 15

14  *United States v. Saadey*, 393 F.3d 669, 677 (6th Cir. 2005) .................................................. 10

15  *United States v. Sun-Diamond Growers*, 526 U.S. 398 (1999) ........................................... 5, 16

16  *United States v. Sutherland*, 656 F.2d 1181 (5th Cir. 1981) ................................................... 10

17  *United States v. Tille*, 729 F.2d 615 (9th Cir. 1984) ............................................................... 10

18  *United States v. Valdes,* 475 F.3d 1319 (D.C. Cir. 2007) ....................................................... 15

19  *United States v. Woodruff*, 50 F.3d 673 (9th Cir. 1995) ............................................... 19, 21, 22

20  *United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) .......................................................... 5, 17

21  *United States v. Wyatt*, 807 F.2d 1480 (9th Cir. 1987) ........................................................... 10

22  *Whitfield v. United States*, 543 U.S. 209, 212-15 (2005) .......................................................... 3

23   **FEDERAL STATUTES**

24  18 U.S.C. § 201(a)(3) ....................................................................................................... 14, 15, 16

25  18 U.S.C. § 201(c) ...................................................................................................................... 16

26  18 U.S.C. § 371 ............................................................................................................................ 3

27  18 U.S.C. § § 1343 .............................................................................................................. 1, 3, 17

28  18 U.S.C. § 1346 .......................................................................................................................... 4

18 U.S.C. §§1349 ............................................................................................................. 3

18 U.S.C. § 1951 ......................................................................................................... 6, 18

18 U.S.C. § 1951(a) .......................................................................................... 1, 8, 18, 19

18 U.S.C. § 1961(1) ........................................................................................................ 20

18 U.S.C. § 1961(5) ........................................................................................................ 22

18 U.S.C. § 1962(c) ..................................................................................................... 9, 20

18 U.S.C. § 1962(d) ....................................................................................................... 1, 9

**FEDERAL RULES**

Fed.R.Crim.P. 7(c)(1) ....................................................................................................... 2

Federal Rule of Criminal Procedure 12(b) ....................................................................... 2

# I.    INTRODUCTION

Defendant Keith Jackson has moved to dismiss Counts 213 through 221 and Count 2 of the superseding indictment on the ground that the government has failed to alleged essential elements of the offenses charged.  Counts 213 and 214 of the indictment charge Jackson and co-defendant, State Senator Leland Yee, with conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951(a)(Hobbs Act conspiracy).  Count 215 of the indictment charges Jackson and Yee with conspiracy to commit honest services wire fraud, and Counts 216 through 221 charge the same defendants with six counts of wire fraud.  18 U.S.C. § § 1343, 1346, & 1349.  Count 2 of the indictment charges Jackson and Yee with criminal violations of 18 U.S.C. § 1962(d), a RICO conspiracy to participate in a racketeering enterprise.

Jackson alleges a number of deficiencies in the charging language of these counts, including failure to allege (1) an explicit *quid pro quo* agreement to exchange official acts by Yee for money in connection with the honest services fraud and Hobbs Act conspiracy charges; (2) an "official act," as the law defines that term, in connection with the honest services fraud charges; (3) in connection with the RICO conspiracy charge, specific facts showing that Jackson explicitly agreed to participate in a conspiracy for the purpose of engaging in *quid pro quo* bribery; and (4) facts sufficient to show how the alleged acts in furtherance of the RICO conspiracy are related and show a pattern of racketeering activity.

Each of these claims is without merit.  When read in their entirety, the allegations in each contested count of the superseding indictment sufficiently set forth the elements of each offense and fairly inform Jackson of the charges against which he must defend and enable him to plead double jeopardy in a future prosecutions for the same offense.  In fact, as discussed below, the charging language for each contested count goes beyond what is required to determine the sufficiency of an indictment on its face.  The charges not only track the language of the respective statutes, they add detail about the manner and means through which Jackson and Yee sought to accomplish the goals of their conspiracies and schemes.  This includes describing the explicit *quid pro quo* agreements (1) to exchange Yee's official acts for money, that is, bribery; and (2) through which Yee and Jackson sought to extort money in exchange for Yee's favorable vote on legislation.  Further, the alleged acts by Yee

1    which Jackson and Yee conspired to exchange for money were acts undertaken in Yee's official

2    capacity as a State Senator and fit within the legal definition of the term "official acts."  They form a

3    valid basis for the honest services fraud charges.

4         To a great extent, Jackson's complaints about Counts 213 through 221 and Count 2 have to do

5    with alleged deficiencies in providing sufficient information to support the charges.  In each such

6    instance, Jackson's arguments are misplaced in terms of challenging the validity of the indictment on its

7    face.  In properly alleging essential facts to apprise a defendant of the crime charged, the government is

8    not required to specify the theories or evidence upon which it will rely to prove those facts.

9                              **II.    ARGUMENT**

10        **A.    *Legal Standards for Evaluating the Sufficiency of the Indictment***

11        An indictment "must be a plain, concise and definite written statement of the essential facts

12   constituting the offense charged …."  Fed.R.Crim.P. 7(c)(1).  A defendant may move to dismiss the

13   indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b).  "In ruling on

14   a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by

15   the four corners of the indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations

16   omitted).  "On [such] a motion …, the court must accept the truth of the allegations of the indictment in

17   analyzing whether a cognizable offense has been charged."  *Id*. (citation omitted).

18        An indictment is sufficient to withstand a motion to dismiss if it (1) "contains the elements of the

19   offense charged and fairly informs a defendant of the charge against which he must defend," and (2)

20   "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

21   *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009).  An indictment should be read in its

22   entirety, construed according to common sense, and interpreted to include facts that are necessarily

23   implied.  *Id*.  In reviewing the sufficiency of the language, "a court should consider the challenged count

24   as a whole and should refrain from reading it in a hypertechnical manner."  *United States v. Ely*, 142

25   F.3d 1113, 1120 (9th Cir.), *quoting United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995)(quotation

26   marks omitted).  "In cases where the indictment 'tracks the words of the statute charging the offense,'

27   the indictment will be held sufficient 'so long as the words unambiguously set forth all elements

28   necessary to constitute the offense.'"  *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

1    "An indictment must provide the essential facts necessary to apprise a defendant of the crime

2    charged; it need not specify the theories or evidence upon which the government will rely to prove those

3    facts."  *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993), *citing United States v. Jenkins*,

4    884 F.2d 433, 438-39 (9th Cir. 1989).  "A motion to dismiss the indictment is not 'a device for a

5    summary trial of the evidence.'"  *United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012), *citing*

6    *United States v. Boren, supra*, 278 F.3d at 914.

7         **B.        Elements of the Charged Honest Services Fraud, Hobbs Act, and RICO Offenses**

8                  **1.        Honest Services Fraud**

9         Jackson moves to dismiss Counts 215 through 221 on grounds that the Superseding

10   Indictment fails to allege essential elements of the crimes charged.  Each of the counts is based on a

11   charge of honest services fraud.  In Count 215, Jackson and co-defendant State Senator Leland Yee are

12   charged with conspiracy to defraud the citizens of California of their right to Yee's honest services

13   through bribery, in violation of 18 U.S.C. §§1349 and 1343.[1]  Counts 216 through 221 incorporate the

14   honest services allegations in Count 215 and charge Jackson and Yee with devising a scheme to defraud

15   the citizens of California of their right to Yee's honest services, and for purposes of executing the

16   scheme, causing six separate interstate wire transmissions, in violation of 18 U.S.C. §§1343, 1346, and

17   2.

18        To prove a conspiracy, the government must show (1) an agreement between two or more

19   persons to accomplish an illegal objective, (2) the requisite intent to commit the substantive crime, and

20   (3) if required by the charging statute, one or more overt acts in furtherance of the illegal objective.  *See,*

21   *United States v. Montgomery,* 384 F.3d 1050, 1062 (9th Cir. 2004); *United States v. Hubbard*, 96 F.3d

22   1223, 1226 (9th Cir. 1996); 9th Cir. Crim. Jury Instr. 8.20 comment (2010).  Section 1349 does not

23   include a requirement, such as in 18 U.S.C. § 371, that the government allege and prove one or more

24   overt acts.  *See Whitfield v. United States*, 543 U.S. 209, 212-15 (2005)(if the statute creating the crime

25

26   _____
     [1] While the honest services fraud conspiracy charge in Count 215 makes explicit references to
27   honest services in the heading and text of the count, it does not include a citation to 18 U.S.C. § 1346,
     which states that the term "scheme or artifice to defraud" in § 1343 and other sections in the chapter
     "includes a scheme or artifice to deprive another of the intangible right of honest services."  The
28   government anticipates presenting a second superseding indictment to the grand jury and at that time
     will include an express citation to 18 U.S.C. § 1346 in Count 215.

1  does not expressly make commission of an overt act an element of the offense, the government need not

2  prove an overt act to obtain a conviction).  To convict a person of wire fraud in violation of 18 U.S.C.

3  § 1343, the government must prove that the defendant "(1) participated in a scheme to defraud; and (2)

4  used the wires to further the scheme."  *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir.

5  2000)(citations omitted).

6      Each of counts 215 through 221 alleges that the scheme to defraud in this case was a scheme to

7  deprive the citizens of their right to Yee's honest services in his capacity as State Senator through

8  bribery.  As stated by the Supreme Court in *Skilling v. United States*, 561 U.S. 358 (2010), 18 U.S.C.

9  § 1346 is intended to criminalize the traditional core of honest services offenses, that is, "offenders who,

10  in violation of a fiduciary duty, [participate] in bribery or kickback schemes."  *Id*. at 407-08.  It noted

11  that it is "beyond dispute" that a public official holds a fiduciary duty to the public.  *Id*. at 408, n.41.

12  While the term "honest services" is not defined in the statute, the underlying theory is that when a public

13  official receives a bribe from a third party for an act performed within the purview of that official's

14  duties, there may not be a monetary loss, as there often is in traditional fraud cases.  Nonetheless,

15  "[e]ven if the scheme occasioned a money or property *gain* for the betrayed party, actionable harm lay in

16  the denial of that party's right to the offender's 'honest services.'"  *Id*., at 400, (emphasis in original).  In

17  cases involving bribery of public officials, "[t]he requisite 'scheme or artifice to defraud' is found in the

18  deprivation of the public's right to honest and faithful government.  When a public official is bribed, he

19  is making a decision while purporting to be exercising his independent discretion.  The fraud element is

20  therefore satisfied."  *United States v. Bonhous*, 628 F.2d 1167, 1171 (9th Cir. 1980).

21      A specific intent to defraud is a required element of honest services fraud.  *United States v.*

22  *Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir. 2009).  In *Skilling*, the Supreme Court described an

23  honest services fraud as working a "deception" on a victim, [*see* 561 U.S. at 400-01], and the opinion

24  also referred to § 1346 as covering "fraudulent" schemes to deprive victims of honest services.  *Id*. at

25  404.  Hence, the Ninth Circuit's jury instruction for a scheme alleging honest services fraud in violation

26  of § 1346 provides that the government must prove "the defendant acted with the intent to defraud by

27  depriving [a specified victim] of his or her right of honest services."  9th Cir. Crim. Jury Instr. 8.123

28  (2010).  In *Kincaid-Chauncey*, the Ninth Circuit approved a jury instruction in an honest services fraud

1   case that instructed the jury that the "official must have had an intent 'to be improperly influenced in his

2   or her official duties.'"  *Id*. at 946.

3         In addition, any fraud case, including an honest services fraud case, includes an element of

4   materiality.  *See Neder v. United States*, 527 U.S. 1, 22-23 (1999); 9th Cir. Crim. Jury Instr. 8.123 and

5   comment (2010)(government must prove the defendant's act was material; that is, it had a natural

6   tendency to influence, or was capable of influencing, a person's or entity's acts).[2]  "The fraudulent

7   nature of the 'scheme or artifice to defraud' is measured by a non-technical standard."  *United States v.*

8   *Woods*, 335 F.3d 993, 998 (9th Cir. 2003).  "Thus, schemes are condemned which are contrary to public

9   policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair

10  play and right dealing in the general and business life of members of society."  *Id*.

11        Finally, in order to prove an honest services bribery theory under Section 1346 and an

12  accompanying conspiracy, mail fraud, or wire fraud statute, *i.e.* § § 1349, 1341, or 1343, the government

13  must show at least an implicit *quid pro quo*.  *United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 (9th

14  Cir. 2009).  "Only individuals who can be shown to have had the specific intent to trade official actions

15  for items of value are subject to criminal punishment on this theory of honest services fraud."  *Id*. at 943,

16  n. 15.  "Without a link between the item of value received and an understanding that the public official

17  receiving it is to perform official acts on behalf of the payor when called upon, there is no discernible

18  way to distinguish between an elected official responding to legitimate lobbying and a corrupt politician

19  selling his votes to the highest bidder."  *Id*. at 943.  *Also see, United States v. Sun-Diamond Growers*,

20  526 U.S. 398, 404-05 (1999)(in a bribery case under 18 U.S.C. § 201(b), finding that "for bribery, there

21  must be a *quid pro quo* – a specific intent to give or receive something of value *in exchange for* an

22  official act.")(emphasis in original).

23        In *Kincaid-Chauncey*, the Ninth Circuit held "[t]he *quid pro quo* necessary for a bribery honest

24  services conviction need not be explicit, and an implicit *quid pro quo* need not concern a specific official

25  act."  *Kincaid-Chauncey, supra*, 556 F.3d at 943.  The *quid pro quo* requirement can be satisfied if the

26

27        [2] The government notes that Counts 215 and Counts 216 through 221 do not expressly allege that
    the scheme to defraud was a material scheme, and will make that amendment when the second
28  superseding indictment is presented to the grand jury.  *See, United States v. Omer*, 395 F.3d 1087 (9th
    Cir. 2005).

1    evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a

2    pattern of official acts favorable to the donor.  *Id.*

3         The *quid pro quo* requirement also applies when the money being paid as a bribe in an honest

4    services case is a campaign contribution.  The Supreme Court recently noted that "[t]he right to

5    participate in democracy through political contributions is protected by the First Amendment, but that

6    right is not absolute.  Our cases have held that Congress may regulate campaign contributions to protect

7    against corruption or the appearance of corruption."  *McCutcheon v. Federal Election Commission*, ___

8    U.S. ___, 134 S.Ct. 1434, 1441 (2014).  "[G]overnment regulation may not target the general gratitude a

9    candidate may feel toward those who support him or his allies, or the political access such support may

10   afford."  *Id.*   "Any regulation must instead target what we have called '*quid pro quo*' corruption or its

11   appearance.  That Latin phrase captures the notion of a direct exchange of an official act for money.

12   The hallmark of corruption is the financial *quid pro quo*:  dollars for political favors."  *Id.* (citations

13   omitted).

14        In honest services fraud cases, whether there is a heightened requirement that the *quid pro quo*

15   be explicit when the bribe is in the form of campaign contributions is not as clearly settled as Jackson

16   represents in his instant motion.  Jackson repeatedly asserts that for an honest services fraud charge

17   involving campaign contributions, the government must prove an explicit *quid pro quo*, that is, "an

18   explicit promise or undertaking by the official to perform or not to perform an act."  Jackson Mot.,

19   Document 525, at 8, *quoting McCormick v. United States*, 500 U.S. 257, 272-73 (1991).  As discussed

20   below, even if under the circumstances of the instant case an explicit *quid pro quo* must be alleged in

21   order to meet the sufficiency requirements of the charging language, the indictment here meets that

22   requirement.  However, in analyzing the law on the subject, it is important to clarify that neither the

23   Supreme Court nor the Ninth Circuit has specifically held that in order to constitute an honest services

24   bribery violation, the *quid pro quo* must be explicit.

25        As a starting place, Jackson's citation to *Skilling* as requiring an allegation of an explicit *quid pro*

26   *quo* in order to charge an honest services fraud crime based on campaign contributions is simply wrong.

27   *See* Document 525 at 4.  Further, the controlling authority upon which Jackson relies for his claim, *i.e.*

28   *McCormick, supra*, 500 U.S. at 272-73; *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011);

1   and *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992), are cases that held that such a

2   requirement pertained in prosecutions under 18 U.S.C. § 1951, the Hobbs Act.  None of those cases held

3   that the same requirement applies in honest services fraud cases.  In *Inzunza*, the Ninth Circuit cited

4   *McCormick* for the requirement of an explicit *quid pro quo* when an official extorts campaign

5   contributions in violation of the Hobbs Act; it separately cited *Kincaid-Chauncey*'s requirement of "at

6   least an implicit *quid pro quo*" when the offense is honest services fraud.  *See, Inzunza, supra*, 638 F.3d

7   at 1013.  The Court then went on to hold that the allegation of a *quid pro quo* – whether explicit or

8   implicit -- in charging both Hobbs Act violations and honest services fraud is required as a matter of

9   law.  *Id*. at 1019.

10           With that clarification, the government understands the caution that courts have expressed when

11   Hobbs Act extortion charges involve payment in the form of campaign donations.  As the Supreme

12   Court discussed in *McCormick*, campaign money is constantly being solicited on behalf of candidates,

13   and legislators often act for the benefit of constituents who may have made campaign donations.  That,

14   in and of itself, cannot form the basis of a Hobbs act extortion charge where the legislator is charged

15   with taking money to which he is not entitled under color of official right.  *McCormick, supra*, 500 U.S.

16   at 272-73.  However, the Court went on to say:

17                       This is not to say that it is impossible for an elected official to commit extortion
                        in the course of financing an election campaign.  Political contributions are of course
18                       vulnerable if induced by the use of force, violence, or fear.  The receipt of such
                        contributions is also vulnerable under the [Hobbs] Act as having been taken
19                       under color of official right, but only if the payments are made in return
                        for an explicit promise or undertaking by the official to perform or not to perform
20                       an official act.  In such situations the official asserts that his official conduct
                        will be controlled by the terms of the promise or undertaking.  This is the
21                       receipt of money by an elected official under color of official right
                        within the meaning of the Hobbs Act.
22

23   *Id.* at 273.

24           Even where the law requires proof of an explicit *quid pro quo*, the evidence of the agreement and

25   intent to make such an exchange need not be explicit.  In *Inzunza*, the Ninth Circuit made a point of

26   stating that the "requirement of explicitness [in *McCormick*] refers to the promise of official action, not

27   the connection between the contribution and the promise.  An official may be convicted without

28

evidence equivalent to a statement such as:  'Thank you for the $10,000 campaign contribution.  *In return for it*, I promise to introduce your bill tomorrow.'  The connection between the explicit promise of official action and the contribution must be proved, but the proof may be circumstantial, under the test as it is stated in *McCormick* and elaborated in *Carpenter*, 961 F.2d at 827."  *Inzunza, supra*, 638 F.3d at 1014 (emphasis in original).  In *Carpenter*, the Ninth Circuit rejected the defendant's argument that the explicitness requirement [under the Hobbs Act] could not be met "unless an official has specifically stated that he will exchange official action for a contribution."  *Carpenter*, 961 F.2d at 827.  The Court held:  "To read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money."  *Id.*  As long as the evidence establishes a clear and unambiguous bargain that a contribution is given or received in exchange for official action, that will satisfy the "explicitness" requirement for campaign contributions under the Hobbs Act.  *Id.*

As discussed below, even if this level of explicitness is a required element for any bribes in the form of campaign contributions in the honest services fraud charges in the instant indictment, the allegations in the indictment meet that requirement.

## 2.   *Hobbs Act Extortion Conspiracy*

Jackson also moves to dismiss Counts 213 and 215 of the superseding indictment on grounds that the counts fail to allege essential elements of the charge.  Counts 213 and 214 of the indictment charge Jackson and Yee with two Hobbs Act extortion conspiracies, that is, conspiracies to obtain property under color of official right in violation of 18 U.S.C. § 1951(a).  More specifically, Jackson and Yee are charged with knowingly and intentionally conspiring to "obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce, by extortion," that is, by conspiring to obtain property not due to Yee or his office and to which Yee was not entitled under color of official right.  *See*, Count 213, ¶ 6; Count 214, ¶ 8.

The elements of conspiracy are discussed above:  an agreement between two or more persons to accomplish an illegal objective, and the requisite intent to commit the substantive crime.  Section 1951(a) does not require proof of an overt act.  In order to convict a defendant of the substantive offense of Hobbs Act extortion under color of official right, the government must prove that he:  (1) was a government official; (2) who accepted property to which he was not entitled; (3) knowing that he was not entitled to the property; (4) knowing that the payment was given in return for official acts; and (5) which had at least a *de minimus* effect on commerce.  *United States v. Kincaid-Chauncey*, 556 F.3d 923, 936 (9th Cir. 2009).  A conviction for extortion under color of official right requires that the government prove a *quid pro quo*; that is, evidence that the public official received the payment knowing that it was made in return for official acts.  *Id*. at 937-38.  As discussed above, when the unlawfully gained property is in the form of a campaign contribution, the government must prove an explicit *quid pro quo*.  In *Kincaid-Chauncey*, the Court held that if the payment is not in the form of a campaign contribution, the *quid pro quo* need not be explicit.  *Id*. at 936.  *Also see, United States v. Ring*, 706 F.3d 460, 465 (D.C.Cir. 2013)(noting that in *McCormick*, [500 U.S. at 274, n.10] the Supreme Court "expressly declined to decide whether this requirement [of an explicit *quid pro quo* agreement in a Hobbs Act case] 'exists in other contexts, such as when an elected official receives gifts, meals, travel expenses, or other items of value'.")

### 3.    *RICO Conspiracy*

Jackson additionally moves to dismiss the RICO charge alleged in Count Two of the Superseding Indictment on grounds that the allegations are insufficient.  Count Two charges Jackson and Yee with engaging in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), with the object of the conspiracy a violation of 18 U.S.C. § 1962(c).  Section 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …."  18 U.S.C. § 1962(c).  The RICO conspiracy

statute provides:  "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), (c) of this section."  18 U.S.C. § 1962(d).

To adequately plead the elements of a RICO conspiracy, "an indictment need only charge – after identifying a proper enterprise and the defendant's association with that enterprise – that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity."  *United States v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1991).[3]

In charging a RICO conspiracy, there is no requirement in § 1962(d) that an overt act or specific predicate act be alleged.  Accordingly, the RICO conspiracy provision "… is even more comprehensive than the general conspiracy offense in [18 U.S.C.] § 371."  *Salinas v. United States*, 522 U.S. 52, 56 (1997).  "Proof of an agreement, the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d)."  *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984).  Although two predicate acts must be proven to sustain a conviction on a substantive RICO charge, "such proof is not required for conspiracy charges."  *Salinas, supra*, 522 U.S. at 61-66; *United States v. Wyatt*, 807 F.2d 1480, 1482 (9th Cir. 1987).  A conviction for RICO conspiracy "does not require the government to prove that *any* predicate act was actually committed at all."  *United States v. Fiander*, 547 F.3d 1036, 1043 (9th Cir. 2008)(*quoting United States v. Saadey*, 393 F.3d 669, 677 (6th Cir. 2005)(emphasis in original).

### C.    *The Superseding Indictment Sets Forth Allegations Sufficient To Support the Honest Services Fraud Charges in Counts 215 through 221*

Jackson challenges the sufficiency of the honest services fraud charges in Counts 215 through 221 on three grounds:  (1) the charges do not allege an explicit *quid pro quo*, that is, an explicit promise in exchange for a specific official act; (2) as such, the honest services statute as applied to Jackson is

---

[3] The *Glecier* pleading format has been accepted by every circuit that has addressed this form of RICO conspiracy indictment.  *See United States v. Applins*, 637 F.3d 58, 81-82 (2d Cir. 2011); *United States v. Crockett*, 979 F.2d 1204, 1209 (7th Cir. 1992); *United States v. Phillips*, 874 F.2d 123, 127-28 & n.4 (3d Cir. 1989); *United States v. Sutherland*, 656 F.2d 1181, 1197 (5th Cir. 1981).

1    void for vagueness; and (3) the charges fail to allege a material misstatement or omission.

2                    **1.       _An Explicit Quid Pro Quo is Alleged_**

3            Reading the honest services fraud charges in the superseding indictment in their entirety,

4    construing them according to common sense, and interpreting them to include facts which are

5    necessarily implied, the indictment is more than sufficient to state the offenses charged and put Jackson

6    on notice of what he must defend against.  This includes alleging the explicit *quid pro quos* that were

7    part of the manner and means of the conspiracy (Count 215) and were part of the scheme and artifice to

8    defraud the citizens of California of their right to Yee's honest services (Counts 216 through 221).

9            The honest services conspiracy charge in Count 215 tracks the statutory language of § § 1343

10   and 1346 and incorporates the necessary elements of those statutes and conspiracy.  The charge alleges

11   that (1) Yee was an elected California State Senator who owed a fiduciary duty and a duty of honest

12   services to the citizens of California; (2) Jackson and Yee knowingly and intentionally conspired to

13   commit wire fraud; (3) the fraudulent scheme that Jackson and Yee devised and intended to devise was a

14   scheme and artifice to defraud the citizens of California of their right to Yee's honest services through

15   bribery; (4) that is, Yee and Jackson devised and participated in a scheme to use Yee's official position

16   as a California State Senator to enrich themselves and obtain money for Yee's San Francisco mayoral

17   campaign and Secretary of State campaigns by soliciting and obtaining payments, including campaign

18   donations, in exchange for Yee performing official acts for the benefit and at the request of those from

19   whom money was solicited and obtained; and (5) for the purpose of executing this scheme and artifice to

20   defraud, Jackson and Yee conspired to transmit and cause to be transmitted wire communications in

21   interstate commerce.  *See* Count 215, ¶ ¶ 1, 12, and 13.

22           Although this would be sufficient under the standards for evaluating charging language and

23   putting Jackson on notice of the charge against him in Count 215, the indictment goes on for an

24   additional thirty-five paragraphs to describe the scheme to defraud in more detail.  This includes

25   describing three separate bribes that were part of Yee's and Jackson's conspiracy to exchange official

26   acts by Yee for money.  First, in paragraphs 14 through 26 of Count 215, the indictment describes how

27   Yee and Jackson developed a relationship with a donor described as UCE-4773, who was in fact an FBI

28   undercover agent, and their solicitation of UCE-4773 for donations to Yee's campaigns.  At the same

1    time, UCE-4773 described to Jackson and Yee how he was seeking public grants and contracts in

2    California for his client, Well-Tech.  The indictment then describes how, at one point, Yee solicited a

3    $10,000 campaign donation from UCE-4773, UCE-4773 told Yee he needed Yee to make a phone call

4    to the state health department on behalf of Well-Tech, and Yee agreed to do so.  UCE-4773 also told

5    Yee that he needed a letter on behalf of Well-Tech, and Yee agreed to write the letter.  The indictment

6    alleges Jackson's involvement; the telephone call made by Yee to an individual whom he believed was a

7    manager with the California Department of Public Health in which he expressed his support for Well-

8    Tech; the letter that Yee wrote on State Senate letterhead in support of Well-Tech; and the $10,000 cash

9    payment that UCE-4773's associate, UCE-4599, paid to Jackson.  Thus, there is no question that the

10    allegation is that Yee and Jackson conspired to exchange official acts by Yee on behalf of UCE-4773's

11    client, that is, the phone call in Yee's capacity as State Senator and a letter on State Senate letterhead, in

12    exchange for what they represented would be a $10,000 donation to retire Yee's mayoral debt.  It is

13    worth pointing out that although the solicitation on the part of Yee and Jackson was for a campaign

14    donation, the payment was made in cash and not in the form of a check made payable to the campaign.

15    It is not known at this juncture whether the cash went to the campaign or what Jackson did with the

16    money.

17         Second, at paragraphs 27 through 35, the indictment describes another bribe that was part of the

18    honest services conspiracy.  It alleges that at the same time that UCE-4599 paid the $10,000 to Jackson

19    for the Well-Tech letter and phone call, UCE-499 asked Jackson about helping [co-defendant] Kwok

20    Cheung "Shrimpboy" Chow" and Jackson discussed needing money to retire Yee's mayoral campaign

21    debt.  UCE-4599 offered to help retire the debt in exchange for Yee's assistance to Chow.  The

22    indictment describes that UCE-4599 discussed his request for assistance to Chow with Yee in Jackson's

23    presence; UCE-4599 asked Yee instead to provide an official proclamation to the Chee Kung Tong,

24    Chow's organization, at an upcoming celebration; Yee agreed to the request and provided, through a

25    staff member, a proclamation on State Senate letterhead; and Jackson's follow-through in obtaining

26    $6,800 in checks from UCE-4599 made payable to Yee's Secretary of State campaign.  Again, it is clear

27    that the allegation is that Yee and Jackson conspired to exchange Yee's official act in providing a

28    proclamation on State Senate letterhead for campaign donations from UCE-4599.

1    Third, at paragraphs 36 through 48, the conspiracy allegations describe two more bribe

2  transactions in which Jackson and Yee participated.  These had to do with a third FBI undercover agent,

3  UCE-4180, who was posing as a businessman involved in the medical marijuana business in Arizona

4  and who represented that he was seeking to expand his business to California and was particularly

5  interested in statewide legislation in California that would include provisions favorable to his business

6  model.  *See*, Count 215, at ¶ 9.  The indictment describes how Jackson and Yee sought to obtain

7  campaign donations from UCE-4180 and UCE-4180's associate, CHS #11; that in furtherance of UCE-

8  4180's interests in medical marijuana legislation, CHS #11 asked Yee to contact another State Senator,

9  referred to as State Senator 1, and express Yee's support for features that would be helpful to UCE-4180

10  and offered to make a campaign donation in exchange; Yee and Jackson discussed the offer; Yee

11  introduced UCE-4180 to State Senator #1 and expressed support for the issue of medical marijuana;

12  UCE-4180 delivered $11,000 cash to Yee and Jackson as payment for the meeting with State Senator 1;

13  Yee complained to Jackson about the small amount of money received from UCE-4180 "for all we've

14  done"; Yee introduced UCE-4180 to a second State Senator, State Senator 2, whom Yee represented as

15  having influence over medical marijuana legislation and advocated for UCE-4180's interests in

16  legislation at the meeting; and at a meeting with Yee and Jackson, UCE-4180 paid an additional $10,000

17  cash, saying it was for the meetings with the state senators.  Again, the allegation is that Yee and

18  Jackson conspired to exchange Yee's influence with two fellow legislators on legislation that was of

19  interest to UCE-4180 for money.  The government points out again that while the money was

20  purportedly for campaign donations, it is not yet clear what happened to the money.

21    In sum, even if the allegations in Count 215 were limited to the charging language in paragraphs

22  1 through 13, the elements are stated and the allegations provide sufficient notice of the charge.  If there

23  are any questions in that regard, the specific allegations in the subsequent paragraphs describing the

24  scheme and the explicit *quid pro quos* by which Yee and Jackson conspired and schemed to exchange

25  Yee's official acts for money, address those questions.  When Count 215 is read in its entirety according

26  to common sense, it fairly informs Jackson of the charge against which he must defend.  The allegations

27  in the wire fraud counts, Counts 216 through 221, are similarly sufficient.  They track the language of

28  the wire fraud statute and incorporate the paragraphs in Count 215 that describe the scheme to defraud.

### 2.    *The Honest Services Fraud Charges Are Not Vague as to Jackson*

For these reasons, Jackson's claim that the honest services fraud charges are unconstitutionally vague as to him also fails.  In *Skilling*, the Supreme Court held that when fraudulent schemes to deprive another of honest services involve bribes or kickbacks, § 1346 is not unconstitutionally vague.  *Skilling, supra*, 561 U.S. at 404, 412 ("As to fair notice, 'whatever the school of thought concerning the scope and meaning of § 1346, it has always been 'as plain as a pikestaff that' bribes and kickbacks constitute honest-services fraud" [citation omitted]).  The honest services fraud allegations in the instant indictment expressly charge that the scheme was based on "bribery," that is, "a scheme to use defendant Yee's official position as a California State Senator to enrich themselves and obtain money for defendant Yee's San Francisco mayoral and California Secretary of State campaigns by soliciting and obtaining payments, including campaign donations, in exchange for Yee performing official acts for the benefit and at the request of those from whom money was solicited and obtained."  Count 15, at ¶¶ 12-13; Counts 216-221, at ¶¶ 1-2.  As discussed above, the indictment then describes the schemes and sufficiently puts Jackson on notice of the offenses with which he is charged.  Accordingly, the honest services fraud charges are not unconstitutionally vague as applied to Jackson.

### 3.    *The Acts In Exchange for Money were Official Acts*

In challenging the sufficiency of the honest services charges, Jackson argues that, as charged, the official acts alleged to have been undertaken by Yee are not sufficient to constitute "official acts" that can form the basis of an honest services fraud scheme.  To the contrary, for purposes of the sufficiency of the indictment, the official acts that Yee is alleged to have undertaken in exchange for money, i.e. (1) making a call to a state agency manager who purportedly was considering a state contract for Well-Tech and expressing support for Well-Tech; (2) writing a letter on his State Senate office letterhead expressing support for Well-Tech; (3) arranging for the issuance of a proclamation on behalf of the Chee Kung Tong on State Senate letterhead and the presentation of the proclamation on Yee's behalf by a Yee staff member; and (4) introducing UCE-4180 to two State Senators and expressing support for UCE-4180's position on legislation, are all properly alleged as official acts for purposes of honest services fraud.

First, the acts that Yee agreed to undertake as part of the scheme and conspiracy, and then

actually undertook, fall within the scope of 18 U.S.C. § 201(a)(3), which defines "official act" in the bribery statute.  Subsection (a)(3) provides:

> [t]he term "official act" means any decision *or action* on any question, *matter*, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

18 U.S.C. § 201(a)(3)(emphasis added).

The courts, including the Supreme Court, have interpreted this provision broadly.  Those decisions go back to *United States v. Birdsall*, 233 U.S. 223 (1914) in which the Court addressed the predecessor to 18 U.S.C. § 201(a)(3) and held that "[e]very action that is within the purview of official duty comes within the purview of these sections."  *Id*. at 230.  The Court went on to state:  "In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery."  *Id*. at 231.

More recently, in *United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012), the Fourth Circuit noted the substantial similarity between the current definition of official act in § 201(a)(3) and that considered in *Birdsall*.  *Id*. at 352-53.  The court affirmed a Louisiana congressman's convictions for bribery and honest services bribery fraud, among other things, for taking money in exchange for engaging in a series of acts including arranging meetings where he promoted the interests of a specific business and vouching for another company to secure contracts.  *Id*. at 356.  The court affirmed jury instructions that included the definition of "official action" in § 201(a)(3) and added:  "an act may be official even if it was not taken pursuant to responsibilities explicitly assigned by law.  Rather, official acts include those activities that have been clearly established by settled practice as part [of] a public official's position."  *Id*. at 357.  *Also see, United States v. Valdes*, 475 F.3d 1319, 1323 (D.C. Cir. 2007)("official action" under § 201(a)(3) can include duties not completely defined by written rules but are "clearly established by settled practice" and "activities performed as a matter of custom."); *accord, United States v. Ring*, 706 F.3d 460, 470 (D.C. Cir. 2013); *United States v. Biaggi*, 853 F.2d 89, 97, 98 (2d Cir. 1988)(finding that § 201(a)(3) is not limited to legislative acts:  "[t]he language of the section does not mention legislative acts, and courts have read the section and its predecessors sufficiently

broadly to encompass all of the acts normally thought to constitute a congressman's legitimate use of his office," and that writing letters on behalf of a company on congressional stationery can fall within definition of "official acts."); *United States v. Carson*, 464 F.2d 424, 433-34 (2d Cir. 1972)("there is no doubt that federal bribery statutes have been construed to cover any situation where the advice or recommendation of a government employee would be influential, irrespective of the employee's specific authority (or lack of same) to make a binding decision.")

For purposes of alleging the crime of honest services fraud and official acts that Yee and Jackson are alleged to have agreed to exchange for money, the acts described in the indictment clearly fall within the scope of the definition of official acts in § 201(b)(3).

Contrary to Jackson's contention, the Supreme Court's decision in *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999), does not hold otherwise.  In *Sun-Diamond*, the Court was concerned with an unwarranted extension of the illegal gratuity statute, 18 U.S.C. § 201(c)(1)(A), which prohibits giving anything of value to a past, present, or future public official "for or because of any official act performed or to be performed by such public official."  *Id*. at 400.  The Court declined to read the illegal gratuity statute so broadly as to prohibit gifts given solely by reason of the donee's *position or office*.  *Id*. at 407-08.  Instead, it held that a connection between the payment or gift and a specific official *act* was required, as defined in 18 U.S.C. § 201(a)(3), as opposed to those gratuities given simply because of status or in order to create a "reservoir of goodwill."  *Id*. at 405.  To hold otherwise might lead to criminalizing token gifts by a sports team to the President during a ceremony welcoming the team to the White House.  *Id*. at 406-07.  The Court held that such absurdities were eliminated by limiting prosecutions under the illegal gratuity statute to only those where the government proves "a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given."  *Id.* at 414.

In the instant case, there is no ambiguity about the allegations.  The allegations are not that Yee and Jackson conspired to accept money simply by virtue of Yee's position or in order to create a reservoir of goodwill.  The allegations are that Jackson and Yee intended an exchange of money for acts that Yee would, and did, perform as part of his office.

Finally, to the extent that Jackson is asserting that the charged official acts do not qualify as

1    "official acts" under the statute, he is treading into a challenge based on the sufficiency of the evidence,

2    not the charging language in the indictment.  Such evidentiary contentions are not proper challenges to

3    the sufficiency of the indictment.  *United States v. Calandra*, 414 U.S. 338, 349-51 (1974).  The Ninth

4    Circuit's decision in *United States v. Carpenter, supra*, 961 F.2d 824 illustrates how the nature and

5    quantum of evidence can determine whether an act undertaken by a public official constitutes an

6    "official act" that can form the basis of a Hobbs Act extortion charge.  The Court held that denying or

7    granting lobbyists access to a public official based on the level of campaign donations alone would not

8    constitute an "official act."  *Id*. at 827.  However, it is a different matter "if that granting or denying

9    access based on contributions [occurs] in such a context that it sends a clear and unambiguous message

10   that a legislator is conditioning his support for legislation on those levels of contributions."  *Id*.  To the

11   extent, then, that Jackson's objection to the "official act" allegations depends on the evidence of the

12   nature of the acts, and the intention with which Yee and Jackson conspired to perform the acts,

13   Jackson's challenge is premature.

14                    ***4.       No Material Misrepresentation or Omission Must Be Alleged***

15           Jackson's final challenge to the sufficiency of the honest services allegations is that they do not

16   allege any material misstatement or omission.  In making this argument, Jackson fails to recognize that

17   the wire fraud statute requires the government to prove that the defendant "having devised or intending

18   to devise any scheme or artifice to defraud, *or* for obtaining money or property by means of false or

19   fraudulent pretenses, misrepresentations, or promises," transmits or causes wire transmissions in

20   interstate commerce.  18 U.S.C. § 1343 (emphasis added).  Thus, as held by the Ninth Circuit in *United*

21   *States v. Munoz*, 233 F.3d 1117, 1131, "there are alternate routes to a mail fraud conviction, one being

22   proof of a scheme or artifice to defraud, which may or may not involve any specific false statements."

23   *Also see, United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003)("The key lesson in *Lustiger [v.*

24   *United States*, 386 F.2d 132, 99th Cir. 1967)] was that if a scheme is devised with the intent to defraud,

25   and the mails are used in executing the scheme, the fact that there is no misrepresentation of a single

26   existing fact is immaterial.")  The identical language appears in both the mail fraud and wire fraud

27   statutes and the same analysis would apply to both.

28   ///

### D.    The Superseding Indictment Sets Forth Allegations Sufficient to Support The Hobbs Act Conspiracy Charges in Counts 213 and 214

Jackson also challenges the Hobbs Act extortion conspiracy charges in Counts 213 and 214 as insufficient on grounds that they (1) fail to allege a *quid pro quo*, that is, a clear and unambiguous promise by Yee to perform an official act in exchange for a campaign contribution; and (2) fail to allege how the scheme had at least a *de minimus* effect on interstate commerce.  Both of these arguments are without merit.

Each of Counts 213 and 214 alleges a violation of 18 U.S.C. § 1951(a), conspiracy to obtain property under color of official right.  Each count alleges that that Yee was an elected California State Senator and that certain legislation – in Count 213, Senate Bill 309, and in Count 214, Assembly Bill 1309 – was introduced in the California legislature on specific dates.  In parallel language in each count, Counts 213 and 214 then allege that (1) Jackson and Yee knowingly and intentionally conspired with each other and with others, (2) to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce, (3) by extortion, as that term is defined in 18 U.S.C. § 1951, (4) that is, to obtain property not due Yee or his office and to which Yee was not entitled, from certain individuals who had an interest in the legislation, with their consent, under color of official right.  This language tracks the statute and states each of the elements of Hobbs Act extortion conspiracy.  *See*, Count 213, ¶ 6; Count 214, ¶ 8.

Each Hobbs Act conspiracy charge then explains that the manner and means by which Jackson and Yee would and did carry out the conspiracy to obtain property under color of official right included a number of acts.  *See*, Count 213, ¶¶ 7-14; Count 214, ¶¶ 9-15.  When those sections are read in their entirety, and the language is construed according to common sense and interpreted to include facts which are necessarily implied, they describe the extortion, in the form of a *quid pro quo* exchange, that Jackson and Yee were conspiring to accomplish.  In the conspiracy alleged in Count 213, the plan was to leverage Yee's vote on legislation that would extend the existence of the California State Athletic

1    Commission (CSAC) by convincing individuals who wanted the measure to pass that Yee was inclined

2    to vote against it, but by hiring Jackson to persuade Yee and by donating to Yee's Secretary of State

3    campaign, Yee's decision would likely be altered.   Count 214 alleges a similar quid pro quo extortion

4    scheme whereby Yee and Jackson conspired to leverage Yee's vote on legislation that would limit the

5    ability of professional athletes employed by non-California teams to file workers' compensation claims

6    in California.   The players of professional teams opposed the bill.   The manner and means section

7    includes descriptions of conversations in which Jackson and Yee expressly discussed that Yee should

8    determine how to vote depending on whether he got more money from the owners of, or the players on,

9    a specific professional sports team.   The section also describes how Jackson and Yee negotiated with

10   UCE-4180, a purported friend of the owner of a second professional sports team, to obtain payment in

11   exchange for Yee's favorable vote on the bill.   They ultimately negotiated a $60,000 payment from the

12   team's owner.

13       Jackson's other complaint about the Hobbs Act conspiracy counts is that they do not allege *how*

14   the extortion conspiracy had an effect on interstate commerce.   Again, the allegations contained in

15   Counts 213 and 214 are sufficient.   They track the language of the statute and allege that the defendants

16   knowingly and intentionally conspired, by extortion, to obstruct, delay, or affect interstate commerce in

17   any way or degree.   *See*, Count 213, ¶ 6; Count 214, ¶ 8.   The Ninth Circuit has held that such language

18   in an indictment charging a Hobbs Act violation is sufficient.   In *United States v. Woodruff*, 50 F.3d 673

19   (9th Cir. 1995), the Court addressed the identical challenge raised by Jackson here and held that the

20   government is not required to state facts, evidence, or its theory establishing at least a *de minimus*

21   interstate nexus.   *Id.* at 676-77.

22       The charging language in both Hobbs Act charges is sufficient to state the elements of

23   conspiracy to obtain property under color of official right in violation of 18 U.S.C. § 1951(a) and to put

24   Jackson on notice of the offense against which he must defend.   Accordingly, Jackson's motion to

dismiss Counts 213 and 214 should be denied.

        **E.**      ***The Superseding Indictment Sets Forth Allegations Sufficient to Support The RICO Conspiracy Charge in Count 2***

Jackson contends that Count Two of the Superseding Indictment is insufficient on its face and should be dismissed because it does not allege:  (1) an explicit *quid pro quo*; (2) that the RICO agreement explicitly contemplated *quid pro quo* bribery; (3) the defendants agreed who would commit any particular acts; and (4) at least two related acts of racketeering activity.   Jackson's arguments ignore the fact that the allegations in Count Two are not only sufficient under the pleading requirements for an indictment charging a violation of § 1962(d), they go well beyond what is required to put Jackson on notice of what he must defend against and plead double jeopardy.

Count Two starts by identifying the racketeering enterprise, known as "the Campaign," in detail. In sum, the enterprise was the campaign created to conduct and finance the electoral campaigns of State Senator Leland Yee for Mayor of San Francisco in the mayoral election to be held on November 8, 2011, and the California Secretary of State in the primary election in June 2014 and the general election in November 2014.  *See* Superseding Indictment at ¶¶ 1-5.  The same racketeering enterprise section includes a description of Jackson's position and role in the enterprise.  The indictment then goes on to describe the purposes of the enterprise, which, in sum, were solicitation of money for Jackson and Yee; solicitation of campaign contributions; and providing financial support to members of the campaign / enterprise, including Jackson and Yee.  *Id.* at ¶ 6.  Count Two then includes a section entitled "The Means and Methods of the Enterprise," which describes the types of actions taken by Jackson, Yee, and other members and associates of the enterprise, including soliciting campaign contributions and payments to the campaign *in exchange for official action by Yee* (*see* ¶ 7a); discussing plans and agreements regarding the commission of future crimes, including mail fraud, wire fraud, honest services fraud, bribery, extortion, and trafficking in firearms, among other things (*see* ¶ 8); and agreeing to commit mail fraud, wire fraud, honest services fraud, bribery, extortion, trafficking in firearms, money

1  laundering, and other crimes.  *See* ¶ 9.   The racketeering conspiracy charge is then set out in paragraph

2  10 and alleges that starting in at least 2011 and continuing to the present time, Jackson and Yee, along

3  with others,

> "each being employed by and associated with the Campaign, an enterprise engaged in, and the
> activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and
> intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to
> conduct and participate, directly and indirectly, in the conduct of the affairs of the Campaign
> enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code,
> Sections 1961(1) and (5), which pattern of racketeering activity consisted of: …."

*Id*. at 10.

Paragraph 10 continues by alleging that the racketeering activity consisted of "multiple acts"

indictable under various statutes including mail fraud, wire fraud, honest services fraud, and firearms

offenses.  *Id*.  Finally, under the headings "Means and Methods of the Conspiracy" and "Overt Acts,"

the indictment lists *some* of the acts in furtherance of the conspiracy and *some* of the methods the

members of the conspiracy employed to accomplish the purposes of the enterprise.  *Id*. at ¶ ¶ 12-13.  The

overt acts section lists fifty separate acts, many of which mirror acts identified in the two Hobbs Act

conspiracies alleged in Counts 213 and 214; the honest services fraud conspiracy alleged in Count 215;

and the conspiracy to engage in the unlicensed business of dealing in firearms and to knowingly import

firearms and ammunition illegally, as charged in Count 222.

In light of the extensive description of the criminal conduct alleged, which goes far beyond what

is required to plead a RICO conspiracy, Jackson's complaints about sufficiency fail.  First, it is simply

incorrect that Count Two does not include an allegation that the racketeering enterprise operated through

honest services fraud based on *quid pro quo* bribery.  Those allegations are spelled out in the "Means

and Methods of the Enterprise" section.  In addition, the pattern of racketeering includes references to

honest services fraud; the "Means and Methods of the Conspiracy" section describe *quid pro quo*

solicitations to exchange money for official acts; and the overt acts section – which is not required –

describes some of the specific exchanges / bribes that Jackson and Yee conspired to accomplish in

furtherance of the enterprise's purpose of obtaining money.

Second, Jackson's complaints that the allegations fail to "create an inference that each defendant explicitly agreed to participate in a conspiracy for the purpose of engaging in *quid pro quo* bribery," and provide "no specific facts … regarding when the alleged criminal agreement was formed, or that the defendants agreed who would commit any particular acts," [Document 525, at 18] misconstrue the difference between sufficiency of allegations for pleading a charge and sufficiency of proof for conviction.  The question presented here is whether the indictment is valid on its face, which it clearly is.  The indictment need not be pled in "evidentiary detail," and to the extent that Jackson's motion raises issues about the evidence that supports the allegations and the sufficiency of that evidence, it is premature.  *United States v. Woodruff*, *supra*, 50 F.3d at  676,

Jackson's claim that Count Two is defective because it fails to sufficiently allege a pattern of racketeering is similarly without merit.  The indictment follows the statutory language and alleges that Jackson and Yee conspired to conduct and participate in the conduct of the Campaign enterprise through a pattern of racketeering activity.  The indictment then alleges facts sufficient to establish the acts agreed upon constitute a pattern of racketeering activity.

A pattern of racketeering is defined as two acts of racketeering activity, one of which occurred after the effective date of the RICO statute, and the last of which occurred within ten years after the commission of the prior act of racketeering activity.  *See* 18 U.S.C. § 1961(5).  The term "pattern" itself requires the showing of a relationship between the acts and the threat of continuing criminal activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Following the language in *H.J., Inc.*, courts have ruled that neither "relatedness" nor "continuity" is an element of the offense that must be alleged with particularity in the indictment.  Rather, relatedness and continuity are necessary characteristics of the evidence used to *prove* the existence of a pattern.  *See United States v. Palumbo Brothers, Inc.,* 145 F.3d 850, 877-78 (7th Cir. 1998)*; United States v. Boylan*, 898 F.2d 230, 250 (1st Cir.

1990).  Relatedness requires a showing that the criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events."  *H.J., Inc., supra*, 492 U.S. at 239.  While the pattern cannot be made up of sporadic, unrelated acts, there is sufficient proof of relatedness as long as the acts are in some ways related to the affairs of the charged enterprise.  *See, e.g., United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000); *United States v. Eufrasio*, 935 F.2d 553, 566 (3d Cir. 1991)("Separately performed, functionally diverse, and directly unrelated predicate acts and offenses will form a pattern under RICO, as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized crime enterprise.")

The concepts of relatedness and continuity are pled sufficiently in Count Two.  To the extent that Jackson is objecting that the indictment does not explain *how* the criminal acts are related, he is again raising objections about the sufficiency of the evidence.  The indictment alleges the criminal acts agreed upon were all to be committed by members and associates of the Campaign enterprise.  *See* S. Indictment at ¶¶ 10-12.  The indictment further alleges that the purposes of the Campaign enterprise were to solicit campaign contributions in exchange for official action by Yee and in exchange for assistance in providing firearms and other weapons, soliciting money for Jackson and Yee, and providing financial support to members of the enterprise, including Jackson and Yee.  *Id*. at ¶ 6.  The criminal activity through which those purposes were accomplished included, among other things, soliciting and receiving bribes and payments to be influenced in official acts, extorting individuals and entities in relation to the passage of certain legislation, and soliciting money and campaign contributions in exchange for making introductions to individuals purported to be able to provide weapons and firearms.  *Id*. at ¶ 12.  The indictment alleges that the members and associates of the enterprise, including  Jackson and Yee, discussed, among other things, plans and agreements regarding the commission of future crimes and ways to conceal those crimes.  *Id*. at ¶ 8.  Thus, the indictment

1  sufficiently alleges relatedness among the crimes and racketeering acts agreed to by Jackson and Yee.

2  Further, the nature of the Campaign enterprise, which existed for several years and through two

3  campaigns up until the time of the indictment, and the extensive acts and crimes agreed to by its

4  members in order to accomplish the purposes of the enterprise, demonstrates a threat of continuing.

5        Count Two of the Superseding Indictment properly alleges the elements of RICO conspiracy by

6  (1) charging a proper enterprise; (2) alleging each defendant's association with the enterprise; and (3)

7  alleging that each defendant knowingly joined a conspiracy, the objective of which was to operate that

8  enterprise through an identified pattern of racketeering activity.  *See, United States v. Glecier, supra*,

9  923 F.2d at 500.  The indictment is legally sufficient and Jackson's motion to dismiss Count Two should

10 be denied.

### III.    CONCLUSION

      For all the reasons stated above, Jackson's motions to dismiss Count 2 and Counts 213-221

should be denied.

DATED: October 29, 2014                          Respectfully submitted,

MELINDA HAAG
United States Attorney

_____
/s/
SUSAN E. BADGER
WILLIAM FRENTZEN
S. WAQAR HASIB
Assistant United States Attorneys