MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    susan.badger@usdoj.gov
    waqar.hasib@usdoj.gov

Attorneys for United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0196 CRB |
| v. | UNITED STATES' STATEMENT RE: DISCOVERY |
| KWOK CHEUNG CHOW, et. al.<br>    Defendants. | SAN FRANCISCO VENUE |

On November 7, 2014, the Court ordered a statement regarding discovery from the government. The government hereby files this statement in an effort to give the Court an idea of the disclosures to date. To the extent that the Court requires more detail, the government can provide further information if necessary. To the extent that the Court requires very specific detail, the government may need to provide a filing under seal and, potentially, ex parte. That is because some of the descriptions of the discovery materials relates to individuals not currently charged or not charged publicly and/or relates to discovery that may only be discoverable to particular defendants but not to other co-defendants (such as

U.S. STATEMENT RE: DISCOVERY
CR 14-0196 CRB                          1

post-arrest statements and/or criminal histories).

To date, the government has produced the vast majority of discovery in its possession. The government has produced 10,000 pages of reports and criminal histories, 9 hard drives of audio and video files, over 1,400 pages of wiretap documents, over 1,500 pages of search warrant documents, over 12,000 pages of linesheets, and about 300 photographs. The government has produced most of these materials to all defendants, and has also produced certain individualized disclosures with Bates stamps correlating to the particular defendant. That should give the Court a sense of the volume of the discovery to date. Included in the materials produced by the government are:

- FBI 302 Reports,
- audio and video recordings from wiretap interceptions in the vehicle of defendant Nieh,
- audio files from wiretap interceptions in the vehicle of defendant Nieh,
- session details,
- audio recordings of the cellular phones of defendants Yee and Keith Jackson,
- interceptions of the cellular telephones of other individuals,
- line sheets of monitored wiretap interceptions (not actually required to be disclosed, but being disclosed in any event),
- video recordings of consensually monitored meetings and conversations,
- body wire recordings taken by multiple UCEs and CHSs of conversations and meetings with defendants and others,
- photographs,
- jail calls,
- post-arrest statements to law enforcement by defendants,
- A-files for non-citizen defendants,
- criminal histories for defendants,
- records related to local law enforcement investigations and arrests,
- transcripts of summary translations,
- interviews of non-defendants (not producible at this time, but many of which are being produced),

- ■ downloaded/imaged hard drives of seized computers,
- ■ bank records,
- ■ business documents,
- ■ Title III documentation,
- ■ pen register applications and orders (not ordinarily disclosable, but being produced),
- ■ search warrant documentation, and
- ■ other documents and items.

As the Court likely understands from prior proceedings in the case, the vast majority of the nuts and bolts of the case was captured in the video and audio recordings from the UCE and CHS body wires and from the wiretap interceptions. Those materials, and related materials such as linesheets and TIII applications and affidavits, have been disclosed.

Certain materials have not yet been produced. Most of those materials were collected following the initial takedown of the case, and as the government continues to investigate after the investigation went public and "overt." Much of that consists of processing seized materials and generating new materials through further interviews and investigation. Furthermore, there are obviously physical objects that are in the possession of the government and are available for "inspection" pursuant to Rule 16 by the defendants at their coordinated request to the government (for example, examination of firearms, narcotics, cellular telephones, documents, records, etc). So far, only a few of the defendants has followed up on the opportunity to inspect the physical evidence in the case – which is understandable at this point given that many are still likely dealing with the recordings and other produced material. The government also continues to image and process computers that were seized, as a very large number of computers were seized in the course of the execution of the search warrants. As the computers are imaged and searched, the portions that are searched and determined to be relevant, within the scope of the warrant, and seizable, are being provided to the defendants. The computers must be imaged and then searched according to the scope of the warrant(s), which has taken a great deal of time. The materials that have been processed and are becoming available since the takedown have been provided on a rolling basis. FBI 1A attachments to reports are being copied to the extent possible and being produced on a rolling basis as well.

1    If the Court is interested in a macro view of percentages of disclosures to date, the government would estimate that somewhere close to 85-90% of the currently held evidence that can be "produced," rather than physical evidence that must be "inspected," has been disclosed.  That number may or may not increase until shortly before trial only because the government understandably continues to investigate and thereby continue to generate discoverable materials.  The government is, therefore, continuing to process and disclose new materials to the defendants.  There may also be need to disclose large amounts of discovery related to old cases for certain defendants depending on whether those defendants seek to assert a defense of entrapment – which would make predisposition a relevant issue at trial.

To date, the government has not received any reciprocal discovery from any defendant pursuant to Fed. R. Crim. P. 16(b).

Dated: November 10, 2014

MELINDA HAAG
United States Attorney

By:  _____/s/_____
WILLIAM FRENTZEN
SUSAN BADGER
S. WAQAR HASIB
Assistant United States Attorneys

U.S. STATEMENT RE: DISCOVERY
CR 14-0196 CRB                                      4