J. TONY SERRA, SBN 32639
GREGORY M. BENTLEY, SBN 275923
CURTIS L. BRIGGS, SBN 284190
506 Broadway
San Francisco, CA 94133
Telephone: 415/986-5591
Fax: 415/421-1331
jts@pier5law.com
bentley.greg@gmail.com
curt.briggs@gmail.com

Attorneys for Defendant
KWOK CHEUNG CHOW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

vs.

KWOK CHEUNG CHOW,

           Defendant.

_____/

No. CR 14-0196 CRB

DEFENSE STATEMENT RE: DISCOVERY

   On behalf of Raymond Chow, and co-defendants similarly situated, the following is intended to notify the court as to discovery management and distribution issues, and to advise the court of foreseeable delays in defense preparation. Specifically, the court should be aware that there is a lack of any discernable organizational structure in the discovery files as delivered by the Government to defense counsel. This substantially impairs the ability to prepare defenses, conduct investigation, and evaluate the merits of pretrial motions. This will continue to cause unnecessary delay unless remedial measures are taken.  In addition, counsel hereby notifies the

1   court of a preliminary indication that the FBI may be concealing

2   certain evidence from the United States Attorney. This is

3   evidenced by the lack of notice to the Government of apparent

4   drone surveillance on persons in Northern California in the

5   course of this investigation, without any disclosure whatsoever

6   of supporting documentation (i.e. 302s).  Finally, discovery

7   distribution has not been entirely consistent with the Statement

8   Re: Discovery submitted by the Government and this serves to

9   supplement and clarify the record on behalf of defense.

10

11  1.   <u>A lack of organization in the millions of files turned over
         in discovery substantially impairs both the ability to</u>
12       <u>prepare defenses and evaluate the merit of potential
         pretrial motions</u>.

13

14       As this court is already aware, there is an enormous amount

15  of discovery as it pertains to 29 co-defendants and multiple

16  operations and investigations spanning back potentially a

17  decade.  The court was proactive in assigning a discovery

18  coordinator to assist defendants in the organization and

19  indexing of data which could potentially remedy this issue to a

20  large extent.[1] However, due to distribution of discovery that

21  took place later than expected, the discovery coordinator

22  estimates indexing and organizing to be completed in December

23  2014.

24

25  _____

26  [1]Although with a large amount of data it is an invitation for
    non-disclosure to task the opposing party with sole
27  responsibility to inventory discovery since the entity most
    knowledgeable is the proponent.

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

One probably cannot visualize the difficulty of finding individual files with this volume unless tasked with it. It is exponentially more work to find specific files than to transfer them in bulk to someone else. To date, the total number of computer files disclosed from the Government in this case exceeds 7 million.[2] There are over 100,000 folders and subfolders.[3] The scanned documents consist of 46 folders containing 1,758 individual files.[4] Each of these files consist of FBI 302s, affidavits, line sheets, phone intercepts summaries, body wires summaries, and more[5]. Some document files are less than a page while others are hundreds of pages. There is little uniformity as to the file names and the system utilized by the Government in organizing files is not readily apparent. Perhaps the greatest and most time consuming challenge arises with respect to audio files where they must be located and listened to, and then defense staff sometimes has to identify parties by sound of voice with little reference point or guidance for whose voice is actually heard. Perhaps even identify a party whose voice he or she has never heard before.

[2]Confirmed through Microsoft Windows Explorer, hover mouse over file, right click, select properties, and it will auto-count. Many files are not discovery files but they still need to be sifted through to determine they are not relevant.

[3]Same as footnote 1.

[4]Same as footnote 1.

[5]On advise of the discovery coordinator defense purchased a commercial indexing program which has tremendously assisted in key word searches throughout the discovery universe. However, it does not assist with video or audio review, it occupies a majority of computer resources while activated, and there is a steep learning curve.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    In early August 2014, the Government did provide an index

2  of broad categories of discovery documents and audio video files

3  grouped into specific Bates ranges.  This was extremely helpful

4  and appreciated.  However, the Government only created 1,123

5  separate categories which did not provide sufficient indexing

6  for the millions of files.  For example, one of the 1,123

7  categories on their index identified  "Bates 800001" as

8  "Recorded phone calls and conversations, and video surveillance

9  of meetings" but there is no reference as to what time frames,

10 what part of this investigation, and/or what other files these

11 recordings pertain to.

12    Similarly lacking is any indication of which of the

13 multiple operations the file pertains to, which defendants are

14 involved, or any other identifying information. For example,

15 there are 3,165 total files of recordings in Bates 800001 alone,

16 so if defense counsel is looking for a recorded phone call we

17 are forced to manually rummage through more than 3,000 audio

18 files until we find the appropriate recording based on what we

19 hear.  The problem is exponential in the event a recording

20 cannot be found since that necessitates an even broader search

21 and double checking.  It is not uncommon to spend hours

22 confirming the non-existence of a file before contacting the

23 Government to find out it was inadvertently withheld.

24    Until the discovery is adequately organized, either through

25 disclosure of the Government's internal organization structure

26 or by the discovery coordinator's completion of an index, the

27 defendants run the risk of falling below Constitutional minimum

28

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

4

1   guarantees through excessive and unnecessary delay to say the

2   least.

3

4   2.     Preliminary evidence suggests that the FBI is withholding
           discovery from the US Attorneys in this case.

5

6          Especially recently, the US Attorneys on this case seem to

    have been working diligently to communicate quickly and

7   effectuate the exchange of discovery as rapidly as possible and

8   it is greatly appreciated.  As communicated multiple times, the

9   AUSA's intend to disclose more than what they feel is required

10  to assist in defense preparation.  There are indicators,

11  however, that the FBI is withholding evidence from the US

12  Attorney's Office and this statement serves only to bring the

13  issue to the court's attention as this will likely be the

14  subject of future motions.

15         Here, one unmarked orphan file in the 7 million plus total

16  files disclosed was footage of what appears to be a drone[6], or

17  unmanned aerial vehicle, surveilling a local family which was

18  under investigation and eventually arrested in events related to

19  this case. The drone surveillance video accompanied discovery

20

21  ─────────────────────

22  [6]Counsel has no experience with drones or UAVs.  The opinion
    that it is drone footage is based on the fact it was circling
23  approximately 650' above the ground.  It circled the target home
    for more than an hour of which its altitude never appeared to
24  deviate significantly.  It was hovering in the air above a
    residential neighborhood above a cul-de-sac with little traffic
25  other than target vehicles, during broad daylight, did not seem
    to alert people below, had camera capabilities to zoom in
26  extremely close on front porches, license plates, on various
    objects on the ground, and had a GPS target location specified
27  on the screen. No voices were heard and no human involvement was
    observed at any point. The footage is from June 2012.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28

1  but was not Bates-stamped as required by the Protective Order.

2  Despite the fact that the FBI documented even the most mundane

3  activity against this particular defendant and his family over

4  the course of a year, including installation and removal of a

5  closed-circuit video device across the street from a residence,

6  there appears to be no mention of drone or aerial surveillance

7  anywhere in any document provided thus far.  The Government

8  makes no mention of having disclosed, or intending to disclose,

9  footage of drone surveillance or related documentation in its

10 Statement of Discovery.  One inference is that the AUSA's are

11 aware of the drone surveillance and that they disclosed the

12 footage accordingly and that failure to provide an accompanying

13 302 was an oversight.  Another inference is that the FBI

14 attempted to delete all drone footage files prior to

15 transferring the discovery to the prosecution team but neglected

16 to delete the last video in a month long series.  Something does

17 not add up and one potential explanation is that the FBI is

18 withholding information from the US Attorney.

19     With no actual court supervision over the universe of the

20 FBI discovery as a whole, defense counsel is forced to

21 hypothesize as to why various things have not been disclosed,

22 and in some instances we must speculate as to the general

23 existence of such in the first place.  There is reason to

24 believe far more drone footage exists than what was disclosed

25 and the potential that many, if not all, persons investigated

26 were surveilled through drones is a probability.

27     Curiously, the drone footage was not Bates-numbered so it

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28

1    is not even protected material which makes it more likely that

2    the AUSA's were not aware of the footage as they would have

3    likely wanted it to fall within the protective order.  Drone

4    surveillance is pertinent to many defendants because aerial

5    surveillance happened during a time in this investigation where

6    the FBI was either applying for or attempting to maintain the

7    court's permission for electronic surveillance on one or more of

8    the defendants' telephones or vehicles. It does not appear to be

9    addressed by the Government applicants when demonstrating

10   requisite necessity at any time. AUSA's were always involved in

11   the application process and it is unlikely they would not

12   disclose a relevant fact such as the ability to conduct unmanned

13   aerial surveillance.

14       Another indication that the FBI is withholding information

15   from the US Attorney is evident in what is currently understood

16   to be the first wiretap application in this case, applied for in

17   December of 2011.  The agent's affidavit states in part:

18

19       **Multiple court orders have been issued authorizing
         the installation and use of pen register and trap
20       and trace devices on telephones used by the Target
         Subjects and Interceptees.** Agents have also
21       obtained toll records for these telephones.
         Analysis of these records and data show several
22       communications between CHOW and his associates
         confirming that many of the Target Subjects and
23       Interceptees appear to communicate with each other
         over the telephones.  Additionally **cell site data
24       from pen register trap/trace orders have allowed
         agents to approximate the location of subjects of
25       this investigation therefore providing agents a
         general idea of the physical whereabouts of the**

26

27

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28

7

1   **Target Subjects and Intercept…**[78][emphasis added]

2      This raises concerns for many reasons. First, despite an

3   assurance from the prosecution to disclose such, no discovery

4   exists reflecting court authorization to monitor the subjects

5   and interceptees which indicates illegal surveillance was

6   conducted in this investigation as evidenced in part by the FBI

7   agent's declaration under penalty of perjury that "multiple

8   court orders" had been obtained.  Second, if an order did in

9   fact exist, it has not been provided to defense counsel in

10  discovery despite assurances all such items would be provided;

11  thus, this would raise a concern about accountability to ensure

12  disclosure as promised. Third, when defense counsel inquired

13  with the US Attorney on the whereabouts of the court orders

14  referenced by both FBI Agents Pascua and Vanderporten in the

15  January and April 2012 affidavits, the Government had no

16  explanation and inquired with the case agents.  This is

17  concerning because it raises an issue Mr. Chow is adamant about.

18  Specifically, he believes his phone communications have been

19  monitored and that the FBI is withholding recordings from

20  discovery because they were exculpatory. Because defense is

21  without confirmation that the information exists or not it would

22  be difficult to compel.  The potential for an undisclosed

23  interception in the context of this investigation is starting to

24  look like a reality based on what has been observed so far.

25

26  _____

[7]Bates 400001, Page 72, Paragraph 286.

27

[8]Bates 400126, page 63,Paragraph 149.

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    If the FBI's theory of criminality about Mr. Chow is to be
2  believed at all, the lack of a wiretap or audio recording device
3  on Chow is beyond improbable. With Chow's past reputation and
4  criminal record carrying the weight of wiretap applications for
5  people whom he hardly met, who were by the FBI's own admission
6  from an unrelated investigation, an application of any type
7  would have been approved to monitor Chow's cell phone or the
8  Chinese Free Mason's phone line would have been a slam dunk.  Of
9  all things, the FBI's narrative here illustrates the need for
10 critical oversight and unencumbered Due Process regarding
11 discovery.  This is especially so with what the FBI claims does
12 not exist.

13    According to the FBI they were surveilling Chow since 2006,
14 they supposedly "infiltrated" his "criminal organization" the
15 Chinese Freemasons, yet the FBI found not one crime from 2006 to
16 2010; until UCE 4599 worked tirelessly to convince a young co-
17 defendant to launder FBI money in partnership with the UCE who
18 was supposed to have been posing as a La Cosa Nostra crime boss.
19 The agent's mafia front was apparently supposed to be obvious to
20 everyone despite the uncontested fact that for years he held
21 himself out as an investment manager, private wealth manager,
22 future restaurateurs, who was passionate about fine food and
23 wine, and interested in investing in a high end restaurant in
24 San Francisco.  Furthermore, the agent went by a protestant
25 name, spoke like a well educated person, wore traditional
26 conservative business attire, and the agents posing as his
27 business partners and close friends were not acting like

1   mafiosos, but instead one was an African-American real estate

2   developer and the other a Chinese-American import-exporter of

3   goods.

4          Beyond that, what has been turned over in discovery is

5   shocking to the extent the agents either misrepresented facts

6   and even recorded conversations, or attested under penalty of

7   perjury to statements which they, in fact, did not have

8   knowledge.  Attorneys for both sides in this case should look at

9   the FBI's narrative with healthy skepticism when evaluating

10  discovery, especially in the context of what is stated by the

11  FBI not to exist.  The lack of credibility of primary FBI agents

12  in this case has been, and will to a greater extent in the

13  future, raised with sufficient supporting evidence to, at a

14  minimum, warrant the court providing recommendations to assist

15  in monitoring the universe of discovery.

16         Potentially this Court would entertain the idea of having

17  the Government designate a specific supervisory FBI agent who

18  would be present at pretrial conferences and motion hearings as

19  a resource and to ensure accountability throughout the

20  prosecution of all defendants in this case.  Furthermore,

21  defense requests some type of a system or log identifying in

22  general terms what discovery is to be expected, when it should

23  be expected, and what is entailed so that we can budget time and

24  resources proactively to provide swift adjudication.

25

26  3.  The Government's Statement of Discovery requires
    clarification.

27

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28

The Statement of Discovery filed by the United States has the potential of being interpreted in a way to suggest that discovery exchange has been timely and without obstacle. Ironically, prior to reading the Statement of Discovery, Chow's defense team was fairly satisfied with the progress in discovery with a few exceptions which will necessitate litigation, but understandably so.    However, a comparison of the Government's position in informal discovery negotiations from August to present, and their Statement of Discovery recently submitted, raises the necessity to clarify the record for the court. This is not a complaint but only serves to make the court aware there is an additional perspective which may be relevant in future scheduling and motions to compel.

Below are specific categories mentioned in the Government's statement (in bold), but which should be clarified:

**Photographs:** No photographs whatsoever have been turned over regarding Chow, the CKT, Alicia Lo, the investigation and search subsequent arrest, or any other photo of Chow or the CKT related to this investigation.  No photographs have been turned over that are *not* related to co-defendant Mei that defense counsel is aware.  The Government has promised to turn them over but has yet to identify the nature of the photos, estimated quantity, or when they should be expected.

**Jail calls:** Chow's counsel has received no jail call recordings although they have been requested through incorporation of informal discovery requests on at least two occasions.

**A-files for non-citizen defendants:** Government has agreed to provide Chow's A-file but has not provided the file nor have they provided any date in which it can be expected. Chow's A-File possesses critical information regarding Chow's circumstances which are relevant to his defense.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

**Records related to local law enforcement investigations and arrests:** There is at least one investigation of Chow that the Government has refused to disclose without citing a basis despite less relevant investigation records being turned over. The matter involves the Government's implication that Chow committed a serious crime but one that he was quickly exonerated of. This will be the subject of an upcoming motion to compel.

**Transcripts of summary translations:** These were incomplete and brought to the attention of the Government by multiple defendants' attorneys. The Government was made aware approximately two weeks ago and the remaining transcripts have not been turned over. Defense is not aware of the Government's time frame or the volume of records to expect.

**Business Documents:** CKT and Chow Enterprises, LLC., documentation has been requested and not received. Status is uncertain and will be addressed in a motion to compel. The same goes for financial records.

**Pen Registers and Orders:** Not produced in their entirety as discussed above.

**Search warrant documentation:** All search warrant documentation regarding Chow or his associated residences was initially not provided to defense. This was brought to the Government's attention approximately one month ago and was partially remedied approximately two weeks later. However, the only documentation provided was relevant to the application and order but not to inventories as to what was seized, photographs, etc. Those are still outstanding and no time frame has been provided by the Government.

**Unindicted Parties:** The Government states "…because some of the descriptions of the discovery materials relates to individuals not currently charged or not charged publicly and/or relates to discovery that may only be discoverable to particular defendants but not to other co-defendants . . ." they will submit to an in camera hearing. Although these may or may not be addressing Chow's requests, it should be noted that defense counsel has informally requested on three occasions information related to unindicted parties, communications between specific DOJ employees and unindicted parties, and other information related to the decision not to charge these persons. The Government ignored the first two requests and officially refused to disclose any information as of two weeks ago. A motion to dismiss, and in the

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

alternative, a motion to compel discovery for selective prosecution will be filed as soon as defense resources permit.

 In conclusion, Mr. Chow and counsel respect that the Government has an enormous task in facilitating discovery. For the most part the AUSA's, with few exceptions, have appeared to be diligent about their efforts to get complete this task. However, due to the massive nature of this discovery transfer, the failure to organize the discovery in advance, and the potential for a lack of accountability regarding what the FBI turns over, significant scheduling delays are foreseeable. Defendant's Constitutional rights are fundamentally effected by all byproducts of the method in which discovery is handled in this case presently.

 /s/ CURTIS L. BRIGGS
 CURTIS L. BRIGGS
 Attorney for Defendant
 KWOK CHEUNG CHOW

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331