# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

**FILED**

JAN 29 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

V.

KWOK CHEUNG CHOW et al.

## CR 14 0196 CRB

### DEFENDANT(S).

# SECOND SUPERSEDING INDICTMENT

18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise Through a Pattern of Racketeering Activity; 18 U.S.C. § 1956 – Money Laundering; 18 U.S.C. § 922(a) – Dealing Firearms Without a License; 18 U.S.C. § 922(l) – Illegal Importation of Firearms; 18 U.S.C. § 922(g) – Felon in Possession of Firearm; 21 U.S.C. § 841 – Manufacture & Possession with Intent to Distribute Narcotics; 21 U.S.C. § 846 – Narcotics Conspiracy; 18 U.S.C. § 924(c) – Possession of Firearm in Furtherance of Drug Trafficking Crime; 18 U.S.C. §§ 2342, 2344 – Trafficking in Contraband Cigarettes; 18 U.S.C. § 1958 – Murder for Hire; 18 U.S.C. § 371 – Conspiracy; 18 U.S.C. § 1951(a) – Conspiracy to Obtain Property Under Color of Official Right; 18 U.S.C. § 1349 – Honest Services Conspiracy; 18 U.S.C. §§ 1343, 1346 – Honest Services Fraud; 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering; 18 U.S.C § 371 – Conspiracy to Deal in Firearms; 18 U.S.C. § 2 – Aiding & Abetting

A true bill.

_Nancy J. Peterson_
Foreman

Filed in open court this _29th_ day of

_January 2015_      KAREN L. HOM

_Karen L. Hom_

JOSEPH C. SPERO                    Clerk
UNITED STATES MAGISTRATE JUDGE

Bail, $ _no process_

1  MELINDA HAAG (CABN 132612)
   United States Attorney
2

FILED

JAN 29 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

3              UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5                 SAN FRANCISCO DIVISION

6

7  | UNITED STATES OF AMERICA,                    | )  | CRIMINAL NO. CR 14 0196 CRB |

8  | v. | ) |

9  KWOK CHEUNG CHOW, a/k/a "Raymond          )   **SECOND SUPERSEDING INDICTMENT**
   Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy";    )
10 LELAND YEE;                                   )   VIOLATIONS –
   GEORGE NIEH, a/k/a "Heng Nieh";             )   18 U.S.C. § 1962(d) – Conspiracy to Conduct the
11 KEITH JACKSON;                               )   Affairs of an Enterprise Through a Pattern of
   KEVIN SIU, a/k/a "Dragon Tin Loong Siu";    )   Racketeering Activity;
12 ALAN CHIU, a/k/a "Alan Shiu";               )   18 U.S.C. § 1956 – Money Laundering;
   KONGPHET CHANTHAVONG, a/k/a "Joe,"          )   18 U.S.C. § 922(a) – Dealing Firearms Without a
13 a/k/a "Fat Joe";                             )   License;
   XIAO CHENG MEI, a/k/a "Michael Mei";        )   18 U.S.C. § 922(I) – Illegal Importation of Firearms;
14 BRANDON JAMELLE JACKSON;                     )   18 U.S.C. § 922(g) – Felon in Possession of
   MARLON DARRELL SULLIVAN;                     )   Firearm;
15 RINN ROEUN;                                  )   21 U.S.C. § 841 – Manufacture and Possession with
   ANDY LI, a/k/a "Andy Man Lai Li";           )   Intent to Distribute Narcotics;
16 LESLIE YUN, a/k/a "Leslie Yuncheung";       )   21 U.S.C. § 846 – Narcotics Conspiracy;
   YAT WA PAU, a/k/a "James Pau";              )   18 U.S.C. § 924(c) – Possession of Firearm in
17 JANE MIAO XHEN LIANG;                        )   Furtherance of Drug Trafficking Crime;
   TINA YAO GUI LIANG;                          )   18 U.S.C. §§ 2342, 2344 – Trafficking in
18 BRYAN TILTON;                                )   Contraband Cigarettes;
   HUAN MING MA, a/k/a "Ming Ma," a/k/a        )   18 U.S.C. § 1958 – Murder for Hire;
19 "Baak Ban";                                  )   18 U.S.C. § 371 – Conspiracy;
   HON KEUNG SO, a/k/a "Hon So";               )   18 U.S.C. § 1951(a) – Conspiracy to Obtain Property
20 NORGE MASTRANGELO;                           )   Under Color of Official Right;
   ALBERT NHINGSAVATH;                          )   18 U.S.C. § 1349 – Honest Services Conspiracy;
21 SERGE GEE;                                   )   18 U.S.C. §§ 1343, 1346 – Honest Services Fraud;
   XIU YING LING LIANG, a/k/a "Elaine          )   18 U.S.C. § 1956(h) – Conspiracy to Commit Money
22 Liang";                                      )   Laundering;
   GARY KWONG YIU CHEN, a/k/a "Gary            )   18 U.S.C § 371 – Conspiracy to Deal in Firearms
23 Chen," a/k/a "Jimmy," a/k/a "David";        )   18 U.S.C. § 2 – Aiding And Abetting
   ANTHONY JOHN LAI, a/k/a "AJ";               )
24 TONG ZAO ZHANG;                              )
   ZHANGHAO WU, a/k/a "Jason"; and             )
25 BARRY BLACKWELL HOUSE, a/k/a "Barry        )
   Black,"                                      )
26                                              )
            Defendants.                         )
27                                              )
   _____ )

28

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

COUNT ONE: (18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise
                        Through a Pattern of Racketeering Activity)

### The Racketeering Enterprise

1.       The Chee Kung Tong, also known as "Gee Kung Tong," also known as "Supreme Lodge Chinese Freemasons of the World," also known as the "CKT" (hereafter "CKT"), was a predominantly Chinese American association based in Chinatown, in the City and County of San Francisco, whose members operated in the City and County of San Francisco and elsewhere, and whose activities affected other parts of the United States. The members of CKT primarily conducted their activities in the Bay Area, centered in the cities of San Francisco and Oakland. CKT existed since at least the late 1800s. The roots of the CKT were the Hung Mun societies in China, which were formed largely to overthrow the Qing Dynasty in China. Members of the Hung Mun groups formed new organizations in America as their members migrated from China, including CKT. CKT was formed primarily for civic purposes to benefit the communities of Chinese immigrants and Chinese Americans and to protect them from abuse by other Americans, as well as to continue supporting overthrow of the Qing Dynasty from afar. Over the years, CKT developed both positive legal community functions and activities and criminal functions and activities. Some members of CKT were strictly involved in legal functions and activities of CKT. Other members were also involved in illegal activities. The CKT had chapters in many different North American cities so that there were chapters around the country and in other countries. The Hop Sing Tong in San Francisco's Chinatown, also known as "HST" (hereafter "HST") similarly formed as a fraternal organization dedicated to the community of Chinese immigrants and Chinese Americans. The HST also maintained chapters in other North American cities. Over the years, the HST also developed both positive legal community functions and activities and criminal functions and activities. The CKT acted as an "umbrella" organization in relation to the HST such that the Dragonhead of the CKT had influence over the leadership and activities of the HST.

2.       Some members of CKT received titles and corresponding Triad numbers. The Triads were international criminal organizations based in China. Examples include the "Dragonhead" or

"General" with a corresponding number of "489"; "red pole" or "red stick," or "enforcer" or "soldier" with a corresponding number of "426"; "white paper fan," or "organizer," with a corresponding number of "415"; and ordinary or normal members with a corresponding number of "49." Members of the CKT with corresponding Triad numbers were familiar with Triad handshakes and hand signs used to identify other individuals with Triad status.

3.    Members of CKT were expected to protect the name, reputation, and status of the group and its individual members from harm, insult, or disrespect by members of rival groups and other persons. CKT members required that all individuals show respect and deference to the group, its membership and associates. To protect the group and to enhance its reputation, CKT members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

4.    Members of CKT engaged in criminal activity, including narcotics distribution, assault, robbery, extortion, collection of unlawful debt, murder for hire, money laundering, trafficking in stolen goods, illegal firearms possession, and obstruction of justice. CKT members committed and threatened to commit acts of violence to maintain and enhance membership and discipline within the enterprise, including violence against rival group members, those perceived to be rival group members, rivals in general, those who disrespected or committed violence against CKT members, as well as CKT members and associates who violated the rules of the enterprise.

5.    There were leaders of CKT. The Dragonhead of CKT was feared and respected, and the directions from the Dragonhead were followed by other members. There was a President, Vice Presidents, Directors, Supervisors, Secretaries, officers of Finance, Society Head, Consultants, and other positions. There were leaders or "bosses," sometimes referred to as "Dai Lo," literally referring to "big brother" but signifying a boss within CKT. Below the leaders were "soldiers," those members who have been prepared and known to commit violence on behalf of the group and to protect each other. There were also CKT members who dealt narcotics or engaged in other forms of criminal activity. There were also associates of CKT who were not members, but who engaged with the members in conducting certain illegal activities. There were also leaders and officers of the HST. The Dragonhead of the CKT,

2

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   as an umbrella organization to the HST, held a position of influence in the selection of leaders for the

2   HST and in the activities of the HST.  At one time, the Dragonhead of the CKT also held the leadership

3   position of the HST.  Some individuals were members of both Tongs.

4        6.     CKT members communicated about activities with other CKT members using mobile

5   telephones, telephone text messages, and other modes of electronic and wire communications.

6        7.     CKT, including its leadership, members, and associates constituted an "enterprise" as

7   defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact

8   that was engaged in, and its activities affected, interstate and foreign commerce.  The enterprise

9   constituted an ongoing organization whose members functioned as a continuing unit that had a common

10   purpose of achieving the objectives of the enterprise.

11   <u>Purposes of the Enterprise</u>

12        8.     The purposes of the CKT enterprise, including its members and associates, included, but

13   were not limited to, the following:

14        a.     Preserving and protecting the power, territory, reputation, and profits of the enterprise, its

15   members, and associates, through the use of security, intimidation, violence, threats of violence, and

16   assaults;

17        b.     Organizing and carrying out shows of strength and intimidation, assaults, and other

18   violence when perceived as necessary for the good of the enterprise and members and associates of the

19   enterprise;

20        c.     Promoting and enhancing the enterprise and the activities of its members and associates,

21   including, but not limited to, narcotics trafficking, trafficking in stolen goods, trafficking in contraband

22   cigarettes, firearms trafficking, money laundering, extortion, and other criminal activities;

23        d.     Providing financial support and information to CKT members;

24        e.     Maintaining peace and stability between CKT members by resolving disputes between

25   members; and

26        f.     Providing assistance to other CKT members who committed crimes for and on behalf of

27   the group, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders,

28

3

1   apprehending the offenders, and successfully prosecuting and punishing the offenders.

2        <u>The Means and Methods of the Enterprise</u>

3        9.    The means and methods by which the defendants and other members and associates of

4   the CKT conducted and participated in the conduct of the affairs of CKT included, but were not limited

5   to:

6        a.    Members and Associates of CKT protected and expanded the enterprise's criminal

7   operation by committing, attempting, and threatening to commit violence, including assaults,

8   intimidation, and threats of violence directed against those who would act against CKT and its members

9   and associates;

10       b.    Members of CKT promoted a climate of fear through intimidation, violence, and threats

11  of violence intended to promote the authority of the enterprise and its members and associates and

12  insulate its members and associates from prosecution for the criminal actions of the enterprise; and

13       c.    Members and associates of CKT used the enterprise to commit criminal activities on

14  behalf of the enterprise and its members and associates.

15       10.    It was part of the means and methods of the enterprise that the defendants and other

16  members and associates of CKT discussed with other members and associates of CKT, among other

17  things, the membership and rules of CKT; the status of CKT members and associates to the enterprise;

18  the disciplining of CKT members; CKT members' encounters with law enforcement; plans and

19  agreements regarding the commission of future crimes, including extortion, narcotics trafficking,

20  trafficking in stolen goods, trafficking in contraband cigarettes, money laundering, illegal possession of

21  firearms, pimping, and assault, as well as ways to conceal these crimes; and the enforcement of the rules

22  of CKT.

23       11.    It was further part of the means and methods of the enterprise that the defendants and

24  other members and associates of CKT agreed that acts of violence, including threats, and assault, would

25  be committed by members and associates of CKT against those who would do harm to their members

26  and associates, and others when it suited the enterprise's purposes.

27       12.    It was further part of the means and methods of the enterprise that the defendants and

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   other members and associates of CKT agreed to distribute narcotics, to commit robbery, extortion,

2   trafficking in stolen property, trafficking in contraband cigarettes, money laundering, murder for hire,

3   pimping, and other crimes, and to conceal their criminal activities by obstructing justice, threatening and

4   intimidating witnesses, and other means.

5       The Racketeering Conspiracy

6       13.   Beginning on a date unknown to the Grand Jury but since at least 2005, and continuing

7   up through and including the present, in the Northern District of California and elsewhere, the

8   defendants,

9           KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy";
                GEORGE NIEH, a/k/a "Heng Nieh";
10                  KEITH JACKSON;
                KEVIN SIU, a/k/a "Dragon Tin Loong Siu";
11                  ALAN CHIU, a/k/a "Alan Shiu";
            KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe";
12              XIAO CHENG MEI, a/k/a "Michael Mei";
                BRANDON JAMELLE JACKSON;
13              MARLON DARRELL SULLIVAN;
                ANDY LI, a/k/a "Andy Man Lai Li";
14              LESLIE YUN, a/k/a "Leslie Yuncheung";
                YAT WA PAU, a/k/a "James Pau";
15                  TINA YAO GUI LIANG;
            HUAN MING MA, a/k/a "Ming Ma," a/k/a "Baak Ban";
16                  ALBERT NHINGSAVATH;
                    SERGE GEE; and
17          XIU YING LING LIANG, a/k/a "Elaine Liang,"

18   together with others known and unknown to the Grand Jury, each being a person employed by and

19   associated with CKT, an enterprise engaged in, and the activities of which affected, interstate and

20   foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United

21   States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of

22   the affairs of the CKT enterprise through a pattern of racketeering activity, as defined in Title 18, United

23   States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of:

24       a.   multiple acts involving dealing in controlled substances, in violation of 21 U.S.C.

25   Sections 841(a)(1) and 846;

26       b.   multiple acts indictable under 18 U.S.C. Section 894 (extortionate collection of unlawful

27   debt);

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1       c.      multiple acts indictable under 18 U.S.C. Section 1956 (money laundering);

2       d.      multiple acts indictable under 18 U.S.C. Sections 2314 and 2315 (interstate sale of stolen

3   property and receipt of property stolen in interstate commerce);

4       e.      multiple acts indictable under 18 U.S.C. Section 2342 and 2344 (dealing in contraband

5   cigarettes); and

6       f.      multiple acts indictable under 18 U.S.C. Section 1958 (murder for hire);

7       14.     It was part of the conspiracy that each defendant agreed that a conspirator would commit

8   at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

9   <u>Means and Methods of the Conspiracy</u>

10      15.     The means and methods by which the defendants and other members and associates of

11  the CKT conducted and participated in the conspiracy included, but were not limited to:

12      a.      Manufacturing, distributing, and possessing with intent to distribute narcotics including

13  cocaine, heroin, and marijuana.  Manufacturing included setting up houses and warehouses as locations

14  to grow marijuana.  Distribution included distribution both inside and outside of California.

15      b.      Laundering money believed to be the proceeds of specified unlawful activity including

16  from narcotics trafficking and gambling.  Laundering the money included making deposits of cash into

17  business or personal accounts and then transferring the money back to the original owner of the money

18  through wire transfers and checks.

19      c.      Laundering money from narcotics trafficking in order to get the money from the East

20  Coast back to California.  Laundering the money included delivering cash on the East Coast and

21  receiving laundered cash in California.

22      d.      Offering to collect unlawful debts through threats and violence.

23      e.      Offering to purchase and purchasing property believed to have been stolen for resale.

24      f.      Offering to purchase and purchasing contraband cigarettes for resale.

25      g.      Offering to commit murder for payment of money.

26      h.      Selling firearms and ammunition without a license.

27      i.      Selling ballistic vests.

28

6

     j.      Possessing and carrying firearms by convicted felons including for protection of members and associates of the enterprise and for protection of other criminal activities.

     k.      Selling illegal and fraudulent access devices.

     l.      Making introductions of members, associates, and other individuals for the purpose of committing the criminal activities listed above, and otherwise facilitating the criminal activities listed above in exchange for payment.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO: (18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise Through a Pattern of Racketeering Activity)

The Racketeering Enterprise

1.      Leland Yee for Mayor 2011 was a Candidate Controlled Committee under Section 82106 of the California Government Code, created to finance and conduct the electoral campaign of California State Senator LELAND YEE for Mayor of San Francisco for the Mayoral election held on November 8, 2011. Leland Yee for Secretary of State 2014 was a Candidate Controlled Committee under Section 82106 of the California Government Code, created to conduct and finance the electoral campaign of California State Senator LELAND YEE for California Secretary of State for the primary election in June of 2014 and the general election in November 2014. Collectively, Leland Yee for Mayor 2011 and Leland Yee for Secretary of State 2014 (hereafter referred to as "the Campaign") had common employees, consultants, contributors, and structure. The Campaign was based in the City and County of San Francisco and in the City of Sacramento. Its members operated in the City and County of San Francisco, in the City of Sacramento, throughout the State of California, and elsewhere, and its activities affected other parts of the United States outside of California. The Campaign was in existence since at least 2011. It was formed to finance and to support the San Francisco Mayoral campaign and the campaign for California Secretary of State of LELAND YEE. The Campaign engaged in legal fundraising and campaign activities as well as criminal fundraising and campaign activities. Some members of the Campaign were strictly involved in legal functions and activities. Other members were

7

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    also involved in illegal activities.

2        2.     The Campaign had a candidate, officers, employees, and consultants.  The Candidate was

3    California State Senator LELAND YEE.    Consultants included KEITH JACKSON.  KEITH

4    JACKSON was involved in fundraising and advising for the Campaign.

5        3.     As members of the Campaign, defendants YEE and JACKSON engaged in criminal

6    activity, including wire fraud, honest services fraud, bribery, extortion, trafficking in firearms, and

7    money laundering.

8        4.     Members of the Campaign communicated about activities with other members and

9    associates of the Campaign using mobile telephones, telephone text messages, electronic mail, and other

10   modes of electronic and wire communications.

11       5.     The Campaign, including its candidate, leadership, members, and associates constituted

12   an "enterprise" as defined in Title 18, United States Code, Section 1961(4), that is, a group of

13   individuals associated in fact that was engaged in, and its activities affected interstate and foreign

14   commerce.  The enterprise constituted an ongoing organization whose members functioned as a

15   continuing unit that had a common purpose of achieving the objectives of the enterprise.

16       Purposes of the Enterprise

17       6.     The purposes of the Campaign, including its members and associates, included, but were

18   not limited to, the following:

19       a.     Solicitation of campaign contributions for the election of LELAND YEE to public office

20   in exchange for official action by California State Senator LELAND YEE and in exchange for

21   assistance in providing firearms and other weapons;

22       b.     Solicitation of money for LELAND YEE and KEITH JACKSON; and

23       c.     Providing financial support to members of the Campaign, including LELAND YEE and

24   KEITH JACKSON.

25       The Means and Methods of the Enterprise

26       7.     The means and methods by which the defendants and other members and associates of

27   the Campaign have conducted and participated in the conduct of the affairs of the Campaign included,

28

8

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

but were not limited to:

      a.      Members and associates of the Campaign would solicit campaign contributions and payments to the Campaign, and to LELAND YEE and KEITH JACKSON, in exchange for official action by California State Senator LELAND YEE;

      b.      Members and associates of the Campaign protected unlawful campaign contributions and payments of money by routing those contributions through third party "straw" or "conduit" contributors by reimbursing those contributors and by requesting secrecy from perceived co-conspirators, intended to promote the enterprise and its members and associates and insulate its members and associates from prosecution for the criminal actions of the enterprise; and

      c.      Members and associates of the Campaign used the enterprise to commit criminal activities on behalf of the enterprise and its members and associates.

      8.      It was part of the means and methods of the enterprise that the defendants and other members and associates of the Campaign discussed with other members and associates of the Campaign, among other things, the membership and conduct of the Campaign; the status of the Campaign members and associates to the enterprise; plans and agreements regarding the commission of future crimes, including mail fraud, wire fraud, honest services fraud, bribery, extortion, trafficking in firearms, money laundering, as well as ways to conceal these crimes; and the solicitation and acquisition of campaign contributions and other money.

      9.      It was further part of the means and methods of the enterprise that the defendants and other members and associates of the Campaign agreed to commit mail fraud, wire fraud, honest services fraud, bribery, extortion, trafficking in firearms, money laundering, and other crimes.

      <u>The Racketeering Conspiracy</u>

      10.      Beginning on a date unknown to the Grand Jury but since at least 2011, and continuing up through and including the present, in the Northern District of California and elsewhere, the defendants,

<div align="center">

LELAND YEE and
KEITH JACKSON,

</div>

together with others known and unknown to the Grand Jury, each being a person employed by and

<div align="center">9</div>

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

associated with the Campaign, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the Campaign enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of:

a.      multiple acts indictable under 18 U.S.C. Sections 1341, 1343 and 1346 (mail fraud, wire fraud, and honest services fraud);

b.      multiple acts indictable under 18 U.S.C. Section 1951(a) (extortion);

c.      multiple acts indictable under 18 U.S.C. Section 2332g (relating to missile systems designed to destroy aircraft);

d.      multiple acts indictable under 18 U.S.C. Section 1956 (money laundering, including but not limited to money laundering with the intent to promote the carrying on of offenses under 18 U.S.C. Sections 922(l) (relating to the unlawful importation of firearms) and 924(n) (relating to firearms trafficking), and to disguise and conceal offenses under 18 U.S.C. Sections 1343 and 1346 (relating to wire fraud and bribery) and California Penal Code Section 86 (relating to bribery)); and

e.      multiple acts involving bribery, in violation of California Penal Code Section 86.

11.     It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

Means and Methods of the Conspiracy

12.     The means and methods by which the defendants and other members and associates of the Campaign have conducted the conspiracy included, but were not limited to:

a.      Soliciting and receiving bribes and payments to YEE and JACKSON to be influenced in the performance of official action related to the business Well Tech in California.

b.      Soliciting and receiving bribes and payments to YEE and JACKSON to be influenced in the performance of official action related to issuing an official proclamation to the Chee Kung Tong.

c.      Soliciting and receiving bribes and payments to YEE and JACKSON to be influenced in the performance of official action related to legislation in the area of medical marijuana.

10

d.      Extorting individuals related to the California State Athletic Commission (CSAC) and the Mixed Martial Arts industry regarding retaining the existence of the CSAC and its ability to regulate certain sports in the California.

e.      Extorting individuals and professional sports teams related to the passage of legislation governing the ability of professional athletes to collect workers' compensation for injuries in California.

f.      Soliciting and receiving payments and contributions from individual donors in excess of those allowable under state and local laws.

g.      Disguising and concealing excessive payments and contributions by individual donors by routing those payments and contributions through "straw" donors.

h.      Soliciting payments and contributions to YEE and JACKSON in exchange for making introductions to individuals purported to be able to provide weapons including firearms for resale.

i.      Disguising and concealing money received as bribes and money received in exchange for making introductions to individuals purported to be able to provide weapons, including weapons for importation into the United States.

j.      Transporting currency outside of the United States for the purpose of purchasing firearms and other weapons for resale and importation into the United States.

Overt Acts

13.     In furtherance of the conspiracy and in order to effectuate the object thereof, the defendants and their co-conspirators, and others both known and unknown to the Grand Jury, in various combinations, directly and indirectly, within the Northern District of California and elsewhere, committed overt acts including, but not limited to, the following:

a.      On or about May 25, 2011, JACKSON solicited an FBI undercover employee, UCE 4599, to contribute money for YEE's mayoral campaign.

b.      On or about June 24, 2011, JACKSON again solicited UCE 4599 to contribute money to YEE's mayoral campaign.  UCE 4599 declined and offered to introduce JACKSON to another undercover employee, UCE 4773.

c.      On or about September 21, 2011, YEE and JACKSON solicited UCE 4773 to make

11

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    campaign contributions to YEE's mayoral campaign and received a $500 check from UCE 4773.

2         d.     On or about October 11, 2011, JACKSON received a $5,000 personal check made

3    payable to "Jackson Consultancy" from UCE 4773 as a contribution to YEE's mayoral campaign.

4    JACKSON told UCE 4773 that YEE would be aware of the donation because JACKSON would tell

5    YEE.

6         e.     On or about October 14, 2011, YEE met with UCE 4773 and discussed additional

7    contributions by UCE 4773 to YEE's campaign.  YEE discussed UCE 4773 being careful and covering

8    his tracks.

9         f.     On or about January 18, 2012, after losing the San Francisco mayoral campaign, YEE

10   solicited UCE 4773 for additional contributions to retire remaining debt for YEE's mayoral campaign.

11   JACKSON also solicited similar contributions from the UCE.

12        g.     On or about April 27, 2012, at JACKSON's request, UCE 4773 mailed a $5,000 personal

13   check to JACKSON.

14        h.     On or about June 26, 2012, YEE met with government agents purportedly affiliated with

15   a software consulting company client, Well Tech.  UCE 4773 informed YEE that he was seeking to

16   position Well Tech to compete for grants and contracts in the State of California.  YEE discussed how

17   the Secretary of State office might be of interest to UCE 4773 in furthering his goals for Well Tech.

18   YEE acknowledged the UCE's "help with $5,000 and so on," and asked for the UCE to "help with

19   another 10."

20        i.     On or about September 4, 2012, YEE told UCE 4773 that he needed to retire $32,000 in

21   debt from the mayoral race and could not announce for Secretary of State until the debt was reduced.

22   YEE asked UCE 4773 to "do another 10."  UCE 4773 said that he would need YEE to make a telephone

23   call or two on behalf of Well Tech to the state health department.  YEE agreed to make the call.

24        j.     On or about September 19, 2012, YEE spoke with UCE 4773 regarding a letter from

25   YEE to the California health department on behalf of Well Tech.  YEE agreed to write a letter and told

26   the UCE to send a draft of the letter.

27        k.     On or about September 24, 2012, JACKSON and UCE 4773 spoke on the telephone and

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  JACKSON again asked UCE 4773 for money to clear up YEE's mayoral campaign debt. UCE 4773

2  told JACKSON that he would do so when he received the letter on behalf of Well Tech from YEE.

3      l.      On or about September 26, 2012, JACKSON told UCE 4773 that YEE was more

4  comfortable making telephone calls than with putting things in writing.

5      m.      On or about October 18, 2012, YEE and UCE 4773 spoke on the telephone and UCE

6  4773 explained that an individual with the California Department of Public Health was considering Well

7  Tech for a grant. UCE 4773 asked YEE to participate in a telephone call with UCE 4773 and the state

8  employee and vouch for Well Tech. YEE agreed to participate in the telephone call.

9      n.      On or about October 18, 2012, YEE participated in a conference call with UCE 4773 and

10  another undercover employee, UCE 4138, who was posing as an employee with the California

11  Department of Public Health who was considering Well Tech for a state grant. During the call, YEE

12  expressed his familiarity with and support for Well Tech.

13      o.      On or about November 19, 2012, JACKSON met with UCE 4599 at a restaurant in San

14  Francisco and received $10,000 cash paid by UCE 4599 on behalf of UCE 4773. UCE 4599 asked

15  about the letter from YEE on behalf of Well Tech that was still outstanding. JACKSON said the letter

16  would be forthcoming. UCE 4599 asked JACKSON if he knew anyone who could assist CHOW in

17  getting CHOW's ankle monitoring device removed. JACKSON said he would ask YEE. UCE 4599

18  told JACKSON that he would pay off the remainder of the debt if YEE would assist CHOW.

19      p.      On or about November 20, 2012, JACKSON and YEE discussed UCE 4599's request

20  and offer. YEE discussed his knowledge of CHOW's criminal reputation and told JACKSON that as

21  much as he wanted the $5,000, he could not agree to UCE 4599's request.

22      q.      On or about November 23, 2012, YEE had a conversation with a member of his State

23  Senate staff about the $10,000 that had been received by the campaign from UCE 4773.

24      r.      On or about January 13, 2013, JACKSON used email to send UCE 4773 a letter dated

25  January 11, 2013, on the California State Senate letterhead of "Senator Leland Y. Yee, Ph.D., Eighth

26  Senate District." The letter, which appeared to be signed by YEE, was addressed to Well Tech and

27  expressed YEE's support for Well Tech's expansion to California.

28

13

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

s.      On or about January 22, 2013, JACKSON introduced YEE to UCE 4599 at a restaurant in San Francisco.  UCE 4599 and YEE discussed CHOW and CHOW's criminal reputation.  UCE 4599 asked YEE instead to provide an official proclamation to the Chee Kung Tong at an upcoming celebration of the Chee Kung Tong's anniversary.  YEE agreed to the request.

t.      On or about February 14, 2013, JACKSON told UCE 4599 that YEE would be doing the proclamation for the Chee Kung Tong.  UCE 4599 told JACKSON that he would provide YEE a check at the celebration or shortly thereafter.

u.      On or about March 2, 2013, YEE and JACKSON had a conversation by telephone.  YEE explained about the California State Athletic Commission and a pending Senate bill, SB-309, to JACKSON and told JACKSON that YEE was on the Senate Committee that would be voting on whether to keep the CSAC or "just trash it."  YEE told JACKSON that he spoke to an individual (hereafter "Individual A") who had an interest in extending the existence of the CSAC and "did a number" on that person.  YEE said that he told Individual A that YEE intended to shut down the CSAC, but Individual A should hire JACKSON to lobby YEE to vote to extend the CSAC.  JACKSON subsequently spoke to Individual A, who said he was fearful that YEE was going to vote against extending the life of the CSAC.  JACKSON told Individual A that he was willing to help, but would have to be paid.

v.      On or about March 3, 2013, YEE instructed JACKSON during a telephone call to tell Individual A that convincing YEE to vote in favor of the CSAC extension was going to be a "heavy lift" and JACKSON could not be expected to do the work of lobbying YEE for free.

w.      On or about March 6, 2013, JACKSON met with Individual A and an individual (hereafter referred to as "Individual B") who had an interest in extending the term of the CSAC. Individual B was concerned about whether SB-309 was going to pass and knew that YEE had influence over that decision.  During the meeting, Individual B learned that JACKSON was a close associate of YEE and that YEE was running for Secretary of State.

x.      On or about March 14, 2013, YEE met with UCE 4180 and discussed his interest in statewide legislation in California that would regularize the laws pertaining to medical marijuana.  UCE

14

4180 discussed particular provisions he wanted to see in statewide legislation that were consistent with UCE 4180's business model and told YEE that he would be willing to make donations to YEE's Secretary of State campaign.

y.      On or about March 29, 2013, a staff member from one of YEE's district offices appeared at the Chee Kung Tong anniversary celebration dinner in San Francisco and presented a framed proclamation on California State Senate letterhead to the Chee Kung Tong.  The staffer said she was officially presenting the proclamation from Senator YEE.

z.      On or about April 6, 2013, YEE and JACKSON met with an undercover employee, UCE 4180, and discussed the business interests of UCE 4180 and UCE 4180 making contributions to YEE's campaign.

aa.      On or about April 24, 2013, JACKSON talked with UCE 4180.  UCE 4180 told JACKSON that he wanted to make a small donation to YEE's Secretary of State campaign to show good faith and JACKSON agreed.

bb.      On or about April 25, 2013, JACKSON sent a text message to UCE 4180 providing the account information for the Jackson Consultancy bank account.  On or about April 29, 2013, UCE 4180 made a direct cash deposit of $3,000 to JACKSON's bank account.

cc.      On or about April 29, 2013, the California Senate Business, Professions, and Economic Development Committee held a hearing and vote on SB-309.  YEE voted in favor of SB-309 and extending the term of the CSAC.  The full vote by the Senate on SB-309 did not take place until September 2013.

dd.      On or about May 1, 2013, JACKSON sent a text message to UCE 4599 telling him to make his check out to "Leland Yee.  For Secretary of State."

ee.      On or about May 6, 2013, UCE 4599 provided JACKSON with a $5,000 check made payable to "Leland Yee Secretary of State."  During a phone conversation with UCE 4599 on or about May 9, 2013, YEE thanked UCE 4599 for his donation.

ff.      On or about May 10, 2013, YEE talked with CHS #11, a confidential human source working in an undercover capacity for the FBI.  CHS#11 asked YEE to contact another State Senator,

1   hereafter referred to as State Senator 1, to express support for medical marijuana legislation that would

2   include features that would be helpful to UCE 4180.  CHS #11 offered to make a campaign donation in

3   exchange for the contact.

4           gg.     On or about May 14, 2013 YEE spoke with JACKSON and told JACKSON that he could

5   make the call to State Senator 1.  YEE instructed JACKSON to get campaign donations from UCE 4180

6   and CHS #11.

7           hh.     On or about May 17, 2013, YEE and JACKSON met with UCE 4180, and others at a

8   restaurant in San Francisco.  UCE 4180 reiterated the request that YEE contact State Senator 1.  YEE

9   stated that he was not interested in making money, but wanted his friends to benefit from his work.

10  During the meeting, UCE 4180 gave YEE an envelope containing $5,000 cash in connection with

11  YEE's assistance in furthering UCE 4180's interest in medical marijuana legislation.  During the same

12  meeting, JACKSON told YEE that UCE 4180 knew the owner of an NFL team (hereafter "NFL Team

13  A") and UCE 4180 confirmed this fact.  YEE then told UCE 4180 about California Assembly Bill No.

14  1309 (hereafter "AB-1309"), entitled "Workers' Compensation:  Professional Athletes," introduced in

15  the California legislature to limit the ability of professional athletes employed by non-California teams

16  to file workers' compensation claims in California.  YEE explained that owners of professional football

17  teams had an interest in AB 1309, it was in the financial interests of the owner of NFL Team A for AB

18  1309 to pass, and YEE held a key position on the Senate Committee that would be considering AB 1309

19  because YEE controlled two votes on the Committee.  YEE also stated that the players on professional

20  football teams opposed AB 1309.  YEE told UCE 4180 that UCE 4180 should convey this information

21  to the owner of NFL Team A and the owner of NFL Team A should contact YEE with an offer to help

22  YEE.  When UCE 4180 asked how much YEE's vote would cost, YEE responded, "Oh no … we gotta

23  drag it out, man.  We gotta juice this thing."  YEE and JACKSON said they planned to talk to both the

24  owners of, and the players on, another professional sports team.

25          ii.      On or about May 20, 2013, YEE and JACKSON spoke with UCE-4180 on the telephone

26  and YEE provided UCE 4180 with an update on the status of two bills pertaining to medical marijuana

27  that were pending in the state legislature.

28

16

1    jj.    On or about June 20, 2013, in Sacramento, California, YEE introduced UCE 4180 to

2 State Senator 1 at a meeting also attended by JACKSON. YEE explained UCE 4180's interest in certain

3 provisions of statewide medical marijuana legislation and expressed support for the issue of medical

4 marijuana.

5    kk.    On or about June 22, 2013, YEE and JACKSON met with UCE 4180 in a hotel room in

6 San Francisco. UCE 4180 delivered an envelope containing $11,000 cash and said that it was for the

7 meeting with State Senator 1. YEE discussed his upcoming vote on AB 1309 and represented that he

8 controlled two votes on the Senate Labor and Industrial Relations Committee and that his vote was

9 critical. When the subject of payment of money by the owner of NFL Team A came up, YEE directed

10 UCE 4180 to discuss that subject with JACKSON. Before leaving the room, YEE prompted JACKSON

11 to pick up the envelope and take it with them.

12    ll.    On or about June 22, 2013, JACKSON told UCE 4180 that YEE was going "to be

13 helpful" to the owner of NFL Team A, but wanted more money. When UCE 4180 conveyed an offer

14 from the owner of NFL Team A to pay YEE $60,000 for YEE's favorable vote on AB 1309, JACKSON

15 told UCE 4180 that he would talk with YEE, but added, "I guarantee it is going to be fine." After

16 learning the amount of money NFL Team A was purportedly willing to pay, JACKSON immediately

17 contacted YEE by telephone and several hours later, JACKSON sent a text message to UCE 4180

18 stating, "Hey [UCE 4180], where [sic] all good on our end … kj." UCE 4180 did not pay any money to

19 JACKSON or YEE.

20    mm.    On or about June 30, 2013, JACKSON received a check for $5,800 made payable to the

21 Leland Yee Secretary of State campaign from another individual, and reimbursed that individual with

22 $5,800 cash that JACKSON received from YEE.

23    nn.    Between on or about June 30, 2013 and July 10, 2013, JACKSON reimbursed another

24 individual with $6,800 in cash in exchange for two checks payable to the Leland Yee for Secretary of

25 State campaign.

26    oo.    On or about July 4, 2013, YEE and JACKSON spoke by telephone and YEE expressed

27 his expectation that UCE 4599 would provide more money to the Secretary of State campaign.

28

17

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

pp.     On or about July 10, 2013, the California Senate Labor and Industrial Relations Committee held a vote on AB 1309. YEE voted in favor of the bill's passage.

qq.     On or about July 11, 2013, JACKSON received a $1,800 check made payable to "Leland Yee Secretary of State" from UCE 4599.

rr.     On or about July 15, 2013, YEE complained to JACKSON about the small amount of money received from UCE 4180 "for all we've done," and mentioned having set up the meeting for UCE 4180 with State Senator 1.

ss.     On or about August 2, 2013, JACKSON met with UCE 4599 and discussed the subject of YEE having an associate who was an arms dealer and a possible source of weapons for UCE 4599.

tt.     On or about August 5, 2013, JACKSON met with UCE 4599 and told UCE 4599 that he had spoken to YEE about introducing UCE 4599 to YEE's arms dealer associate.

uu.     On or about August 8, 2013, JACKSON met with UCE 4599 and they had a further discussion about YEE setting up a meeting for UCE 4599 with YEE's arms dealer associate. They also discussed UCE 4599 providing a donation to YEE's Secretary of State campaign in exchange for the introduction.

vv.     On or about August 26, 2013, YEE introduced UCE 4180 to another State Senator, hereafter referred to as State Senator 2, whom YEE represented as having influence over medical marijuana legislation. JACKSON was also present for the meeting. During the meeting, YEE advocated for the provisions UCE 4180 wanted in the legislation.

xx.     On or about September 11, 2013, YEE voted in favor of SB-309.

yy.     On or about September 13, 2013, JACKSON met with UCE 4599 and they had further discussion about YEE introducing UCE 4599 to YEE's arms dealer associate.

zz.     On or about September 17, 2013, JACKSON and UCE 4180 met YEE at a restaurant in San Francisco. UCE 4180 told YEE he was paying for the meetings and handed an envelope containing $10,000 cash to JACKSON.

aaa.     On or about December 10, 2013, JACKSON met with UCE 4599 and they had a further discussion about YEE arranging a meeting with YEE's arms dealer associate and UCE 4599 making a donation to YEE's Secretary of State campaign in exchange for the introduction.

bbb.     On or about December 17, 2013, JACKSON met with UCE 4599 and they had a further discussion about YEE arranging a meeting with YEE's arms dealer associate.  JACKSON accepted a check for $5,000 made payable to YEE's Secretary of State campaign.  During the same meeting, UCE 4599 had a telephone conversation with YEE about UCE 4599's $5,000 campaign donation.

ccc.     On January 22, 2014, JACKSON and YEE met with UCE 4599 had a discussion with UCE 4599 about YEE's arms dealer associate as a source of weapons for UCE 4599 and the types of weapons that UCE 4599 was seeking to purchase.

ddd.     On or about January 24, 2014, JACKSON met with UCE 4599 and they had a further discussion about YEE arranging a meeting between UCE 4599 and YEE's arms dealer associate. JACKSON also discussed YEE's associate who had access to weapons in the Philippines as a potential alternate source of weapons for UCE 4599.

eee.     On or about February 12, 2014, JACKSON met with UCE 4599 and they had a further discussion about YEE arranging a meeting with YEE's arms dealer associate.

fff.     On or about February 25, 2014, JACKSON and YEE met with UCE 4599 and they had a further discussion about YEE arranging a meeting with YEE's arms dealer associate and the types of weapons UCE 4599 was seeking to purchase.  YEE also discussed with UCE 4599 that he, YEE, had another source of supply for weapons.

ggg.     On or about March 4, 2014, JACKSON had a telephone conversation with UCE 4599 discussed YEE and YEE's associate with connections in the Philippines providing weapons for sale and importation to the United States.

hhh.     On or about March 5, 2014, YEE and JACKSON met with UCE 4599 and discussed YEE's associate with connections in the Philippines as a source to sell weapons to UCE 4599 for importation to the United States.

iii.     On or about March 11, 2014, YEE, JACKSON, and YEE's associate with connections in

19

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   the Philippines with UCE 4599 to discuss purchasing weapons from the Philippines to import into the

2   United States.

3        jjj.    On or about March 14, 2014, YEE and JACKSON met with UCE 4599 and YEE

4   accepted $6,800 in U.S. Currency along with a list of weapons to pass to his associate with connections

5   in the Philippines.

6        kkk.    On or about March 15, 2014, JACKSON accepted a copy of a list of weapons to pass to

7   YEE's associate with connections in the Philippines.

8        lll.    Between on or about March 17, 2014 and March 20, 2014, JACKSON reimbursed an

9   individual with $3,000 in cash in exchange for two checks payable to the Leland Yee for Secretary of

10   State campaign.

11        All in violation of Title 18, United States Code, Section 1962(d).

12

13   <u>COUNTS 3-6</u>: (18 U.S.C. § 1956(a)(3)(A) and (B) -- Money Laundering)

14        On or about the dates set forth below, in the Northern District of California, the defendants,

15

16                 **GEORGE NIEH, a/k/a "Heng Nieh,"**
                 **KEVIN SIU, a/k/a "Dragon Tin Loong Siu," and**
     **KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"**

17

18   with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

19   and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

20   of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

21   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

22   be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

23   activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 3 | 3/19/2011 | $22,000 | Receipt of $22,000 in cash by SIU |
| 4 | 3/19/2011 | $22,000 | Receipt of $22,000 in cash by NIEH |
| 5 | 3/25/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 6 | 3/25/2011 | $20,000 | Payment of $20,000 check by SIU |

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

2

3    COUNTS 7-12: (18 U.S.C. § 1956(a)(3)(A) and (B) – Money Laundering)

4        On or about the dates set forth below, in the Northern District of California, the defendants,

5                        GEORGE NIEH, a/k/a "Heng Nieh,"
                    KEVIN SIU, a/k/a "Dragon Tin Loong Siu," and
6        KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

7    with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

8    and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

9    of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

10   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

11   be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

12   activity, to wit:

13

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 7 | 4/12/2011 | $44,000 | Receipt of $44,000 in cash by SIU |
| 8 | 4/13/2011 | $44,000 | Receipt of $44,000 in cash by NIEH |
| 9 | 4/20/2011 | $15,000 | Payment of $15,000 check by NIEH |
| 10 | 4/20/2011 | $15,000 | Payment of $15,000 check by NIEH |
| 11 | 4/20/2011 | $10,000 | Payment of $10,000 check by NIEH |
| 12 | 4/25/2011 | $40,000 | Payment of $40,000 check by SIU |

18       All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

19

20   COUNTS 13-16:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

21       On or about the dates set forth below, in the Northern District of California, the defendants,

22                       GEORGE NIEH, a/k/a "Heng Nieh," and
23       KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

24   with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

25   and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

26   of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

27   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

28

21

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

2  activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 13 | 5/4/2011 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 14 | 5/9/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 15 | 5/11/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 16 | 5/13/2011 | $20,000 | Payment of $20,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 17-23:  (18 U.S.C. § 1956(a)(3)(A) and (B)- Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
KEVIN SIU, a/k/a "Dragon Tin Loong Siu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 17 | 5/26/2011 | $110,000 | Receipt of $110,000 in cash by NIEH |
| 18 | 5/26/2011 | $55,000 | Receipt of $50,000 in cash by SIU |
| 19 | 6/1/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 20 | 6/1/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 21 | 6/2/2011 | $50,000 | Wire transfer of $50,000 by SIU |
| 22 | 6/3/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 23 | 6/7/2011 | $25,000 | Wire transfer of $25,000 by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

//

//

22

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

COUNTS 24-30: (18 U.S.C. § 1956(a)(3)(A) and (B)- Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
KEVIN SIU, a/k/a "Dragon Tin Loong Siu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|-------------------------------------|
| 24 | 6/16/2011 | $110,000 | Receipt of $110,000 in cash by NIEH |
| 25 | 6/16/2011 | $66,000 | Receipt of $66,000 in cash by SIU |
| 26 | 6/22/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 27 | 6/22/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 28 | 6/22/2011 | $60,000 | Wire transfer of $60,000 by SIU |
| 29 | 6/24/2011 | $25,000 | Payment of $25,000 check by NIEH |
| 30 | 6/24/2011 | $25,000 | Payment of $25,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 31-35: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

//

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 31 | 7/14/2011 | $132,000 | Receipt of $132,000 in cash by NIEH |
| 32 | 7/20/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 33 | 7/20/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 34 | 7/23/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 35 | 7/23/2011 | $30,000 | Payment of $30,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 36-45:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
ALAN CHIU, a/k/a "Alan Shiu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 36 | 8/1/11 | $110,000 | Receipt of $110,000 in cash by NIEH |
| 37 | 8/1/11 | $33,000 | Receipt of $33,000 in cash by CHIU |
| 38 | 8/5/11 | $8,000 | Payment of $8,000 check by CHIU |
| 39 | 8/5/11 | $8,000 | Payment of $8,000 check by CHIU |
| 40 | 8/5/11 | $8,000 | Payment of $8,000 check by CHIU |
| 41 | 8/9/11 | $30,000 | Payment of $30,000 check by NIEH |
| 42 | 8/9/11 | $20,000 | Payment of $20,000 check by NIEH |
| 43 | 8/11/11 | $30,000 | Payment of $30,000 check by NIEH |
| 44 | 8/11/11 | $20,000 | Payment of $20,000 check by NIEH |
| 45 | 8/17/11 | $6,000 | Payment of $6,000 check by CHIU |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 46-52:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

ALAN CHIU, a/k/a "Alan Shiu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 46 | 9/22/11 | $132,000 | Receipt of $132,000 in cash by NIEH |
| 47 | 9/22/11 | $66,000 | Receipt of $66,000 in cash by CHIU |
| 48 | 9/29/11 | $30,000 | Payment of $30,000 check by NIEH |
| 49 | 9/29/11 | $30,000 | Payment of $30,000 check by NIEH |
| 50 | 10/1/11 | $30,000 | Payment of $30,000 check by NIEH |
| 51 | 10/1/11 | $30,000 | Payment of $30,000 check by NIEH |
| 52 | 10/4/11 | $60,000 | Wire transfer of $60,000 by CHIU |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 53-59:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
ALAN CHIU, a/k/a "Alan Shiu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

//

//

25

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|-------------------------------------|
| 53 | 10/19/2011 | $132,000 | Receipt of $132,000 in cash by NIEH |
| 54 | 10/19/2011 | $44,000 | Receipt of $44,000 in cash by CHIU |
| 55 | 10/24/2011 | $40,000 | Wire transfer of $40,000 by CHIU |
| 56 | 10/28/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 57 | 10/28/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 58 | 10/31/2011 | $30,000 | Payment of $30,000 check by NIEH |
| 59 | 10/31/2011 | $30,000 | Payment of $30,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 60-64: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|-------------------------------------|
| 60 | 11/17/2011 | $88,000 | Receipt of $88,000 in cash by NIEH |
| 61 | 11/23/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 62 | 11/23/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 63 | 11/25/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 64 | 11/25/2011 | $20,000 | Payment of $20,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 65-71:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
ALAN CHIU, a/k/a "Alan Shiu," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

2   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

3   be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

4   activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 65 | 12/13/2011 | $88,000 | Receipt of $88,000 in cash by NIEH |
| 66 | 12/13/2011 | $22,000 | Receipt of $22,000 in cash by CHIU |
| 67 | 12/21/2011 | $20,000 | Wire transfer of $20,000 by CHIU |
| 68 | 12/21/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 69 | 12/21/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 70 | 12/23/2011 | $20,000 | Payment of $20,000 check by NIEH |
| 71 | 12/23/2011 | $20,000 | Payment of $20,000 check by NIEH |

10      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

11   <u>COUNTS 72-74</u>: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

12      On or about the dates set forth below, in the Northern District of California, the defendants,

13               GEORGE NIEH, a/k/a "Heng Nieh," and
      KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

15   with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

16   and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

17   of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

18   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

19   be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

20   activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 72 | 1/25/2012 | $77,000 | Receipt of $77,000 in cash by NIEH |
| 73 | 2/3/2012 | $35,000 | Payment of $35,000 check by NIEH |
| 74 | 2/3/2012 | $35,000 | Payment of $35,000 check by NIEH |

24      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

25   <u>COUNTS 75-79</u>: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

26      On or about the dates set forth below, in the Northern District of California, the defendants,

27                GEORGE NIEH, a/k/a "Heng Nieh,"
              ALAN CHIU, a/k/a "Alan Shiu," and

28   KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

<div align="center">27</div>

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

2   and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

3   of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

4   affecting interstate or foreign commerce involving property represented by a law enforcement officer to

5   be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

6   activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 75 | 2/13/2012 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 76 | 2/13/2012 | $22,000 | Receipt of $22,000 in cash by CHIU |
| 77 | 2/21/2012 | $20,000 | Wire transfer of $20,000 by CHIU |
| 78 | 2/17/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 79 | 2/17/2012 | $30,000 | Payment of $30,000 check by NIEH |

11      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

13   COUNT 80:   (21 U.S.C. § 846 – Conspiracy to Distribute and Possess with Intent to Distribute
14              Marijuana)

15      On or about February 14, 2012, in the Northern District of California and elsewhere, the

16   defendants,

17                        GEORGE NIEH, a/k/a "Heng Nieh," and
                 KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"
18

19   knowingly and intentionally conspired and agreed with each other, and with others, known and unknown

20   to the Grand Jury, to possess with intent to distribute and to distribute a Schedule I controlled substance,

21   to wit: marijuana, in violation of Title 21, United States Code, Section 841(a)(1).

22      All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(C).

24   COUNT 81: (18 U.S.C. § 371 – Conspiracy)

25      Between on or about December 13, 2011, through and including on or about March 13, 2012, in

26   the Northern District of California, and elsewhere, the defendants,

27        KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
                        GEORGE NIEH, a/k/a "Heng Nieh,"
28                      JANE MIAO XHEN LIANG,

28

1 | TINA YAO GUI LIANG, and
BRYAN TILTON,

2

3 | knowingly and willfully conspired and agreed with each other and with others, known and unknown to

4 | the Grand Jury, to commit offenses against the United States: that is,

5 | (1) to receive, possess, store, sell, and dispose of property, that is, 50 cases of Hennessey XO

6 | alcohol, of a value of $5,000 or more which had crossed a State boundary after being stolen and

7 | subsequently brought into the State of California, knowing the same to have been stolen, in

8 | violation of Title 18, United States Code, Section 2315; and

9 | (2) to transport, transmit, and transfer in interstate and foreign commerce from the State of

10 | California to a location outside of the United States, stolen goods, wares and merchandise, that

11 | is, 50 cases of Hennessey XO alcohol, of the value of $5,000 or more, knowing the same to have

12 | been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section

13 | 2314.

14 | ## OVERT ACTS

15 | In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt

16 | acts, among others, were committed in the Northern District of California and elsewhere:

17 | 1.   On or about December 13, 2011, the defendant RAYMOND CHOW discussed selling

18 | stolen liquor with an undercover employee;

19 | 2.   On or about January 23, 2012, the defendants RAYMOND CHOW and GEORGE NIEH

20 | discussed selling stolen liquor with an undercover employee and indicated that defendant TINA LIANG

21 | would arrange buyers in China;

22 | 3.   On or about January 25, 2012, the defendant GEORGE NIEH discussed selling stolen

23 | liquor with an undercover employee;

24 | 4.   On or about February 6, 2012, the defendant JANE LIANG discussed selling stolen

25 | liquor with an undercover employee;

26 | 5.   On or about February 16, 2012, the defendant RAYMOND CHOW discussed selling

27 | stolen liquor to TINA LIANG with an undercover employee;

28

29

6.  On or about March 5, 2012, the defendants GEORGE NIEH and TINA LIANG met with an undercover employee to discuss selling stolen liquor;

7.  On or about March 9, 2012, the defendants TINA LIANG and BRYAN TILTON purchased purportedly stolen liquor from an undercover employee.

8.  On or about March 13, 2012, the defendant RAYMOND CHOW received payment for this transaction.

All in violation of Title 18, United States Code, Section 371.

COUNTS 82-84:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 82 | 4/19/2012 | $77,000 | Receipt of $77,000 in cash by NIEH |
| 83 | 4/27/2012 | $35,000 | Payment of $35,000 check by NIEH |
| 84 | 4/27/2012 | $35,000 | Payment of $35,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNT 85: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

On or about April 19, 2012, in the Northern District of California, the defendant,

GEORGE NIEH, a/k/a "Heng Nieh,"

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  having previously been convicted of an offense punishable by more than one year imprisonment, did

2  knowingly possess in interstate and foreign commerce a firearm, that is, a Rossi .22 caliber revolver,

3  serial number 69874, and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1)

4  and 2.

5

6  COUNTS 86-88:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

7      On or about the dates set forth below, in the Northern District of California, the defendants,

8              GEORGE NIEH, a/k/a "Heng Nieh," and
   KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

9

10  with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

11  and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

12  of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

13  affecting interstate or foreign commerce involving property represented by a law enforcement officer to

14  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

15  activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 86 | 5/10/2012 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 87 | 5/17/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 88 | 5/17/2012 | $30,000 | Payment of $30,000 check by NIEH |

19      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

20

21  COUNTS 89-90:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

22      On or about the dates set forth below, in the Northern District of California, the defendants,

23              GEORGE NIEH, a/k/a "Heng Nieh,"
   LESLIE YUN, a/k/a "Leslie Yuncheung,"

24              YAT WA PAU, a/k/a "James Pau," and
   KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

25  with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

26  and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

27  of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  affecting interstate or foreign commerce involving property represented by a law enforcement officer to

2  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

3  activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 89 | 5/16/2012 | $33,000 | Receipt of $33,000 in cash by YUN |
| 90 | 5/22/2012 | $30,000 | Wire transfer of $30,000 by YUN |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 91-98: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
LESLIE YUN, a/k/a "Leslie Yuncheung,"
YAT WA PAU, a/k/a "James Pau," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

affecting interstate or foreign commerce involving property represented by a law enforcement officer to

be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 91 | 6/20/2012 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 92 | 6/20/2012 | $66,000 | Receipt of $66,000 in cash by YUN |
| 93 | 6/22/2012 | $20,000 | Payment of $20,000 check by YUN |
| 94 | 6/28/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 95 | 6/28/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 96 | 6/26/2012 | $20,000 | Wire transfer of $20,000 by YUN |
| 97 | 6/27/2012 | $10,000 | Wire transfer of $10,000 by YUN |
| 98 | 6/27/2012 | $10,000 | Wire transfer of $10,000 by YUN |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

32

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

COUNT 99: (18 U.S.C. § 371 – Conspiracy)

Between on or about June 20, 2012, through and including on or about September 19, 2012, in the Northern District of California, and elsewhere, the defendants,

KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
GEORGE NIEH, a/k/a "Heng Nieh,"
HUAN MING MA, a/k/a "Ming Ma," a/k/a "Baak Ban," and
HON KEUNG SO, a/k/a "Hon So,"

knowingly and willfully conspired and agreed with each other and with others, known and unknown to the Grand Jury, to commit offenses against the United States: that is, to receive, possess, store, sell, and dispose of property, that is, 27 cases of Johnnie Walker Blue Label Scotch Whiskey alcohol, of a value of $5,000 or more, which had crossed a State boundary after being stolen and subsequently brought into the State of California, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2315.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

1.     On or about June 20, 2012, the defendant GEORGE NIEH discussed selling stolen liquor with an undercover employee;

2.     On or about June 27, 2012, the defendants GEORGE NIEH, MING MA, and HON SO met at a restaurant so that MA and SO could purchase 12 cases of purportedly stolen Johnnie Walker Blue Label Scotch for $6,480;

3.     On or about June 27, 2012, the defendant RAYMOND CHOW accepted payment for facilitating the liquor sale;

4.     On or about July 19, 2012, the defendant GEORGE NIEH discussed selling stolen liquor with an undercover employee;

5.     On or about August 16, 2012, the defendant GEORGE NIEH discussed selling stolen liquor with an undercover employee;

6.     On or about September 8, 2012, the defendants GEORGE NIEH and MING MA

33

discussed selling stolen liquor with an undercover employee;

7.     On or about September 10, 2012, the defendants GEORGE NIEH, MING MA, and HON SO met at a restaurant so that MA and SO could purchase 15 cases of purportedly stolen liquor for $8,100;

8.     On or about September 19, 2012, the defendants RAYMOND CHOW and GEORGE NIEH accepted payment for facilitating the liquor sale.

All in violation of Title 18, United States Code, Section 371.


COUNT 100:  (21 U.S.C. § 841(a)(1) – Distribution of Controlled Substances)

On or about July 6, 2012, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe",

did knowingly and intentionally distribute a Schedule I controlled substance, to wit: marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).


COUNT 101:  (18 U.S.C. § 371 – Conspiracy)

From on or between July 19, 2012, to August 16, 2012, in the Northern District of California, and elsewhere, the defendants,

KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
ZHANGHAO WU, a/k/a "Jason,"
GEORGE NIEH, a/k/a "Heng Nieh," and
LESLIE YUN, a/k/a "Leslie Yuncheung,"

knowingly and willfully conspired and agreed with each other and with others, known and unknown to the Grand Jury, to commit offenses against the United States: that is,

(1) to receive, possess, store, sell, and dispose of property, that is, a quantity of more than 10,000 cigarettes, of a value of $5,000 or more which had crossed a State boundary after being stolen, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2315; and

(2) to knowingly receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is

34

defined in Title 18, United States Code, Section 2341, to wit: a quantity of more than 10,000 Marlboro cigarettes which bore no evidence of the payment of applicable State cigarette taxes in the State of New York, in violation of Title 18, United States Code, Section 2342(a) and 2344.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

1.  On or about July 19, 2012, the defendant GEORGE NIEH discussed with defendant LESLIE YUN the sale of stolen cigarettes by an undercover employee;

2.  On or about July 26, 2012, the defendants NIEH and YUN met with the undercover employee to coordinate the sale of stolen cigarettes. In particular, YUN instructed the undercover employee to deliver a sample of cigarettes, and that if the sample were acceptable, the full transaction would take place.

3.  On or about August 3, 2012, the defendants NIEH and YUN again met with the undercover employee, to discuss travel plans and logistics for the transaction. YUN wanted to know what brand the cigarettes were, and advised that her buyers would pay the undercover employee in $20 denominations.

4.  On or about August 9, 2012, the defendant YUN gave the undercover employee $96,010 for the purportedly stolen and contraband cigarettes. The cigarettes were delivered by undercover employees to an address in Brooklyn, New York, identified by YUN and her associates.

5.  On or about August 16, 2012, the defendants CHOW and NIEH accepted payment for their role in facilitating the sale of the cigarettes.

All in violation of Title 18, United States Code, Section 371.

COUNTS 102-109: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
YAT WA PAU, a/k/a "James Pau,"
LESLIE YUN, a/k/a "Leslie Yuncheung," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

35

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

affecting interstate or foreign commerce involving property represented by a law enforcement officer to

be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 102 | 8/16/12 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 103 | 8/16/12 | $66,000 | Receipt of $66,000 in cash by YUN |
| 104 | 8/22/12 | $18,000 | Payment of $18,000 check by PAU |
| 105 | 8/24/12 | $30,000 | Payment of $30,000 check by NIEH |
| 106 | 8/24/12 | $30,000 | Payment of $30,000 check by NIEH |
| 107 | 8/27/12 | $15,000 | Payment of $15,000 check by YUN |
| 108 | 8/31/12 | $17,000 | Payment of $17,000 check by YUN |
| 109 | 9/4/12 | $10,000 | Payment of $10,000 check by YUN |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNT 110:  (21 U.S.C. § 846 – Conspiracy to Distribute and Possess with Intent to Distribute
Cocaine)

Beginning on or about August 12, 2012, and continuing to on or about March 26, 2014, in the

Northern District of California and elsewhere, the defendants,

<div align="center">
KEITH JACKSON,<br>
BRANDON JAMELLE JACKSON, and<br>
MARLON DARRELL SULLIVAN,
</div>

knowingly and intentionally conspired and agreed with each other, and with others, known and unknown

to the Grand Jury, to possess with intent to distribute and to distribute a Schedule II controlled

substance, to wit: five kilograms or more of a mixture and substance containing cocaine, in violation of

Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A).


COUNT 111: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about September 26, 2012, in the Northern District of California, the defendants,

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

GEORGE NIEH, a/k/a "Heng Nieh,"
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe," and
ANDY LI, a/k/a "Andy Man Lai Li,"

each aided and abetted by the other, and not being a licensed dealer of firearms within the meaning of

Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

COUNT 112: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

On or about September 26, 2012, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe," and
ANDY LI, a/k/a "Andy Man Lai Li,"

each aided and abetted by the other, having previously been convicted of an offense punishable by more

than one year imprisonment, did knowingly possess in interstate and foreign commerce a firearm, that is,

a .357 Magnum Smith and Wesson revolver, serial number AYL5133, and .357 ammunition.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 2.

COUNT 113: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about October 2, 2012, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

COUNT 114: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

On or about October 2, 2012, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

37

1  each aided and abetted by the other, having previously been convicted of an offense punishable by more

2  than one year imprisonment, did knowingly possess in interstate and foreign commerce a firearm, that is,

3  a .223 caliber Daewoo DR-200 rifle bearing serial number RA001216, and .223 caliber ammunition.

4      All in violation of Title 18, United States Code, Sections 922(g)(1) and 2.

5

6  COUNTS 115-123:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

7      On or about the dates set forth below, in the Northern District of California, the defendants,

8                 GEORGE NIEH, a/k/a "Heng Nieh,"
                  LESLIE YUN, a/k/a "Leslie Yuncheung," and
9  KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

10  with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

11  and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

12  of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

13  affecting interstate or foreign commerce involving property represented by a law enforcement officer to

14  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

15  activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 115 | 10/11/2012 | $66,000 | Receipt of $66,000 in cash by NIEH |
| 116 | 10/11/2012 | $66,000 | Receipt of $66,000 in cash by YUN |
| 117 | 10/11/2012 | $12,000 | Payment of $12,000 check by YUN |
| 118 | 10/12/2012 | $15,000 | Payment of $15,000 check by YUN |
| 119 | 10/17/2012 | $15,000 | Payment of $15,000 check by YUN |
| 120 | 10/19/2012 | $9,000 | Payment of $9,000 check by YUN |
| 121 | 10/19/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 122 | 10/19/2012 | $30,000 | Payment of $30,000 check by NIEH |
| 123 | 10/24/2012 | $9,000 | Payment of $9,000 check by YUN |

22      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

23

24  COUNT 124: (21 U.S.C. § 841(a)(1) – Possession with Intent to Distribute Cocaine)

25      On or about October 24, 2012, in the Northern District of California and elsewhere, the

26  defendant,

27                 KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

28                                      38

1   knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture and

2   substance containing a detectable amount of cocaine, its salts, isomers, and salts of isomers, a Schedule

3   II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

4
5   <u>COUNT 125</u>:  (21 U.S.C. § 841(a)(1) –      Manufacture and Possession With Intent to Distribute
                                                       Marijuana)

6          On or about October 24, 2012, in the Northern District of California and elsewhere, the

7   defendant,

8                     KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

9   knowingly and intentionally manufactured and possessed with intent to distribute 100 or more marijuana

10  plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)

11  and (b)(1)(B).

12

13  <u>COUNT 126</u>: (18 U.S.C. § 924(c)(1)(A) –     Possession of a Firearm In Furtherance of a Drug
                                                       Trafficking Crime)
14

15         On or about October 24, 2012, in the Northern District of California, the defendant,

16                    KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

17  did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be

18  prosecuted in a court of the United States, that is, the possession with intent to distribute cocaine, as

19  charged in Count 125 of this Indictment, and the manufacture and possession with intent to distribute

20  marijuana, as charged in Count 125 of this Indictment.

21         All in violation of Title 18, United States Code, Section 924(c)(1)(A).

22

23  <u>COUNT 127</u>: (21 U.S.C. § 841(a)(1) –       Manufacture and Possession With Intent to Distribute
                                                       Marijuana)
24

25         On or about October 30, 2012, in the Northern District of California and elsewhere, the

26  defendant,

27                  XIAO CHENG MEI, a/k/a "Michael Mei,"

28

<div align="center">39</div>

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  knowingly and intentionally manufactured and possessed with intent to distribute 100 or more marijuana

2  plants, a Schedule I controlled substance.

3       All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

4  <u>COUNTS 128-132</u>: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

5       On or about the dates set forth below, in the Northern District of California, the defendants,

6  <center>GEORGE NIEH, a/k/a "Heng Nieh," and</center>

7  <center>KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"</center>

8  with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

9  and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

10  of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

11  affecting interstate or foreign commerce involving property represented by a law enforcement officer to

12  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

13  activity, to wit:

14
| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 128 | 12/12/2012 | $77,000 | Receipt of $77,000 in cash by NIEH |
| 129 | 12/19/2012 | $20,000 | Payment of $20,000 check by NIEH |
| 130 | 12/21/2012 | $20,000 | Payment of $20,000 check by NIEH |
| 131 | 12/21/2012 | $15,000 | Wire transfer of $15,000 by NIEH |
| 132 | 12/21/2012 | $15,000 | Wire transfer of $15,000 by NIEH |

18       All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

19

20  <u>COUNT 133</u>: (18 U.S.C. § 371 – Conspiracy)

21       From on or about December 17, 2013, to January 16, 2013, in the Northern District of California,

22  and elsewhere, the defendants,

23  <center>KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"</center>

24  <center>YAT WA PAU, a/k/a "James Pau,"</center>
<center>ZHANGHAO WU, a/k/a "Jason,"</center>

25  <center>GEORGE NIEH, a/k/a "Heng Nieh," and</center>
<center>LESLIE YUN, a/k/a "Leslie Yuncheung,"</center>

26  knowingly and willfully conspired and agreed with each other and with others, known and unknown to

27  the Grand Jury, to commit offenses against the United States: that is,

28

<center>40</center>

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

(1) to receive, possess, store, sell, and dispose of property, that is, a quantity of more than 10,000 cigarettes, of a value of $5,000 or more which had crossed a State boundary after being stolen, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2315; and

(2) to knowingly receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341, to wit: a quantity of more than 10,000 Marlboro cigarettes which bore no evidence of the payment of applicable State cigarette taxes in the State of New York, in violation of Title 18, United States Code, Section 2342(a) and 2344.

### OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

1.      On or about December 17, 2012, the defendant LESLIE YUN discussed with defendant GEORGE NIEH and an undercover employee a proposed sale of stolen cigarettes by the undercover employee on January 10, 2013;

2.      On or about January 7, 2013, the defendants YUN and NIEH met again with the undercover employee to coordinate the sale of stolen cigarettes.  In particular, YUN and the undercover employee agreed to meet in a hotel in Flushing, New York; once the undercover employee received payment, the undercover employee would provide YUN with the code and key to access a storage unit where the purportedly stolen cigarettes were held.

3.      On or about January 10, 2013, the defendant James PAU visited a storage unit in Flushing, New York, with undercover employees to inspect cartons of purportedly stolen cigarettes. Defendants WU, YUN, and PAU subsequently gave undercover employees $173,000 in exchange for the purportedly stolen cigarettes.

4.      On or about January 16, 2013, the defendants CHOW and NIEH accepted payment for their role in facilitating the sale of the cigarettes.

All in violation of Title 18, United States Code, Section 371.

41

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  COUNT 134: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

2      On or about January 23, 2013, in the Northern District of California, the defendants,

3              KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe," and
               ANDY LI, a/k/a "Andy Man Lai Li,"
4

5  each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

6  Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

7      All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

8

9  COUNT 135: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

10     On or about January 23, 2013, in the Northern District of California, the defendants,

11             KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe," and
               ANDY LI, a/k/a "Andy Man Lai Li,"
12

13 each aided and abetted by the other, having previously been convicted of an offense punishable by more

14 than one year imprisonment, did knowingly possess in interstate and foreign commerce a firearm, that is,

15 a .40 caliber Ruger SR40 handgun, serial number 342-08483.

16     All in violation of Title 18, United States Code, Sections 922(g)(1) and 2.

17

18 COUNTS 136-140:  (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

19     On or about the dates set forth below, in the Northern District of California, the defendants,

20             GEORGE NIEH, a/k/a "Heng Nieh," and
       KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
21

22 with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

23 and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

24 of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

25 affecting interstate or foreign commerce involving property represented by a law enforcement officer to

26 be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

27 activity, to wit:

28

42

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 136 | 2/14/2013 | $88,000 | Receipt of $88,000 in cash by NIEH |
| 137 | 2/22/2013 | $20,000 | Payment of $20,000 check by NIEH |
| 138 | 2/22/2013 | $20,000 | Payment of $20,000 check by NIEH |
| 139 | 2/26/2013 | $20,000 | Wire transfer of $20,000 by NIEH |
| 140 | 2/26-28/2013 | $20,000 | Wire transfers of $10,000 by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 141-147: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

On or about the dates set forth below, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh,"
LESLIE YUN, a/k/a "Leslie Yuncheung," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 141 | 4/11/2013 | $77,000 | Receipt of $77,000 by NIEH |
| 142 | 4/11/2013 | $33,000 | Receipt of $33,000 by YUN |
| 143 | 4/12/2013 | $9,000 | Payment of $9,000 check by YUN |
| 144 | 4/17/2013 | $12,000 | Payment of $12,000 check by YUN |
| 145 | 4/19/2013 | $9,000 | Payment of $9,000 check by YUN |
| 146 | 4/19/2013 | $35,000 | Payment of $35,000 check by NIEH |
| 147 | 4/19/2013 | $35,000 | Payment of $35,000 check by NIEH |

All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

COUNTS 148-149: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO, and
ANDY LI, a/k/a "Andy Man Lai Li,"

43

1  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

2  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

3  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

4  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

5  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

6  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

7  that while conducting and attempting to conduct such financial transaction, knew that the property

8  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 148 | 4/15/2013 | $49,810 | Delivery of $49,810 in cash by MASTRANGELO |
| 149 | 4/16/2013 | $48,000 | Receipt of $48,000 in cash by NHINGSAVATH |

13      All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

15  COUNTS 150-151: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

16      On or about the dates described below, in the Northern District of California and elsewhere, the

17  defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO, and
ANDY LI, a/k/a "Andy Man Lai Li,"

20  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

21  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

22  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

23  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

24  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

25  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

26  that while conducting and attempting to conduct such financial transaction, knew that the property

27  involved in the financial transaction represented the proceeds of some form of unlawful activity.

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 150 | 4/25/2013 | $80,314 | Delivery of $80,314 in cash by NHINGSAVATH and MASTRANGELO |
| 151 | 4/29/2013 | $77,100 | Receipt of $77,100 in cash by NHINGSAVATH and MASTRANGELO |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNT 152: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about May 6, 2013, in the Northern District of California, the defendants,

KEITH JACKSON and
BRANDON JAMELLE JACKSON,

each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

COUNTS 153-154: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO,
ANDY LI, a/k/a "Andy Man Lai Li," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  that while conducting and attempting to conduct such financial transaction, knew that the property

2  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 153 | 5/13/13 | $99,275 | Delivery of $99,275 by MASTRANGELO |
| 154 | 5/14/13 | $96,275 | Receipt of $96,275 by NHINGSAVATH |

6      All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

8  COUNTS 155-157: (18 U.S.C. § 1956(a)(3)(A) and (B)–Money Laundering)

9      On or about the dates set forth below, in the Northern District of California, the defendants,

10                    GEORGE NIEH, a/k/a "Heng Nieh," and
       KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

12  with the intent to promote the carrying on of specified unlawful activity, and with the intent to conceal

13  and disguise the nature, location, source, ownership, and control of property believed to be the proceeds

14  of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions

15  affecting interstate or foreign commerce involving property represented by a law enforcement officer to

16  be proceeds of specified unlawful activity and property used to conduct or facilitate specified unlawful

17  activity, to wit:

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 155 | 6/13/13 | $77,000 | Receipt of $77,000 in cash by NIEH |
| 156 | 6/22/13 | $35,000 | Payment of $35,000 check by NIEH |
| 157 | 6/22/13 | $35,000 | Payment of $35,000 check by NIEH |

21      All in violation of Title 18, United States Code, Section 1956(a)(3)(A) and (B) and Section 2.

23  COUNT 158: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

24      On or about June 24, 2013, in the Northern District of California, the defendants,

25                          KEITH JACKSON,
                    BRANDON JAMELLE JACKSON, and
26                        MARLON SULLIVAN,

46

1   each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

2   Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

3          All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

4   COUNT 159: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

5          On or about June 25, 2013, in the Northern District of California, the defendants,

6                            KEITH JACKSON,
                    BRANDON JAMELLE JACKSON, and
7                          MARLON SULLIVAN,

8   each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

9   Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

10         All done in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

11

12  COUNTS 160-161: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

13         On or about the dates described below, in the Northern District of California and elsewhere, the

14  defendants,

15                         ALBERT NHINGSAVATH,
                      NORGE MASTRANGELO, and
16                 ANDY LI, a/k/a "Andy Man Lai Li,"

17  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

18  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

19  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

20  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

21  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

22  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

23  that while conducting and attempting to conduct such financial transaction, knew that the property

24  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 160 | 7/11/2013 | $92,860 | Delivery of $92,860 in cash by MASTRANGELO |
| 161 | 7/12/2013 | $89,160 | Receipt of $89,160 in cash by MASTRANGELO |

47

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1     All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

2

3     COUNT 162: (18 U.S.C. § 371 – Conspiracy)

4         From on or between June 19, 2013, to July 23, 2013, in the Northern District of California, and

5     elsewhere, the defendants,

6         KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
                        YAT WA PAU, a/k/a "James Pau,"
7                      ZHANGHAO WU, a/k/a "Jason,"
                        TONG ZAO ZHANG,
8           GEORGE NIEH, a/k/a "Heng Nieh," and
              LESLIE YUN, a/k/a "Leslie Yuncheung,"
9

10    knowingly and willfully conspired and agreed with each other and with others, known and unknown to

11    the Grand Jury, to commit offenses against the United States: that is,

12        (1) to receive, possess, store, sell, and dispose of property, that is, a quantity of more than 10,000

13            cigarettes, of a value of $5,000 or more which had crossed a State boundary after being stolen,

14            knowing the same to have been stolen, in violation of Title 18, United States Code, Section

15            2315; and

16        (2) to knowingly receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is

17            defined in Title 18, United States Code, Section 2341, to wit: a quantity of more than 10,000

18            Marlboro cigarettes which bore no evidence of the payment of applicable State cigarette taxes in

19            the State of New York, in violation of Title 18, United States Code, Section 2342(a) and 2344.

20                                           OVERT ACTS

21        In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt

22    acts, among others, were committed in the Northern District of California and elsewhere:

23        1.      On or about June 19, 2013, the defendant RAYMOND CHOW discussed with JAMES

24    PAU and LESLIE YUN facilitating the sale of stolen cigarettes with an undercover employee;

25        2.      On or about July 18, 2013, the defendants JAMES PAU and LESLIE YUN met with an

26    undercover employee to arrange sales of stolen and contraband cigarettes to buyers, including

27    defendants ZHANGHAO WU and TONG ZAO ZHANG;

28

                                              48
SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

3.     On or about July 18, 2013, the defendants YUN and PAU gave the undercover employee $150,000 for the purportedly stolen and contraband cigarettes, which was $17,900 less than the agreed upon price;

4.     On or about July 23, 2013, the defendant GEORGE NIEH gave the undercover employee the remaining $17,900 for the sale of the cigarettes;

5.     On or about July 23, 2013, the defendants RAYMOND CHOW and GEORGE NIEH accepted payment for their role in facilitating the sale of the cigarettes.

All in violation of Title 18, United States Code, Section 371.

COUNTS 163-164: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

ALBERT NHINGSAVATH and
NORGE MASTRANGELO,

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of  Financial Transaction |
|-------|------|--------|----------------------------------------|
| 163 | 7/19/2013 | $45,000 | Delivery of $45,000 in cash by MASTRANGELO |
| 164 | 7/22/2013 | $43,200 | Receipt of $43,200 in cash by NHINGSAVATH |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

49

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

COUNT 165: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about August 5, 2013, in the Northern District of California, the defendants,

KEITH JACKSON and
BRANDON JAMELLE JACKSON,

each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All done in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

COUNT 166: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about August 8, 2013, in the Northern District of California, the defendants,

KEITH JACKSON and
BRANDON JAMELLE JACKSON,

each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All done in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

COUNTS 167-168: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

SERGE GEE,
XIU YING LING LIANG, a/k/a "Elaine Liang,"
GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  that while conducting and attempting to conduct such financial transaction, knew that the property

2  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 167 | 8/9/2013 | $93,870 | Delivery of $93,870 in cash by GEE |
| 168 | 8/11/2013 | $90,180 | Receipt of $90,180 by GEE and LIANG |

6       All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

8  COUNTS 169-170: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

9       On or about the dates described below, in the Northern District of California and elsewhere, the

10  defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO, and
ANDY LI, a/k/a "Andy Man Lai Li,"

13  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

14  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

15  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

16  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

17  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

18  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

19  that while conducting and attempting to conduct such financial transaction, knew that the property

20  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 169 | 8/16/2013 | $199,900 | Delivery of $199,900 in cash by MASTRANGELO |
| 170 | 8/19/2013 | $194,000 | Receipt of $194,000 in cash by NHINGSAVATH |

25       All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

26  //

27  //

28

51

1   <u>COUNT 171</u>: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

2        On or about August 26, 2013, in the Northern District of California, the defendants,

3   KEITH JACKSON,
    BRANDON JAMELLE JACKSON, and
4   MARLON SULLIVAN,

5   each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

6   Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

7        All done in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

8

9   <u>COUNTS 172-173</u>: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

10       On or about the dates described below, in the Northern District of California and elsewhere, the

11  defendants,

12  SERGE GEE,
    XIU YING LING LIANG, a/k/a "Elaine Liang,"
13  GEORGE NIEH, a/k/a "Heng Nieh," and
    KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"
14

15  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

16  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

17  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

18  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

19  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

20  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

21  that while conducting and attempting to conduct such financial transaction, knew that the property

22  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 172 | 8/26/2013 | $155,900 | Delivery of $155,900 in cash by GEE |
| 173 | 8/27/2013 | $149,900 | Receipt of $149,900 in cash by GEE and LIANG |

     All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

52

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  COUNT 174: (18 U.S.C. 1958 – Murder for Hire)

2      Beginning on or about August 27, 2013, and continuing until on or about August 28, 2013, in the

3  Northern District of California and elsewhere, the defendant,

4  <div align="center">RINN ROEUN,</div>

5  knowingly and intentionally combined, conspired, confederated and agreed with other persons known

6  and unknown to the Grand Jury, to use, and did use a facility of interstate commerce, and caused another

7  to use a facility of interstate commerce with intent that the murder of Fictitious Victim 1 be committed

8  in violation of the laws of California, as consideration for the receipt of, and as consideration for a

9  promise and agreement to pay, things of pecuniary value, to wit: $25,000 in U.S. Currency.

10      All in violation of Title 18, United States Code, Section 1958.

11

12  COUNTS 175-176: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

13      On or about the dates described below, in the Northern District of California and elsewhere, the

14  defendants,

15  <div align="center">ALBERT NHINGSAVATH,</div>
<div align="center">NORGE MASTRANGELO, and</div>
16  <div align="center">ANDY LI, a/k/a "Andy Man Lai Li,"</div>

17  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

18  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

19  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

20  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

21  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

22  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

23  that while conducting and attempting to conduct such financial transaction, knew that the property

24  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 175 | 8/30/2013 | $114,860 | Delivery of $114,860 in cash by unindicted co-conspirator |
| 176 | 9/3/2013 | $111,415 | Receipt of $111,415 in cash by unindicted co-conspirator |

1    All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

2

3    COUNTS 177-178: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

4    On or about the dates described below, in the Northern District of California and elsewhere, the

5    defendants,

6    SERGE GEE,
     XIU YING LING LIANG, a/k/a "Elaine Liang," and
7    KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

8    and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

9    transactions affecting interstate and foreign commerce which involved the proceeds of a specified

10   unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

11   United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

12   unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

13   disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

14   that while conducting and attempting to conduct such financial transaction, knew that the property

15   involved in the financial transaction represented the proceeds of some form of unlawful activity.

16

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 177 | 9/3/2013 | $76,030 | Delivery of $76,030 in cash by unindicted co-conspirators |
| 178 | 9/6/2013 | $73,000 | Receipt of $73,000 in cash by GEE |

19   All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

20

21   COUNTS 179-180: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

22   On or about the dates described below, in the Northern District of California and elsewhere, the

23   defendants,

24   SERGE GEE,
     XIU YING LING LIANG, a/k/a "Elaine Liang,"
25   GEORGE NIEH, a/k/a "Heng Nieh," and
     KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

26

27   and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

     transactions affecting interstate and foreign commerce which involved the proceeds of a specified

28

54

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

2  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

3  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

4  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

5  that while conducting and attempting to conduct such financial transaction, knew that the property

6  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 179 | 9/9/13 | $203,000 | Delivery of $203,000 in cash by unindicted co-conspirators |
| 180 | 9/10/13 | $195,000 | Receipt of $195,000 in cash by GEE and LIANG |

11      All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

13  COUNTS 181-183: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

14      On or about the dates described below, in the Northern District of California and elsewhere, the

15  defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO, and
ANDY LI, a/k/a "Andy Man Lai Li,"

18  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

19  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

20  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

21  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

22  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

23  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

24  that while conducting and attempting to conduct such financial transaction, knew that the property

25  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 181 | 9/11/13 | $262,435 | Delivery of $262,435 in cash by MASTRANGELO and unindicted co-conspirator |

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| 182 | 9/13/13 | $200,000 | Receipt of $200,000 in cash by NHINGSAVATH and LI |
| 183 | 9/17/13 | $55,125 | Receipt of $55,125 by NHINGSAVATH |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNT 184: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about September 13, 2013, in the Northern District of California, the defendant,

RINN ROEUN,

not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A).

COUNTS 185-186: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

SERGE GEE,
XIU YING LING LIANG, a/k/a "Elaine Liang,"
GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
| --- | --- | --- | --- |
| 185 | 9/16/13 | $107,400 | Delivery of $107,400 in cash by unindicted co-conspirators |

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| 186 | 9/18/13 | $103,100 | Receipt of $103,100 in cash by GEE and LIANG |
|-----|---------|----------|-----------------------------------------------|

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNT 187:  (21 U.S.C. § 846 – Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute Marijuana)

From on or about March 29, 2013, to on or about September 18, 2013, in the Northern District of California and elsewhere, the defendants,

ANDY LI, a/k/a "Andy Man Lai Li," and
KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

knowingly and intentionally conspired and agreed with each other, and with others, known and unknown to the Grand Jury, to manufacture, distribute, and possess with intent to distribute a Schedule I controlled substance, to wit: 100 or more marijuana plants, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(B).

COUNT 188: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about September 20, 2013, in the Northern District of California, the defendant,

RINN ROEUN,

not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A).

COUNTS 189-190: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

SERGE GEE,
XIU YING LING LIANG, a/k/a "Elaine Liang,"
GEORGE NIEH, a/k/a "Heng Nieh," and

57

KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy," and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 189 | 9/26/13 | $145,020 | Delivery of $145,020 in cash by unindicted co-conspirators |
| 190 | 9/26/13 | $139,200 | Receipt of $139,200 by LIANG |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNTS 191-192: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

SERGE GEE,
GARY KWONG YIU CHEN, a/k/a "Gary Chen," a/k/a "Jimmy," a/k/a "David,"
ANTHONY JOHN LAI, a/k/a "AJ,"
GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

58

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 191 | 10/1/2013 | $189,780 | Delivery of $189,780 by CHEN |
| 192 | 10/1/2013 | $182,110 | Receipt of $182,110 by GEE and LAI |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNTS 193-194: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

<div align="center">

SERGE GEE,
XIU YING LING LIANG, a/k/a "Elaine Liang,"
GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

</div>

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 193 | 10/4/2013 | $150,000 | Delivery of $150,000 in cash by GEE |
| 194 | 10/8/2013 | $144,000 | Receipt of $144,000 in cash by GEE |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

//

//

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  COUNT 195: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

2  On or about October 8, 2013, in the Northern District of California, the defendant,

3  RINN ROEUN,

4  not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code,

5  did willfully engage in the business of dealing in firearms.

6  All in violation of Title 18, United States Code, Sections 922(a)(1)(A).

7

8  COUNTS 196-197: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

9  On or about the dates described below, in the Northern District of California and elsewhere, the

10  defendants,

11

12  SERGE GEE,
ANTHONY JOHN LAI, a/k/a "AJ,"

13  GARY KWONG YIU CHEN, a/k/a "Gary Chen," a/k/a "Jimmy," a/k/a "David,"
XIU YING LING LIANG, a/k/a "Elaine Liang," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

14

15  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

16  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

17  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

18  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

19  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

20  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

21  that while conducting and attempting to conduct such financial transaction, knew that the property

22  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|---|---|---|---|
| 196 | 10/15/2013 | $102,790 | Delivery of $102,790 in cash by CHEN |
| 197 | 10/15/2013 | $98,678 | Receipt of $98,678 in cash by LAI |

26  All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

27  //

28

60

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    COUNTS 198-199: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

2        On or about the dates described below, in the Northern District of California and elsewhere, the

3    defendants,

4                                   SERGE GEE,
                          ANTHONY JOHN LAI, a/k/a "AJ,"
5        GARY KWONG YIU CHEN, a/k/a "Gary Chen," a/k/a "Jimmy," a/k/a "David,"
                        XIU YING LING LIANG, a/k/a "Elaine Liang," and
6        KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy"

7    and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

8    transactions affecting interstate and foreign commerce which involved the proceeds of a specified

9    unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

10   United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

11   unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

12   disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

13   that while conducting and attempting to conduct such financial transaction, knew that the property

14   involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 198 | 10/23/2013 | $134,145 | Delivery of $134,145 by CHEN |
| 199 | 10/24/2013 | $128,800 | Receipt of $128,800 by LAI |

18       All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

20   COUNTS 200-201: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

21       On or about the dates described below, in the Northern District of California and elsewhere, the

22   defendant,

23                          ALBERT NHINGSAVATH and
                          ANDY LI, a/k/a "Andy Man Lai Li"

25   and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

26   transactions affecting interstate and foreign commerce which involved the proceeds of a specified

27   unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

28                                            61

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

2  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

3  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

4  that while conducting and attempting to conduct such financial transaction, knew that the property

5  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 200 | 11/1/2013 | $104,220 | Delivery of $104,220 in cash by NHINGSAVATH |
| 201 | 11/4/2013 | $101,150 | Receipt of $101,150 in cash by NHINGSAVATH |

10      All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

12  COUNTS 202-203: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering)

13      On or about the dates described below, in the Northern District of California and elsewhere, the

14  defendants,

SERGE GEE,
ANTHONY JOHN LAI, a/k/a "AJ,"
GARY KWONG YIU CHEN, a/k/a "Gary Chen," a/k/a "Jimmy," a/k/a "David,"
XIU YING LING LIANG, a/k/a "Elaine Liang,"
GEORGE NIEH, a/k/a "Heng Nieh," and
KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Ha Jai," a/k/a "Shrimpboy,"

19  and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial

20  transactions affecting interstate and foreign commerce which involved the proceeds of a specified

21  unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21,

22  United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified

23  unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and

24  disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and

25  that while conducting and attempting to conduct such financial transaction, knew that the property

26  involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 202 | 12/5/13 | $199,240 | Delivery of $199,240 by CHEN |

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| 203 | 12/6/13 | $191,270 | Receipt of $191,270 by LAI |
|---|---|---|---|

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNT 204: (18 U.S.C. 1958 – Murder for Hire)

On or about December 13, 2013, in the Northern District of California and elsewhere, the defendants,

KEITH JACKSON,
BRANDON JAMELLE JACKSON, and
MARLON SULLIVAN,

each aided and abetted by the other, used a facility of interstate commerce and caused another to use a facility of interstate commerce with intent that the murder of Fictitious Victim 2 be committed in violation of the laws of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $25,000 in U.S. Currency.

All in violation of Title 18, United States Code, Sections 1958 and 2.


COUNTS 205-206: (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)  – Money Laundering)

On or about the dates described below, in the Northern District of California and elsewhere, the defendants,

ALBERT NHINGSAVATH,
NORGE MASTRANGELO, and
ANDY LI, a/k/a "Andy Man Lai Li,"

and others, each aided and abetted by the other, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 846 and 841, with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

63

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

| Count | Date | Amount | Description of Financial Transaction |
|-------|------|--------|--------------------------------------|
| 205 | 2/11/14 | $99,930 | Delivery of $99,930 by MASTRANGELO |
| 206 | 2/12/14 | $97,000 | Receipt of $97,000 by NHINGSAVATH |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

COUNT 207:        (21 U.S.C. § 841(a)(1) – Distribution of Controlled Substances)

On or about February 18, 2014, in the Northern District of California, the defendants,

GEORGE NIEH, a/k/a "Heng Nieh," and
LESLIE YUN, a/k/a "Leslie Yuncheung,"

did knowingly and intentionally distribute a Schedule I controlled substance, to wit: marijuana, in

violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

COUNT 208:  (21 U.S.C. § 846 – Conspiracy to Manufacture and Possess with Intent to Distribute
        Marijuana)

Beginning at least as early as February 5, 2013, and continuing until at least February 20, 2014,

in the Northern District of California and elsewhere, the defendants,

TINA LIANG and
BRYAN TILTON,

knowingly and intentionally conspired and agreed with each other, and with others, known and unknown

to the Grand Jury, to manufacture and possess with intent to distribute a Schedule I controlled substance,

to wit: 100 or more marijuana plants, in violation of Title 21, United States Code, Section 841(a)(1) and

(b)(1)(B).

All in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B).

COUNT 209: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

On or about February 26, 2014, in the Northern District of California, the defendant,

RINN ROEUN,

64

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code,

2  did willfully engage in the business of dealing in firearms.

3      All in violation of Title 18, United States Code, Sections 922(a)(1)(A).

4

5  COUNT 210: (18 U.S.C. § 922(a)(1) – Dealing Firearms Without a License)

6      On or about March 20, 2014, in the Northern District of California, the defendants,

7                          KEITH JACKSON and
                           BARRY HOUSE,

8

9  each aided and abetted by the other and not being a licensed dealer of firearms within the meaning of

10  Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

11      All in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

12

13  COUNT 211: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

14      On or about March 20, 2014, in the Northern District of California, the defendant,

15                          BARRY HOUSE,

16  having previously been convicted of an offense punishable by more than one year imprisonment, did

17  knowingly possess in interstate and foreign commerce a firearm, that is, a .380 caliber Cobra FS380

18  semi-automatic pistol.

19      All in violation of Title 18, United States Code, Sections 922(g)(1).

20

21  COUNT 212: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

22      On or about March 20, 2014, in the Northern District of California, the defendant,

23                          BARRY HOUSE,

24  having previously been convicted of an offense punishable by more than one year imprisonment, did

25  knowingly possess in interstate and foreign commerce a firearm, that is, a .223 caliber Aero Precision

26  X15 rifle with an obliterated serial number.

27

28

65

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1      All in violation of Title 18, United States Code, Sections 922(g)(1).

2

3    COUNT 213:  (18 U.S.C. § 1951(a) – Conspiracy to Obtain Property Under Color of Official Right)

4                    INTRODUCTORY ALLEGATIONS

5    At all times relevant to this indictment:

6      1.    Defendant LELAND YEE (hereafter "YEE") was an elected California State Senator

7    for the Eighth Senate District, which included San Mateo County and part of San Francisco County.

8      2.    In November 2012, YEE publicly announced his intention to run for the position of

9    Secretary of State of California in the election to be held in November 2014.

10      3.    Defendant KEITH JACKSON (hereafter "JACKSON") was the owner and managing

11    partner of Jackson Consultancy, a consulting company located in San Francisco, California.  JACKSON

12    was a fund-raiser for YEE's California Secretary of State campaign.

13      4.    California Senate Bill No. 309 (hereafter "SB-309"), entitled "State Athletic

14    Commission," was introduced in the California legislature on February 15, 2013.  SB-309 would extend

15    the existence and operation of the California State Athletic Commission (hereafter "CSAC") until 2016.

16    The CSAC exercised licensing, regulatory, and disciplinary functions in connection with the operation

17    of certain sports in California, including boxing, kickboxing, mixed martial arts, and Ultimate Fight

18    Championship events.  Without the extension provided for in SB-309, the CSAC would become

19    inoperative on January 1, 2014.

20      5.    YEE was a member of the California Senate Business, Professions, and Economic

21    Development Committee, which voted on SB-309 on April 29, 2013.

22                   THE CONSPIRACY CHARGE

23      6.    Beginning on a date unknown to the Grand Jury, but no later than March 2013, and

24    continuing through in or about December 2013, in the Northern District of California and elsewhere, the

25    defendants,

26                      LELAND YEE and

27                      KEITH JACKSON,

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   did knowingly and intentionally conspire with each other and with others, both known and unknown to

2   the Grand Jury, to obstruct, delay, and affect in any way and degree commerce and the movement of

3   articles and commodities in commerce, by extortion, as those terms are defined in Title 18, United States

4   Code, Section 1951; that is, to obtain property not due LELAND YEE or his office and to which

5   LELAND YEE was not entitled, from individuals and entities involved with the CSAC and sports

6   regulated by the CSAC with their consent, under color of official right.

7                      MANNER AND MEANS OF THE CONSPIRACY

8           7.      The manner and means by which LELAND YEE and KEITH JACKSON would and

9   did carry out the conspiracy to obtain property under color of official right included, but were not

10  limited to, the following:

11          8.      During a telephone conversation between YEE and JACKSON on March 2, 2013,

12  YEE explained the CSAC and SB-309 to JACKSON and told JACKSON that YEE was on the Senate

13  Committee that would be voting on whether to keep the CSAC or "just trash it."  YEE told JACKSON

14  that he spoke to an individual (hereafter "Individual A") who had an interest in extending the existence

15  of the CSAC and "did a number" on that person.  YEE said that he told Individual A that YEE intended

16  to shut down the CSAC, but Individual A should hire JACKSON to lobby YEE to vote to extend the

17  CSAC.  JACKSON subsequently spoke to Individual A, who said he was fearful that YEE was going to

18  vote against extending the life of the CSAC.  JACKSON told Individual A that he was willing to help,

19  but would have to be paid.

20          9.      In a follow-up telephone conversation between YEE and JACKSON on March 3, 2013,

21  YEE instructed JACKSON to tell Individual A that convincing YEE to vote in favor of the CSAC

22  extension was going to be a "heavy lift" and JACKSON could not be expected to do the work of

23  lobbying YEE for free.

24          10.     In furtherance of the conspiracy, on March 6, 2013, JACKSON met with Individual A

25  and an individual (hereafter referred to as "Individual B") who had an interest in extending the term of

26  the CSAC.  Individual B was concerned about whether SB-309 was going to pass and knew that YEE

27  had influence over that decision.  During the meeting, Individual B learned that JACKSON was a close

28

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1   associate of YEE and that YEE was running for Secretary of State.

2        11.      From this point on and during the course of the conspiracy, YEE and JACKSON had

3   numerous discussions about Individual B and their plan for YEE and JACKSON to lead Individual B to

4   believe that YEE was inclined to vote against extending the CSAC; for JACKSON to represent to

5   Individual B that JACKSON would lobby YEE on behalf of Individual B and the CSAC to vote in favor

6   of extending the CSAC; and for JACKSON to solicit Individual B for donations to, and assistance in

7   raising donations for, YEE's Secretary of State campaign in exchange for YEE's support of the CSAC.

8   On several occasions, YEE instructed JACKSON on what to say to Individual B in order to convince

9   Individual B that YEE was inclined to vote against SB-309, that JACKSON could potentially influence

10  YEE to change his position, and that Individual B should assist YEE in raising money for YEE's

11  Secretary of State campaign.

12       12.      During the course of the conspiracy, and in furtherance of the conspiracy, JACKSON had

13  numerous conversations with Individual B in which JACKSON represented that he had influence over

14  YEE and was prepared to lobby YEE on behalf of Individual B in order to convince YEE to support the

15  CSAC.  As the conversations continued, JACKSON represented to Individual B that he was having

16  success in persuading YEE to change his position on extending the CSAC.  As part of these

17  conversations, JACKSON asked Individual B to contribute money to YEE's Secretary of State

18  campaign; facilitate contacts with sports promoters who had an interest in the continued existence of the

19  CSAC; convince the sports promoters to contribute to and raise money for YEE's Secretary of State

20  campaign; and facilitate contact with an individual who had purported influence in the California

21  Democratic party and could assist in YEE's Secretary of State campaign.

22       13.      On April 29, 2013, the Senate Business, Professions, and Economic Development

23  Committee held a hearing and vote on SB-309.  YEE voted in favor of SB-309 and extending the term

24  of the CSAC.  The full vote by the Senate on SB-309 did not take place until September 2013.  On

25  September 11, 2013, YEE voted in favor of SB-309.

26       14.      During the time from April 29, 2013 and the final vote on SB-309 in the Senate, and in

27  furtherance of the conspiracy, JACKSON sought the assistance of another individual who had an

28

68

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  interest in extending the term of the CSAC in raising money for YEE's Secretary of State campaign.

2      All in violation of Title 18, United States Code, Section 1951(a).

3

4  COUNT 214:  (18 U.S.C. § 1951(a) – Conspiracy to Obtain Property Under Color Of Official Right)

5                        INTRODUCTORY ALLEGATIONS

6      At all times relevant to this indictment:

7      1.      Defendant LELAND YEE (hereafter "YEE") was an elected California State Senator

8  for the Eighth Senate District, which included San Mateo County and part of San Francisco County.

9      2.      In November 2012, YEE publicly announced his intention to run for the position of

10  Secretary of State of California in the election to be held in November 2014.

11     3.      Defendant KEITH JACKSON (hereafter "JACKSON") was the owner and managing

12  partner of Jackson Consultancy, a consulting company located in San Francisco, California.  JACKSON

13  was a fund-raiser for YEE's California Secretary of State campaign.

14     4.      UCE-4180 was an undercover agent for the Federal Bureau of Investigation (hereafter

15  "FBI") who represented himself to defendants YEE and JACKSON, and others, as a businessman

16  involved in the medical marijuana business in Arizona.  UCE-4180 represented that he was seeking to

17  expand his business to California and was particularly interested in statewide medical marijuana

18  legislation in California that would include provisions favorable to his business model.  UCE-4180 also

19  represented himself as knowing the owner of a National Football League team, hereafter referred to as

20  "NFL Team A".

21     5.      UCE-3357 was an undercover agent for the FBI who represented herself as an associate

22  of UCE-4180.

23     6.      California Assembly Bill No. 1309 (hereafter "AB-1309"), entitled "Workers'

24  Compensation:  Professional Athletes," was introduced in the California legislature on February 22,

25  2013.  AB-1309 would limit the ability of professional athletes employed by non-California teams to file

26  workers' compensation claims in California.

27     7.      YEE was a member of the California Senate Labor and Industrial Relations Committee,

28

                                                    69

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  which voted on AB-1309 on July 10, 2013.

## THE CONSPIRACY CHARGE

3      8.  Beginning on a date unknown to the Grand Jury, but no later than May 2013, and continuing through on or about September 2013, in the Northern District of California and elsewhere, the defendants,

<div align="center">

LELAND YEE and
KEITH JACKSON,

</div>

did knowingly and intentionally conspire with each other and with others, both known and unknown to the Grand Jury, to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce, by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, to obtain property not due LELAND YEE or his office and to which LELAND YEE was not entitled, from the owners, representatives, and associates of NFL Team A with their consent, under color of official right.

## MANNER AND MEANS OF THE CONSPIRACY

9.     The manner and means by which LELAND YEE and KEITH JACKSON would and did carry out the conspiracy to obtain property under color of official right included, but were not limited to, the following:

10.     During a meeting between YEE, JACKSON, UCE-4180, and UCE-3357 on May 17, 2013, UCE-4180 gave YEE an envelope containing $5,000 cash in connection with YEE's assistance in furthering UCE-4180's interest in medical marijuana legislation.  During the same meeting, JACKSON told YEE that UCE-4180 knew the owner of NFL Team A and UCE-4180 confirmed this fact.  YEE then told UCE-4180 about AB 1309 and explained that owners of professional football teams had an interest in AB 1309, it was in the financial interests of the owner of NFL Team A for AB 1309 to pass, and YEE held a key position on the Senate Committee that would be considering AB 1309 because YEE controlled two votes on the Committee.  YEE also stated that the players on professional football teams opposed AB 1309.  YEE told UCE-4180 that UCE-4180 should convey this information to the owner of NFL Team A and the owner of NFL Team A should contact YEE with an offer to help YEE.  When

70

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  UCE-4180 asked how much YEE's vote would cost, YEE responded, "Oh no ... we gotta drag it out,

2  man. We gotta juice this thing." YEE and JACKSON said they planned to talk to both the owners of,

3  and the players on, another professional sports team.

4       11.     During the course of the conspiracy, YEE and JACKSON agreed that they would each

5  make contact with representatives of the owners and players on the other professional sports team and

6  discuss YEE's purported indecision about how he would be voting on AB 1309 when it was brought to a

7  vote in the Senate Labor and Industrial Relations Committee. They further agreed to present YEE's

8  vote as critical to whether AB 1309 passed or failed to pass. YEE and JACKSON agreed to see which

9  side would pay the most money and predicted YEE would end up voting in favor of AB 1309 because

10  the owners were most likely to give money to YEE.

11       12.     During the course of the conspiracy, YEE and JACKSON agreed to, and did, seek

12  UCE-4180's assistance in arranging a meeting and/or telephone call with YEE and the owner of NFL

13  Team A. YEE and JACKSON advised UCE-4180 that during the meeting or telephone call, YEE would

14  only discuss the legislation with NFL Team A, and the subject of NFL Team A paying money to YEE

15  and/or making a contribution to YEE's Secretary of State campaign would be handled between

16  JACKSON and UCE-4180.

17       13.     During a meeting between YEE, JACKSON, UCE-4180, and UCE-3357 on June 22,

18  2013, UCE-4180 paid YEE $11,000 in connection with an introduction to a State Senator whom YEE

19  purported to have influence over medical marijuana legislation. During the meeting, YEE also

20  discussed his upcoming vote on AB 1309 and represented that he controlled two votes on the Senate

21  Labor and Industrial Relations Committee and that his vote was critical. When the subject of payment

22  of money by the owner of NFL Team A came up, YEE directed UCE-4180 to discuss that subject with

23  JACKSON.

24       14.     During a subsequent meeting on June 22, 2013, JACKSON told UCE-4180 that YEE

25  was going "to be helpful" to the owner of NFL Team A, but wanted more money. When UCE-4180

26  conveyed an offer from the owner of NFL Team A to pay YEE $60,000 for YEE's favorable vote on AB

27  1309, JACKSON told UCE-4180 that he would talk with YEE, but added, "I guarantee it is going to be

28

                                 71

fine." After learning the amount of money NFL Team A was purportedly willing to pay, JACKSON immediately contacted YEE by telephone and several hours later, JACKSON sent a text message to UCE-4180 stating, "Hey [UCE-4180], where [sic] all good on our end ... kj." UCE 4180 did not pay any money to JACKSON or YEE.

15.    On July 10, 2013, the California Senate Labor and Industrial Relations Committee held a vote on AB 1309. YEE voted in favor of the bill's passage.

All in violation of Title 18, United States Code, Section 1951(a).

COUNT 215:  (18 U.S.C. §§ 1346, 1349 – Honest Services Conspiracy)

<div align="center">INTRODUCTORY ALLEGATIONS</div>

At all times relevant to this indictment:

The Defendants, Relevant Individuals, and Entities

1.    Defendant LELAND YEE (hereafter "YEE") was an elected California State Senator who owed a fiduciary duty and a duty of honest services to the citizens of California, including his constituents in the Eighth Senate District, which included San Mateo County and part of San Francisco County.

2.    YEE was a candidate in the San Francisco mayoral election held on November 8, 2011. YEE did not win the election.

3.    In November 2012, YEE publicly announced his intention to run for the position of Secretary of State of California in the election to be held in November 2014.

4.    Defendant KEITH JACKSON (hereafter "JACKSON") was the owner and managing partner of Jackson Consultancy, a consulting company located in San Francisco, California. JACKSON was a fund-raiser for Senator YEE's California Secretary of State and San Francisco mayoral campaigns. JACKSON was also an associate of defendant RAYMOND CHOW, and was inducted into the Chee Kung Tong in March of 2012.

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

5.     RAYMOND CHOW, a/k/a Ha Jai, a/k/a "Shrimpboy" (hereafter "CHOW"), was the Dragonhead of the Chee Kung Tong.  As such, he was responsible for mediating disputes between members of the Chee Kung Tong and had supervisory responsibilities involving the Hop Sing Tong.

6.     The Chee Kung Tong and the Hop Sing Tong were Chinese Benevolent Associations with branches in San Francisco, California.  The Chee Kung Tong and Hop Sing Ton carried out legal functions within the community in San Francisco.  The Chee Kung Tong and Hop Sing Tong also had illegal factions that engaged in criminal activities.

7.     UCE-4599 was an undercover agent for the Federal Bureau of Investigation (hereafter the "FBI") who held himself out to defendants JACKSON, CHOW, and others as an East Coast organized crime member of La Cosa Nostra with interests in illegal gambling, bookmaking, money laundering, drug trafficking, dealing in stolen goods, and illegal firearms trafficking.  UCE-4599 was inducted into the Chee Kung Tong in March 2012.

8.     UCE-4773 was an undercover agent for the FBI who held himself out to defendants YEE, JACKSON, and others as a business associate of UCE-4599 who lived and worked in Atlanta, Georgia.  UCE-4773 represented himself as a businessman engaged in real estate development who also represented a variety of investors and clients.

9.     UCE-4180 was an undercover agent for the FBI who held himself out to defendants YEE, JACKSON, and others as a businessman involved in the medical marijuana business in Arizona.  UCE-4180 represented that he was seeking to expand his business to California and was particularly interested in statewide legislation in California that would include provisions favorable to his business model.

10.    "Well Tech" was the name of a software consulting company and purported client of UCE-4773.  UCE-4773 represented that he was seeking to expand Well Tech's business to California and the San Francisco Bay Area and to obtain contracts with public entities.

<div align="center">THE CONSPIRACY CHARGE</div>

11.    The allegations set forth in paragraphs 1 through 10 are hereby incorporated herein by reference as if set forth fully herein.

<div align="center">73</div>

12.     Beginning on a date unknown to the Grand Jury, but no later than May 2011, and continuing through on or about March 2014, in the Northern District of California and elsewhere, the defendants,

LELAND YEE and
KEITH JACKSON,

did knowingly and intentionally conspire with each other and with others, both known and unknown to the Grand Jury, to commit wire fraud, that is: having devised and intending to devise a material scheme and artifice to defraud the citizens of California of their right to the honest services of State Senator LELAND YEE through bribery, to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346.

## THE SCHEME TO DEFRAUD

13.     As set forth in greater detail below, beginning on a date unknown to the Grand Jury, but no later than May 2011, and continuing through on or about March 2014, defendants YEE and JACKSON devised and participated in a scheme to use defendant YEE's official position as a California State Senator to enrich themselves and obtain money for defendant YEE's San Francisco mayoral and California Secretary of State campaigns by soliciting and obtaining payments, including campaign donations, in exchange for YEE performing official acts for the benefit and at the request of those from whom money was solicited and obtained.

Bribe Involving Well Tech

14.     During 2011, when YEE was running for mayor of San Francisco, JACKSON solicited UCE-4599 to make contributions to YEE's mayoral campaign, including soliciting UCE-4599 to make donations in excess of the $500 maximum individual donation amount set by law.  UCE-4599 declined to make any contributions, but introduced JACKSON to his purported business associate, UCE-4773.

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

15. Beginning in or about September 2011, YEE and JACKSON solicited UCE-4773 to make individual contributions to, and raise money for, YEE's San Francisco mayoral campaign. JACKSON solicited UCE-4773 to make donations in excess of the $500 maximum individual donation amount set by law. In response to solicitations for campaign donations by both YEE and JACKSON, on or about October 11, 2011, UCE-4773 provided JACKSON with a $5,000 personal check made payable to "Jackson Consultancy."

16. On or about January 18, 2012, after losing the San Francisco mayoral campaign, YEE solicited UCE-4773 to make additional donations toward, and raise money for, the retirement of the debt from YEE's mayoral campaign. YEE also asked UCE-4773 to donate to YEE's planned campaign for California Secretary of State in the election to be held in 2014.

17. During the next several months, JACKSON also solicited UCE-4773 to make donations in order to retire YEE's debt from the mayoral campaign. In response to the solicitations from YEE and JACKSON, on or about April 27, 2012, UCE-4773 mailed a $5,000 personal check to JACKSON.

18. On or about June 26, 2012, UCE-4773 introduced YEE to two individuals acting in an undercover capacity who were purportedly affiliated with UCE-4773's software consulting company client, Well Tech. UCE-4773 explained to YEE that he was seeking to position Well Tech to compete for grants and contracts, including public grants and contracts, in the State of California. YEE discussed how the Secretary of State office might be of interest to UCE-4773 in furthering his goals for Well Tech. During the same conversation, YEE acknowledged UCE-4773's "help with 5,000 and so on," and asked for UCE-4773's "help with another 10."

19. During a meeting between UCE-4773, YEE, and JACKSON on or about September 4, 2012, YEE told UCE-4773 that he needed to retire the $32,000 in debt from the mayoral race, could not announce for Secretary of State until the debt was reduced, and asked UCE-4773 to "do another 10." UCE-4773 said that he would need YEE to make a telephone call or two on behalf of Well Tech to the state health department. YEE agreed to make the call.

20. On or about September 19, 2012, UCE-4773 spoke again with YEE and told YEE that he

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

needed a letter from YEE to the state health department on behalf of Well Tech.  YEE agreed to write a letter and told UCE-4773 to send him a draft.

21.    On or about September 24, 2012, JACKSON and UCE-4773 spoke on the telephone, and JACKSON again asked UCE-4773 for money to clear up YEE's mayoral campaign debt.  UCE-4773 told JACKSON that he would do so once he received the letter on behalf of Well Tech from YEE.  In a subsequent conversation, on September 26, 2012, JACKSON told UCE-4773 that YEE was more comfortable making telephone calls than with putting things in writing.

22.    On or about October 18, 2012, YEE and UCE-4773 spoke on the telephone and UCE-4773 explained that an individual with the California Department of Public Health was considering Well Tech for a grant.  UCE-4773 asked YEE to participate in a telephone call with UCE-4773 and this individual and vouch for Well Tech.  YEE agreed to participate in the telephone call.

23.    Later the same day, October 18, 2012, YEE participated in a conference call with UCE-4773 and UCE-4138.  UCE-4138 was an undercover FBI agent posing as a staff services manager with the California Department of Public Health who was considering Well Tech for a state grant.  During the call, YEE expressed his familiarity with and support for Well Tech.

24.    On or about November 19, 2012, UCE-4599 met with JACKSON at a restaurant in San Francisco and paid JACKSON $10,000 cash on behalf of UCE-4773.  UCE-4599 asked about the letter from YEE on behalf of Well Tech that was still outstanding.  JACKSON said the letter would be forthcoming.

25.    On or about November 23, 2012, YEE had a conversation with a member of his State Senate staff about the $10,000 that had been received by the campaign from UCE-4773.

26.    On or about January 13, 2013, JACKSON sent to UCE-4773 a letter dated January 11, 2013 on the California State Senate letterhead of "Senator Leland Y. Yee, Ph.D., Eighth Senate District." The letter, which appeared to be signed by YEE, was addressed to Well Tech and expressed YEE's support for Well Tech's expansion to California.

Bribes Involving a State Senate Proclamation for the Chee Kung Tong

27.    During the November 19, 2012 meeting when UCE-4599 paid JACKSON the $10,000

76

1  campaign donation from UCE-4773, UCE-4599 and JACKSON discussed YEE's remaining mayoral

2  campaign debt of $5,000.  UCE-4599 asked JACKSON if he knew anyone who could assist CHOW in

3  getting CHOW's ankle monitoring device removed.  JACKSON said he would ask YEE.  UCE-4599

4  told JACKSON that he would pay off the remainder of the debt if YEE would assist CHOW.

5      28.      JACKSON and YEE subsequently discussed UCE-4599's request and offer.  YEE

6  discussed his knowledge of CHOW's criminal reputation and told JACKSON that as much as he wanted

7  the $5,000, he could not agree to UCE-4599's request.

8      29.      JACKSON introduced YEE to UCE-4599 at a restaurant in San Francisco on or about

9  January 22, 2013.  UCE-4599 and YEE discussed CHOW and CHOW's criminal reputation.  UCE-4599

10 asked YEE instead to provide an official proclamation to the Chee Kung Tong at an upcoming

11 celebration of the Chee Kung Tong's anniversary.  YEE agreed to the request.

12     30.      On or about February 14, 2013, JACKSON told UCE-4599 that YEE would be doing the

13 proclamation for the Chee Kung Tong.  UCE-4599 told JACKSON that he would provide YEE a check

14 at the celebration or shortly thereafter.

15     31.      On or about March 29, 2013, a staff member from one of YEE's district offices appeared

16 at the Chee Kung Tong anniversary celebration dinner in San Francisco and presented a framed

17 proclamation on California State Senate letterhead to the Chee Kung Tong.  The staffer said she was

18 officially presenting the proclamation from Senator YEE.

19     32.      On or about May 1, 2013, JACKSON sent a text message to UCE-4599 telling him to

20 make his check out to "Leland Yee.  For Secretary of State."

21     33.      On or about May 6, 2013, UCE-4599 provided JACKSON with a $5,000 check made

22 payable to "Leland Yee Secretary of State."  During a phone conversation with UCE-4599 on or about

23 May 9, 2013, YEE thanked UCE-4599 for his donation.

24     34.      During a telephone conversation between YEE and JACKSON on or about July 4, 2013,

25 YEE expressed his expectation that UCE-4599 would provide more money to the Secretary of State

26 campaign.

27     35.      On or about July 11, 2013, UCE-4599 provided  JACKSON with a $1,800 check made

28

77

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  payable to "Leland Yee Secretary of State."

2  Bribes Involving Medical Marijuana Legislation

3       36.    In the spring of 2013, UCE-4180 met YEE and JACKSON and discussed his interest in

4  statewide legislation in California that would regularize the laws pertaining to medical marijuana.  UCE-

5  4180 discussed particular provisions he wanted to see in statewide legislation that were consistent with

6  UCE-4180's business model.  During these discussions, UCE-4180 also told YEE and JACKSON that

7  he would be willing to make donations to YEE's Secretary of State campaign in exchange for YEE's

8  efforts on UCE-4180's behalf.

9       37.    On or about April 24, 2013, UCE-4180 told JACKSON that he wanted to make a small

10 donation to YEE's Secretary of State campaign to show good faith.  The next day, April 25, 2013,

11 JACKSON sent a text message to UCE-4180 providing the account information for the Jackson

12 Consultancy bank account.

13      38.    On or about April 29, 2013, UCE-4180 made a direct cash deposit of $3,000 to

14 JACKSON's bank account.

15      39.    In May 2013, CHS #11, a confidential human source working in an undercover capacity

16 for the FBI, asked YEE to contact another State Senator, hereafter referred to as State Senator 1, to

17 express support for medical marijuana legislation that would include features that would be helpful to

18 UCE-4180.  CHS #11 offered to make a campaign donation in exchange for the contact.

19      40.    During a subsequent telephone conversation between YEE and JACKSON, YEE told

20 JACKSON that he could make the call to State Senator 1.  YEE instructed JACKSON to get campaign

21 donations from UCE-4180 and CHS #11.

22      41.    During a meeting between YEE, JACKSON, UCE-4180, and others at a restaurant in

23 San Francisco on May 17, 2013, UCE-4180 reiterated the request that YEE contact State Senator 1.

24 YEE stated that he was not interested in making money, but wanted his friends to benefit from his work.

25 UCE-4180 gave YEE an envelope containing $5,000 in cash.

26

27

28

78

42.     On May 20, 2013, UCE-4180 spoke on the telephone with JACKSON and YEE, and YEE provided UCE-4180 with an update on the status of two bills pertaining to medical marijuana that were pending in the state legislature.

43.     On June 20, 2013, in Sacramento, California, YEE introduced UCE-4180 to State Senator 1 at a meeting also attended by JACKSON.  YEE explained UCE-4180's interest in certain provisions of statewide medical marijuana legislation and expressed support for the issue of medical marijuana.

44.     On June 22, 2013, YEE and JACKSON met with UCE-4180 in a hotel room in San Francisco.  UCE-4180 delivered an envelope containing $11,000 cash and said that it was for the meeting with State Senator 1.  Before leaving the room, YEE prompted JACKSON to pick up the envelope and take it with them.

45.     During a conversation between YEE and JACKSON on July 15, 2013, YEE complained to JACKSON about the small amount of money received from UCE-4180 "for all we've done," and mentioned having set up the meeting for UCE-4180 with State Senator 1.

46.     When JACKSON had a follow-up telephone conversation with UCE-4180 and asked for more money, UCE-4180 expressed concern that he had not received much for his money thus far.

47.     On August 26, 2013, YEE introduced UCE-4180 to another State Senator, hereafter referred to as State Senator 2, whom YEE represented as having influence over medical marijuana legislation.  JACKSON was also present for the meeting.  During the meeting, YEE advocated for the provisions UCE-4180 wanted in the legislation.

48.     On September 17, 2013, JACKSON and UCE-4180 met YEE at a restaurant in San Francisco.  UCE-4180 told YEE he was paying for the meetings and handed an envelope containing $10,000 cash to JACKSON.

All in violation of Title 18, United States Code, Sections 1346 and 1349.

//

//

79

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

COUNTS 216-221:  (18 U.S.C. § § 1343, 1346 – Honest Services Fraud)

1.      Paragraphs 1 through 10 and paragraphs 13 through 48 of Count 215 of this indictment are hereby incorporated herein by reference into each of Counts 216 through 221 as if set forth fully herein.

2.      On or about the respective dates shown below, each such date constituting a separate count of this indictment, within the Northern District of California and elsewhere, the defendants,

<div align="center">

LELAND YEE and
KEITH JACKSON,

</div>

and others known and unknown to the Grand Jury, knowingly and intentionally, having devised and intending to devise a material scheme and artifice to defraud the citizens of California of their right to the honest services of State Senator LELAND YEE through bribery, for purposes of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds, that is, the following:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 216 | 9/26/2012 | Telephone call between JACKSON in the Northern District of California and UCE-4773 in Georgia |
| 217 | 10/18/2012 | Telephone call between YEE in the Northern District of California and UCE-4773 in Georgia |
| 218 | 10/18/2012 | Telephone call between YEE in the Northern District of California, UCE-4773 in Georgia, and UCE-4138 in Hawaii |
| 219 | 4/25/2013 | Text message between JACKSON, in the Northern District of California and UCE-4180 in Arizona |
| 220 | 5/1/2013 | Text message from JACKSON, in the Northern District of California, to UCE-4599 in California, routed through the state of Washington |
| 221 | 5/20/13 | Telephone call between YEE and JACKSON, in the Northern District of California, and UCE-4180 in Arizona |

All in violation of Title 18, United States Code, Section 1343, 1346, and 2.

//

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    COUNT 222: (18 U.S.C. § 371 – Conspiracy)

2           From on or about and between August 2, 2013, to March 26, 2014, in the Northern District of

3    California, and elsewhere, the defendants,

4                                   LELAND YEE and
                                    KEITH JACKSON,
5

6    knowingly and willfully conspired and agreed with each other and with others, known and unknown to

7    the Grand Jury, to commit offenses against the United States: that is,

8           (1) to willfully engage in the business of dealing in firearms, not being a licensed dealer within the

9                  meaning of Chapter 44, Title 18, United States Code, in violation of Title 18, United States

10                 Code, Section 922(a)(1); and

11          (2) to knowingly import or bring into the United States any firearm or ammunition, except as

12                 provided in section 925(d) of Chapter 44 of Title 18, United States Code, in violation of Title 18,

13                 United States Code, Section 922(l).

14                                        OVERT ACTS

15          In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt

16   acts, among others, were committed in the Northern District of California and elsewhere:

17          1.      On or about August 2, 2013, the defendant KEITH JACKSON met with UCE 4599 and

18   discussed the subject of defendant LELAND YEE having an associate who was an arms dealer and a

19   possible source of weapons for UCE 4599.

20          2.      On or about August 5, 2013, the defendant KEITH JACSKON had a meeting with UCE

21   4599 during which defendant KEITH JACKSON told UCE 4599 that he had spoken to defendant

22   LELAND YEE about introducing UCE 4599 to defendant LELAND YEE's arms dealer associate.

23          3.      On or about August 8, 2013, the defendant KEITH JACKSON met with UCE 4599 and

24   they had a further discussion about defendant LELAND YEE setting up a meeting for UCE 4599 with

25   defendant YEE's arms dealer associate.  They also discussed UCE 4599 providing a donation to

26   defendant LELAND YEE's Secretary of State campaign in exchange for the introduction.

27          4.      On or about August 11, 2013, the defendant KEITH JACKSON met with UCE 4599 and

28
                                              81

1   they  had a further discussion about defendant LELAND YEE arranging a meeting with defendant

2   YEE's arms dealer associate.

3       5.      On or about September 13, 2013, the defendant KEITH JACKSON met with UCE 4599

4   and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant

5   YEE's arms dealer associate.

6       6.      On or about October 17, 2013, the defendant KEITH JACKSON met with UCE 4599 and

7   they had a further discussion about defendant LELAND YEE arranging a meeting with defendant YEE's

8   arms dealer associate.

9       7.      On or about December 3, 2013, the defendant KEITH JACKSON met with UCE 4599

10  and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant

11  YEE's arms dealer associate.

12      8.      On or about December 10, 2013, the defendant KEITH JACKSON met with UCE 4599

13  and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant

14  YEE's arms dealer associate and UCE 4599 making a donation to defendant LELAND YEE's Secretary

15  of State campaign in exchange for the introduction.

16      9.      On or about December 12, , 2013, the defendant KEITH JACKSON had a further

17  discussion with UCE 4599 over the telephone about defendant LELAND YEE arranging a meeting with

18  defendant YEE's arms dealer associate.

19      10.     On or about December 13, 2013, the defendant KEITH JACKSON met with UCE 4599

20  and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant

21  YEE's arms dealer associate.  Defendant KEITH JACKSON also discussed a second associate of

22  defendant LELAND YEE who had access to weapons in the Philippines.

23      11.     On or about December 17, 2013, the defendant KEITH JACKSON met with UCE 4599

24  and they had a further discussion about defendant LELAND YEE arranging a meeting with YEE's arms

25  dealer associate.  Defendant KEITH JACKSON accepted a check for $5,000 made payable to defendant

26  LELAND YEE's Secretary of State campaign.  During the same meeting, UCE 4599 had a telephone

27  conversation with defendant LELAND YEE about UCE 4599's $5,000 campaign donation.

28

82

12.     On or about January 22, 2014, the defendants KEITH JACKSON and LELAND YEE met with UCE 4599 had a discussion with UCE 4599 about defendant LELAND YEE's arms dealer associate as a source of weapons for UCE 4599 and the types of weapons that UCE 4599 was seeking to purchase.

13.     On or about January 24, 2014, the defendant KEITH JACKSON met with UCE 4599 and they had a further discussion about defendant LELAND YEE arranging a meeting between UCE 4599 and defendant YEE's arms dealer associate. Defendant KEITH JACKSON also discussed with UCE 4599 defendant YEE's associate who had access to weapons in the Philippines as a potential alternate source of weapons for UCE 4599.

14.     On or about February 12, 2014, the defendant KEITH JACKSON met with UCE 4599 and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant YEE's arms dealer associate.

15.     On or about February 25, 2014, the defendants KEITH JACKSON and LELAND YEE met with UCE 4599 and they had a further discussion about defendant LELAND YEE arranging a meeting with defendant YEE's arms dealer associate and the types of weapons UCE 4599 was seeking to purchase. Defendant LELAND YEE also discussed with UCE 4599 that he, defendant YEE, had another source of supply for weapons.

16.     On or about March 4, 2014, the defendant KEITH JACKSON spoke on the telephone with UCE 4599 and discussed the subject of defendant LELAND YEE and a source of weapons with connections to the Philippines providing weapons for sale and importation to the United States.

17.     On or about March 5, 2014, the defendants KEITH JACKSON and LELAND YEE met with UCE 4599 and discussed defendant LELAND YEE's associate with connections to the Philippines as a source to sell weapons for importation to the United States.

18.     On or about March 11, 2014, the defendants LELAND YEE, KEITH JACKSON, and YEE's associate with connections to the Philippines met with UCE 4599 to discuss purchasing weapons from the Philippines to import into the United States;

19.     On or about March 14, 2014, the defendants LELAND YEE and KEITH JACKSON met

83

1   with UCE 4599 and defendant LELAND YEE accepted $6,800 in U.S. Currency from UCE 4599, along

2   with a list of weapons to pass to defendant YEE's associate with connections to the Philippines.

3       20.    On or about March 15, 2014, the defendant KEITH JACKSON accepted from UCE 4599

4   a copy of a list of weapons to pass to defendant LELAND YEE's associate with connections to the

5   Philippines.

6       All in violation of Title 18, United States Code, Section 371.

7   COUNT 223:  (21 U.S.C. § 841(a)(1) –     Manufacture and Possession With Intent to Distribute

8                                          Marijuana)

9       On or about March 26, 2014, in the Northern District of California and elsewhere, the

10  defendants,

11

12                        ALBERT NHINGSAVATH and
    KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe,"

13  knowingly and intentionally manufactured and possessed with intent to distribute 100 or more marijuana

14  plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)

15  and (b)(1)(B).

16

17  COUNT 224:  (21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute Marijuana)

18      On or about March 26, 2014, in the Northern District of California and elsewhere, the defendant,

19                        ANDY LI, a/k/a "Andy Man Lai Li"

20  did knowingly and intentionally possess with intent to distribute a Schedule I controlled substance, to

21  wit: marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

22

23  COUNT 225:  (21 U.S.C. § 841(a)(1) – Possession with Intent to Distribute Marijuana)

24      On or about March 26, 2014, in the Northern District of California, the defendant,

25                        GEORGE NIEH, a/k/a "Heng Nieh,"

26  did knowingly and intentionally distribute a Schedule I controlled substance, to wit: marijuana, in

27  violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

28

84

1    COUNT 226: (18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm)

2           On or about March 26, 2012, in the Northern District of California, the defendant,

3                              GEORGE NIEH, a/k/a "Heng Nieh,"

4    having previously been convicted of an offense punishable by more than one year imprisonment, did

5    knowingly possess in interstate and foreign commerce a firearm, that is, a Beretta Model 92FS, serial

6    number BER252848Z.

7           All in violation of Title 18, United States Code, Sections 922(g)(1) and 2.

8

9    COUNT 227:  (21 U.S.C. § 841(a)(1) – Manufacture and Possession with intent to Distribute Marijuana)

10          On or about March 26, 2014, in the Northern District of California, the defendants,

11                         LESLIE YUN, a/k/a "Leslie Yuncheung," and
                           YAT WA PAU, a/k/a "James Pau,"
12

13   did knowingly and intentionally possess with intent to distribute a Schedule I controlled substance, to

14   wit: marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

15

16   COUNT 228: (21 U.S.C. § 841(a)(1) –        Manufacture and Possession With Intent to Distribute
                                                Marijuana)
17

18          On or about March 26, 2014, in the Northern District of California and elsewhere, the defendant,

19                            XIAO CHENG MEI, a/k/a "Michael Mei,"

20   knowingly and intentionally manufactured and possessed with intent to distribute 100 or more marijuana

21   plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)

22   and (b)(1)(B).

23

24   COUNT 229:  (18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering)

25          1.  The allegations set forth in Count 215 at paragraphs 1 through 4, 9, 12 through 13, and 36

26   through 48, and in Counts 219 and 221 are hereby incorporated herein by reference.

27          2.  Between on or about June 22, 2013 and July 16, 2013, both dates being approximate, in the

28
                                                      85
     SECOND SUPERSEDING INDICTMENT
     CR 14 0196 CRB

Northern District of California and elsewhere, the defendants,

<div align="center">LELAND YEE and<br/>KEITH JACKSON,</div>

did knowingly and intentionally conspire with each other and with others, both known and unknown to the Grand Jury, to commit money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B), that is: the defendants conspired to cause a financial transaction, that is, the July 16, 2013 deposit of the three checks described below to the account of "Leland Yee for Secretary of State 2014" at Wells Fargo Bank, a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce in any way and degree, knowing that the checks represented the proceeds of some form of unlawful activity and which, in fact, involved the proceeds of specified unlawful activity, that is, bribery of defendant LELAND YEE, a public official, and wire fraud, and did so knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, said checks described as follows:

(a) Check number 2675 for $5,800 made payable to "Leland Yee for Secretary of State," dated June 30, 2013, written on the account of Individual C;

(b) Check number 1696 for $4,800 made payable to "Leland Yee for Secretary State," dated June 30, 2013, written on the account of Individual D; and

(c) Check number 2565 for $2,000 made payable to "Leland Yee for Secretary of State," dated June 30, 2013, written on the business account of Individual E.

<div align="center">OVERT ACTS</div>

3.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

a.     On or about June 22, 2013, defendants LELAND YEE and KEITH JACKSON met with UCE-4180 in a hotel room in San Francisco. UCE-4180 delivered an envelope containing $11,000 in cash and said that it was for the meeting that defendants YEE and JACKSON arranged with State

<div align="center">86</div>

Senator 1.

b.      Between on or about June 22, 2013 and July 10, 2013, defendant KEITH JACKSON had a conversation with Individual C in which he asked Individual C to write a check on his / her account payable to "Leland Yee for Secretary of State" in the amount of $5,800.

c.      Between on or about June 22, 2013 and July 10, 2013, defendant KEITH JACKSON met with Individual C in San Francisco.  Defendant JACKSON gave Individual C $5,800 in cash that JACKSON obtained from defendant LELAND YEE in exchange for check 2675 for $5,800 made payable to "Leland Yee for Secretary of State," dated June 30, 2013, written on the account of Individual C.

d.      Between on or about June 22, 2013 and July 10, 2013, defendant KEITH JACKSON had a conversation with Individual C in which he asked Individual C whether he / she could obtain additional checks for LELAND YEE's Secretary of State campaign from one or more of Individual C's friends.

e.      Between on or about June 22, 2013 and July 10, 2013, defendant KEITH JACKSON received two additional checks:  check number 1696 for $4,800 made payable to "Leland Yee for Secretary State," dated June 30, 2013, written on the account of Individual D, and check number 2565 for $2,000 made payable to "Leland Yee for Secretary of State," dated June 30, 2013, written on the business account of Individual E.

f.      On or about July 10, 2013, defendant KEITH JACKSON provided Individual D with $4,800 in cash as reimbursement for check 1696.

g.      On or about July 10, 2013, KEITH JACKSON provided Individual D with $2,000 in cash as reimbursement for check 2565.

h.      On or about July 16, 2013, the three checks described above, that is, checks 2675, 1696, and 2565, were deposited to the Wells Fargo Bank account of "Leland Yee for Secretary of State 2014."

All in violation of Title 18, United States Code, Section 1956(h).

COUNT 230:  (18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering)

1.  The allegations set forth in Count 222 are hereby incorporated herein by reference.

87

2.  Between on or about March 5, 2014 and March 21, 2014, both dates being approximate, in the Northern District of California and elsewhere, the defendants,

<div align="center">

LELAND YEE and
KEITH JACKSON,

</div>

did knowingly and intentionally conspire with each other and with others, both known and unknown to the Grand Jury, to commit money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B), that is:  the defendants conspired to cause a financial transaction, that is, the March 21, 2014 deposit of the two checks described below to the account of "Leland Yee for Secretary of State 2014" at Wells Fargo Bank, a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce in any way and degree, knowing that the checks represented the proceeds of some form of unlawful activity and which, in fact, involved the proceeds of specified unlawful activity, that is, conspiracy to knowingly import and bring into the United States any firearm or ammunition, in violation of Title 18, United States Code, Section 922(l), and did so knowing that the transaction was designed in whole or in part to conceal or disguise the nature,  location,  source, ownership, and  control of the proceeds of the specified unlawful activity, said checks described as follows:

(a)  Check number 1775 for $2,000 made payable to "Leland Yee for Secretary of State," dated March 12, 2014, written on the account of Individual D;

(b)  Check number 2696 for $1,000 made payable to "Leland Yee for Secretary of State," dated March 12, 2014, written on the business account of Individual E.

<div align="center">

OVERT ACTS

</div>

3.      In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

a.      On or about March 5, 2014, defendants LELAND YEE and KEITH JACKSON met with UCE 4599 in San Francisco and discussed defendant YEE's associate with connections to the Philippines as a source to sell weapons for importation into the United States.

<div align="center">

88

</div>

b.   On or about March 11, 2014, the defendants LELAND YEE and KEITH JACKSON, and YEE's associate with connections to the Philippines met with UCE 4599 in San Francisco to discuss purchasing weapons from the Philippines to import into the United States.

c.   On or about March 14, 2014, LELAND YEE and KEITH JACKSON met with UCE-4599 in San Francisco and discussed UCE 4599 providing money, in the form of cash or checks, to LELAND YEE's campaign for Secretary of State in exchange for LELAND YEE facilitating UCE 4599 purchasing weapons from the Philippines to import into the United States. Defendants YEE and JACKSON further discussed processing the money into the campaign through individuals who JACKSON had lined up. At the same meeting, defendant YEE accepted $6,800 in cash from UCE 4599, along with a list of weapons to pass to defendant YEE's associate with connections in the Philippines.

d.   On or about March 14, 2014, defendant KEITH JACKSON had a conversation with Individual C in which he asked Individual C to write a check on his / her business account payable to "Leland Yee for Secretary of State" in the amount of $1,000 and to send a photograph of the check to a telephone number that JACKSON provided. Defendant JACKSON told Individual C that he, JACKSON, would reimburse Individual C for his / her check.

e.   Between on or about March 14, 2014 and March 20, 2014, defendant KEITH JACKSON received two checks: check number 1775 for $2,000 made payable to "Leland Yee for Secretary of State," dated March 12, 2014, written on the account of Individual D, and check number 2696 for $1,000 made payable to "Leland Yee for Secretary of State," dated March 12, 2014, written on the business account of Individual E.

f.   On or about March 20, 2014, KEITH JACKSON provided Individual D with $2,000 in cash as reimbursement for check 1775.

g.   On or about March 20, 2014, KEITH JACKSON provided Individual D with $1,000 in cash as reimbursement for check 2696.

h.   On or about March 21, 2014, the two checks described above, that is, checks 1775 and 2696, were deposited to the Wells Fargo Bank account of "Leland Yee for Secretary of State 2014."

89

1   All in violation of Title 18, United States Code, Section 1956(h).

2

3   FORFEITURE ALLEGATION:

4   1.   The factual allegations contained in Counts 1-230 of this Second Superseding Indictment

5   are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging

6   forfeiture as set forth below.

7   2.   Upon conviction of the offenses alleged in Counts One and Two of this Superseding

8   Indictment, the defendants,

9   KWOK CHEUNG CHOW, a/k/a "Raymond Chow,"
    a/k/a "Ha Jai," a/k/a "Shrimpboy";
10  GEORGE NIEH, a/k/a "Heng Nieh";
    KEITH JACKSON;
11  KEVIN SIU, a/k/a "Dragon Tin Loong Siu";
    ALAN CHIU, a/k/a "Alan Shiu";
12  KONGPHET CHANTHAVONG, a/k/a "Joe," a/k/a "Fat Joe";
    XIAO CHENG MEI, a/k/a "Michael Mei";
13  BRANDON JAMELLE JACKSON;
    MARLON DARRELL SULLIVAN;
14  ANDY LI, a/k/a "Andy Man Lai Li";
    LESLIE YUN, a/k/a "Leslie Yuncheung";
15  YAT WA PAU, a/k/a "James Pau";
    TINA YAO GUI LIANG;
16  HUAN MING MA, a/k/a "Ming Ma," a/k/a "Baak Ban";
    ALBERT NHINGSAVATH;
17  NORGE MASTRANGELO; and
    LELAND YEE,

18

19  shall, pursuant to 18 U.S.C. § 1963, forfeit to the United States:

20  a.   any interest acquired or maintained in violation of section 1962;

21  b.   any interest in, security of, claim against, or property or contractual right of any

22  kind affording a source of influence over, any enterprise which the defendant[s] established, operated,

23  controlled, conducted, or participated in the conduct of, in violation of section 1962; and

24  c.   any property constituting, or derived from, any proceeds obtained, directly or

25  indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

26  3.   The property to be forfeited includes, but is not limited to:

27  (1) One 5.56 caliber AR-15 rifle with no serial number or manufacturer markings on
    lower receiver;
28  (2) One 5.56 caliber AR-15 rifle with no serial number or manufacturer markings on

90

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

lower receiver, barrel marked "5.56 NATO 1/7 CL Palmetto", "Palmetto" marked on upper receiver and stock;

(3) One .44 caliber Smith and Wesson Revolver, serial number 173514 XRF# 94590;

(4) One .45 caliber Sturm Ruger handgun, serial number 661-43176;

(5) One .45 caliber Taurus revolver, serial number CW930492;

(6) One 9MM Calico firearm, serial number J000690;

(7) One AK-47 assault rifle, serial number 1983 AE4488;

(8) One 9MM Luger pistol, serial number D047677;

(9) One .233 caliber Bushmaster firearm, serial number CRB003689;

(10) One .45 caliber Springfield pistol, serial number N450080;

(11) One 9MM Luger pistol, serial number 17094;

(12) One AR-15 assault rifle with attached bipod, no serial number or manufacturing stamp;

(13) One 7.62 caliber SKS rifle, serial number 24023048N;

(14) One 7.62 caliber Norinco firearm, serial number 8808322;

(15) One 9MM Uzi semi-automatic firearm, serial number SA41977;

(16) One 9MM M-11 S.M.D. firearm, serial number 89-0007062;

(17) One .22 caliber Ruger carbine, serial number 123-20766;

(18) One Cobray pistol, with last six digits of serial number 007394;

(19) One 12-gauge Mossberg shotgun, serial number MV60079C;

(20) One .223 caliber Sturm Ruger rifle, serial number 580-75655;

(21) One Smith and Wesson handgun, serial number A170243;

(22) One Colt handgun, serial number SFA5458;

(23) One 7.62 caliber Clayco Sports rifle, serial number 105211;

(24) One 7.62 caliber SKS firearm, serial number 2697;

(25) One 7.62 caliber AK-47 rifle, serial number CM0605639;

(26) One .380 caliber Cobra M12;

(27) One .22LR caliber Smith and Wesson firearm, serial number DZR2321;

(28) One .45 caliber Ruger revolver, serial number 45-12226;

(29) One .357 caliber Smith and Wesson revolver, serial number AYL5133;

(30) One .22 caliber revolver, serial number 69874;

(31) One .223 caliber Daewoo DR-200 rifle bearing serial number RA001216;

(32) One .40 caliber Ruger SR40 handgun, serial number 342-08483;

(33)  One .380 caliber Cobra FS380 semi-automatic pistol;

(34)  One .223 caliber Aero Precision X15 rifle with an obliterated serial number;

(35)  One Beretta Model 92FS, serial number BER252848Z

(35) Approximately 496 rounds of ammunition of various caliber including shotgun shells;

(36) Approximately Twenty (20) magazines including "extended" and drum-style magazines for ammunition of various calibers;

(37) One speed loader;

(38) One blue ballistic vest with yellow marking "FBI" manufactured by Point Blank, model Gold Flex-6 IIIA, Style VNG052;

(39) One white ballistic vest manufactured by ABA, model XT3A-2;

(40) One bullet-proof vest manufactured by International Armor, Model Type 2A;

(41) One AK-47 scope;

(42) One silencer;

(43)  Real property and improvements located at 5555 Merritt Drive, Concord, Ca.;

(44) $61,280.75 in United States Currency, 3710 Thai Bhat, 3,635 Chinese Yuan, 66 Canadian Dollars, and 380 Hong Kong Dollars seized from 3430 Laguna Avenue, Apt. C, Oakland, CA on March 26, 2014;

(45) $228,420.00 seized from 133-43 37th Ave., Flushing, NY on March 25, 2014;

(46) $66,066.00 seized from 1370 24th Ave., San Francisco, CA on March 26, 2014;

91

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

(47) $98,791.00 seized from 999 87th St., Daly City, CA on March 26, 2014;

(48) Equipment that facilitated the cultivation and distribution of marijuana seized at 5804 Highland Avenue, Richmond, CA on February 20, 2014;

(49) Equipment that facilitated the cultivation and distribution of marijuana seized at 5176 Judsonville Avenue, Antioch, CA on October 30, 2012;

(50) Electrical equipment, such as plant grow light bulbs, hoods, and electrical ballasts, seized from 555 Merritt Dr., Concord, CA on February 20, 2014;

(51) $26,786.00 seized from 225 Jules Ave., San Francisco, CA on March 26, 2014;

(52) $15,142.00 seized from 1116 St. Francis Dr., Concord, CA on March 26, 2014;

(54) $8,006.00 seized from 991 Carolina St., San Francisco, CA on March 26, 2014;

(55) $5,644.00 seized from 558 Broadway St., Apt. 8, San Francisco, CA on March 26, 2014;

(56) $3,452.00 seized from 353 King St., Apt. 720, San Francisco, CA on March 26, 2014;

(57) $2,717.00 seized from 128 Buxton Ave., South San Francisco, CA on March 26, 2014;

(58) $1,698.00 seized from James Pau at 133-43 37th Ave., Flushing, NY on March 25, 2014;

(59) $1,076.00 seized from Leslie Yun at 133-43 37th Ave., Flushing, NY on March 25, 2014

4.  Upon conviction of any of the offenses alleged in Counts 3-79, 82-84, 86-98, 102 -109, 115-123, 128-132, 136-151, 153-157, 160-161, 163-164, 167-170, 172-173, 175-183, 185-186, 189-194, and 196-203, 205-206, and 229-230 of this Second Superseding Indictment, the defendants,

GARY CHEN,
ALAN CHIU,
RAYMOND CHOW,
SERGE GEE,
KEITH JACKSON,
ANTHONY LAI,
ELAINE LIANG,
ANDY LI,
NORGE MASTRANGELO,
ALBERT NHINGSAVATH,
GEORGE NIEH,
JAMES PAU,
KEVIN SIU,
LELAND YEE, and
LESLIE YUN,

shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States any property, real and personal, involved in said violations, or any property traceable to such property.

5.  The property to be forfeited includes, but is not limited to:

(1) $8,507.32 seized from 6386 Blackwood Dr., Cupertino, CA on March 26, 2014

6.  Upon conviction of any of the offenses alleged in Counts 80, 100, 110, 124-125, 127,

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

187, 207, 208, 223-225, and 227-228 of this Second Superseding Indictment, the defendants,

ALBERT NHINGSAVATH
KONGPHET CHANTHAVONG,
BRANDON JACKSON,
KEITH JACKSON,
MARLON SULLIVAN,
GEORGE NIEH,
ANDY LI,
XIAO CHENG MEI,
LESLIE YUN,
TINA YAO GUI LIANG,
YAT WA PAU, and
BRYAN TILTON,

shall, pursuant to 21 U.S.C. § 853(a)(1) and (2), forfeit to the United States all right, title, and interest in

property constituting and derived from any proceeds defendants obtained, directly or indirectly, as a

result of violations of 21 U.S.C. §§ 846 and 841, and any property used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of the said violations, or any property

traceable to such property.

7.      The property to be forfeited includes, but is not limited to:

(1) $26,786.00 seized from 225 Jules Ave., San Francisco, CA on March 26, 2014;
(2) $15,142.00 seized from 1116 St. Francis Dr., Concord, CA on March 26, 2014

8.      Upon conviction of any of the offenses alleged in Counts 81, 99, 101, 133, 162, 174, 204

and 213-221 of this Superseding Indictment, the defendants,

RAYMOND CHOW,
KEITH JACKSON,
BRANDON JAMELLE JACKSON,
JANE LIANG,
TINA LIANG,
MING MA,
GEORGE NIEH,
JAMES PAU,
HON SO,
MARLON SULLIVAN,
BRYAN TILTON,
ZHANGHAO WU,
LELAND YEE,
RINN ROEUN,
LESLIE YUN, and
TONG ZAO ZHANG,

shall, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), forfeit to the United States any

93

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1  property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18

2  U.S.C. §§ 1958 and 2315, or a conspiracy to commit said offense.

3       9.      Upon a conviction of any of the offenses alleged in Counts 85, 111-114, 126, 134-135,

4  152, 158-159, 165-166, 184, 188, 195, 209-212, 222, and 226 of this Superseding Indictment, the

5  defendants,

6                          KONGPHET CHANTHAVONG,
                           BARRY HOUSE,
7                          BRANDON JACKSON,
                           KEITH JACKSON,
8                          WILSON LIM,
                           ANDY LI,
9                          GEORGE NIEH,
                           RINN ROEUN,
10                         MARLON SULLIVAN, and
                           LELAND YEE,
11

12  shall, pursuant to 18 U.S.C. § 924(d)(1) forfeit to the United States any firearm, ammunition, aircraft,

13  vehicle, or vessel involved in a violation of 18 U.S.C. § 922 as alleged in those counts.

14       10.     If, as a result of any act or omission of the defendants, any of the property subject to

15  forfeiture

16            a.     cannot be located upon the exercise of due diligence;

17            b.     has been transferred or sold to or deposited with, a third person;

18            c.     has been placed beyond the jurisdiction of the Court;

19            d.     has been substantially diminished in value; or

20            e.     has been commingled with other property which cannot be divided without

21  difficulty;

22  any and all interest defendants have in any other property (up to the value of the property subject to

23  forfeiture), shall be forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18

24  U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

25  //

26  //

27  //

28

94

SECOND SUPERSEDING INDICTMENT
CR 14 0196 CRB

1    All in violation of Title 18, United States Code, Sections 924(d), 981(a)(1)(C), 982(a)(1), and

2   1963; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c), and Rule

3   32.2 of the Federal Rules of Criminal Procedure.

4

5   DATED:                                                     A TRUE BILL

6        January 29, 2015

7                                                              _Nancy J. Peterson_
                                                              FOREPERSON

8

9   MELINDA HAAG
    United States Attorney

10

11  _David R. Callaway_

12  DAVID R. CALLAWAY
    Chief, Criminal Division

13

14  (Approved as to form:        _SSB_                    )
                                 AUSA WILLIAM FRENTZEN
15                               AUSA SUSAN BADGER
                                 AUSA S. WAQAR HASIB
16

17

18

19

20

21

22

23

24

25

26

27

28
                                          95
    SECOND SUPERSEDING INDICTMENT
    CR 14 0196 CRB

## United States District Court
## Northern District of California

---

# CRIMINAL COVER SHEET

---

**Instructions:** Effective January 3, 2012, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.

**Case Name:**

USA v.   KWOK CHEUNG CHOW et al.

**Case Number:**

CR 14-0196-CRB

**Total Number of Defendants:**

1 [ ]    2-7 [ ]    8 or more [✓]

**Is This Case Under Seal?**

Yes [ ]    No [✓]

**Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?**

Yes [ ]    No [✓]

**Venue (Per Crim. L.R. 18-1):**

SF [✓]   OAK [ ]   SJ [ ]   EUR [ ]   MON [ ]

**Is any defendant charged with a death-penalty-eligible crime?**

Yes [ ]    No [✓]

**Assigned AUSA (Lead Attorney):**

William Frentzen/Susan Badger

**Is this a RICO Act gang case?**

Yes [ ]    No [✓]

**Date Submitted:**

1/29/2015

**Comments:**

  

July 2013