UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                  CR 14-196 CRB

        Plaintiff,

    v.

KWOK CHEUNG CHOW, aka
RAYMOND CHOW,

        Defendant.
_____/

NOTICE OF MOTION FOR DISCOVERY AND
MOTION TO DISMISS FOR SELECTIVE
PROSECUTION

J. TONY SERRA #32639
CURTIS L. BRIGGS #284190
GREG M. BENTLEY #275923
506 Broadway
San Francisco CA 94133
Telephone: 415/986-5591

Attorneys for Defendant
KWOK CHEUNG CHOW

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                                                                     iii

SUMMARY OF THE ARGUMENT                                                                          3

STATEMENT OF FACTS                                                                                       3

ARGUMENT                                                                                                         7

I.    THE PRESENT INDICTMENT MUST BE DISMISSED BECAUSE
      THE DECISION TO PROSECUTE  RAYMOND  CHOW WAS
      DISCRIMINATORY IN INTENT AND EFFECT                                                 7

      A.    Discriminatory Intent                                                                           8

            1.    Chow's Life Story Was Worth Millions: Discriminatory Intent Is
                  Evident From A Long Pattern of Unprofessional Law
                  Enforcement and Prosecutorial Misconduct                                    9

            2.    Success As Ghee Kung Tong Dragonhead Provoked the
                  Government: Chow's Rise In Popularity As Positive Community
                  Leader and Media Popularity Brought About This Investigation
                  and Prosecution                                                                         13

      B.    Discriminatory Effect                                                                       14

II.   MR. CHOW IS ENTITLED TO DISCOVERY TO INVESTIGATE  HIS
      SELECTIVE PROSECUTION CLAIM                                                            19

CONCLUSION                                                                                                    19

DECLARATION OF COUNSEL                                                                           21

# TABLE OF AUTHORITIES

Page

## Cases

Abrams v. United States, 250 U.S. 616, 630 (1919)                                                  8

Brady v. Maryland, 373 U.S. 83 (1963)                                                              3

Esmail v. Macrane (7th Cir. 1995) 53 F.3d 176                                                    9, 18

Indiana State Teachers Ass'n v. Board of School Commissioners (7th Cir. 1996) 101 F.3d 1179,
1181                                                                                               18

Kyles v. Whitley, 514 U.S. 419 (1995)                                                              3

National Association for the Advancement of Colored People v. Alabama, 357 U.S. 449 (1958)
                                                                                                   8

Roberts v. United States Jaycees, 468 U.S. 609 (1984)                                              8

United States v. Armstrong (1996) 517 U.S. 456, 464-465                                        3, 8, 19

United States v. Bass (2002) 536 U.S. 862, 864                                                  8, 14

United States v. DeTar (9th Cir. 1987) 832 F.2d 1110.                                            8, 9

United States v. Marshall (9th Cir. 1976) 532 F.2d 1279                                         3, 19

United States v. McWilliams (9th Cir. 1984) 730 F.2d 1218, 1221                                   18

United States v. United States District Court, Central District  of California, 717 F.2d 478 (9th
Cir. 1983)                                                                                      3, 19

Wayte v. United States, (1985) 470 U.S. 598                                                     3, 19

Yick Wo v. Hopkins, (1886) 118 U.S. 356                                                            8

## Codes and Statutes

Hatch Act, 5 U.S.C. §§ 7321-7326                                                                  15

United States Constitution

    First Amendment                                                    1, 7-9, 18, 19

    Fifth Amendment                                                        2, 3, 9, 18

    Fourteenth Amendment                                                     2, 3, 7, 9

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

iii

1   J. TONY SERRA #32639
  CURTIS L. BRIGGS #284190
2   GREG M. BENTLEY #275923
  506 Broadway
3   San Francisco CA 94133
  Telephone: 415/986-5591

4

5   Attorneys for Defendant
  KWOK CHEUNG CHOW

6

7                  UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,       CR 14-196 CRB

11         Plaintiff,            NOTICE OF MOTION TO DISMISS FOR
                                 SELECTIVE PROSECUTION; MOTION  TO
12       v.                    COMPEL PRODUCTION OF DOCUMENTS;
                                 REQUEST FOR EVIDENTIARY HEARING
13   KWOK CHEUNG CHOW, aka
  RAYMOND CHOW,

14                             Date:  August 21, 2015
          Defendant.           Time: 10:30 p.m.
15   _____/    Dept:  Hon. Joseph C. Spero

16   TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES
  ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA:
17

18        PLEASE TAKE NOTICE that on the date and at the time indicated above, KWOK

19   CHEUNG CHOW, through counsel, will and hereby does move this Court for an order

20   dismissing the Indictment filed against him due to the Government's politically tainted selective

21   prosecution or, at a minimum, for an order to compel this discovery shedding light on the

22   spurious charging decisions made by the United States Attorney in this matter.

23        The instant prosecution must be dismissed because Chow  was targeted and selectively

24   prosecuted for associating with the Ghee Kung Tong, a fraternal organization in San Francisco,

25   the Chinese Free Masons,  his outspoken and open dialogue relating to past criminal activity and

26   ties, and his increasing legitimate political influence. This prosecution is in violation of his right

27   to free assembly and free speech guaranteed under U.S. Const. amends. I and XIV, and the

28   Equal Protection Clause of the Fifth Amendment.  U.S. Const. amend. V.

Defendant requests such information that would reveal the true motivations behind prosecuting Chow, who maintains factual innocence versus those political figures whose conduct was criminal according to the FBI. Finally, Chow asks for an evidentiary hearing so that persons with knowledge regarding the decision to prosecute certain individuals can be questioned as consistent with the Confrontation Clause. The charging decision must be justified.

This motion is predicated on the non-exhaustive and select files and records herein, including relevant excerpts from discovery pursuant to paragraph 15 of the Protective Order issued in this case[1], and on the following memorandum of points and authorities and declaration of counsel.

Dated: August 3, 2015

/s/CURTIS L. BRIGGS
J. TONY SERRA
CURTIS L. BRIGGS
GREG M. BENTLEY
Attorneys for Defendant
KWOK CHEUNG CHOW

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

---

[1] Attached as Exhibit 1.

## SUMMARY OF THE ARGUMENT

"To the extent that you're going to exercise your discretion, it's easier to do that when it hasn't seen the light of day. It is harder to ignore if you're the government when it was all over the news."~Melinda Haag, United States Attorney

Even a formerly notorious gang leader turned community leader is entitled to exercise his First Amendment right to free assembly in any lawful organization without retaliation, is entitled to exercise his free speech and talk to the press and media, and should not be prosecuted due his or her positive political support from the community–in fact reform should be rewarded. Raymond Chow  was selectively prosecuted for exercising his constitutional right to associate with the Ghee Kong Tong, his participation and self promotion in the media, as well as his increasing political influence which was perceived as at threat to the establishment. Mr. Chow was denied such Constitutional protection and, accordingly the Indictment against him must be dismissed. U.S. v. Armstrong (1996) 517 U.S. 456, United States v. U.S. Dist. Ct., Cent. Dist. of Cal., 717 F.2d 478, 480 (9th Cir. 1983), U.S. v. Marshall (9th Cir. 1976) 532 F.2d 1279, Wayte v. U.S. (1985) 470 U.S. 598. However, should that argument not prevail, defense further asserts that such evidence is discoverable pending appeal under the Due Process Clause of the Fifth and Fourteenth Amendments and applicable case law, including Brady v. Maryland, 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995); and their progeny, to the extent that such evidence contains material and exculpatory information. Once those with knowledge of the charging decision are identified, the Court should order a hearing so that those persons can be questioned to fully investigate this defense. Anything less is a denial Chow's Constitutional rights and it would be injurious to the public to further suppress the truth about this case to the citizens of San Francisco.

## STATEMENT OF FACTS

Federal authorities descended on Chinatown with massive highly funded federal surveillance resources specifically targeting the American-Chinese "threat" with no actual suspicion of criminality. They were armed only with racist assumptions.[2] The timing was serendipitous for the Government because massive resources were required to investigate Chow

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

[2]See Exhibit 2(a) and 2(b).

3

1   as there was no evidence of criminal conduct on his part. Instead of walking away from the

2   table the Government doubled-down as has become the pattern when it comes to Chow. It was

3   about the same time Chow debuts on a well known television documentary discussing his past

4   as a gang leader and flaunting his freedom as his revenge to the Government. He did so because

5   he needed the money and he hoped to build his public image in preparation of selling his movie

6   rights.

7         Surveillance began shortly thereafter leading to a full scale operation in 2009 which,

8   according to discovery, it appears was solely for political reasons as evidenced by the fact that

9   the only FBI documentation from that time period relates to Chow's political success. The

10   investigation stagnated quickly and is characterized by literally years of attempting to lure Chow

11   into breaking the law to no avail.[3] In fact, the agent provocateurs were never able to get Chow

12   to knowingly engage in any criminal conduct. Two years into the operation the government

13   brought in a new UCE and focused on Chow' associates to advance their objectives. Four years

14   later and still bankrolled by the taxpayer, Government has admitted that the political corruption

15   investigation instigated contrary to the desire of the Government; what it has not admitted is that

16   it resulted in snagging at least a dozen bottom feeding political types. These well known locals

17   were inching each other out of the way for the next bundle of cash.

18         Despite widespread reporting in the press, not one politician implicated actually had

19   enough respect for themselves, the community, or our democratic process, to come forward and

20   admit involvement. Each of these "public servants" were allowed to progress through the

21   November 2014 election process unscathed because of a protective order issued in this case.

22   Instead the public was allowed to stew in the indicted parties alleged culpability after a blast of

23   media headlines, while people who actually were in a position to do damage while betraying the

24   public trust remained nameless–all in the context of what was sold as a public corruption and

25   organized crime investigation.

26         These investigations consisted of electronic, physical, and aerial surveillance, wiretaps,

27   body wires, covert audio and video recording in apartments and vehicles, confidential human

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

[3] See Exhibit3: Section A.

1   informants, boating trips, Las Vegas trips, numerous fake identities, real estate investors, the

2   restaurant industry, over two million dollars in faux money laundering, and over $50,000 in

3   payments to local elected and appointed public officials. The FBI shipped truckloads of fake-

4   stolen liquor and cigarettes across the country, contracted murder for hire on fake people, and

5   agents paraded around with $20,000 watches posing as nouveau multi-cultural La Cosa Nostra.

6   Yet, despite all of what the Government claimed to be damning evidence against all the

7   defendants, the reality is that the evidence was at least as damning to the unindicted politicians

8   and in Mr. Chow's case, the whereabouts of anything incriminating is still a mystery.

9          As the indictments came in, it became clear that certain individuals, starting with Mr.

10  Chow, were targeted for their perceived political allegiances, political and communal

11  association with the Hung Moon Ghee Kong Tong, while others were not indicted due to their

12  political affiliations, potential of disruptive fallout, social connections and more.  Another

13  illustration is the fact that the Government successfully engaged both Senator Yee and Mayor

14  Ed Lee in bribery scandals, yet only indicted Yee who was Lee's opponent and who posed the

15  threat of diverting Chinatown political support away from Ed Lee and David Chiu. It has yet to

16  be established, but appearances are such that the United States Attorney was complicit  with

17  local politicians to rid Chinatown of any alternate voices including Chow.

18         The Government  is targeting Chow for exercising his First Amendment right to free

19  assembly and free association with the Ghee Kong Tong. The Ghee Kong Tong is over 150

20  years old, and was formed by Chinese immigrants to help other immigrants find housing, work,

21  support and was, for many, the only means of survival in America. The San Francisco Ghee

22  Kong Tong is a federally recognized non-profit corporation with a mission to support the well-

23  being of the community and promote Chinese culture. The organization is a community-based

24  organization, and Chow is the "Dragonhead," akin to the President of the organization. His

25  dedication is noteworthy, as he uses his position in his Tong to enhance community welfare

26  despite his own personal financial hardships.

27         Mr. Chow's individual right to come together with other members of the Chinese

28  community in San Francisco and collectively express, promote, pursue, and defend their ideas, is

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    recognized as a human right, political right and civil liberty, and he attended hundreds of

2    community events a year starting in 2006.

3            Despite Mr. Chow dedicating his life to helping the community, speaking as a part of

4    gang prevention workshops, and promoting Chinese culture ideals, the government has been

5    mounting the present attack on Chow dating back to at least 2008. In a 2008 docudrama,

6    "Gangland", Chow spoke out in an unbridled manner, explaining his past, but with the inability

7    to annunciate past tense in English, Chow stated "I run this city" among other attestations.  This

8    was an affront to the city, an insult to San Francisco politicians. His attitude was cavalier and at

9    times brash, and defense contends that discovery, if necessary, will reveal a systematic attempt

10   to entrap and selectively prosecute Mr. Chow because of his past criminal activity as replayed

11   time and time again on "Gangland", and present affiliation and association with the San

12   Francisco Ghee Kong Tong.

13           In fact, the indictment and the press releases from the Government that followed show an

14   extremely high price paid for any person even remotely connected to Chow; including three

15   African-Americans who were slanderously branded Chinese Freemason racketeers in exchange

16   for an extremely unusual non-cooperation agreement and light sentence, relatively speaking.[4]  In

17   Senator Yee's case, he was identified by the prosecution to the media as someone who was

18   involved in "organized crime" merely because he issued an accommodation to Chow's

19   organization during this investigation.

20           Further evidence of the targeting of Mr. Chow is the effect of the selective prosecution in

21   this case. There is a bewildering yet fitting theme that came to light when looking at those who

22   were implicated and charged, and those who were not. It is clear that among the indicted

23   defendants and those implicated yet not charged, those who skirted charges were part of the

24   political "in crowd," individuals who were all at one time appointed, connected, extremely

25   closely associated with Melinda Haag, Gavin Newsom, Willie Brown, Annemarie Conroy, or

26   Diane Fienstein, creating the appearance and potential reality that the integrity of those decisions

27   to indict, or not indict, was undermined by either *de facto* improper influence or the United

28

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

[4] See Document 855 on this docket.

States Attorney's perceived negative socio-political consequences by the unindicted person's known political allies. This is not the first time Melinda Haag has been accused of political interference since she took the position in 2010 as stated by members of Congress:

> "We are very concerned to learn earlier this week that, despite the U.S. Attorney's request for permission from the Justice Department to proceed with indictments, this request was recently denied without explanation, despite the backing of both the FBI and the U.S. Attorney's Office. We are deeply concerned that political pressure may be a factor and are formally requesting an investigation into the circumstances of the Justice Department's actions with regard to this case." — Rep. Frank Wolf and Rep. Lamar Smith.[5]

With less than four years as head prosecutor of the Northern District at the time of this indictment, the stench of political corruption undermining the integrity of the charging process against Mr. Chow is intolerable. It has taken far less to ignite countries into chaos and civil war, and people get seriously injured over systemic corruption in prosecutions dictated by politics world-wide.  The result is never fair. This  Defendant requests such information that would shed light and justify the disparity in prosecution and also to send a message to the community that democracy still has a pulse, albeit weak.

A prosecutor's discretion is subject to constitutional constraints.  One of these constraints, imposed by the Equal Protection Component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard as that which the Government applied in the present proceedings.  For the foregoing reasons, in addition to granting discovery, the present Indictment must be dismissed.

## ARGUMENT

## I.

### THE PRESENT INDICTMENT MUST BE DISMISSED BECAUSE THE DECISION TO PROSECUTE RAYMOND CHOW WAS DISCRIMINATORY IN EFFECT AND INTENT

The Indictment against Mr. Chow must be dismissed on grounds of selective prosecution because of the Government's discriminatory effect and intent in deciding to prosecute Mr. Chow.  The United States Attorney indicted Mr. Chow in retaliation for the exercise of his right

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

---

[5] See Exhibit 5.

1   to free assembly and speech guaranteed under U.S. Const. amends. I and XIV. Although the

2   First Amendment does not explicitly mention freedom of association, the Supreme Court ruled,

3   in National Association for the Advancement of Colored People v. Alabama, 357 U.S. 449

4   (1958), that the freedom of assembly was protected by the First Amendment and further held in

5   Roberts v. United States Jaycees stated that "implicit in the right to engage in activities protected

6   by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide

7   variety of political, social, economic, educational, religious, and cultural ends." Roberts v.

8   United States Jaycees, 468 U.S. 609 (1984). A First Amendment without the right of assembly

9   would leave a major gap in a framework of freedoms designed to allow us all to participate fully

10  in the "marketplace of ideas," as first set forth nearly 100 years ago in Abrams v. United States,

11  250 U.S. 616, 630 (1919).  This uncontroverted right of assembly reaches into political and

12  cultural organizations, including Chinese tongs, including the Ghee Kong Tong.

13          A defendant seeking relief on a claim of selective prosecution must show some evidence

14  of both discriminatory effect and discriminatory intent.  To succeed on a claim of selective

15  prosecution, a defendant must demonstrate that (1) similarly situated person have not been

16  prosecuted (United States v. Bass (2002) 536 U.S. 862, 864), and (2) that he was selected for

17  prosecution on the basis of an impermissible ground, such as race, religion or the exercise of a

18  constitutional right. United States v. DeTar (9th Cir. 1987) 832 F.2d 1110.

19          Moreover, United States v. Armstrong (1996) 517 U.S. 456, 464-465 explains that:

20          [A] prosecutor's discretion is "subject to constitutional constraints." One of these
            constraints, imposed by the equal protection component of the Due Process
21          Clause of the Fifth Amendment,, is that the decision whether to prosecute may
            not be based on 'an unjustifiable standard such as race, religion, or other arbitrary
22          classification.' A defendant may demonstrate that the administration of a criminal
            law is 'directed so exclusively against a particular class of persons ... with a mind
23          so unequal and  oppressive' that the system of prosecution amounts to a practical
            denial of equal protection of the law.
24
             Yick Wo v. Hopkins (1886) 118 U.S. 356, 373. (internal citations omitted)
25

26          A.  Discriminatory Intent

27          To show discriminatory intent, Chow must demonstrate that he was selected for

28  prosecution on the basis of an impermissible ground, such as race, religion or the exercise of a

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   constitutional right. <u>United States v. DeTar</u> (9th Cir. 1987) 832 F.2d 1110. The intent of

2   selective prosecution violates the Equal Protection Clause "where the decision to prosecute is

3   made either in retaliation for the exercise of a constitutional right, such as the right to free

4   speech or to the free exercise of religion." <u>Esmail v. Macrane</u> (7th Cir. 1995) 53 F.3d 176, 179.

5       In the present case, the Government targeted Chow, in violation of his First Amendment

6   rights, in light of his assembly and ongoing association with the political and community based,

7   San Francisco Chinese organization, known as the Ghee Kong Tong thus violating U.S. Const.

8   amends. I and XIV., and  U.S. Const. Amend. V.

9       Specific reasons the Government targeted Chow are because he was attempting to profit

10  off of his life story though book and movie rights; because he appeared on "Gangland" and

11  members of the prosecution team interpreted this as an insult; because Chow was promoted to

12  Dragonhead of the Ghee Kung Tong and quickly developed respect; because Chow attempted to

13  administrate Chinatown Market Night more effectively than others had done so before; because

14  Chow generated political support and momentum as is evidenced by legitimate demonstrations

15  organized by Chow at City Hall, which caused such resentment it led politicians like David Chiu

16  to wear a body wire to try to set Chow up.

17          1.  <u>Chow's Life Story Was Worth Millions: Discriminatory Intent Is Evident
18          From A Long Pattern of Unprofessional Law Enforcement and Prosecutorial
            Misconduct</u>

19      The story is simple: in 1991 Congress called on the United States Attorney to rid this

20  country of Peter Chong and Raymond Chow.[6]  Almost twenty-five years later, both men are

21  free, and the government stands incompetent after having essentially spent nearly three decades

22  torching through countless millions of taxpayer dollars with nothing to show for it but a solid

23  lack of confidence in our public servants. The Government was so fixated on prosecuting Chow

24  that they produced a blockbuster of their own: Operation Whitesuit.  With not one crime

25  occurring without the undercover agent's invention, financing, and urging, it was a giant flop.

26  The actors did not know their lines as evidenced by the actual recordings. Every FBI Agent and

27  United States Attorney who took part in the downward departure of Raymond Chow in 2002

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

---

[6] Senate Hearing 102-306.

9

1   and the attempted imprisonment of Peter Chong which failed for good in 2007 is now the butt of

2   the next generations' jokes–not exactly a success story for prosecutorial discretion and

3   professionalism in the execution of an operation.

4        In a combination of jealousy and pride, qualities usually not associated with entire

5   massively funded bureaucracies, Chow's potential Hollywood success was too much for FBI

6   and Northern District leadership. One of the first items of Chow's in the latest prosecution that

7   was surreptitiously taken by a confidential informant and turned over to the FBI were the audio

8   recordings Chow used to memorialize his life story[7]. There was hardly a conversation between

9   Chow and the undercover agent that did not involve Chow discussing his book.[8]  Even in late

10  2010, before the undercover agent finally found someone in Chinatown who was associated with

11  Chow and was willing to commit a crime behind Chow's back at the undercover's direction, the

12  FBI recorded *not one* mention of a crime in contemplation anywhere near Chow but he never

13  missed an opportunity to discuss his book and movie deal and newfound political clout in

14  Chinatown.  It was Senator Yee, in an unrelated part of the case, explaining what a magnet

15  Chow was for law enforcement, that said his sources claimed the FBI felt like Chow was

16  "kicking sand" in their face by trying to sell the rights to his story and that Chow needed to "lay

17  low" if he wanted the heat off. [9]

18       Raymond Chow's life story represented, in the eyes of some agents and prosecutors, a

19  failure on their part.  One aspect of that failure was the calamity of allowing Chow to beat the

20  United States Attorney and the FBI in a 52 count highly publicized RICO prosecution. Then the

21  regrettable mistake of allowing Chow out of prison more than a decade sooner than scheduled in

22  exchange for his assistance in prosecuting Peter Chong who successfully won his appeal and

23  was released (not coincidentally) in 2007.  Salt in the wound stung even more after two failed

24  deportation attempts. One other aspect of the smoldering ashes of pride was the failure to keep

25  Chow poor enough to be susceptible to invitations to engage in crime via cash kick backs by

26  _____

27  [7] Exhibit 2: Section C.

28  [8] Exhibit 2: Section D.

[9] Exhibit 2: Section E.

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   undercover agents because even this was frustrated when they underestimated the discipline and

2   commitment Chow had to living a law abiding life.

3       Among the prosecutors who failed in their objectives with Chow were Brian Stretch and

4   William Schaefer among others.  Brian Stretch, who is on record saying that Chow's conduct in

5   2002 was "exemplary" and that he agreed that Chow's S-Visa should have been processed as

6   early as 2005, was thrust into a jet stream of upward mobility at the U.S. Attorney's Office on

7   the back of actions the office took prosecuting Chow before it became apparent they failed in

8   2007. In fact, in the wake of the latest swipe the Government is taking to satisfy their fetish with

9   Chow, with Chow  in custody, Stretch will ascend to the highest position replacing Melinda

10  Haag in September.[10]

11      One of the aspects of Chow's circumstances that was never justified, likely because it

12  was inescapably embarrassing, is why those individual prosecutors worked so hard to prevent

13  the government from following through with their agreement to give Chow an S-Visa and a new

14  identity in the mid-2000's. At the time, their objective was to likely keep Chow in Chinatown so

15  that Chong's supporters could attempt to kill him, and they could be embroiled in a larger RICO

16  case than before so they could save face and usher in a new wave of promotions.

17      The best indicator that Chow's incarceration or death was a fixation of the Government

18  is that the chance to get rid of Chow, or to assist Chow, or to ignore Chow, was always at the

19  Government's disposal and they could have easily given him his new identity but instead while

20  Chow sued two times in two years in federal court to get out of Chinatown and on with his new

21  life, the Government, Brian Stretch specifically, stood fast and kept Chow close by.  In the

22  process they diminished the United States Government in the eyes of those considering

23  cooperation with law enforcement, an already highly controversial but relied on practice in the

24  federal system, and they violated principles of Natural Law in regard to their treatment of Chow.

25  It was a gamble but it was worth it to put away the kingpin Peter Chong.  It was worth it until

26  Schaeffer, a fading light after the deal was cut to free Chow in 2002, and Stretch, now in his

27  management chair with city wide views, had to explain to their colleagues how they let Chow

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

[10] See Exhibit 7.

11

1   and Chong get away as they watched Chow on "Gangland" with a thick Cantonese accent

2   exclaiming to the audience "I run this city."

3       Not only was releasing Chow early in exchange for Peter Chong's conviction difficult to

4   justify on its face, but especially so shortly after Peter Chong was freed as one of the biggest

5   "one that got away" gangsters of all time. He flew as a free man home to China in 2007. As the

6   Government had realized, it had essentially chased its tail for decades; Chong was settling in to

7   a first-class plane ride home with complementary refreshments.

8       Chow, tired of being indigent and not allowed to work, confined to the Bay Area due to

9   an ICE ankle monitor, began to promote his life story as a means of financial success.[11] Part of

10  what Chow did was to become highly visible as an ex-gang leader who survived even the FBI's

11  grasp in "Gangland" for a mere $2,000. He spoke of his sexual exploits, narcotics trafficking,

12  and yet he developed a cult following and celebrity status. Teenagers love Chow. Unlike the

13  FBI, he is pop culture icon.

14      As people speculated about his criminal activities which were actually non-existent,

15  Chow devoted his free time to community service. It was not long before Chow was intervening

16  in racial violence, feeding the poor, helping people get drug treatment, and perhaps the biggest

17  grain of sand in the government's eye was his passionate and devoted and well covered in the

18  press lecture series to school children.  While Mayor Ed Lee and United States Attorney

19  Melinda Haag were cosponsoring anti-bullying campaigns, co-authoring letters to the public,

20  and hosting Batman in Gotham City to help one child, it was Chow who was the real life super

21  hero because he had the strength and reputation to stand toe-to-toe with the population that

22  needed assistance helping many; and unlike the United States Attorney, Chow was getting

23  results.[12]

24      Without actual meaningful discovery it will never be known, but it can be speculated

25  because of the amount of Government resources devoted to tracking Chow's Hollywood

26  progress that the agents and prosecutors who wanted to save face, were all but ignited into fury

27

28      [11] Exhibit 2: Section G.

    [12] Exhibit 8..

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   every time they saw Chow on the news, nicely dressed, speaking to children about the ills of

2   gangs and drugs. Chow was doing more to keep the community safe than the Government. That

3   does not bode well for bureaucratic survival.

4   2.    <u>Success As Ghee Kung Tong Dragonhead Provoked the
          Government: Chow's Rise In Popularity As Positive Community Leader
5           and Media Popularity Brought About This Investigation and Prosecution</u>

6        As the United States Attorney's Office and the FBI were marinating in the aftermath of

7   their charging decisions over the Chong debacle, the semi-elite ruling class of San Francisco

8   took note of Chow's rise to success as a community leader. It was through no fault of Chow's,

9   as revealed in this investigation, that the FBI could not solve the very public assassination of the

10   previous Dragonhead of the Chinese Freemasons. This stung as badly as the Golden Dragon

11   Massacre years before because it was widely televised. Chow's attendance as the only person in

12   white at the funeral, sparked public discussion, which inevitably made the FBI look as though

13   they were incompetent because how else could they not catch Chow.  Due to a lack of

14   understanding of cultural traditions, the Government had to explain how Chow could flout their

15   authority while indigent and on an ankle monitor. Every time they turned around, Chow was on

16   television and getting stronger and stronger. The fact that they named this Operation Whitesuit

17   is telling as to the resentment the FBI has towards Chow going back to the former Dragonhead's

18   funeral due to Chow's homage in a white suit.

19        Chow finally took over the ailing Market Night in 2009. This is what pushed the

20   Government from saturated surveillance to provocateur. Chow and his dutiful Tong members

21   went to other market nights and observed, took notes, and began to implement changes which

22   led to success.  This was too much for local politicians. Gavin Newsom pulled funding from

23   Market Night because of Supervisor David Chiu's public fit which amounted to nothing more

24   than a child crying for their favorite blanket–in his case the support of his constituents. Chiu's

25   desperation and fear, not of Raymond Chow himself, but of the political support he was gaining,

26   is evident from the FBI and media reports surrounding Market Night.[13]

27        Chow was administering Market Night even though Chow only took $1 a year as pay.

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

[13]See Exhibit 3.

1   Newsom was very public about pulling funding.  But it was young ex-prosecutor supervisor,

2   David Chiu, who showed just how low the FBI and the local politicians would stoop to get

3   Chow out of their way by wearing a bodywire and secretly trying to provoke Chow into

4   threatening him at a public anniversary banquet .[14]  Much can be said about the establishment's

5   all out fear and paranoia by reviewing the numerous FBI reports addressing Chow's political

6   clout. Chiu's resentment of Chow's ability to get people to turn out to lawfully demonstrate is

7   telling, and it is exactly the perverse mentality of political entitlement that made this group of

8   San Francisco's leadership think it would be okay not to indict the "in crowd"; apparently

9   thinking it would go without question by a judge or at least one defense team out of twenty-nine.

10      B. Discriminatory Effect

11      To demonstrate the discriminatory effect of a prosecution, a defendant must also

12   demonstrate that similarly situated person have not been prosecuted.  (United States v. Bass,

13   (2002) 536 U.S. 862, 864). The discriminatory effect of the present prosecution is shown in the

14   fact that other similarly situated individuals, who are operating in a (more in this case) culpable

15   manner, have not been charged with Chow.

16      Generally, the FBI violated a federal law known as the Hatch Act, 5 U.S.C. §§ 7321-

17   7326 (2015), by allowing dozens of undercover agents to make official campaign contributions

18   to mayoral candidates in 2011, brazenly usurping congressional will.[15]  The FBI then targeted

19   mayorial candidates and political persons and, in fact, bribed them, bought guns from them, and

20   caught at least one district attorney candidate laundering campaign donations back and forth

21   with Senator Leland Yee.  Yet, as an ultimate affront to justice, Melinda Haag carved out from

22   prosecution those who committed crime and have more overwhelming evidence against them

23   than many of the charged defendants, particularly Chow.

24      Specifically, the FBI alleged in discovery that Ed Lee took substantial bribes in exchange

25   for favors and that Human Rights Commissioners, Nazly Mohajer and Zula Jones, hustled in

26   these bribes for the Mayor. The United States Attorney asked for a RICO charge on Keith

27   _____

28      [14]/ Exhibit 2: Section H

      [15]5 U.S.C. §§ 7321-7326

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

14

Jackson and Leland Yee for similar conduct.  Lee, Mohajer, and Jones remain unindicted.  Zula Jones, already the subject of a previous federal investigation which ended up being thrown out by a sympathetic judge, is reported by the FBI explaining that Willie Brown taught Ed Lee how to do business:  "You pay to play here. We got it. We know this. We are the best at this game uh better than New York. We do it a little more sophisticated than New Yorkers. We do it without the mafia."[16]

Sharmin Bock, an Alameda County District Attorney, was also given an unexplainable pass.  She was picked up on the wiretap on multiple occasions conspiring with Leland Yee to exchange donations to defeat campaign finance limits while she was running for District Attorney.[17]  She remains unindicted and, in fact, she is still a prosecutor.  One of the unindicted parties stated "If you need some help in Alameda, we can use her you know. She is a fucking DA."[18]

Sululagi Palega, a director of the MTA, formed a bond with UCE 4599. During a meeting at Waterbar Restaurant on the Embarcadero, Palega agreed to provide numerous weapons to the undercover agent so that the agent could protected his illegal narcotics business.[19]  Palega sold at least one firearm to the man who the FBI claims was allegedly an Italian Mafioso.[20] Prior to the sale taking place, Palega used a City of San Francisco car to come and go from a meeting at Town Hall with UCE 4599 at which Palega provided an update on his ability to procure assault rifles, hand grenades, and ammunition.[21]  He handed the UCE a Sees Candy box with a gun in it and said "Enjoy the candy."[22] He remains unindicted.

---

[16] Exhibit 2: Section J

[17] Exhibit 2: Section K

[18] Exhibit 2: Section L

[19] Exhibit 2: Section M

[20] Exhibit 2: Section N

[21] Exhibit 2:Section O

[22] Exhibit 2: Section P

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

Reverend Amos Brown[23], Reverend Arnold Townsend[24], Derf Butler[25], Malia Cohen[26], and London Breed[27] were all implicated in dramatic pay to play schemes including calling into doubt the efficiency and real purpose of the One Stop Career Center in the Fillmore.  Derf Butler is reported as saying  "Okay, however you want it, it's fine with me. Cause you know the main thing is we get someone that understands it's pay to play."[28]  Butler, an ex-felon at the heart of several controversies, is a close associate of London Breed who is a supervisor in a district where young children join gangs and are murdered before they can ever 'pay to play.' Butler allegedly takes Breed shopping for clothes and touts himself as something akin to a pimp explaining to Jackson that you have to teach an official how to be corrupt.[29]

If what was reported by the FBI is true about Arnold Townsend, vice-president of the NAACP during this investigation, Townsend was unapologetically on the payroll of CHS-11 for Townsend's apparent political influence.  Not only were they not investigated to the point they were indicted, Breed and Cohen were allowed to misrepresent the extent of their involvement in this investigation. Breed totally unscathed claiming she had met with the agent once or twice but knew he was a hustler ended up being "thick as thieves."[30]

Contrary to other similarly situated individuals who have not faced prosecution, Chow was operating at all times in a lawful manner. People like Zula Jones are not first time offenders and they have already been implicated in similar conduct which is rumored to have resolved as a result of judicial misconduct in the local courts. Mohajar reportedly called the UCE and explained the process by which she launders Ed Lee's campaign money before she realized she

---

[23] Exhibit 2: Section Q

[24] Exhibit 2: Section R

[25] Exhibit 2: Section S

[26] Exhibit 2: Section T

[27] Exhibit 2: Section U

[28] Exhibit 2: Section S

[29] Exhibit 2: Section T

[30] Anonymous Source.

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   had called the wrong number.[31] That is how one acts when they are above the law.  Ed Lee was

2   not even elected into office before he was reported to the United States Attorney as conducting

3   campaign money laundering in two separate incidents. He took over $20,000 from federal

4   agents in his first four months in office and hit the ground running as mayor with an enormous

5   amount of reported gifts including paid trips across the world.  According to Jones and Mohajar,

6   Ed Lee knew he was taking money illegally.[32]

7   Moreover, defense asserts that discovery, if produced, will reveal that Annemarie

8   Conroy used her position of influence to cull political figures out of the prosecution, and

9   selectively prosecute others. Conroy is the U.S. Attorney in charge of External Affairs and is the

10  Law Enforcement Coordinator, and she was appointed as a San Francisco Supervisor by Gavin

11  Newsom. She went to work for Willie Brown, and London Breed was her assistant while she

12  helped Brown part out Treasure Island.

13  The Government is retaliating against Chow for not fading into the shadows or placing

14  himself in a position to be incarcerated for life, but rather exercising his right to free speech; the

15  Government should be assisting reformed criminals and not tempting them, if not for any other

16  reason than to reinforce behavior that makes society safer instead of the other way around.

17  Defense asserts that it has been the vendetta of the Government to keep Mr. Chow behind bars

18  for the rest of his life. In 2006, he was arrested and charged with extortion, incarcerated for ten

19  months, and thereafter released. ICE tried to deport him twice since 2002 to no avail.  Defense

20  asks for an unredacted ICE file as part of this discovery order. Rarely is an American-Asian

21  arrested that they are not asked about Raymond Chow. The Government has never lost its lust

22  for him.

23  Presently, despite a life dedicated to his community, reforming the youth of Chinatown,

24  and lawful activity as the Dragonhead of the Ghee Kong Tong, the Government is targeting and

25  prosecuting Mr. Chow and the vindictiveness can be out of the prosecutor's voice at the

26  detention hearing as quotes were exaggerated and misrepresented. This vindictiveness can be

27  _____

28  [31] Exhibit 2: Section V

   [32] Exhibit 2: Section V

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   seen at every step of the prosecution from seating all arrestees in a circle around Chow in the

2   'war room' when booking codefendants, to  having Chow housed farther than any in-custody

3   codefendant, to requiring judicial intervention just to see his discovery. When asked if Chow

4   could trade the original manuscript of his life story seized by the FBI for a copy due to

5   sentimental reasons about his life's work, the prosecution rejected the request.  *See* United

6   States v. McWilliams (9th Cir. 1984) 730 F.2d 1218, 1221 (personal vindictiveness on the part

7   of the charging prosecutor would support a claim of discriminatory prosecution); Esmail v.

8   Macrane (7th Cir. 1995) 53 F.3d 176, 179 (selective prosecution is also actionable "where the

9   power of government is brought to bear on a harmless individual merely because a powerful

10   state or local official harbors a malignant animosity toward him"); Indiana State Teachers Ass'n

11   v. Board of School Commissioners (7th Cir. 1996) 101 F.3d 1179, 1181 (where people identical

12   in relevant ways are treated differently, the disadvantaged person can state an equal protection

13   claim).

14       Protection against selective prosecution not only safeguards important individual rights

15   but also buttresses the integrity of the justice system itself. Abuse of prosecutorial power

16   undermines public confidence in the justice system and alienates groups within society.

17   "Therefore, the judicial system has a stake in discouraging improper selective prosecution and

18   should do so both by granting a remedy in the rare case in which a defendant establishes a

19   constitutional violation and by airing allegations of selective prosecution."[33] This is the rare

20   case. Chow is reformed. There is no danger in allowing him to go free.

21       The government's actions amount to selective prosecution and the Superceding

22   Indictment must be dismissed accordingly.

23 II.

24 MR. CHOW IS ENTITLED TO DISCOVERY<br/>TO INVESTIGATE  HIS SELECTIVE PROSECUTION CLAIM

25

26       The Government's actions regarding this prosecution, standing alone, requires dismissal

27

28

---

[33]  Poulin, Anne Bowen, Prosecutorial discretion and selective prosecution: enforcing protection after United States v. Armstrong .

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   of the present Indictment.  However, in the alternative, discovery of all records relating to the

2   government's decision to commence federal prosecution against Mr. Chow must be disclosed to

3   Defense counsel. United States v. Armstrong (1996) 517 U.S. 456 (U.S. 1996). .  U.S. v.

4   Armstrong (1996) 517 U.S. 456, United States v. U.S. Dist. Ct., Cent. Dist. of Cal., 717 F.2d

5   478, 480 (9th Cir. 1983), U.S. v. Marshall (9th Cir. 1976) 532 F.2d 1279, Wayte v. U.S. (1985)

6   470 U.S. 598. The Government refuses to disclose this information.

7                                     **CONCLUSION**

8           Every single American needs an efficient, fair, healthy, and effective federal law

9   enforcement agency, and in the bigger picture, and that is true even if the citizen is a criminal

10  defendant, or a criminal defense attorney, or a prosecutor, or a judge, and it is contrary to every

11  citizen's best interest to allow political meddling with FBI investigations. This is abusive and

12  disrespectful of those line agents who risk their lives day in and day out and to those who place

13  an extreme degree of importance on professionalism and integrity.

14          Politics free prosecutions are critical to Assistant United States Attorneys who are not on

15  the political fast track, but the AUSA's who work eighty hour weeks and sacrifice time away

16  from their children so that they can put the real bad guys in jail. The devastating effect of the

17  interoffice pressure to maintain a high profile prosecution while defense attorneys and press

18  criticize your every move, combined with the knowledge that there was a certain level of

19  injustice by your own management in determining who to prosecute, undermines the morale of a

20  prosecutor in ways that are completely foreseeable by anyone with a pulse. Placing your

21  subordinates in the firing line of public opinion in a case such as this is a cowardly bureaucratic

22  move that completely counteracts the stated mission of the United States Attorneys Office.

23  Instead of treating it as an institution of distinction the reputation of the office was treated like

24  waste.

25          In this case, we have organization with some of the most well educated, well trained, and

26  well paid, public servants, and saving political allies in such an obvious way seemed acceptable

27  for not even one person has stepped forward to apologize to the public.  The fact that no one

28  stood up and said that what was happening here is wrong; the fact that at no point did anyone

1  become concerned that these unindicted parties could continue to hurt the public; the fact that

2  the Government handed every defendant the incriminating evidence it took to write this motion

3  and at the same time the Government will undoubtedly oppose and protest in response; suggests

4  our society is following in the footsteps of Greece and Rome.  However, our politicians are our

5  gladiators and the animals they fight are the laws which were put in place to protect us, and we

6  just watch as spectators, unfortunately, and our silence is interpreted by the powers that be as

7  cheering.

8          For the reasons set forth herein, Defense counsel respectfully urges this Court to assist in

9  steering San Francisco and the nation back on track and to dismiss the present charges against

10  due to the Government's egregious violations.

11          Dated: August 3, 2015

12                                          Respectfully submitted,

13

14                                          /s/CURTIS L. BRIGGS
                                            J. TONY SERRA
15                                          CURTIS L. BRIGGS
                                            GREG M. BENTLEY

16                                          Attorneys for Defendant
                                            KWOK CHEUNG CHOW

17

18

19

20

21

22

23

24

25

26

27

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28