PATRICK J. LEAHY, VERMONT, CHAIRMAN

DIANNE FEINSTEIN, CALIFORNIA          CHARLES E. GRASSLEY, IOWA
CHARLES E. SCHUMER, NEW YORK          ORRIN G. HATCH, UTAH
RICHARD J. DURBIN, ILLINOIS           JEFF SESSIONS, ALABAMA
SHELDON WHITEHOUSE, RHODE ISLAND      LINDSEY O. GRAHAM, SOUTH CAROLINA
AMY KLOBUCHAR, MINNESOTA              JOHN CORNYN, TEXAS
AL FRANKEN, MINNESOTA                 MICHAEL S. LEE, UTAH
CHRISTOPHER A. COONS, DELAWARE        TED CRUZ, TEXAS
RICHARD BLUMENTHAL, CONNECTICUT       JEFF FLAKE, ARIZONA
MAZIE HIRONO, HAWAII

KRISTINE J. LUCIUS, *Chief Counsel and Staff Director*
KOLAN L. DAVIS, *Republican Chief Counsel and Staff Director*



United States Senate

COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510–6275

March 27, 2014

The Honorable Eric Holder
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Dear Attorney General Holder:

After receiving information from law enforcement whistleblowers, I, along with Chairmen Lamar Smith and Frank Wolf, wrote to Melinda Haag, U.S. Attorney for the Northern District of California about alleged International Traffic in Arms (ITAR) violations at the NASA Ames Research Center (ARC).  Our letter conveyed the concerns which had been raised by whistleblowers, that the decision not to prosecute the ITAR violations may have been made for reasons other than the merits of the case and that the decision whether to prosecute was made by Main Justice.  The questions posed and documents requested in our letter attempted to bring facts of the case to light and transparency to the U.S. Attorney's decision.

U.S. Attorney Haag did not respond to this letter and in fact, it appears that she routed the letter through Main Justice for a response.  This raised concerns regarding U.S. Attorney independence and underscored the concerns made by whistleblowers.  Over four and a half months after the letter was sent, Assistant Attorney General Peter Kadzik responded by not answering the questions presented, claiming deliberative and law enforcement privilege, and denying that any decisions were made improperly.

On February 12, 2014, the National Aeronautics and Space Administration Office of Inspector General (IG) issued an investigative report on ITAR violations and foreign national access issues at ARC.  The report, which is attached, was provided to NASA management but was not issued publically.  It raises numerous questions about the unprecedented level of access enjoyed by foreign nationals, other activities at the ARC facility, and the DOJ investigation.

The NASA IG review specifically concluded that several security rules were not followed by ARC leadership and that a foreign national personally recruited by ARC leadership appears to have violated security protocols with little or no repercussions.

According to the report, this foreign national, at the request of ARC leadership, was selected to be a visiting scholar and then a contractor at the ARC.  ARC leadership initially informed ARC employees that this foreign national was to be given "exceptional care" and "unescorted access 24/7" despite the fact that the foreign national had not passed basic security background checks.

Enclosures (2)

NASA policies state that no foreign national is permitted unescorted access to the ARC or NASA IT system until completion of a National Agency Check (NAC), preparation of a Security Control Plan, and assignment of a government employee to act as his or her sponsor. However, these procedures were not followed for this foreign national. According to the IG report, one ARC International Visitor's Office (IVO) employee is quoted as saying, "the IVO was under tremendous pressure from [redacted] office to 'make it happen' in terms of granting [the foreign national] unescorted access to Ames."

Within three days of arriving at the ARC, this foreign national received a pass giving him unescorted access. The NAC would not be complete for another two and a half months. Surprisingly, in a later interview, the IG report says that the ARC leadership official behind this pressure and the request that the foreign national be given "unescorted access 24/7" said, "[We] have been very careful in answering his questions. He has…contacts around the world – including China. While I do not believe he's a direct agent of [any country] I do not trust him with any information of a sensitive nature."

Despite these concerns, the foreign national worked on projects which the State Department declared were ITAR related without an ITAR license for the next two years. The project to which he was assigned was verified to be ITAR sensitive by the ARC Export Administrator, the NASA Headquarters' Export Control Office officials, and the NASA HQ Export Control Administrator.

In the course of this and related work, this foreign national also appears to have made a habit of recording most, if not all of his conversations with co-workers at the ARC. ARC leadership was aware of these recordings and was aware that they likely violated California state law but allowed them to continue. When later asked about this practice, ARC leadership said that they considered it to be a "goofy quirk." The foreign national did however capture many conversations, some of which were detailed like these in the IG's report:

> A conversation in which (ARC employees) discussed how certain high level managers at Ames 'stole' funds from a $20 million contract…
>
> A conversation primarily between the ARC official and [redacted] in which [redacted] is discussing difficulties with a contractor and states 'I just don't appreciate it when he starts acting out on me…. I gave him a [expletive deleted] gift…a classified contract, no competition, nobody even got to know about it…'[1]

Finally, the foreign national traveled out of the country on personal travel with a NASA-issued laptop that contained ITAR-restricted information to a United Nations conference in Austria. Upon his arrival back to the United States, due to an ongoing criminal investigation, the foreign national was sent to secondary screening where he appears to have made false statements to Department of Homeland Security (DHS) officials. First, he told DHS officials that the NASA laptop was personal equipment with both work and personal information. When officials pointed out that, according to the IG report, "a NASA label was affixed to the machine's underside," the IG report says that the foreign national "renounced"

---

[1] NASA Inspector General Report at page 27.

the previous statement. Then, the foreign national claimed that there was no sensitive or classified data on the laptop. After additional questioning, the foreign national "admitted that some of the files contained ITAR-controlled documents...." The laptop was examined and found to contain three files with ITAR sensitive material and was seized. The contents of the laptop were later reviewed by the State Department and found to be ITAR-sensitive. This laptop also contained the audio recordings of NASA employees referenced above.

After spending a little over four months on paid administrative leave, the foreign national was allowed to return to the ARC and continued to enjoy access to NASA technology.

The NASA IG's report raises strong concerns around the ITAR controls and potentially compromised technology. The concerns regarding this investigation and the answers to the serious questions raised by these circumstances are more important than ever. While the decision to decline prosecution after a four-year investigation may rest with the U.S. Attorney in California, the public is entitled a better explanation than that, in light of the information presented in this IG report. Attached is my initial letter to U.S. Attorney Haag on February 27, 2013. In addition to those questions, please provide answers to the following:

1. Was DOJ provided with this OIG report?

2. Does DOJ plan to take any further action as a result of the OIG's findings?

3. The OIG reported that it obtained over 100 hours of recordings from a foreign national who wore a recording device while working at the ARC. Has DOJ reviewed these recordings and was this information provided to the U.S. Attorney's office?

4. Given the facts presented in which NASA ARC officials describe awarding a classified contract without competition, what steps does the DOJ plan to take to inquire into the circumstances related to the award of that contract? If none, please explain why not.

5. The foreign national who, when questioned by DHS agents, falsely claimed not to have transported a NASA laptop with ITAR sensitive material outside of the United States was granted Lawful Permanent Resident status in July 2013. Did any DOJ component communicate any concerns regarding his application to any component of the Department of Homeland Security?

Thank you for your attention to these matters. Please provide a written reply with answers numbered in accordance with my questions no later than April 10, 2014. Should you have any questions regarding this letter, please do not hesitate to contact Chris Lucas of my Judiciary Committee staff at (202) 224-5225.

Sincerely,

*Chuck Grassley*

Charles E. Grassley
Ranking Member
Committee on the Judiciary