UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KWOK CHEUNG CHOW, a/k/a "Raymond Chow," a/k/a "Hai Jai," a/k/a "Shrimpboy," et al.,<br><br>    Defendants. | Case No.  14-cr-00196-CRB   (JCS)<br><br>**ORDER DIRECTING PARTIES TO FILE REDACTED DOCUMENTS IN THE PUBLIC RECORD** |

## I. INTRODUCTION

Judge Breyer referred to the undersigned magistrate judge issues of whether certain documents filed under seal should remain under seal in whole or in part.  *See* dkts. 791, 869.  The United States proposed that certain documents should be filed with redactions, others should be filed unredacted in the public record, and others should remain under seal.  The Court largely agrees with the United States' proposals, based on compelling privacy interests and the statutory presumption that wiretap materials should remain under seal.  *See* 18 U.S.C. §§ 2517, 2518(8)(b).  As discussed below, however, certain materials that the United States proposes to redact or leave sealed should be made public, and certain passages that the United States appears to have overlooked should be redacted.  The parties are ORDERED to file redacted or public versions of their own filings consistent with this Order, no later than September 18, 2015.  The Court will file a redacted version of its now-sealed July 9, 2015 Memorandum and Order, consistent with the United States' recommendations as modified by this Order.[1]

---

[1] This Order relates to whether and to what extent certain documents previously filed under seal with leave of the Court must be unsealed based on the public's First Amendment right of access to judicial proceedings.  It has no bearing on whether other documents filed in the public record by Defendant Kwok Cheung Chow violated any court order, statute, or other obligation—an issue Judge Breyer has reserved until proceedings on the merits have concluded.  *See* dkt. 899.

## II. BACKGROUND

The Court received a letter from several news media organizations requesting that documents related to certain defendants'[2] motions to suppress evidence be unsealed. 1st Press Letter (dkt. 791-1). Judge Breyer referred the matter to the undersigned magistrate judge to review the relevant documents and determine whether they should remain under seal. Order of Referral (dkt. 791). The Court issued an order to show cause ("1st OSC," dkt. 795) instructing the parties to address that issue.

Defendants Keith Jackson and Leland Yee each filed a response stating that their submissions include "interwoven" references to material that should remain sealed and that proposing redactions would be "unduly burdensome." *See* Jackson Response (dkt. 817); Yee Response (dkt. 818). The United States filed proposed redactions of the parties' legal memoranda, including briefs filed by Defendants Jackson and Yee. *See* U.S. 1st Response (dkt. 819). The United States also proposed unsealing all declarations in support of the parties' memoranda and Exhibit G to the declaration in support of Yee's motion to suppress, but argued that all other exhibits should remain under seal. *Id.* The Court issued an order directing any defendant who opposed the United States' proposals for unsealing to file a reply and advising that any defendant who failed to do so would be deemed to consent to the United States' proposals. Dkt. 828. No defendant filed a reply.

The order to show cause also set forth a procedure by which the media organizations could move to intervene in the case through counsel if they wished to present further views on the issue. Those organizations declined to follow that procedure, and instead submitted a second letter—after the deadline to intervene—opposing the United States' position that certain documents should remain under seal, and stating that "as members of the public and members of the press, we should not be barred from bringing these considerations to the attention of the Court by the financial hurdle of having to retain counsel and bring another motion in order to do so." 2d Press Letter (dkt. 862).

---

[2] The defendants who filed those motions—Keith Jackson and Leland Yee—have since entered plea agreements with the United States and pled guilty to certain charges against them. *See* dkts. 857, 858.

On July 9, 2015, Judge Breyer issued an order under seal denying the motions to suppress. Order Denying Mots. to Suppress (dkt. 868). At the same time, Judge Breyer issued an order to show cause ("2d OSC," dkt. 869) instructing the parties to submit proposed redactions to the sealed substantive Order. The United States filed a response on July 20, 2015. U.S. 2d Response (dkt. 874). No other party filed a response.

## III. ANALYSIS

### A. Letters from News Media Organizations

Courts have often recognized the interest of the press and public in obtaining access to court records, and thus considered requests from media organizations to obtain sealed records. *See, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986); *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006); *In re N.Y. Times Co.* [hereinafter *N.Y. Times II*], 577 F.3d 401 (2d Cir. 2009); *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989); *In re N.Y. Times Co.* [hereinafter *N.Y. Times I*], 828 F.2d 110 (2d Cir. 1987). In the interest of reaching the correct outcome regarding what portion of the materials at issue should remain under seal, the Court considers the authority offered by the news organizations here.

### B. Legal Standards for Filing Under Seal and Public Access to Judicial Records

"The law recognizes two qualified rights of access to judicial proceedings and records, a common law right 'to inspect and copy public records and documents, including judicial records and documents,' and 'a First Amendment right of access to criminal proceedings' and documents therein." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)) (citations omitted). Because the Court finds that the stronger presumption of access under the First Amendment applies to the materials at issue here, this Order does not address the common law right of access. The documents at issue also implicate certain statutory provisions addressing sealing and disclosure of wiretap materials. *See* 18 U.S.C. §§ 2517, 2518(8)(b).

#### 1. First Amendment Right of Access

Courts have held that the public has a qualified First Amendment right of access to

3

criminal proceedings, based on the history of open criminal trials in the American and English legal systems and on policy grounds including the potential for public scrutiny to "enhance[] the quality and safeguards the integrity of the factfinding process," the appearance of fairness, and the opportunity for "the public to participate in and serve as a check upon the judicial process." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605−06 (1982).  To determine the contours of that right, courts "consider both 'historical experience' and 'logic,' though logic alone, even without experience, may be enough to establish the right." *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (citations omitted).  "The same test applies to the disclosure of '*documents* generated as part of a judicial proceeding.'" *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (quoting *Times Mirror*, 873 F.2d at 1213 n.4)).  Under established precedent, the First Amendment right of access attaches to hearings on motions to suppress evidence, *United States v. Brooklier*, 685 F.2d 1162, 1169−71 (9th Cir. 1982), and bars a court from requiring that *all* pretrial filings be under seal without adequate justification, *Associated Press v. U.S. Dist. Court*, 705 F.2d 1143 (9th Cir. 1983).

      The Ninth Circuit has also identified certain considerations that are "not the test in our circuit." *Index Newspapers*, 766 F.3d at 1092 n.15.  The Ninth Circuit has "not use[d] the public's ability to understand an open hearing as the litmus test for deciding whether the public should have access to the filings associated with the hearing," nor has it applied a rule based on "'whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (quoting and declining to follow *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013)).

      If the right attaches to proceedings or records, any denial of access "in order to inhibit the disclosure of sensitive information . . . must be . . . necessitated by a compelling governmental interest, and . . . narrowly tailored to serve that interest." *Globe Newspaper*, 457 U.S. at 607.  Further, there must be "a substantial probability that the interest will be harmed by disclosure," and "no adequate alternatives to maintaining the filings under seal." *Index Newspapers*, 766 F.3d at 1095.  "The First Amendment generally grants the press no right to information about a trial superior to that of the general public." *Nixon*, 435 U.S. at 609.

### 2. Applications for and Fruits of Wiretaps

Some of the documents at issue in this case relate to wiretaps. In 1967, the Supreme Court held that wiretapping—i.e., covert electronic interception of telephone communications—constitutes a search and seizure and thus violates the Fourth Amendment unless the government first obtains judicial authorization. *See generally Katz v. United States*, 389 U.S. 347 (1967). Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510−20, in the wake of *Katz* to provide a procedure for obtaining wiretap authorization and to limit the disclosure of information obtained through wiretaps. *See N.Y. Times II*, 577 F.3d at 406, 410 (discussing the enactment of Title III); *United States v. Dorfman*, 690 F.2d 1230, 1234 (7th Cir. 1982) (same, citing legislative history).

Here, some of the exhibits submitted in support of or opposition to the defendants' motions consist of wiretap applications, orders granting such applications, and wiretap transcripts. For the former two categories, the propriety of sealing is governed by 18 U.S.C. § 2518(8)(b), which provides that "[a]pplications made and orders granted under this chapter"—i.e., applications for and orders granting permission to engage in wiretapping—"shall be sealed by the judge [and] disclosed only upon a showing of good cause before a judge of competent jurisdiction." 18 U.S.C. § 2518(8)(b). For the fruits of wiretaps, 18 U.S.C. § 2517 sets forth limited circumstances in which information gleaned from wiretapping may be disclosed, including disclosure between law enforcement officers and disclosure "while giving testimony under oath or affirmation in any [judicial] proceeding." *See, e.g.*, 18 U.S.C. § 2517(1), (3). Courts have generally held that in light of Title III's purpose of safeguarding privacy, the statute's list of permissible disclosures is exclusive—in other words, "what is not permitted [under § 2517] is forbidden." *See Dorfman*, 690 F.2d at 1232.

No party has cited any Ninth Circuit precedent addressing the scope of public access to wiretap materials and how Title III's sealing provisions interact with the public's First Amendment right of access, although other circuits have addressed aspects of that issue. *See N.Y. Times II*, 577 F.3d at 410−11 (holding that under the history-and-logic test, Title III materials that had not been used in the context of a motion or trial did not fall within the right of access); *N.Y.*

1  *Times I*, 828 F.2d at 114−16 (holding that Title III did not supersede the constitutional right of
2  access where materials were submitted in the context of a motion to suppress, but that on remand
3  the district court should consider the privacy interests underlying Title III in determining what to
4  seal or redact); *Dorfman*, 690 F.2d at 1234 (holding that the sealing provisions of Title III
5  constitute an appropriate compromise between the public's First Amendment right of access and
6  the Fourth Amendment privacy rights of targets of surveillance).

### C. Material Subject to Sealing in this Case

The materials at issue in this case consist of two defendants' motions to suppress evidence, the United States' consolidated opposition, each defendant's reply, documents submitted in support of those motions and briefs, and the Court's order denying the motions. These are "documents generated as part of a judicial proceeding," with a presumption of public access under the First Amendment. *See Index Newspapers*, 766 F.3d at 1084. In the Court's view, that holds true even for excerpts of Title III materials within those briefs and within the order—by their incorporation into the parties' arguments and the Court's analysis, the excerpts themselves become judicial records. *See N.Y. Times I*, 828 F.2d at 115 n.1. Any sealing or redaction must therefore be narrowly tailored to serve compelling reasons. *See Globe Newspaper*, 457 U.S. at 607. The Court finds that protecting the privacy of unindicted third parties and protecting the identities of undercover law enforcement officers and confidential sources are compelling reasons for redaction.

The press does not object to protecting confidential sources, but opposes redaction of information "pertaining to persons already identified in the grand jury indictment in this case, whether or not they have been indicted." 2d Press Letter at 1. The fact that some degree of alleged "involvement" by some individuals may be "already a matter of public knowledge," *id.* at 4, does not negate those individuals' privacy interests in further disclosures.[3] *See In re Sealed*

---

[3] For similar reasons, to the extent that any individuals named in the materials covered by this Order may also be named in Defendant Kwok Cheung Chow's recent publicly-filed motion to dismiss (dkts. 883−86), the Court does not find that any disclosure in that motion negates the compelling privacy interests implicated by these materials. Judge Breyer has reserved the question of the propriety of that public filing until the conclusion of proceedings on the merits. *See* dkt. 899).

United States District Court
Northern District of California

1  *Search Warrant for Cubic Corp.*, No. 88-2945M, 1989 WL 16075, at *4 (S.D. Cal. Feb. 22, 1989)
2  (holding that even named defendants maintained a significant privacy interest in intercepted
3  conversations). "The job of protecting such interests rests heavily upon the shoulders of the trial
4  judge, since all the parties who may be harmed by disclosure are typically not before the court."
5  *See N.Y. Times I*, 828 F.2d at 116. That is particularly true in a case like this, where allegations of
6  public corruption by the indicted defendants have significant potential to tar the reputations of
7  others merely by association.

8  Moreover, the release of certain information may have a disparaging effect on people who,
9  having not been charged with any crime, have no formal opportunity clear their names. *See Index*
10 *Newspapers*, 766 F.3d at 1084 (noting that grand jury secrecy is justified and falls outside the
11 scope of First Amendment public access in part "to assure that individuals who are accused but
12 exonerated[4] are not held to public ridicule" (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
13 441 U.S. 211, 218−19 (1979)); *see also Nixon*, 435 U.S. at 602 (warning of the "danger that the
14 court could become a partner in the use of the subpoenaed material 'to gratify private spite or
15 promote public scandal,' with no corresponding assurance of public benefit" (citation omitted)).
16 The fact that the identities of the unindicted third parties have no bearing on the parties' legal
17 arguments or the Court's analysis of the motions further supports redacting identifying
18 information.

19 This Order first addresses the motions, briefs, and order, and then turns to the
20 documentation filed in support of or opposition to the motions.

21 **1. Motions, Briefs, and Court Order**

22 With few exceptions, the Court finds the United States' proposed redactions to the briefs
23 and order to be narrowly tailored to serve compelling reasons—specifically, protecting the
24 identities of confidential and undercover sources and the privacy of unindicted third parties. The
25 Court further finds a substantial risk that disclosure of the redacted portions would harm these

---

[4] The Court does not suggest that any of the individuals at issue have been exonerated, any more than it suggests that any individual has engaged in misconduct. The Court has no basis to speculate on such issues—it is enough that these individuals have not been indicted.

7

1   interests, and that there are no adequate alternatives to redaction. *See Index Newspapers*, 766 F.3d
2   at 1095.  The parties are ORDERED to file copies of their briefs in the public record with the
3   United States' proposed redactions except as modified in the following subsections of this Order.[5]

### a. Keith Jackson's Motion

1. On lines 2 and 4 of page 7, the United States did not mark for redaction the name of an unindicted third party that is redacted elsewhere in the papers. This name <u>shall</u> be redacted here as well.

2. On lines 21 and 22, the United States marked for redaction the name of a city council. The Court finds no privacy interest or other compelling reason to redact this reference, and orders that it <u>not</u> be redacted.

3. The same city council is mentioned in Exhibit A to the motion, in the last entry on page 5 of the exhibit and the first entry on page 6. The name of the city council should be <u>not</u> be redacted in those instances. (All other proposed redactions on those pages are justified.)

### b. Leland Yee's Motion

1. Line 16 on page 6 includes the name of an unindicted third party. That name <u>shall</u> be redacted.

2. The redaction on lines 19 through 21 of page 6 shall be <u>limited</u> to redacting only the names of three unindicted third parties.

3. At page 23, the passage proposed to be redacted on lines 23 through 27 is discussed in sufficiently general terms to protect the privacy of individuals involved. That passage shall <u>not</u> be redacted.

### c. The United States' Opposition

1. The heading at line 19 of page 20 includes the name of an unindicted individual that is redacted elsewhere in the parties' papers. That name <u>shall</u> be redacted.

2. Line 16 on page 6 includes the name of an unindicted third party. That name <u>shall</u>

---

[5] Because the Court finds that most of the proposed redactions are justified, this Order discusses only exceptions to the United States' proposed redactions. All redactions proposed by the United States and not specifically discussed in this order should be redacted in the public versions filed by the parties.

be redacted.

3. At line 27 of page 27, and line 4 of page 28, the United States proposed redacting the name of a city council. As discussed above, the Court finds no compelling reason for these redactions. The references to the city council shall not be redacted.

4. On pages 36 through 39, and page 46, the United States proposed to redact several long excerpts from an affidavit submitted in support of a wiretap. As discussed above, the Court finds that when Title III material is included in the parties' legal arguments, it is subject to the public's right of access under the First Amendment. The United States therefore may not redact these passages in full, but shall redact much more limited portions of them to protect the identities of confidential sources, undercover employees, and unindicted third parties, consistent with this Order.

5. As discussed above in the context of Leland Yee's motion, the passages proposed to be redacted on pages 58 and 59 use sufficiently general language to adequately protect any privacy interests that might be implicated. These passages shall not be redacted.

    d. Keith Jackson's and Leland Yee's Replies

The United States' proposed redactions to the replies are justified and sufficient. The replies shall therefore be filed with redactions conforming to the United States' proposals.

    e. Judge Breyer's Order

The Court will file a public version of its July 7, 2015 order with redactions as proposed by the United States, except as follows:

1. On line 26 of page 13, the United States failed to mark for redaction the name of a commission that is redacted elsewhere. The name of the commission shall be redacted to protect the identity of an unindicted third party.

2. On lines 23, 27, and 28 of page 16, the United States proposed redacting the name of a city council. As discussed above, these references to the city council shall not be redacted.

3. On line 9 of page 26, the United States failed to mark for redaction a name that is redacted elsewhere. That name shall be redacted.

    **2. Declarations and Exhibits Filed in Support of or Opposition to Motions**

Although the Court holds that the declarations and exhibits filed in connection with the motions to suppress also fall within the First Amendment right of access by virtue of their connection to those motions,[6] compelling privacy interests justify sealing many of the exhibits, as discussed below.

### a. Declarations of Somnath Raj Chatterjee and James Lassart

Keith Jackson submitted two declarations by his attorney Somnath Raj Chatterjee: one in support of his motion and one in support of his reply. Leland Yee submitted three declarations by his attorney James Lassart: one in support of his motion, one in support of his reply, and a third supplemental declaration in support of his reply. Each has a number of exhibits. The United States has proposed, and no defendant objected to, filing the declarations themselves in the public record. *See* U.S. 1st Response at 2. The Court agrees that the declarations should be unsealed.

The United States proposed that all exhibits except Exhibit G to James Lassart's declaration should remain under seal. All of those exhibits are sealed discovery documents describing the findings of intensive government surveillance. Many of them are portions of wiretap applications and thus subject to § 2518(8)(b), and some include transcripts subject to § 2517.[7] The portions of these documents relevant to the parties' arguments and the Court's conclusions are summarized or excerpted in the briefs and the Court's order. The Court agrees with the United States that these exhibits should remain sealed to protect the privacy interests of individuals under surveillance and other individuals discussed by the surveillance targets, as well as the identities of undercover government employees and confidential sources. Taking into account the volume of material at issue and the large portion of that material that implicates compelling privacy interests, the Court finds that redaction is not a feasible alternative to sealing.

---

[6] The Court need not address whether there is an inherent right of access to Title III materials based on the judicial process of reviewing and approving applications for wiretaps, even when the materials are not used in connection with a motion or at trial. *See N.Y. Times II*, 577 F.3d at 410 (holding that there is no such right of access).

[7] Although "[o]bviously, a statute cannot override a constitutional right," the privacy interests underlying Title III nevertheless "weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted." *N.Y. Times I*, 828 F.2d at 115−16; *see also Dorfman*, 690 F.2d at 1234 (holding that Title III represents a rational compromise between competing constitutional rights to access and privacy).

The exception is Exhibit G to Lassart's declaration, which is a chart prepared by counsel illustrating purportedly boilerplate language used in multiple wiretap applications. No party opposes unsealing Exhibit G. *See* U.S. 1st Response at 3. The Court has reviewed Exhibit G and finds that it includes names of unindicted individuals in the "Interviews of Witnesses" row on page 2 and in the first column of page 6. These names are redacted elsewhere in the parties' papers and <u>shall be redacted</u> here as well. With those redactions, Exhibit G shall be filed in the public record.

### b. United States' Exhibits

The United States submitted thirty-two exhibits to its consolidated opposition. Two of these (Exhibits 20 and 26) are declarations by Special Agents Maya Clark and James Folger that the United States believes are suitable for public filing. *See* U.S. 1st Response at 2. The Court has reviewed these declarations and agrees that they should be <u>filed in the public record</u>.

Exhibits 1 through 14, and 29 through 32, contain transcripts and summaries of intensive government surveillance, including recorded telephone conversations. Based on the privacy interests of defendants and unindicted third parties, and on protection of the identities of undercover investigators and confidential sources, the Court finds compelling reasons to maintain these exhibits under seal. As with the defense exhibits discussed above, the Court finds that redaction is not a feasible alternative to sealing.

Exhibits 15 through 19 are court orders authorizing wiretaps. Although the orders fall within the scope of § 2518(8)(b), the Court finds good cause to unseal them, and no compelling reason to seal, because that authorization is directly implicated by the motions to suppress, and because privacy interests can reasonably be protected by redaction. <u>The United States shall file these exhibits in the public record, redacting the names and identifying information of unindicted third parties</u>. Those names appear in paragraph 2 of each order and in paragraph 3 of some of them. The telephone numbers listed in the orders—including in the captions on the first page of each order—<u>shall be redacted as well</u>.

Exhibits 21 through 25 are the United States' instructions for wiretap monitoring, including instructions for minimizing interception of non-pertinent calls. As with the

11

authorization orders, any privacy interests implicated by the instructions can be adequately protected by limited redactions. Because these instructions go to the heart of the motions to suppress, and because privacy interests can be adequately protected, the Court finds no compelling reasons to maintain them under seal, and to the extent that they might be covered by § 2518(8)(b), finds good cause to unseal them. <u>The United States shall file these exhibits in the public record, redacting the names and identifying information of unindicted third parties, and any subject telephone numbers.</u> The United States may also redact any contact information for investigators or prosecutors—e.g., mobile phone numbers included in the final paragraph of each set of instructions.

Finally, Exhibits 27 and 28 are charts of pertinent and non-pertinent calls during the periods the wiretaps were in effect. These charts do not significantly implicate privacy interests because they do not include the contents of calls or conversations. <u>The United States shall file these exhibits in the public record, redacting any telephone numbers.</u>

### c. Summary of Declarations and Exhibits

All declarations, including the declarations at Exhibits 20 and 26 the United States' opposition, shall be filed in the public record. Exhibit G to James Lassart's declaration and Exhibits 15−19, 21−25, and 27−28 to the United States' opposition shall be filed with redactions as discussed above. All other exhibits to the various declarations and to the opposition shall remain under seal.

## IV. CONCLUSION

For the reasons stated, the parties' motions and briefs shall be filed with redactions as specified above, the declarations by counsel and Special Agents Clark and Folger shall be filed in the public record, the exhibits specified above shall be filed with redactions, and the remaining exhibits shall remain under seal. Each party must file public versions of the documents that party originally filed under seal no later than September 18, 2015.

**IT IS SO ORDERED.**

Dated: August 28, 2015

JOSEPH C. SPERO
Chief Magistrate Judge

12