1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney

2

3  DAVID R. CALLAWAY (CABN 121782)
   Chief, Criminal Division

4  WILLIAM FRENTZEN (LABN 24421)
   SUSAN E. BADGER (CABN 124365)

5  S. WAQAR HASIB (CABN 234818)
   Assistant United States Attorneys

6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
8       FAX: (415) 436-7234
        William.frentzen@usdoj.gov
9       Susan.badger@usdoj.gov
        Waqar.hasib@usdoj.gov

10

11 Attorneys for United States of America

12
                   UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                     SAN FRANCISCO DIVISION
15

16 UNITED STATES OF AMERICA,          ) No.: CR 14 0196 CRB
                                      )
17      v.                            ) UNITED STATES' RESPONSE TO
                                      ) DEFENDANTS' MOTION FOR SEVERANCE
18 KWOK CHEUNG CHOW, et al.           )
                                      ) Date:   September 15, 2015
19      Defendants.                   ) Time:   2:00 p.m.
                                      ) Court:  Honorable Charles R. Breyer
20                                    )
                                      )
21                                    )
                                      )
22 _____)

23

24

25

26

27

28

# I. <u>INTRODUCTION</u>

In this twenty-nine defendant case, the government has strived to be efficient in resolving the case as to (1) defendants in custody, and (2) defendants grouped together for trial in meaningful, logical, non-prejudicial ways.  On September 9, 2015, very close in time to the start of trial and without providing advance notice to the government, six defendants entered guilty pleas to a wide variety of substantive criminal conduct.  These substantive offenses represented racketeering activity subsumed in the racketeering conspiracy charge in Count One of the Second Superseding Indictment.  The six defendants did not enter guilty pleas to the racketeering charge itself.  As requested by the Court at the close of the hearing, the government has assessed the events of September 9 and as to each of the eight defendants scheduled to go to trial on November 2, 2015, has carefully considered the appropriateness of proceeding to trial on the remaining counts.  This is especially the case where a conviction on the racketeering conspiracy or on other remaining counts might not affect the eventual sentence that a particular defendant might receive from the Court.

The government has also considered the Court's comments that it would consider severance as to the six defendants who entered guilty pleas to certain counts.  Candidly, this came as a surprise to the government because pleading to particular counts – but not pleading to the racketeering conspiracy which is the basic lynchpin for joinder and the essence of the case against these defendants – is not a legal basis for a severance.  There is no case law supporting severance on such grounds and the defendants have cited none.

Nonetheless, and taking a variety of considerations into account, including the Court's stated interest in a focused and not overly-long trial, the government proposes alternative options in terms of proceeding forward.  The government submits that these options promote a reasonable and fair balance of concerns regarding judicial efficiency and holding defendants appropriately responsible for their conduct.  In the first alternative, if the Court determines that some severance from defendant Chow is appropriate, it should sever only defendants Nieh, Yun, Pau, Siu, and Chiu and should try Chow, Li, and Chanthavong together as scheduled on November 2, 2015.  As a second alternative, if the Court accepts that proposal and either Li or Chanthavong then plead guilty, or if it determines that Li and Chanthavong should be severed from Chow along with the others, then Chow should be tried with the remaining co-

defendants in the RICO conspiracy charged in Count One.  The latter option would result in a relatively brief continuance of the trial to early 2016, but would promote judicial efficiency and fairness to the parties.

## II. ARGUMENT

### 1.  Respectfully, the Court Should Deny the Motion for Severance as Legally Infirm

The government asks the Court to bear in mind throughout this analysis that a trial of any single defendant in a RICO conspiracy with unadjudicated co-conspirators charged in the same conspiracy **cannot** be an efficient use of the resources of the Court, government, jurors, or defendants' counsel. Further, the fact that a single defendant might have his trial delayed by a few months in order to resolve the charges against several other co-defendants charged in the same conspiracy is not a sufficient basis to proceed to trial against defendants one at a time.

Defendant Yun is doubtlessly correct that the Court is familiar with the caselaw regarding severance.  Yet, she cites not a single case that supports a severance under the circumstances of this case.  The Court previously upheld the joinder of all twenty-nine defendants in this criminal case.  The Court selected these eight defendants for a joint trial.  That many of the defendants have entered guilty pleas to a large number of serious felony offenses is not a legal basis for a severance, especially where they did not enter a guilty plea to the single count that most appropriately joins them for trial.  Had they each entered guilty pleas to Count One and then moved for a severance, it might have made slightly more sense.  There may be a practical basis for a severance to pressure the government into dismissing certain counts in the interest of judicial economy, but there is no legal basis for a severance because of the guilty pleas entered on September 9, 2015.

Under Fed. Rule Crim. P. 14(a), the Court has authority to sever the trials of defendants if joinder is so "manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976), *quoted in United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007); *see United States*

*v. Mitchell*, 502 F.3d 931, 963 (9th Cir. 2007); *United States v. Taren-Palma*, 997 F.2d 525, 533 (9th Cir. 1993) ("Joinder must be so manifestly prejudicial that the district court was required to conduct separate trials.").  In order to obtain a severance of a properly joined case, a defendant has to show more than simple prejudice, since "some prejudice is inherent in any joinder of defendants." *United States v. Vaccaro*, 816 F.2d 443, 448-49 (9th Cir. 1987).  Rather, a defendant must show that the jury may not reasonably be expected to consider and appraise the evidence against each defendant, and that proper limiting instructions will not suffice to cure any such potential prejudice.  *See United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993), *overruled on other grounds, United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).  "It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993).

In this case, the single count in which all eight defendants are charged is the racketeering conspiracy in Count One.  In order to prove a racketeering conspiracy, the government presents evidence of the enterprise that may or may not directly involve the defendants at trial.  *United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004) (affirming denial of severance motion in racketeering case and finding no spillover prejudice because "much of the same evidence would be admissible against each of [the defendants] in separate trials"); *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) ("Proof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless."), *quoted in Fernandez*; *United States v. Coonan*, 938 F.2d 1533, 1559 (2d Cir. 1991) ("common sense suggests that the existence of an association-in-fact is often-times more readily proven by what it does, rather than by abstract analysis of its structure"), *quoted in Fernandez*; *see also United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972) ("In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses").

Accordingly, the fact that some of the defendants charged in the racketeering conspiracy have pled guilty to certain substantive offenses in no way changes their legal culpability as members of the RICO conspiracy.  Therefore, the guilty pleas did not alter the landscape legally for a severance.

In support of defendant Yun's motion for severance, which Nieh, Li, Chanthavong, Pau, Siu, and Chiu have joined, counsel has filed a declaration *ex parte* and under seal which states the "factual basis for her motion."   *See*, Yun Motion for Severance, Doc. 973, at 2.   Yun's motion itself provides only broad statements about severance law and does not articulae the specific legal grounds upon which she and her co-defendants are relying in seeking severance.   As stated above, the fact of guilty pleas to certain substantive counts in a conspiracy case cannot alone provide a legal basis for severance. Accordingly, the government is at a profound disadvantage in opposing the motion for severance when it is aware of neither the legal, nor factual basis, for the motion.

For these reasons, the government objects to the filing of counsel's declaration *ex parte* and under seal.   Obviously, the government cannot meaningfully comment on something it does not have. The adversarial system depends on a vigorous and informed debate and discussion in order to assist the Court in reaching its decision.   That is not what is happening here.   Yun's broad claim to entitlement to conceal defense strategy from the government does not promote fairness or a balanced discussion of the merits of this important matter.   The government should be permitted to comment on the substance of the defendants' motions if it will be relied upon by the Court.

Furthermore, whatever is in the *ex parte* document should be evaluated carefully by the Court. The track record of defendants thus far in this case has been to make inflammatory and unsupported claims that end up having no substance.   A case in point is defendant Chow's motion for selective prosecution, which the Court found to have no factual basis or merit.   Similarly, Yun has made claims of facts purportedly supporting an outrageous government conduct claim or entrapment defense; yet she never filed a motion to dismiss on that basis and abandoned her entrapment claim by pleading guilty.

At a minimum, the Court should notify the government as to the stated basis for the severance that is purportedly supported by defense counsel's *ex parte* submission.   If the basis for the severance is that all or some of the defendants are going to testify for Chow, then the government should be entitled

to brief that subject as it did with Yun's previous motion for severance.  If the basis for severance involves alleged prejudicial spillover, then that subject should be aired and the government should be entitled to raise factual and legal arguments against severance.  If it involves an alleged error in the Indictment, then the government should be permitted to brief that type of issue.

Without any clue as to the basis for the motions for severance, the government's only recourse is to turn to the facts as they currently exist and analyze the situation.  As purely a legal matter, there is no more a basis for a severance now than there was before the six defendants entered guilty pleas on September 9.  On purely legal grounds, the Court should deny the motion for a severance and allow the trial to proceed as it was originally scheduled.  Once that decision is made, the government may well determine that it is not worth proceeding as to some defendants and/or some defendants may decide that it is in their interest to resolve the case through further guilty pleas with or without a plea agreement.  But that is the only principled legal way that the case should be handled moving forward.

### 2. Alternatively, the Government is Prepared to Dismiss Charges as to Certain Defendants if the Dismissal Achieves an Efficient Result

Alternatively, the government is prepared to proceed to trial on November 2, 2015 against the following three defendants: Li, Chanthavong, and Chow.  If the Court were to sever only defendants Nieh, Siu, Chiu, Yun, and Pau from the trial, then the government is prepared to dismiss remaining counts against those defendants and proceed to trial against only Li, Chanthavong, and Chow.  The government is prepared to proceed in this manner for the following reasons.

First, the government views it as important that these three defendants be held accountable for their culpability as members of the RICO conspiracy.  The government will be able to prove at trial that defendants Li and Chanthavong are long-time associates of Chow and criminally inclined unrepentant gangsters.  The government can prove that defendant Li worked for Chow in the early 1990s by committing arson on the home of Chow's old boss, Peter Chong.  Defendant Li has a history of violence, including the arson and a subsequent federal conviction for robbery related conduct.  As described in the indictment, as the government will be prepared to prove, the means and methods of the

1    CKT enterprise included, among other things, members protecting and expanding the enterprise's

2    criminal operation by committing, attempting, and threatening to commit, violence, intimidation, and

3    threats of violence against others.  The evidence at trial will show that during the course of this

4    investigation, defendant Li repeatedly discussed committing violence against enemies of Chow on

5    Chow's behalf and against others.  Defendant Li, with others, sold firearms, trafficked in narcotics, and

6    was sufficiently active in trafficking narcotics to require hundreds of thousands of dollars in cash to be

7    laundered from the East Coast to the West Coast on regular intervals by the UCEs.  In short, defendant

8    Li is precisely the type of criminal where the racketeering conspiracy charge should be vindicated

9    against him and should not be dismissed.

10          Similarly, defendant Chanthavong associated with Chow from the time that they met in prison.

11   Chanthavong stated that he was in charge of Chow's security and that he had a "black ops team" to carry

12   out violent acts for the Tong.  Defendant Chanthavong has three prior felony narcotics violations and he

13   was selling firearms and carrying firearms through the course of the investigation.  He also participated

14   in the same narcotics trafficking operation carried out by defendant Li.  Again, the government believes

15   that a defendant like Chanthavong should be held accountable for his criminal conduct in connection

16   with the CKT enterprise.

17          Additionally, both defendant Li and defendant Chanthavong continue to face charges that carry

18   mandatory minimum terms of imprisonment involving narcotics trafficking and possession of a firearm

19   in connection with narcotics trafficking.  *See*, Second Superseding Inditment, Counts 124, 125, 126, and

20   187.  Neither Li nor Chanthavong has pled guilty to any of these charges.  Therefore, the government

21   will need to proceed to trial against Li and Chanthavong regardless of resolution of the racketeering

22   conspiracy charge.  Although the charging decisions in a case remain entirely those of the executive, it

23   should be noted that defendants Li and Chanthavong fit *every* category of the Attorney General's Policy

24   on Charging Mandatory Minimum Sentences.  *See* Attorney General's Memorandum of August 12,

25   2013.  Here, (1) the defendants' relevant conduct involved uses of violence, threats of violence, and

26   possession of weapons; (2) the defendants were leaders and managers of others within a criminal

27   organization; (3) the defendants had significant ties to large-scale drug trafficking organizations and

28

1  gangs; and (4) the defendants had significant criminal history.  The government would be acting

2  contrary to Department policy to dismiss these charges against these defendants.

3         While the Court is correct that the racketeering conspiracy may not eventually affect the

4  sentencing of many of the defendants, the final sentence imposed on a defendant is not the overriding

5  concern of the government.  Without a doubt, different defendants in the RICO conspiracy engaged in

6  various types of criminal conduct, some more serious than others, in carrying out the activities of the

7  enterprise.  The government recognizes that and acknowledges that different sentences may be

8  appropriate for different defendants.  While the government has input into what should be the

9  appropriate sentence, at the end of the day, the Court makes that final determination.  In the meantime,

10  the government's concern is that the charges which each defendant faces and is tried on most accurately

11  and truthfully capture the nature and seriousness of the defendant's conduct.  In the view of the

12  government, a resolution of this case short of a racketeering conviction against defendants Chow, Li,

13  and Chanthavong would not represent justice regardless of the sentence imposed.

14         As to Nieh, Yun, Pau, Siu, and Chiu, a conviction for racketeering conspiracy would not be

15  inappropriate given the facts of this case.  That said, the government acknowledges that it is also

16  appropriate to be pragmatic regarding its limited resources and so, for that reason and that reason alone,

17  the government would be willing to agree to dismiss the remaining counts as to these five defendants in

18  the case at a time that makes sense.[1]  Based on statements made by Chow's counsel immediately after

19  the entry of guilty pleas on September 9, 2015, the government has to assume that if it moved to dismiss

20  the RICO charges against Nieh, Yun, Pau, Siu, and Chiu pre-trial, Chow's counsel would try to

21  pronounce that fact to the jury as if it was meaningful.  The government should be clear:  it is secure in

22  its proof of Count One liability on the part of each and every defendant charged in the case and any

23  dismissal would not be out of a concern for the evidence supporting the charge.  However, the

24  government is not interested in dismissing the racketeering conspiracy purely for pragmatic and

25

26  _____
   [1]  While the government might be willing to dismiss those charges earlier than Chow's trial, it
27  cannot take the risk of inappropriate arguments being made by Chow's counsel.  Immediately following
   the guilty pleas entered by six of the defendants on September 9, 2015, counsel for Chow apparently
   stated that: "[t]he government's racketeering theory just lost all credibility."  San Francisco Chronicle,
28  September 10, 2015.  This statement is obviously illogical and wrong, of course, but also foreshadows
   the potential for improper argument by Chow at his trial.

USA OPP. TO DEFENDANTS' MOTION FOR SEVERANCE
CR 14-0196 CRB                          7

1    efficiency reasons only to have defense counsel for Chow or others charged in Count One claim that the

2    charge had no merit.[2]

3            A trial of defendants Chow, Li and Chanthavong would promote the Court's interest in having a

4    focused trial that is not overly long.  The trial could proceed promptly.  The charges against Li and

5    Chanthavong are relatively straightforward and the proof would not require much in the way of

6    additional body wire recordings since the recordings of Li and Chanthavong that relate to Chow and to

7    the criminal enterprise will be admissible against Chow even if he is tried alone.  See Fed. R. Evid.

8    801(d)(2)(E); *Fernandez, supra*.  There would be some additional evidence regarding several searches

9    and money laundering transactions that were fairly routine, that is, co-conspirators gave cash proceeds to

10   UCEs on the East Coast for UCE 4599 to launder and deliver to the defendants on the West Coast.

11   Those transactions can be summarized and need not be presented in great detail.  In sum, a trial of these

12   three defendants jointly would still be shorter that the originally-planned eight defendant trial and would

13   resolve the racketeering charges as to all three of these defendants who are currently in custody.[3]

14           On the other hand, should the Court determine that it will sever defendants Li and Chanthavong

15   from the trial of defendant Chow, then the government's interest in the efficiency of dismissing against

16   the remaining defendants – Siu, Chiu, Yun, Pau and Nieh – becomes minimal.  There will still need to

17   be at least two trials on the RICO charge.  The Court and government would have to engage in a trial of

18   Chow as well as a trial of Li and Chanthavong as to the racketeering conspiracy and the mandatory

19   minimum narcotics charges.  If there will ultimately be two trials, then the government does not gain in

20   terms of efficiency by dismissing serious felony charges against the other defendants, who could and

21   should be tried with defendants Li and Chanthavong, as was already scheduled by the Court.

22

23

24           [2]   Such an argument by Chow could also open the door to the guilty pleas that were entered into
25   by the other defendants to the racketeering activity as well as the conspiracies with Chow.  It would also
     open the door to the guilty pleas by defendants Sullivan and Brandon Jackson to racketeering.

26           [3]   It should be noted that the government previously requested that the defendants consider a
     long list of potential stipulations to greatly reduce the number of witnesses and time of the trial.  *See*
27   Letter of Frentzen to Defense Counsel, August 15, 2015 (attached as Exhibit 1).  The government also
     offered to consider any proposed stipulations by the defendants.  The defendants have thus far failed to
28   agree to any stipulations or propose any of their own.  In other words, the government is making every
     effort to reduce the scope and duration of the trial.

### 3.   The Government Respectfully Submits That There Should Not be a Trial of any Single Defendant Unless He or She Is the Last Defendant in the Case

In the event that the Court determines that it should sever all seven defendants from defendant Chow – and the government persists that there is no principled legal basis for doing so -- then the Court should hold a trial with defendant Chow rejoined with the remaining RICO conspiracy co-defendants in Count One.  That is, Chow should be tried with co-defendants Mei, Tina Liang, Ma, Nhingsavath, and Elaine Liang, and that trial should be set for early 2016, to allow time for counsel for those co-defendants to prepare.  Along similar lines, should the Court adopt the government's proposal that Chow, Li, and Chanthavong be tried together, and then Li and Chanthavong enter open pleas, the same result should apply.  That is, Chow should go to trial with the remaining Count One co-defendants.  The government is not particularly interested in a continuance of the current trial.  However, there are other prevailing concerns that have to do with judicial efficiency and preservation of resources, as well as the important fact that these defendants are charged with engaging in a conspiracy together.  It simply makes no sense for the Court, a jury, and counsel for both sides to engage in a RICO conspiracy trial for one defendant that lasts several weeks.

There is also another thing to take into account in the variety of factors at play here.  Simply stated, defendant Chow is undeserving of having an entire trial just about him as long as there are other defendants in the case.  Although this is inconsistent with Chow's image of himself and with the story that his counsel portrays to the Court and the media, Chow is not the center of attention or target he claims to be.  The Court should be aware, if it has not already recognized, that Chow was never the "end game" of this investigation for the government, or some kind of prized target of law enforcement.  The government was confident entering into this investigation that defendant Chow was sufficiently paranoid and insulated to be unlikely to commit substantive criminal activities himself, such as dealing in drugs or laundering money personally.  Rather, as was stated by his co-conspirators in furtherance of the conspiracy, Chow served as a figurehead to distract attention from others and as a knowing and willing facilitator, protector, mediator, and person to make introductions for other criminally inclined individuals to work together.  He was also happy to benefit financially from the substantive crimes commited by others.  In many ways, Chow was impotent as a criminal himself – a former self-

USA OPP. TO DEFENDANTS' MOTION FOR SEVERANCE
CR 14-0196 CRB                                      9

proclaimed thug who had turned government cooperator.[4]  But the government had reason to believe that Chow surrounded himself with the criminally inclined, connected himself to them, and knew who was engaged in criminal activities in the Bay Area.  In that way, the "end game" of this investigation was the other individuals whom Chow could, and eventually would, introduce undercover agents to once they gained his trust.

Of course, that is what happened in this investigation: Chow introduced UCEs to defendants Siu, Chiu, Nieh, Yun, Pau, Li, and Chanthavong along with others named in Count One.  At least six of those individuals the Court now conclusively knows, from their guilty pleas to over 200 felony offenses, engaged in a wide variety of criminal and racketeering activity.  Chow also introduced UCEs to defendant Keith Jackson, which led to the introduction to defendants Senator Yee, Brandon Jackson, and Marlon Sullivan.  As the Court also now conclusively knows, those four were engaged in criminal and racketeering activity, including with other members of Chow's enterprise.  Despite his counsel's claims to the contrary, it is simply not the case that Chow was the government's end game.  Chow was an individual who was deeply connected with criminal associates and activity throughout the Bay Area and nationwide and by engaging with him, the government was able to get his introductions and his blessings to "work" with individuals who were out actually committing crimes.  Chow is only one of twenty-nine defendants.  There is no rational basis for devoting substantial resources to a trial with Chow by himself.  Further, such a trial would distort the essence of the racketeering enterprise charges against Chow and his co-defendants.

The Court pointed out at the hearing that Chow has consistently asked for an early trial.  That was true at that time[5], but that is only one factor that the Court must take into consideration when deciding who should be tried when.  That is especially the case where the time and expense to so many others is equally or more important.  For example, the Court will be tied up in this trial for a substantial

---

[4]   In fact, during the investigation, at least one individual that UCE 4599 was introduced to in order to commit large scale money laundering stated that his associates would not engage in criminal activity that associated to Chow because Chow had cooperated with the government in the past.  Although that potential criminal association came from Chow's introduction, Chow's past caused those targets to withdraw from any further activity with UCE 4599.

[5]   After that hearing, on September 10, 2015, defendant Chow actually moved for a continuance of the trial.

amount of time not only listening to recordings of Chow, but also to recordings of others who spoke in furtherance of the conspiracy about the CKT, Chow, and committed crimes that Chow approved of them committing with the UCEs.  During that same time, the Court could be resolving the case as to those other defendants.  Again, as the ramifications of a trial of Chow alone become clear, such a scenario makes no sense and flies in the face of principles of judicial economy.

While Chow's demand for an early trial is one consideration, it is not controlling.  The caselaw regarding severance and joinder recognizes the interest in trying more than one defendant, especially co-conspirators, in one trial.  The Speedy Trial Act provides for exclusion of time where "the defendant is joined for trial with a codefendant . . . ."  18 U.S.C. § 3161(h)(6).  Ultimately, Chow's trial could be set for early 2016 with other codefendants.  That would not be an unreasonable delay in a case of this nature, where the investigation consists of over three years of recordings.  Other defendants could be ready for trial promptly as they have been receiving all of the same discovery and notices as the current defendants set for trial.

Finally, while the Court correctly noted at the hearing that defendant Chow is in custody, it is the government's understanding that defendant Chow will not be released immediately from custody by the Department of Homeland Security regardless of the outcome of this trial.  An S Visa application for Chow was denied based upon his conduct in this case.  He remains an individual who has been convicted of multiple criminal offenses and was only on release due to the discretion and supervision of the Department of Homeland Security.  Shortly after his arrest in this case, a detainer was lodged against him that will attach at the conclusion of his custody in this case.  *See,* Immigration Detainer, attached as Exhibit 2.  While Chow may or may not ultimately be deported if he successfully makes claims such as asylum, he will not be released from custody any time soon regardless of the outcome of this case.  The government is not arguing this as a basis for prolonged detention, but merely points out that defendant Chow's current custodial situation should not weigh heavily when balanced against the judicial economy interests of trying as many conspiracy co-defendants in a single case as can be fairly accommodated.  That is especially the case where the delay would be one of only a few months.

### III.  <u>CONCLUSION</u>

In light of the foregoing, the government hereby respectfully submits that the Court should deny defendants' motions for severance.  Alternatively, the Court should only sever five defendants – Siu, Chiu, Nieh, Pau, and Yun – and retain the current trial against defendants Chow, Li, and Chanthavong. Should the Court sever all seven defendants from defendant Chow, or if defendants Li and Chanthavong plead their cases out completely, then the Court should impose a brief continuance of the trial for defendant Chow and schedule his trial with the remaining defendants in Count One at the earliest possible date.

DATED: September 11, 2015     Respectfully submitted,

MELINDA HAAG
United States Attorney


       /s/
WILLIAM FRENTZEN
SUSAN E. BADGER
S. WAQAR HASIB
Assistant United States Attorneys